UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMPA BAY WATER,
A Regional Water Supply Authority

    Plaintiff,                       CASE NO.:  8:08-cv-2446-T27-TBM

v.

HDR ENGINEERING, INC., a
Nebraska corporation,
CONSTRUCTION DYNAMICS
GROUP, INC., a Maryland corporation,
BARNARD CONSTRUCTION
COMPANY, INC., a
Montana corporation,
ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
A Minnesota corporation,

    Defendants.
_____/
BARNARD CONSTRUCTION COMPANY, INC., a
Montana corporation

    Third Party Plaintiff,
v.

MCDONALD CONSTRUCTION CORPORATION,
a Florida corporation

    Third Party Defendant.
_____/

**DEFENDANT, BARNARD CONSTRUCTION COMPANY, INC.'S
MOTION FOR SANCTIONS PURSUANT TO FED.R.CIV.P. 37(c)**

Barnard Construction Company, Inc. ("Barnard") moves this Court for an Order precluding Tampa Bay Water ("TBW") from presenting evidence on TBW's Damage Claim for Past and Future Loss of Use of Water pursuant to Fed.R.Civ.P. 37(c) and in support thereof states the following:

1

## I. INTRODUCTION AND PROCEDURAL HISTORY

### A. Statement of Relief Requested

Barnard seeks an order pursuant to Rule 37(c) of the Federal Rules of Civil Procedure precluding TBW from presenting evidence at trial in support of any claim that TBW's damages include alleged future loss of use of water and past loss of use of water. Alternatively, Barnard seeks an order pursuant to Rule 37(c) precluding TBW from presenting evidence at trial in support of TBW's "Cost Model" of damages and limiting TBW's loss of use damages (past and future) to the "Revenue Model" as contained in TBW's Amended Initial Disclosure Statement.

### B. Background

This litigation arises out of the construction of the C.W. Bill Young Regional Reservoir ("Reservoir"). TBW is the regional supplier of water to the Tampa Bay region. TBW was established to create a unifying body that could provide a long term, regional view for water service. TBW's reason for constructing the Reservoir, and, in fact, a large reason for the very creation of TBW, was to develop and manage responsible sources of water from which TBW could supply the needs of the Tampa Bay region. The use, availability, and cost of water are at the very core of TBW's function and are the heart of TBW's very existence.

### C. The Litigation and TBW's Loss of Use of Water Claim

The construction of the Reservoir was completed in 2005. The Reservoir was put through two filling and drawdown cycles. Then in December 2006, after the second draw down, TBW reported the existence of "unusual" cracks in the soil cement lining on the interior face of the Reservoir. TBW and TBW's design engineer, HDR Engineering, Inc. ("HDR") conducted extensive investigations for almost two years into the cause of the cracking.

In December 2008, TBW filed suit against Barnard, HDR and others which sought, in part, to recover TBW's alleged damages for loss of use of water. In the "Wherefore" provision of

2

the count against Barnard, TBW demanded "judgment against Defendant, BARNARD, for general and special damages in excess of $75,000.00 for . . . (b) loss of use . . . ." Amended Complaint p. 21.

On September 9, 2009, this Court issued an Amended Case Management and Scheduling Order ("Order"), which fixed expert disclosure deadlines and a discovery cut-off date of December 15, 2010.

On March 9, 2009, TBW served its Rule 26(a)(1)(A)(iii) Initial Disclosures ("Initial Disclosures"). TBW stated its damages for the loss of use of water were "not yet determined." The relevant portions of TBW's Initial Disclosure statement is attached hereto as Exhibit "A".[1]

The Order required TBW to disclose all experts and expert reports for all matters except remediation design and costs by January 8, 2010 and for matters related to remediation design and costs by May 14, 2010. TBW filed lengthy expert reports by each disclosure deadline. None of TBW's expert reports contained a claim for TBW's damages for TBW's alleged loss of use of water.

TBW disclosed, on April 23, 2010 and again on May 14, 2010, that certain TBW employees, who were not specially retained to provide expert testimony, might be called to present opinion evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence.[2] However, TBW did not provide the opinions, explanations of possible opinions, or basis for the opinions for the TBW employees. TBW did not provide any indication that their employees' undisclosed opinions were meant to support TBW's claim for loss of use of water.

