# ATTACHMENT 8

```
                     UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
                             TAMPA DIVISION


    TAMPA BAY WATER,
    A Regional Water Supply
    Authority,

              Plaintiff,     CASE NO.:  8:08-CV-2446-T27-TBM

    vs.

    HDR ENGINEERING, INC., a
    Nebraska corporation,
    CONSTRUCTION DYNAMICS
    GROUP, INC., a Maryland
    corporation,
    BARNARD CONSTRUCTION
    COMPANY, INC., a Montana
    corporation,
    ST. PAUL FIRE AND MARINE
    INSURANCE COMPANY, a
    Minnesota corporation,

              Defendants.
    _____/
    BARNARD CONSTRUCTION COMPANY, INC.,
    a Montana corporation,

              Third Party Plaintiff,

    vs.


    MCDONALD CONSTRUCTION CORPORATION,
    a Federal corporation,

              Third Party Defendant.
    _____/

                         VOLUME III OF IV
                         (Pages 290 - 415)

                    VIDEOTAPED DEPOSITION OF
                      JONATHAN KENNEDY, P.E.
```

**ORIGINAL**

ORANGE REPORTING   800.275.7991

Exhibit "H"

```
 1    * * * * * * * * * * * * * * * * * * * * * * * * * * *

 2

 3                          VOLUME III OF IV
                            (Pages 290 - 415)
 4

 5    VIDEOTAPED
      DEPOSITION OF:       JONATHAN KENNEDY, P.E.
 6
      TAKEN BY:            The Defendant, Barnard Construction
 7                         Company

 8    DATE TAKEN:          October 22, 2010

 9    TIME:                9:05 a.m. - 5:05 p.m.

10    PLACE:               Allen Dell, P.A.
                           202 South Rome Avenue
11                         Suite 100
                           Tampa, Florida  33604
12
      REPORTED BY:         Tonya Hornsby-Magee, Registered
13                         Professional Reporter and Notary
                           Public, State of Florida at Large

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 8:08-cv-02446-JDW-TBM   Document 243-8   Filed 11/29/10   Page 4 of 17 PageID 10181

371

```
 1   number to use.
 2        Q.   The same is true with respect to the future
 3   lost/diminished use damages claims under Roman numeral V
 4   B, that now that you have the Wade report, you don't
 5   know if the 41 million dollars is the right amount of
 6   damages to be claiming or not, true?
 7        A.   I agree, I don't know if it is or not.
 8        Q.   And you have to do a cost model to calculate
 9   possible alternative damages for future lost or
10   diminished use, correct?
11        A.   That's correct.
12        Q.   And you haven't prepared that cost model yet,
13   have you?
14        A.   I have, and you have it.
15        Q.   Okay.  So -- so your work with respect to V(B)
16   is completed?
17        A.   It is.
18        Q.   Okay.  So is Tampa Bay Water claiming 41 to
19   48 million dollars from a future lost or diminished use
20   or are they claiming 20 million dollars?
21        A.   It's claiming 20 million dollars.
22        Q.   So we can strike out the 40 to 48 million
23   dollars and -- and move forward on the agreement that
24   Tampa Bay Water's damages for future lost or diminished
25   use have been reduced to 20 million dollars; is that
```

```
 1  correct?
 2       A.   Yes.
 3            MR. STANISLAW:  Is there another copy of this
 4  that can be marked?  Is this yours?
 5            MR. BRESLER:  That's an extra one.
 6            MR. HARRISON:  You want to mark his?
 7            (Exhibit Number 668 was marked for
 8  identification.)
 9  BY MR. STANISLAW:
10       Q.   Okay.  Let me start by asking you -- the
11  41 million dollars that was formerly Tampa Bay Water's
12  damage claim was based on 15.5 to 18 billion gallons of
13  available water.  Do you see that?
14       A.   Yes.
15       Q.   What amount of water is now 20 million dollars
16  that is now Tampa Bay Water's claim based on?
17       A.   Can we turn to page three of Exhibit 668.
18  This is a table that was prepared by Dr. Adams and --
19       Q.   All -- all I'm asking you is:  What is the
20  quantity of water on which the 20 million dollars is
21  based?
22       A.   We're going to have to run a calculation to
23  get a total volume.  It is eight million gallons a day
24  for 24 months and five million gallons a day for 12
25  months.
```

```
 1                UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
 2                        TAMPA DIVISION

 3   TAMPA BAY WATER,
     A Regional Water Supply
 4   Authority,

 5            Plaintiff,      CASE NO.:  8:08-CV-2446-T27-TBM

 6   vs.