The May 14, 2010, expert disclosure deadline passed without TBW disclosing TBW's alleged loss of use of water damages. Barnard inquired of TBW as to whether TBW intended to pursue a claim for loss of use of water. TBW responded on May 21, 2010 that TBW did intend

---

[1] TBW's Initial Disclosure statement is voluminous and contains documentary support for many of the damages claimed by TBW. Documentary support was not provided for TBW's loss of use claim.
[2] The TBW employees disclosed were Dr. Alison Adams and Jon Kennedy.

3

to make such a claim, but TBW did not list the claimed damages, the evidence to be presented in support thereof or which witnesses would testify as to this claim. (See e-mail dated May 21, 2010 attached as Exhibit "B.") TBW also advised Barnard that TBW did not intend to offer expert testimony on TBW's loss of use claim. See Exhibit "B".

It was not until fourteen months after TBW's Initial Disclosures, that Barnard knew whether it would be necessary for Barnard to prepare a defense to TBW's claim for loss of use of water. But even at that late date, Barnard still had no idea about any details of TBW's loss of use claim or even the amount of TBW's alleged damages.

Dr. Adams' deposition was taken on June 10, 2010, by co-defendant HDR. Barnard was not afforded an opportunity to examine Dr. Adams because the allotted time expired. Mr. Kennedy's deposition was taken by HDR on June 11, 2010. The allotted time expired and Barnard was not afforded the opportunity to examine Mr. Kennedy.

At the June 10 deposition of Alison Adams, Dr. Adams testified:

> Q: Has anybody asked you to calculate the monetary value of this 8.9 billion gallons[3]?
> A: No.
> **Q: Has anyone asked you to put a price tag on that?**
> **A: No.**
> Q: ...do you know how to put a price tag on that?
> A: I'm not the best person to ask that question.
> Q: Have you been asked to supply your information to anybody to do so?
> A: No.
> Deposition of Alison Adams, June 10, 2010, Vol. 2, pages 287-288 lines 16-2; (Relevant portions attached hereto as Exhibit "C") (emphasis added).

At the June 11 deposition of Mr. Kennedy, Mr. Kennedy testified that:

> Q: Are you qualified to perform an analyses and provide an opinion as to the dollar cost of water which may have been lost due to any inability to fill the reservoir up to a particular review.
>            * * *

---

[3] The 8.9 billion gallons is the amount of water TBW is claiming was available but could not be stored in the Reservoir because the Reservoir was not available. The 8.9 billion gallons is the basis for TBW's past loss of use claim.

A: If I'm given the amount of water, the answer is yes, I can. I cannot develop the amount of water on my own.
Q: Have you been asked to do that in this case--
A: No I haven't.
Deposition of John Kennedy, June 11, 2010, Vol. 2, page 196, lines 15-24; (Relevant portions attached hereto as Exhibit "D".)

\* \* \*

Q: Have you been asked at all to look at the amount of water that may not have been able to put in the Reservoir and provide an estimate as to what that equals in any type of dollar damage?
A: No I haven't.
Deposition of John Kennedy, June 11, 2010, Vol. 2, page 197, lines 10-14; (Relevant portions attached hereto as Exhibit "D".)

On June 18, 2010, eighteen months after TBW's Complaint was filed, TBW served an Amended Rule 26(a)(1)(A)(iii) Initial Disclosures ("Amended Initial Disclosures"). The Amended Initial Disclosures are attached hereto as Exhibit "E". This was the first time TBW disclosed the amount of TBW's claim for damages related to past and future loss of use of water. This disclosure occurred after the initial deposition of Dr. Adams and Mr. Kennedy, who were designated by TBW as employees who may offer expert testimony. In the Amended Initial Disclosure TBW claimed $61-$68 million for past and future loss of use of water, but provided no theory, basis, or details explaining these amounts.

On August 6, 2010, TBW identified TBW employees Dr. Allison Adams and Jon Kennedy as the TBW representatives with the most knowledge of the loss of use claims. *See* TBW's Responses and Objections to McDonald Construction Corporation's First Set of Interrogatories, attached hereto as Exhibit "F".

TBW still has never produced an expert or report on TBW's loss of use damages. Though limited documents have been produced at deposition, TBW has not made the required production of documents depicting the computation for TBW's loss of use claim as disclosed in the Amended Initial Disclosure as dictated by Rule 26(a)(1)(iii).