 7   HDR ENGINEERING, INC., a
     Nebraska corporation,
 8   CONSTRUCTION DYNAMICS
     GROUP, INC., a Maryland
 9   corporation,
     BARNARD CONSTRUCTION
10   COMPANY, INC., a Montana
     corporation,
11   ST. PAUL FIRE AND MARINE
     INSURANCE COMPANY, a
12   Minnesota corporation,

13            Defendants.
     _____/
14   BARNARD CONSTRUCTION COMPANY, INC.,
     a Montana corporation,
15
              Third Party Plaintiff,
16
     vs.
17

18   MCDONALD CONSTRUCTION CORPORATION,
     a Federal corporation,
19
              Third Party Defendant.
20   _____/

21              VOLUME IV OF IV
                (Pages 416 - 561)
22
              VIDEOTAPED DEPOSITION OF
23              JONATHAN KENNEDY, P.E.

24                                          ORIGINAL

25
```

```
 1   * * * * * * * * * * * * * * * * * * * * * * * * *
 2
 3                         VOLUME IV OF IV
                          (Pages 416 - 561)
 4
 5   VIDEOTAPED
     DEPOSITION OF:       JONATHAN KENNEDY, P.E.
 6
     TAKEN BY:            The Defendant, Barnard Construction
 7                        Company
 8   DATE TAKEN:          October 22, 2010
 9   TIME:                9:05 a.m. - 5:05 p.m.
10   PLACE:               Allen Dell, P.A.
                          202 South Rome Avenue
11                        Suite 100
                          Tampa, Florida  33604
12
     REPORTED BY:         Tonya Hornsby-Magee, Registered
13                        Professional Reporter and Notary
                          Public, State of Florida at Large
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1  report, didn't it?
 2          MR. HARRISON:  Object to the form.
 3      A.  After I skimmed it, yes, it did.
 4      Q.  Okay.  And tell me why you changed Tampa Bay
 5  Water's claim for damages for lost future use from
 6  approximately 40 million dollars to approximately
 7  20 million dollars after reading Mr. Wade's report.
 8          MR. HARRISON:  Object to the form.
 9      A.  I wanted to go ahead and use a cost model
10  regardless of what the number was going to be from the
11  cost model because I think the cost model more
12  accurately reflects, in my mind, the -- what Tampa Bay
13  Water has to prepare for in its budget in out years
14  based on scenarios.
15      Q.  Well, why didn't you use a cost model when you
16  first prepared the damage claim that resulted in your
17  40-million-dollar number?
18          MR. HARRISON:  Object to the form.
19      A.  Well, that was a revenue-based claim.  And I
20  think there is -- I think there is an argument that has
21  some merit to it regarding a -- a not profit agency that
22  is going to have to meet its revenue requirements
23  regardless of which source.
24      Q.  Well, I don't think you answered my question.
25  Why -- why did you abandon the revenue model after you
```

1  read the Wade report and adopt a cost model to compute
2  Tampa Bay Water's damages for lost future use of the
3  reservoir?
4        MR. HARRISON: Object to the form.
5   A.  I think the cost model more accurately
6  reflects what Tampa Bay Water will incur.
7   Q.  Why didn't you use the cost model in the first
8  place, if that's a more accurate model?
9        MR. HARRISON: Object to the form.
10  A.  I don't know.
11  Q.  And for Tampa Bay Water's claim for damages
12  for lost use of the reservoir during 2005 and 2006, have
13  you made a determination to change that or are you still
14  playing with the numbers to see which is the best way to
15  go?
16       MR. HARRISON: Object to the form.
17  A.  Please reask the question.
18  Q.  In Tampa Bay Water's Amended Rule 26
19  Disclosures that were served two days ago, it says that
20  the damages for past lost/diminished use for the period
21  of March '08 to June '09 is going to be either
22  20 million dollars based on a revenue model or TBD based
23  on a cost model. Do you see that?
24       MR. HARRISON: It's in another exhibit.
25       THE DEPONENT: Sorry. 644.