TBW's claim for loss of use in the Amended Initial Disclosures is based upon a "Revenue Model." The theory of the "Revenue Model" is that TBW lost revenue from the sale of water because water could not be stored in the Reservoir. TBW estimated that TBW could not pull 8.9 billion gallons of water from the rivers during the period of March 2008 to June of 2009 because the Reservoir was not available. *See* June 10 Deposition of Alison Adams, pg. 211-212, Relevant portions attached hereto as Exhibit "C". TBW charges its customers an average of $2.25 per 1,000 gallons of water. Thus, TBW claimed it suffered approximately $20,014,320 in past loss of use damages.[4] It took TBW sixteen months to determine this "Revenue Model" theory of past damages. TBW's "Revenue Model" claim was supported by persons already on TBW's staff and information already in TBW's records. Yet as of June 11, 2010, TBW's employees most knowledgeable on the loss of use claim, had not calculated its claimed loss of use of the Reservoir. TBW's claim for future loss of water stated a claim for $41-$48 million based upon the "Revenue Model" theory. TBW's claim for future loss of use of water was calculated for the period of time when the Reservoir is predicted to be out of service for repairs.

After service of TBW's Amended Initial Disclosures, Barnard retained a water economist, Dr. William Wade, as an expert to opine on TBW's claim for loss of use of water. Dr. Wade worked diligently to promptly prepare a report in response to TBW's newly, and extremely late, claim for loss of use of water.

On October 8, 2010, Barnard disclosed Dr. Wade and his expert report to TBW. The essence of Dr. Wade's detailed 48 page report is that TBW's past and future lost revenue amounted to zero ($0) dollars and TBW may have in fact benefited financially.

Then, on October 20, 2010, twenty months after TBW filed its complaint, two months after the initial depositions of Mr. Kennedy and Dr. Adams, two months before the close of

---

[4] This is the amount actually included in the Amended Initial Disclosures. The calculation above equals $20,025,000 for damages for that time period. This difference is attributed to rounding.

6

discovery, twelve days after Barnard served Dr. Wade's report, and just one day before Mr. Kennedy's continued deposition was set to resume[5], TBW served its Second Amended Rule (a)(1)(A)(iii) Initial Disclosures ("Second Amended Initial Disclosures"). The Second Amended Initial Disclosures are attached hereto as Exhibit "G." Again, documents supporting TBW's claimed damages were not produced with the Second Amended Initial Disclosures.

In TBW's Second Amended Initial Disclosure, TBW offered a brand new alternative theory of damages on loss of use which TBW calls the "Cost Model." Lest there be any doubt as to the impetus for TBW's new damage theory, Mr. Kennedy testified:

> Q: [W]hy did you need some other side's expert report for you to calculate what the proper damages for Tampa Bay Water should be?
> A: Because I want to make sure that I've taken advantage of considering the items that are in the Wade report. And if those things cause us to take a look at how it is we've changed -- we need to make a change, then we should be making a change.
> Q: And did the items in the Wade report cause Tampa Bay Water to make a change in how they calculated Tampa Bay Water's damages for future lost or diminished use of the reservoir?
> A: Yes.
> Kennedy Deposition dated October 22, 2010, Vol. 4, page 492, lines 11 through 25 (Relevant portions attached as Exhibit "H".)

Mr. Kennedy, TBW's corporate representative on damages, confirmed that TBW would abandon TBW's reliance upon the "Revenue Model" in favor of the newly set forth "Cost Model." Mr. Kennedy testified:

> Q: [W]hy did you abandon the revenue model after you read the Wade report and adopt a cost model to compute Tampa Bay Water's damages for lost future use of the reservoir?
> A: I think the cost model more accurately reflects what Tampa Bay Water will incur.
> Deposition of Mr. Jon Kennedy dated October 22, 2010, Vol. 4, pages 488-89, lines 25 through 6 (Relevant portions attached hereto as Exhibit "H".) (Referred to herein as the "Kennedy Deposition")

---

[5] Mr. Kennedy was also produced as TBW's Corporate Representative on TBW's claimed damages. See e-mail from counsel for TBW, dated October 20, 2010, attached hereto as Exhibit "I."