```
 1            MR. HARRISON:  656.
 2       A.   Okay.  Please.
 3       Q.   Tampa Bay Water's Amended Rule 26 Disclosures,
 4  that were served two days ago, says in Roman numeral V
 5  A, that the past lost/diminished use claim is going to
 6  be either 20 million dollars based on the revenue model
 7  or a TBD amount, to be determined, on a cost model,
 8  correct?
 9       A.   That's correct.
10       Q.   If the cost model is the more accurate and
11  correct way to do the future lost damages, why wouldn't
12  the cost model also be the more accurate and correct way
13  to calculate the past lost or diminished use?
14            MR. HARRISON:  Object to the form.
15       A.   I think it can be, but I have to further
16  investigate what part of the desal production during the
17  time period of those 15 months was related to the
18  testing that we were doing to get it past its
19  performance tests as opposed to pumping of the desal
20  plant to meet our demands as our best faith effort
21  minimize our groundwater production fines from SWFWMD,
22  and I don't have that number yet.
23       Q.   So you're still playing with the numbers to
24  determine whether or not the cost model for past lost
25  use or the revenue model for past lost use is more
```

1  favorable to Tampa Bay Water, correct?

2     MR. HARRISON:  Object to the form.

3  A.  Not correct.

4  Q.  What's incorrect about that?

5  A.  Your statement that it is most favorable to
6  Tampa Bay Water.

7  Q.  Well, aren't you trying to come up with the
8  most accurate damage calculation?

9  A.  Yes.

10 Q.  Wouldn't the most accurate damage calculation
11 be the one that's most favorable to Tampa Bay Water?

12 A.  No.

13 Q.  Well, why not?

14 A.  Because it should be accurate and be able to
15 be examined and stamped.  That's what's important.

16 Q.  Well, it wouldn't be favorable for Tampa Bay
17 Water to move forward with an inaccurate model for
18 determining their damages, would it?

19 A.  That's correct.

20 Q.  And so the cost model is the more accurate
21 model and therefore the most favorable model to Tampa
22 Bay Water, correct?

23    MR. HARRISON:  Object to the form.

24 A.  I misunderstood your use of the word
25 "favorable."  I should have asked for a clarification of

1  that.

2  In the case of Roman numeral V, item B, in my
3  opinion the cost model is or the more accurate portrayal
4  of costs Tampa Bay Water will incur during the two-year
5  remediation period. I have not yet made that
6  determination on Roman numeral V, item A.

7  Q. When do you expect to make that determination?

8  A. I'm going to need another week of time to
9  review, having only had the Wade report since last
10 Wednesday evening.

11 Q. Well, why does -- why do you need some other
12 side's expert report for you to calculate what the
13 proper damages for Tampa Bay Water should be?

14 MR. HARRISON: Object to the form.

15 A. Because I want to make sure that I've taken
16 advantage of considering the items that are in the Wade
17 report. And if those things cause us to take a look at
18 how it is we've changed -- we need to make a change,
19 then we should be making a change.

20 Q. And did the items in the Wade report cause
21 Tampa Bay Water to make a change in how they calculated
22 Tampa Bay Water's damages for future lost or diminished
23 use of the reservoir?

24 MR. HARRISON: Object to the form.

25 A. Yes.

1  MR. STANISLAW: Okay. That's all I have.
2  CROSS-EXAMINATION
3  BY MR. BRESLER:
4  Q. Mr. Kennedy, do you recall yesterday and some
5  this morning you were asked questions about Barnard,
6  questions such as if there had been any problems at the
7  time of construction with Barnard's construction, that
8  you would have expected HDR, somebody to have notified
9  you that there was a problem? Do you recall that line
10 of questioning?
11 A. I do.
12 Q. And the line of questioning along the lines
13 that at no time has either HDR or Black & Veatch ever
14 told you that the pore pressure was caused as a result
15 of Barnard's work, do you recall those kinds of
16 questions and discussions?
17 MR. MEADERS: Objection to form.
18 MR. HARRISON: Object to the form.
19 A. I -- I do.
20 Q. Okay. When you were talking about Barnard's
21 work, I assume you were talking about the work
22 encompassed within Barnard's contract with Tampa Bay
23 Water?
24 A. Yes.
25 Q. And that would include Barnard's

Case 8:08-cv-02446-JDW-TBM   Document 243-8   Filed 11/29/10   Page 14 of 17 PageID 10191

494

1  subcontractors also. Whether Barnard actually did the
2  work or a subcontractor did the work wouldn't make any
3  difference, would it?
4      A.  That's correct.
5      Q.  Okay. Do you know who McDonald is?
6      A.  Yes.
7      Q.  Okay. So far though, the work that was
8  actually done by McDonald, we could have substituted the
9  name McDonald in place of Barnard, your answer would be
10 the same, wouldn't it?
11     A.  Yes.
12         MR. BRESLER:  That's all I have.
13         MR. MEADERS:  Do you have anything?
14         MR. MILLER:  No.
15         MR. MEADERS:  Richard, certainly with the time
16 remaining I'm not going to be able get done with
17 the questioning that I would have for Mr. Kennedy.
18 I will move forward and see how much I can get
19 done.
20         MR. STANISLAW:  Can I interrupt you for just a
21 moment, Kurt?
22         MR. MEADERS:  Yes, you may.
23         MR. STANISLAW:  I neglected to state on the
24 record that Barnard is reserving the right to
25 conduct future examination of this witness with

1  respect to his continually revising damage claims
2  that are still not complete at this point.
3      MR. BRESLER:  Join.
4      MR. MEADERS:  And I'm going to make the same
5  statement on the record, that I will, as well,
6  reserve my questions regarding the moving damage
7  claims in this case that with respect to the -- the
8  issues that were just presented to us by a
9  disclosure a couple days ago, but I'll move forward
10 and let's see how much we can get done at the
11 present time.
12     MR. MILLER:  I'm going to join, just in case.
13                  CROSS-EXAMINATION
14 BY MR. MEADERS:
15     Q.   Mr. Kennedy, I want to talk to you a little
16 more about this disclosure that was just served in the
17 revenue model versus the cost model because I just --
18 I'm -- I don't understand why, with respect to the
19 future lost use that you're claiming that you state that
20 a cost model is more appropriate, but for a past damage
21 claim a cost model is -- is not appropriate.
22          By virtue of the fact that you have put in the
23 disclosure and you -- you did not sign the disclosure
24 that was presented to the parties just a few days ago,
25 did you?