7

> Q: The same is true with respect to the future lost/diminished use damages claims under Roman numeral V B, that now that you have the Wade Report, you don't know if the $41 Million dollars is the right amount of damages to be claiming or not, true?
> A: I agree, I don't know if it is or not.
>
> \* \* \*
>
> Q: ...So is Tampa Bay Water claiming 41 to 48 million dollars from a future lost or diminished use or are they claiming 20 million dollars?
> A: It's claiming 20 million dollars.
> Q: So we can strike out the 40 to 48 million dollars and move forward on the agreement that Tampa Bay Water's damages for future lost or diminished use have been reduced to 20 million dollars; is that correct?
> A: Yes.
>
> Kennedy Deposition, Vol. 3, page 371, lines 2- 7; pages 371-72 lines 18 through 2 (Relevant portions attached hereto as Exhibit "H".)

The $40-$48 million referenced by Kennedy was the amount TBW claimed pursuant to the now abandoned "Revenue Model" claim. However, when asked if the Cost Model would be used for past damages, Kennedy testified:

> Q: If the cost model is the more accurate and correct way to do the future lost damages, why wouldn't the cost model also be the more accurate and correct way to calculate the past lost or diminished use?
>
> \* \* \*
>
> A: I would have to further investigate what part of the desal production during the time period of those 15 months was related to testing that we were doing to get it past its performance tests as opposed to pumping of the desal plant to meet our demands as our best faith effort to minimize our groundwater production fines from SWFWMD **and I don't have that number yet.**
> Kennedy Deposition, Vol. 4, page 490, lines 10-15 (Relevant portions attached hereto as Exhibit "H".) (emphasis added).

TBW's "Cost Model" looks at TBW's actual costs in producing the water that is sold to its member agencies instead of theoretical lost revenue. In TBW's Second Amended Initial Disclosure, TBW stated the "Cost Model" value of TBW's future loss of use of water damages as $20,094,262 and the past loss of use damages as "To Be Determined". TBW had abandoned its "Revenue Model" and to this day, TBW still has not provided a damage amount for the past loss of use claim. Additionally, TBW still has not provided any explanation as to why it is now feasible for TBW to establish theoretical future damages using the "Cost Model", but why TBW

8

has not been able to establish "Cost Model" damages for past losses. The past costs are fixed and the future costs are speculative.

TBW has three primary sources of water (groundwater, surface water, and desalinization) which are used interchangeably in order to meet the region's water needs. Water is truly fungible. To present a competent defense to this new "Cost Model," Barnard must understand where the water TBW uses comes from, the cost of producing the water from each source, the effect of the economies of using one water source more than the other, the infrastructure cost, and every other component that goes into TBW's cost to produce water. These are all factors readily available to TBW and are the very essence of what TBW does. However, because of the delayed disclosure of this "Cost Model," Barnard is unable to conduct the necessary discovery to determine these facts. TBW is a water supplier and should know its costs to produce water. For TBW to develop this new "Cost Model" theory at such a late stage in the proceeding, and to still not provide an amount of past loss of use damages, when all of the elements of this claim for damages have been readily available to the TBW for months before this lawsuit even started grossly prejudices Barnard.

When asked during his October 21, 2010 deposition, Mr. Kennedy stated:

Q: When do you expect to make [the determination as to the "To Be Determined" amounts listed under the "Cost Model"?
A: I'm going to need another week of time to review, having only had the Wade report since last Wednesday evening.

Kennedy Deposition dated October 22, 2010, Vol. 4, pages 492, lines 7 through 13 (Relevant portions attached hereto as Exhibit "H".)

Mr. Kennedy failed to explain why he needed to rely on Barnard's expert to compute TBW's damages. The one week Mr. Kennedy referenced is now almost four weeks and TBW still has not provided Barnard with anything.

Case 8:08-cv-02446-JDW-TBM   Document 243   Filed 11/29/10   Page 10 of 18 PageID 10124

During the continued deposition of Dr. Adams on November 5, 2010, Dr. Adams testified that Barnard had to look to Mr. Kennedy for any information on the "Cost Model" as it was Mr. Kennedy that would be doing the necessary calculations to determine the past loss of use damages. Deposition of Dr. Alison Adams dated November 5, 2010, Vol. I, pages 101-103, lines (Relevant portions attached hereto as Exhibit "J"). However, Mr. Kennedy testified that in order to quantify the past loss of use damages he would need to "...better understand Dr. Adams testimony of how--how it is she derived the volume of water that was not captured during fiscal '08 and fiscal '09 and--and the basis for that, and I have not been able to understand that fully yet." Kennedy Deposition dated October 22, 2010, Vol. 4, pages 497, lines 15 through 19 (Relevant portions attached hereto as Exhibit "H".)