```
 1        A.    No.
 2        Q.    Were you asked to review it before it was
 3   provided to counsel?
 4        A.    Yes.
 5        Q.    Did you review it before it was provided to
 6   counsel?
 7        A.    I did.
 8        Q.    So when you change the future lost or
 9   diminished use, Roman numeral V B number, to a
10   20-million-dollar future claim, was that based on
11   calculations that you had done?
12        A.    Yes.
13        Q.    It's based on the exhibits that have been
14   provided, one of them being Exhibit 668, correct?
15        A.    Yes.  All of them in exhibit -- yes, all of
16   V(B) is contained in Exhibit 668.
17        Q.    I understand you're still looking at -- at
18   Mr. Wade's report to determine what within his report
19   you may adopt or you may not adopt, but can you explain
20   to me why you have changed your future lost damages,
21   that those should be determined on a cost-model basis,
22   but you're still reserving whether or not the
23   appropriate calculation is revenue based or cost-model
24   based for prior claims of lost water use?
25              MR. HARRISON:  Object to the form.
```

1   A.   I need to fully understand during fiscal '09,
2   the time in which the reservoir was on the fill
3   limitation, and -- and that might have included part of
4   fiscal '08, but I need to better fully understand how
5   much we were using the desal plant as a result of it
6   being used for other purposes versus how much of it was
7   being used to minimize our groundwater production.
8   Q.   I understand that that might be -- that may go
9   into the cost analysis. But the question I have is:
10  Why does it make a difference whether it is -- why does
11  that question, in your mind, make a difference whether
12  the correct measure of damages is revenue based or cost
13  based?
14  A.   Because I also need to -- in addition to what
15  I've just related to you, I need to better understand
16  Dr. Adams' testimony of how -- how it is she derived the
17  volume of water that was not captured during fiscal '08
18  and fiscal '09 and the basis for that, and -- and I have
19  not been able to understand that fully yet.
20  Q.   Well --
21  A.   And that is taken up at some length in the
22  Wade report.
23  Q.   You would not think it would be fair in the
24  context of this case to ask the defendants to pay for
25  lost revenues from lost use of water if the cost basis