Due to this "pass the buck" style of damage disclosures by TBW, TBW still has not disclosed, and Barnard still does not know, the amount of damages claimed by TBW for past loss of use, much less any of the elements that support the claim. TBW is the only entity that possesses the necessary information to prepare the past loss of use claims and conversely the information necessary for Barnard to defend against these claims. Barnard cannot defend against a claim which TBW cannot articulate.

## II.    ARGUMENT

### A.    Introduction

Rule 26 requires a plaintiff to include in its initial disclosures "a computation of each category of damages claimed" and to produce all non-privilege documents "on which each computation is based." Fed.R.Civ.P. 26(a)(1)(A)(iii). The purpose of the Rule 26 disclosures is to "accelerate the exchange of basic information that is needed in most cases to prepare for trial or make an informed decision about settlement." *City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220-21 (N.D. Cal. 2003) (quotations and citations omitted). This

information also allows the parties to prepare for trial and assist in focusing and prioritizing their organization of discovery. *Id.* Without such information, each defendant cannot understand the contours of its potential exposure and make informed decisions as to settlement and discovery. *Id; See also, Dunstan v. Wal-Mart Stores East, L.P.*, 2008 WL 2025313, 2 (M.D.Fla.) (M.D.Fla.,2008) ("the overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result.") If a party fails to disclose or timely supplement the Rule 26 disclosures, the Court may impose sanctions under Rule 37(c)(1) (failure to provide information required by Rule 26 prohibits party from using information at hearing or trial unless failure was substantially justified or is harmless).

TBW's Second Amended Initial Disclosures, filed on October 20, 2010, is too little, too late and should not be allowed to stand as it imposes extreme prejudice upon Barnard. There is no justification for TBW's failure to timely disclose its loss of use damages; then once disclosed, to totally change course and present a brand new theory of recovery. TBW as a supplier of water knows its costs. TBW's inability to quantify its damages for loss of use of water is not justifiable or harmless. The fact that TBW still has not disclosed its past loss of use damages is remarkable.

Barnard relied on TBW's late filed Amended Initial Disclosures, filed on June 18, 2010 (over 16 months after TBW initiated this litigation) when Barnard commissioned the report of Dr. Wade and prepared for the initial depositions of Mr. Kennedy and Dr. Adams. Barnard was entitled to rely on TBW's "Revenue Model" damage theory when Barnard prepared its defense to TBW's loss of use claim. Additionally, Barnard and the other defendants structured their discovery around TBW's Amended Initial Disclosures containing the "Revenue Model". TBW had an obligation, both under the Federal Rules of Civil Procedure and for the integrity of the

judicial process, to present it's loss of use claim in a manner and at a time for which Barnard could properly prepare a defense. TBW's derogation of this obligation should not be tolerated.

TBW's subsequent late filing on October 20, 2010 of another Amended Disclosure of a "Cost Model" theory was nothing more than a blatant attempt by TBW to undermine Barnard's defense and the report Dr. Wade prepared concluding that TBW was entitled to $0 on TBW's "Revenue Model" claims. Additionally, TBW's change in theories just two months before the discovery cut-off date does not afford Barnard sufficient time to investigate the new claims under the "Cost Model" or even to determine what additional discovery is even necessary. Mr. Kennedy, TBW's corporate representative on damages, confirmed that Barnard's defense as presented by the Dr. Wade report was the impetus for TBW's abandonment of TBW's original theory of loss of use damages. *See* Kennedy Deposition, Exhibit "H" pages, 371-72, 488-89, and 492.

The timing of TBW's Second Amended Initial Disclosure creates an extreme prejudice restricting Barnard's ability to properly respond to TBW's new claims. This prejudice is compounded by the fact that at the continued depositions of Mr. Kennedy and Dr. Adams neither had finalized any calculations, elements, factors, or amounts as to the alleged past loss of use damages under the newly formed "Cost Model."[6] TBW's claims are highly technical, require highly specialized expert testimony, and may require additional discovery in order to formulate a proper defense.

This delay is most egregious considering the very reason for TBW's existence was to create a unified strategy to supply water to the Tampa Bay Region. TBW is a water supplier. TBW knows exactly what it costs to produce its water, knows exactly the price at which it sells water, and should know the alleged damages the loss of the Reservoir would cause. There is no

---

[6] As cited herein, at the continued deposition of Mr. Kennedy, Mr. Kennedy indicated that TBW's damage claim for future loss of use damages was now $20 million.

12

reason that TBW could not, and did not, disclose claimed damages for the loss of use at the beginning of this litigation and certainly by the time of its Amended Initial Disclosure on June 18, 2010. For TBW to continue to delay and alter its theories of damages as to the loss of use is not tolerable. Having failed, without justification, to disclose any details regarding its claim for loss of use of water and then having abandoned a theory once disclosure was finally made and adopting another theory after Barnard had presented its defense on the loss of use claim, TBW is precluded under Rule 37 from presenting evidence of alleged damages stemming from the alleged loss of use of water.

### B. This Court has the Discretion to Sanction TBW Under Rule 37(c)

If a party fails to disclose or timely supplement the information required by Rule 26, the Court may impose sanctions under Rule 37(c)(1). These include the automatic sanction of preclusion of evidence unless the failure to disclose or timely supplement was "substantially justified or harmless." Fed.R.Civ.P. 37(c)(1) ("party is not allowed to use that information…to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless.") It is TBW's burden to establish that the failure to disclose was substantially justified or harmless. *Singletary v. Stops, Inc.* 2010 WL 3517039, 8 (M.D.Fla.) (M.D.Fla.,2010)

When disclosure occurs late enough to cause prejudice, preclusion is appropriate. *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir.) 1997) (The issue is not whether [defendants] eventually obtained the information they needed, or whether plaintiffs are now willing to provide it, but whether plaintiffs' repeated failure to provide documents and information in a timely fashion prejudiced the ability of [defendants] to prepare their case for trial"). In *SPX Corp. v. Bartec USA,* LLC, 574 F. Supp. 2d 748, 755-58 (E.D. Mich. 2008) the trial court upheld a magistrate's order precluding evidence that was disclosed two months prior to the close of discovery. In *Bartec* the plaintiff had a "substantial opportunity" to conduct discovery after the

disclosure was made. Despite this, the court upheld the preclusion of evidence because the information was known to the defendant for nearly a year prior to disclosure and because the plaintiff "plainly was disadvantaged by the late disclosures." *Id.*

Here, TBW as the supplier of water, knows its costs (and/or revenues) and should have been able to calculate its damages under either the "Revenue" or "Cost" Models at the outset of this litigation. Because TBW had the information available to calculate its damages and chose not to do so, this Court should preclude TBW from offering this evidence. *Bartec,* 574 F. Supp. 755-758; *See also, Goodman-Gable-Gould Co. v. Tiara Condominium Ass'n., Inc.,* 595 F.3d 1203 (11th Cir. 2010)(Not an abuse of discretion to excluding evidence on new theory of damages where party failed to supplement its initial disclosures."); *United States v. Certain Real Property Located at Route 1, Bryant Alabama,* 126 F.3d 1314 (11th Cir. 1997). These sanctions are intended to penalize the party which has attempted to offend the fairness of the proceeding, *Wouters v. Martin County, Florida,* 9 F.3d 924, 933 (11th Cir. 1993), and to prevent unfair prejudice to the litigants and ensure the integrity of the judicial process. *Graton v. Great Am. Commc'n,* 178 F.3d 1373, 1374 (11th Cir. 1999); *Otero v. United States,* 2006 WL 1232821 (M.D. Fla. 2006). TBW's actions in abandoning its "Revenue Model" and inventing a "Cost Model" to respond to Dr. Wade at this late stage of the judicial proceeding should not be permitted. That TBW still has not disclosed the amount of the past loss of use claims is remarkable.

Precluding TBW from presenting evidence at trial on the claim for loss of use of water is within the Court's discretion. *Mee Industries v. Dow Chemical Co.,* 608 F.3d 1202, 1221-22 (11th Circuit 2010)(District court did not abuse its discretion in concluding disclosure was required under Rule 26 and failure to meet requirements of Rule 26 was not substantially justified or harmless where there were "belated effort[s] to introduce a new category of damages,

especially in light of its failure to ever present the required computation of alleged good will and the complexity of the financial calculations that would have required expert testimony.").

## C. Sanction of Precluding TBW From Presenting Evidence Supporting TBW's Loss of Use Claim is Appropriate

Precluding TBW from presenting evidence on the Claim for Loss of Use of Water is appropriate. The Court's discretion to impose sanctions on offending parties is not unbridled, but must be appropriate to the abuse committed. *Wouters v. Martin County, Florida*, 9 F.3d 924 (11th Cir. 1993).

Barnard was forced by TBW's tardiness to request from TBW whether TBW even intended to make a claim for loss of use of water. It was TBW's obligation under the Order and under Rule 26 to disclose TBW's loss of use claim by March 2010 with TBW's Initial Damage Disclosures. It was only after Barnard's counsel made inquiry of TBW that TBW acknowledged claims for loss of use. Not only was TBW grossly tardy in disclosing TBW's loss of use damages, when disclosure was made, the disclosure failed to provide any details concerning how TBW's loss of use damages were calculated. Once the Defendants (through deposition of TBW's corporate representatives on damages) learned the basis for TBW's loss of claim, Barnard immediately proceeded to prepare an appropriate response. Dr. Wade prepared a detailed report. TBW then changed the rules of the game when it revised its loss of use calculations in a clear attempt to undermine Barnard's defense and not allow Barnard the time necessary to conduct additional discovery. If Dr. Wade published a new report stating TBW's damages on the "Cost Model" were also $0, would TBW be allowed to serve yet another disclosure statement with another model of damages? The Rules of Civil Procedure are designed to prevent such gamesmanship and TBW's continued actions should not be permitted.

## IV.   CONCLUSION

TBW should be precluded, pursuant to Rule 37(c) of the Federal Rules of Civil Procedure, from presenting evidence at trial in support of any claim that TBW's damages include alleged future loss of use of water and past loss of use of water. Alternatively, TBW should be precluded from presenting evidence at trial in support of TBW's "Cost Model" of damages and limiting TBW's loss of use damages to the "Revenue Model" as contained in TBW's Initial Disclosure Statement.

DATED this ___29th___ day of November, 2010.

/s/ Michael R. Candes
Ben W. Subin
Florida Bar No. 982776
ben.subin@hklaw.com
Michael R. Candes
Florida Bar No. 0589381
michael.candes@hklaw.com
**Holland & Knight LLP**
200 South Orange Ave. Suite 2500
Orlando, Florida  32801
Telephone:  (407) 425-8500
Facsimile:   (407) 244-5288

**WATT, TIEDER, HOFFAR, FITZGERALD, LLP**
Richard Miles Stanislaw
mstanislaw@wthf.com
Admitted *Pro Hac Vice*
Christopher A. Wright
cwright@wthf.com
Admitted *Pro Hac Vice*
1215 Fourth Avenue, Suite 2210
Seattle, Washington 98161
Telephone:  (206) 204-5800
Facsimile:   (206) 204-0284

*Counsel for Defendants, Barnard Construction Company, Inc., and St. Paul Fire and Marine Insurance Company*

## **RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), the undersigned counsel certifies that it has conferred with counsel for TBW on multiple occasions on the issues raised herein. While a definite response has not yet been received from TBW's counsel, the undersigned anticipates that TBW will oppose this Motion. The undersigned will continue to confer with TBW's counsel and will file any amendments accordingly.

DATED this ___29th___ day of November, 2010.

/s/ Michael R. Candes

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November __29th__, 2010 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Richard A. Harrison, Esq.
David Foiziano, Esq.
Allen Dell, PA
202 South Rome Ave., Suite 100
Tampa, FL 33606

David Bresler, Esq.
Adam C. Shelton, Esq.
Banker Lopez Gassler, P.A.
501 1st Avenue North, Suite 900
Tampa, FL 33701

Timothy D. Woodward, Esq.
James K. Hickman, Esq.
Forizs & Dogali, P.L.
4301 Anchor Plaza Parkway, Suite 300
Tampa, FL 33634

Wayne B. Mason, Esq.
Kurt Meaders, Esq.
Sedgwick, Detert, Moran & Arnold
1717 Main Street, Suite 5400
Dallas, TX 75201-7367

Stephen William Pickert, Esq.
Carlton D. Miller, Esq.
Anthony R. Kovalcik, Esq.
Moye, O'Brien, O'Rourke, Pickert & Dillon, LLP
800 South Orlando Avenue
Maitland, FL 32751

I FURTHER CERTIFY that I mailed the forgoing document and the notice of electronic filing by first-class mail to the following

Doran Matzke, Esq.
Arcadis U.S., Inc.
630 Plaza Drive, Suite 100
Highlands Ranch, CO 80129

/s/ Michael R. Candes
Michael R. Candes

# 9867918_v2