# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TAMPA BAY WATER,
A Regional Water Supply Authority

      Plaintiff,               CASE NO.:    8:08-cv-2446-T27-TBM

v.

HDR ENGINEERING, INC., et al.

      Defendants.
_____/

## TAMPA BAY WATER'S SECOND AMENDED[1] RESPONSE TO BARNARD CONSTRUCTION COMPANY, INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)

COMES NOW, Plaintiff, Tampa Bay Water, A Regional Water Supply Authority ("TBW"), by and through its undersigned counsel, and responds to Barnard Construction Company, Inc.'s ("Barnard") Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c) (Doc. 243)[2] and in response thereto, TBW states as follows:

## I.      Summary

TBW did not fail to disclose information within the meaning of Fed. R. Civ. P. 26(a) or (e), so there is no basis for exclusion of evidence under Fed. R. Civ. P. 37(c)(1). TBW disclosed the potential loss of use claims in the original Complaint, the Amended Complaint, and in and in its initial Rule 26(a) disclosures, and has supplemented those disclosures in

---

[1] Amending Page 18, fourth and last sentence of ¶2 to read "will not" instead of "will" and other typographical errors.
[2] Joinders to Barnard's motion have been filed by HDR Engineering, Inc. (Doc. 245) and McDonald Construction Corporation (Doc. 246). HDR's joinder parrots the arguments made by Barnard in the motion and present no new or different facts or legal argument. McDonald's single-sentence joinder can be fairly characterized as perfunctory. In any event, this response is intended to address Barnard's original motion as well as the joinders filed by HDR and McDonald.

accordance with Rule 26(e).

Even if TBW's disclosure of its loss of use calculations was delayed, any such delay was harmless and exclusion of evidence under Rule 37(c)(1) is not authorized.  Unlike the egregious examples in the cases cited by Barnard, TBW is not seeking to raise a whole new category of previously undisclosed damages on the eve of trial – the trial of this case is still more than seven months away.  TBW is not seeking to substantially increase the amount of its damages claims at the last minute – indeed, it is substantially *reducing* the amounts of its loss of use claims.  Barnard was not prejudiced, as it could not possibly have been surprised by the fact that TBW was asserting claims for past and future loss of use.  Barnard was able to secure an expert, have its expert prepare a report, depose TBW's witnesses and have its expert present during the deposition of TBW's key witness on the topic.  Barnard was not prejudiced by TBW's re-calculation of its loss of use damages using the "cost model" advanced by Barnard's expert as opposed to the "revenue model" originally employed.

Even if TBW's disclosure of its loss of use calculations was delayed and the Court finds that such delay was not harmless, any prejudice to Barnard can readily be cured.  All documents supporting TBW's loss of use calculations have been produced.  Any alleged prejudice to Barnard can be cured by allowing Barnard to further depose TBW's damages witness, as Barnard itself has previously recognized, and by allowing Barnard's expert to supplement his report to the extent necessary.  TBW has offered to allow Barnard to further depose its damages witness before the end of January and to allow Barnard's expert to supplement his report within thirty days thereafter, if necessary, but Barnard has declined that offer.  If the steps required to cure any alleged prejudice to Barnard are such that the

Court believes that some form of sanctions under Rule 37 are appropriate, then the Court has the discretion to impose lesser sanctions under Rule 37(c)(1).

## II.      Chronology of TBW's Damages Disclosures and Related Discovery

As Barnard acknowledges, TBW's Complaint, filed December 10, 2008, explicitly pleads damages for loss of use of the regional reservoir. Thus, Barnard and the other defendants were on immediate notice of TBW's intention to seek damages for the lost use of this public facility.

TBW's initial Rule 26(a) disclosures were timely served on March 9, 2009, in accordance with the terms of the Case Management and Scheduling Order (Doc. 109). See Exhibit "A" to Barnard's Motion (Doc. 243-1) Those initial disclosures identified five categories of damages: (a) Investigation, Monitoring and Short Term repairs; (b) Long Term Remediation and Repairs; (c) Litigation Expenses; (d) Fines and Penalties Imposed by Permitting or Regulatory Authorities; and (e) Lost or Diminished Use of the Regional Reservoir. For the first category, TBW identified and provided specific dollar amount calculations for thirteen (13) sub-categories of damages related to the then still-ongoing investigation, monitoring and short term repairs of the facility totaling approximately $8,782,810. The initial damages disclosure was accompanied by almost 1600 pages of supporting documentation.[3]

With respect to the remaining categories, TBW indicated that its damages were "not yet determined." The largest single element of TBW's claim, the long term repair and remediation of the regional reservoir, had at that time not even been authorized by TBW's

---

[3] TBW-ID-00001-01593.

Board of Directors. It was not until June 15, 2009, that TBW's Board of Directors adopted a resolution directing the staff to procure a long term repair of the facility, with the preliminary understanding that there would likely be a two-year remediation period during which the reservoir would be out of service. Ex. 1.  TBW then embarked on a design-build procurement for the remediation of the facility – a procurement process that is still ongoing. At an industry event held on April 8, 2010, for interested prospective bidders and participants, TBW presented a modified procurement schedule based on remediation construction starting in September of 2012. In short, although TBW had a preliminary understanding that the remediation work would likely involve a two-year construction period, it was not until the full development of the procurement process that it could reliably project when that two-year outage of the facility would likely occur.

As to the claim for past loss of use of the reservoir, TBW in March of 2009 was still actively engaged in the short term investigation, repair and monitoring program intended to allow the facility to be operated on an interim basis. That process was not concluded until June of 2009. Thus, the period of the lost use of the reservoir was not yet concluded, nor the impacts of that lost use ascertained, when TBW made its initial Rule 26 damages disclosures.

Discovery in this case got off to a turbulent start with an unusually contentious case management and schedule process that did not produce the first case management and scheduling order until August 21, 2009.  (Doc. 109)  Depositions were contemplated to start in August 2009, but in fact did not commence until much later.

Barnard served three sets of interrogatories to TBW, in June, August and September of 2009.  Ex. 2, 3, 4.  None of those interrogatories inquired as to the damages claimed by

4

TBW.   HDR served one set of interrogatories in August of 2009.   Ex. 5.   HDR's interrogatories did not address the issue of TBW's damages claims.

On April 19, 2010, CDG served a deposition notice scheduling TBW's employee, Jon Kennedy, for deposition to be held October 20-22, 2010.  The notice was specifically for "Jon Kennedy, to be followed by the Corporate Representative(s) of Tampa Bay Water regarding its claimed damages."  Ex. 6.  The other defendants cross-noticed.  Thus, all defendants knew that TBW's representative as to damages was not going to be deposed until late October of 2010, less than two months before the discovery cutoff date.  On May 6, 2010, HDR noticed a TBW corporate representative deposition to be conducted on June 10, 2010.  The notice was for four subject matters, none of which was TBW's damages.  Ex. 7.

By email dated May 17, 2010, TBW's counsel advised that Mr. Kennedy and Dr. Alison Adams would be the corporate representatives for the June depositions and specified the matters on which they would testify.  Ex. 8.  The next day, TBW's counsel confirmed that TBW had not yet designated any corporate representative for the October 20-22 deposition on damages, but would do so in advance of that deposition.  Ex. 9.  Mr. Kennedy was later designated as the corporate representative on the issue of damages.

TBW served its amended Rule 26(a) damages disclosures on June 18, 2010. At that time, there was still six months remaining before the discovery cutoff in this case. See Exhibit "E" to Barnard's Motion (Doc. 243-5). In that amended disclosure, TBW updated and corrected a number of the amounts reflected in the category of "Investigation, Monitoring and Short Term Repairs" and provided damages amounts for all of the categories that had previously been indicated as "not yet determined" in the initial disclosure.

For the category of "Long Term Remediation and Repairs" the damages amounts were now more detailed and included six sub-categories: (a) repair costs in the range of $92,580,628 - $145,637,726 based on the two potential remediation designs prepared and cost-estimated by TBW's experts and disclosed in their expert reports; (b) prejudgment interest in the range of $44,901,605 - $56,472,752 calculated as a function of the repair cost; (c) an erroneously (duplicative) item for investigation, monitoring and short term repairs that was eventually corrected; (d) permitting costs for the long term repairs in the amount of $392,918; (e) procurement costs for the long term repairs in the amount of $2,241,288; and (f) design costs for the long term repairs in the amount of $10,418,327. Omitting the duplicative item, the total damages related to the long term repair and remediation of the regional reservoir were estimated and disclosed in June 2010 to be in the range of $150,534,766 to $215,163,011.

For the category of "Lost or Diminished Use of the Regional Reservoir," TBW broke out the damages disclosure into separate sub-categories. For "Past Lost/Diminished Use" during the period from March 2008 through June 2009. That amount was $20,014,320 and the amended disclosure reflects that this sum was calculated "based on 8.9 billion gallons of available water lost @ WY [Water Year] 2008 Uniform Rate."[4] For "Future Lost/Diminished Use," the amended disclosure indicated that the calculation presumed a two-year remediation period and reflected damages calculated in the range of $41,473,350 to $48,162,600 based on the loss of between 15.5–18 million gallons of available water to be

_____

[4] The "Uniform Rate" is the wholesale rate that TBW charges its six member governments for the potable water it supplies. The Uniform Rate is published, among other places, in TBW's annual budget and financial statements and is a matter of public record that is readily available from the agency's website or other basic budget documents.

lost during the anticipated construction period valued using the projected WY 2012 Uniform rate.[5]

TBW then further supplemented its damages disclosures, as set out in detail in the next section, in response to the report of Barnard's water economist.  These additional supplemental disclosures *reduced* TBW's total loss of use claims (past and future) by more than $34 million.

## III.    Memorandum of Law

### A.  TBW complied with its obligations under Rule 26(a) and (e)

The initial disclosures required by Fed. R. Civ. P. 26(a)(1) include the disclosure of "a computation of each category of damages claimed" as well as the non-privileged documents or other evidentiary material "on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). The initial disclosures must be made "based on the information then reasonably available" to the disclosing party. Fed. R. Civ. P. 26(a)(1)(E). The rule also requires the disclosures to be supplemented or corrected "if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

The preliminary nature of such disclosures was noted in one of the cases cited in Barnard's own motion, *City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219 (N.D. Cal. 2003). In that case, the court noted that a party's initial damages disclosure

---

[5] TBW projects the Uniform Rate several years into the future in each annual budget cycle.

under Rule 26(a) "is merely a preliminary assessment and is subject to revision." *Tutor-Saliba*, 218 F.R.D. at 220. The court observed further that: "As discovery proceeds, Plaintiffs may, indeed must, supplement their initial damages disclosure to reflect the information obtained through discovery. So long as Plaintiffs timely fulfill their disclosure obligations, they will not be prejudiced for making initial disclosures that are revised." *Tutor-Salida*, 218 F.R.D. at 222.

Barnard's motion complains generally about TBW's disclosure as to its loss of use damages claims, but it does not specifically allege, nor do any of the defendants assert, that TBW's initial Rule 26 damages disclosure was insufficient in this regard. TBW noted in its initial disclosure that the amount of damages for "Lost or Diminished Use of the Regional Reservoir" was not yet determined. Although the amounts of such damages were not then known, however, none of the defendants can contend that TBW's intention to seek damages for the lost use of the reservoir was not reflected in the original Complaint, the Amended Complaint, the initial damages disclosure and all amended disclosures as to damages.[6]

TBW's restricted use of the reservoir continued in effect until June of 2009 when, after completion of the short term repair program and review by the Florida Department of Environmental Protection ("FDEP"), TBW received permission from FDEP to utilize the facility to its full permitted capacity and drawdown rates in accordance with the permit

---

[6] As acknowledged by Barnard, both the original Complaint (Doc. 1) and the Amended Complaint (Doc. 125) clearly include in the *ad damnum* clauses a claim for damages for "loss of use." HDR in its joinder contends that this phrase is a "cryptic statement" that fails to provide "any information whatsoever as to what that term meant." (Doc. 245, pp. 1-2) TBW respectfully suggests that the concept of "loss of use" is well understood in the context of a construction case, and suggests further that HDR, the design engineer that worked on the project for more than a decade, would have no difficulty in understanding the potential ramifications of TBW's inability to utilize, or to utilize fully, the massive public water supply reservoir that HDR had designed. In any event, the more detailed language utilized in TBW's initial Rule 26 disclosures and in all subsequent disclosures more than fairly reflects that the damages contemplated are those arising or that would arise in the future from the inability of the owner, TBW, to utilize the facility for its intended purpose and/or to its full capacity.

issued by FDEP. See Ex. 10.  The full effects of that period of restricted use of the reservoir were then unknown.

By June of the next year, both the litigation and TBW's long-term remediation plans had progressed to the point where it was both reasonable and advisable for TBW to supplement its initial damages disclosures. Specifically, the first round of mediation had been scheduled to take place on June 22-23, the procurement process for the long-term repair of the reservoir had begun to take shape and certain estimates for elements of that process had been developed, and TBW's expert reports as to the estimated costs associated with the remediation of the reservoir had been delivered.

TBW served its amended Rule 26 damages disclosures on June 18, 2010. See Exhibit "E" to Barnard's Motion (Doc. 243-5) The amended disclosure included amounts of damages for all elements of its claim that had been characterized as "not yet determined" in the original disclosure. [7] For the "Lost or Diminished Use of the Regional Reservoir" TBW provided the detailed breakout of its claimed damages as described in Section II above. That is, it separated the categories of past lost or diminished use from the claim for future loss of use during the planned remediation. It specified the period during which the past lost or diminished use occurred and also indicated that the future loss of use would be for an anticipated two-year construction period while the reservoir was being repaired. Finally, it specified the quantity of available water lost or expected to be lost and indicated the basis

---

[7] The total of these other damages elements first disclosed in the amended disclosure (excluding the long-term repair cost estimates and an item in the amount of $7,321,656 that was erroneously included) ranges from $62,249,586 to $73,820,733 – an amount roughly equivalent to the total amount of loss of use damages claimed to which the defendants have objected.  The total if the prejudgment interest calculations are omitted is still $17,347,981 of additional damages – roughly on the order of the amount of the past loss of use damages claimed to which they have objected.

upon which the value of that lost water was calculated. This damages approach is generally referred to as a "revenue model" of damages, i.e., it determines the damages by a calculation of the revenue that would have been generated by the sale of water.

The amended disclosure was served several days in advance of the scheduled June mediation. One of the purposes of the Rule 26 disclosures is to provide the parties with information needed for the parties to make informed decisions concerning settlement negotiations or mediation. *See Dunstan v. Wal-Mart Stores East, L.P.*, 2008 WL 2025313 at *1 (M.D. Fla. May 9, 2008); *Tutor-Saliba*, 218 F.R.D. at 221. TBW, Barnard, McDonald, CDG and HDR, along with their respective insurers, adjusters and claims representatives, participated in a total of five days of often extremely intense mediation in June and August of 2010. Although the process was not successful (Doc. 203, 240), none of the parties contends that their ability to mediate or negotiate was in any way impaired or prejudiced by what Barnard now alleges was an untimely or inadequate disclosure by TBW of its damages for loss of use.

On or about October 8, 2010, Barnard served its expert disclosure and the written report of William W. Wade, Ph.D., a water economist. Dr. Wade's report was 125 pages long, including the various appendices, tables, calculations and other matter. Among other things, Dr. Wade opined that the revenue model was not an appropriate approach to the calculation of TBW's damages for loss of use of the reservoir. See Ex. 11.  Instead, according to Dr. Wade, the appropriate analysis would focus on the cost to TBW of securing or providing "replacement" water, i.e., using its other available sources of water to meet its supply obligations and then determining whether doing so resulted in any increased cost to

TBW. This is referred to as a "cost model" of damages.  TBW's counsel immediately furnished Dr. Wade's report to Mr. Kennedy for review. Mr. Kennedy promptly acknowledged that the "cost model" analysis would be the more appropriate measure of TBW's damages. At that juncture, TBW was obligated under Rule 26(e) to supplement or correct its damages disclosure. Mr. Kennedy set out immediately to do so in order to attempt to have his re-calculation of damages prepared in advance of the impending deposition for which he was the designated corporate representative on the topic of damages.

The second amended damages disclosure, served on October 20, 2010, re-calculated the future loss of use element of the claim using the cost model, with the result that TBW's damage claim was *reduced* by at least $21 million.[8] It did not yet reflect a re-calculation of the past loss of use damages using the cost model, but did reflect that such a re-calculation was underway by noting the original revenue model damages with the additional indication that the cost  model amount was "TBD," i.e., to be determined.

Barnard spent substantial time at Mr. Kennedy's deposition on October 21, 2010, examining Mr. Kennedy on the topic of the revised loss of use calculations and the supporting documents furnished by TBW. See Ex. 12 (Kennedy Dep. 10/21/10 pp. 365-414); Ex. 13 (Dep. Ex. 668); Ex. 14 (Kennedy Dep. 10/21/10 pp. 424-492) Barnard's inquiry also covered other cost of water calculations and related matters bearing on the topic of the cost model calculation of loss of use damages. Ex. 15 (Dep. Exs. 669, 670, 671) Barnard's counsel requested that TBW produce certain additional documentation in support of the cost based damage claim, including TBW's approved 2011 budget. The request for the approved

---

[8] The future loss of use claim calculated on the revenue model produced damages in the range of $41,473,350 to $48,162,600. The re-calculation using the cost model of damages produced a damages amount of $20,094,262.

budget appears on page 436 of Mr. Kennedy's deposition; at page 474 the transcript reflects that a copy was immediately furnished to counsel. Ex. 16 (Kennedy Dep. 10/21/10 pp. 436, 474)

McDonald's counsel asked Mr. Kennedy exactly six questions, none of which dealt with the subject matter of TBW's damages claims. Ex. 17 (Kennedy Dep. 10/21/10 pp.493-494) HDR then examined Mr. Kennedy and also covered the topic of TBW's loss of use damages. Ex. 18 (Kennedy Dep. 10/21/10 pp. 495-532) All of the defendants reserved the right to take further testimony from Mr. Kennedy as to the damages claims. Ex. 19 (Kennedy Dep. 10/21/10 pp. 173, 494-495) Mr. Kennedy candidly acknowledged that Dr. Wade's report caused him to re-evaluate TBW's damages approach and that, after such review, he believed that the "cost model" approach was a more accurate measure of damages. Ex. 20 (Kennedy Dep. 10/21/10 pp. 488-489, 492) Although TBW does not agree that the application of the cost model results in zero damages for future loss of use, as Dr. Wade contends, it does certainly reduce substantially the damages claimed by TBW in this case.[9]

Mr. Kennedy also candidly acknowledged that he had not been able to re-calculate the past lost of use damages using the cost model by the time of his deposition in October, but that he was in the process of doing so. Ex 21 (Kennedy Dep. 10/21/10 pp. 366-371; 490-492) That damages calculation was furnished after the completion of Mr. Kennedy's deposition in the form of TBW's third amended damages disclosure and supporting

---

[9] Mr. Kennedy stated unequivocally that TBW does not agree with Dr. Wade's conclusion that it suffered no damages, even utilizing the cost model approach to future loss of use. Ex. 22 (Kennedy Dep. 10/21/10 pp. 369-370) In summary, Dr. Wade opines that TBW can make up any lost supply by increased use of its less costly groundwater supplies, resulting in no damages, while TBW has determined that it can only make up for the unavailability of the reservoir during and immediately following the remediation work by use of its more costly desalinated water supply, resulting in increased costs and hence damages.

documentation. In the interim, Tampa Bay water also responded to HDR's first request for production for specific documents that were referenced during Mr. Kennedy's deposition (Ex. 23)[10] by furnishing over 900 additional pages of documents supporting the cost model damages calculations.

Barnard now seeks to punish TBW for its willingness to acknowledge that the cost model is the more accurate measure of its damages, even when doing so works to the financial detriment of TBW. TBW submits that its candid re-assessment of these substantial damages claims is fully in accordance with both the letter and the spirit of Rule 26 and is exactly the type of forthright and candid conduct that the rules and the Court seek to promote on the part of litigants.

### B. Even if disclosure of TBW's ultimate calculations of its loss of use damages was delayed, such delay was harmless and exclusion of that evidence is neither authorized or warranted under Rule 37(c)

Rule 37(c)(1) provides for certain sanctions in the event of a failure to make the disclosures required under Rule 26(a) or to supplement such disclosures under Rule 26(e). In the event of such a failure, "the party is not allowed to use that information . . . at a trial . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The rule provides, further, however, that the Court in its discretion may in such case order lesser sanctions instead of excluding the evidence.

Not surprisingly, Barnard seeks the severest sanction, exclusion of TBW's loss of use damages evidence, and cites in its motion a number of cases reflecting egregious failures of disclosure that do not at all compare to the facts here. Those issues will be addressed in

---

[10] TBW317036-TBW317970.

greater detail below. But even the authorities cited by Barnard's counsel against the hasty imposition of the severe sanction of exclusion of evidence. This balance was discussed in *City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219 (N.D. Cal. 2003), a case cited by Barnard. In *Tutor-Saliba*, the issue was also the sufficiency of the plaintiff's damages disclosures. The court noted that the severe sanction of exclusion should be reserved for the most extreme situations. *Tutor-Saliba*, 218 F.R.D. at 221.

In determining whether a failure to disclose or to supplement a disclosure is "substantially justified or is harmless," the Court considers the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Singletary v. Stops, Inc.*, 2010 WL 3517039 at *8 (M.D. Fla. Sept. 7, 2010); *Voter Verified, Inc. v. Premier Election Solutions, Inc.* 2010 WL 3123129 at *2 (M.D. Fla. Aug. 9, 2010). The burden of demonstrating that any failure to disclose or to supplement was harmless is on TBW, *Singletary*, supra, at *8, but evaluation of the foregoing factors in light of the applicable cases clearly leads to that conclusion in this matter.

On the first factor, Barnard cannot suggest in good conscience that is it surprised by the fact that TBW is seeking damages for the lost or diminished use of the regional reservoir. "Loss of use" is alleged in both the original Complaint and the Amended Complaint. It was identified as a category of damages in TBW's initial damages disclosure, even though the amount of such damages was not then determined. TBW's counsel expressly advised Barnard's counsel of such claim again in the email exchange included in Barnard's motion.

The claim was further clarified in TBW's amended disclosure served in June, which broke out the claim for past lost or diminished use from the claim for future loss of use and specified the relevant time periods for each aspect of the claim. In short, there has never been a moment since the commencement of this case that TBW's intention to seek such damages was not apparent. As was concluded by another judge of this District under similar circumstances, "Thus, the fact that Plaintiff is seeking [lost profits] cannot be a surprise to Defendant." *Pandora Jewelry, LLC v. Cappola Capital Corp.*, 2009 WL 2176068 (M.D. Fla. July 13, 2009)(failure to disclose was harmless where plaintiff had indicated that it was seeking lost profits in its complaint, interrogatory answers and pretrial statement).[11]

Finally, Barnard cannot be surprised by the fact that TBW intends to prove its loss of use case through its own employees, as opposed to an expert witness. TBW told Barnard's counsel this expressly in the May 21, 2010, email included as an exhibit to the Motion. TBW also designated Mr. Kennedy as its corporate representative on the subject of damages in response to Rule 30(b)(6) deposition notices served by the defendants. *Pandora Jewelry, LLC v. Cappola Capital Corp.*, 2009 WL 2176068 (M.D. Fla. July 13, 2009)(failure to disclose was harmless even though plaintiff's expert report did not address damages where

---

[11] *Mee Industries v. Dow Chemical Co.*, 608 F.3d 1202 (11th Cir. 2010), cited in Barnard's motion, is inapposite. In *Mee*, the circuit court affirmed the exclusion of the plaintiff's loss of goodwill damages where the plaintiff failed to include "loss of goodwill" as a category of damages in its initial disclosure and failed to disclose it as an element of its claim until its pretrial statement. TBW did include loss of use as a category of damages in the initial disclosures and supplemented those disclosures accordingly as the case developed. *Goodman-Gable-Gould Co. v. Tiara Condominium Association, Inc.*, 595 F.3d 1203 (11th Cir. 2010), also cited by Barnard, is equally distinguishable. In *Goodman*, the circuit court affirmed the exclusion of evidence of a new theory of liability (misrepresentation) and a new category of damages ("dry-out expenses") that the counterplaintiff sought to present for the first time at trial, having never disclosed either in its initial disclosure, any appropriate amendment or supplemental disclosure or its interrogatory answers. The circuit court in *Goodman* observed that "Tiara had a duty to supplement these answers if it would introduce evidence on the misrepresentation theory and dry-out expenses at trial." *Goodman*, 595 F.3d at 1211. This, of course, is precisely what TBW has done in this case: amend and supplement its disclosures so that it can present the evidence at trial.

damages were to be proved without expert testimony).

This is also not a case in which there has been a complete failure to provide information on TBW's loss of use claims. TBW has amended its initial disclosures more than once to provide more detailed calculations of its damages and to respond to the report of Barnard's economist when it determined that the cost model of damages was the more appropriate standard. *See, e.g.*, *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008)(reversing order imposing sanction of exclusion of expert witness for failure to disclose).  Nor is this an instance in which a plaintiff is attempting to raise a significant new damages claim at the last minute. In *American Realty Trust, Inc. v. Matisse Partners, LLC*, 2002 WL 1489543 (N.D. Tex. July 10, 2002), the court excluded evidence of a $30 million damages claim that had never been disclosed until after the discovery cutoff and shortly before trial in a case that had already been continued twice. Prior to this new claim, the damages claimed were on the order of $400,000. Here, TBW is not seeking to increase its damages claim at all – its adoption of a cost model approach *reduces* its loss of use claims by more than $34 million.

Even if TBW's loss of use claims "surprised" Barnard, such surprise can readily be addressed by allowing Barnard to depose Mr. Kennedy further on the subject of the loss of use claims as re-calculated under the cost model and the supporting documentation already furnished by TBW. *See Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 2010 WL 3123129 (M.D. Fla. Aug. 9, 2010)(any surprise caused by nondisclosure of witness can be cured by deposing witness). Barnard and the other parties appeared to agree that further examination of Mr. Kennedy would adequately address what they believed to be inadequate

16

disclosure of TBW's damages claims, as they all reserved the right to conduct further examination specifically for that purpose during Mr. Kennedy's October deposition.

In a continuing effort to confer and try to resolve Barnard's motion even after it was filed, TBW proposed to (1) forego presenting evidence based on its significantly higher revenue model damages calculations; (2) limit its evidence on past and future loss of use to the cost model calculations it has furnished; (3) make Mr. Kennedy available for one additional day of deposition (on a date to be agreed by the parties, but no later than January 28) limited solely to the subject matter of TBW's loss of use claims and damages calculations; and (4) not object to Barnard's expert submitting a supplemental report on the loss of use damages within 30 days after the additional day of Mr. Kennedy's deposition. Ex. 17.  Barnard rejected this opportunity.

TBW has furnished all of the documentation in support of its loss of use claims and is willing to make its designated witness available for further examination. Barnard already has its retained expert available, and that expert has already opined that the cost model is the appropriate methodology by which to ascertain TBW's damages for loss of use.[12] The only dispute at this juncture is what that cost model, properly calculated, would reflect – damages because the lost reservoir supply must be replaced by more costly desalinated water, or no damages because the lost supply can be made up for by less expensive groundwater? If Barnard requires an additional day of testimony from Dr. Adams concerning the issues related to projected demand and available supplies to replace the lost reservoir source, TBW

---

[12] In the unlikely event that Barnard's expert requires further information to address TBW's position, no extension of the discovery schedule would be required. TBW is a public agency that is subject to the public records law and any such information would be available to Barnard upon request.

would also accommodate that request. Thus, as to the second element of the analysis, any claimed surprise on the part of Barnard can be easily and readily cured.

As to the third element, the extent to which allowing the evidence would disrupt the trial, the short answer is clearly that it would not. Although the discovery period recently closed, the trial in this case is more than seven (7) months away. Thus, allowing the evidence will not cause to disruption in the timing of the proceedings. See *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 2010 WL 3123129 (M.D. Fla. Aug. 9, 2010)(failure to disclose witness causes no disruption where trial is over one year away). Allowing the evidence will also not cause any disruption of the trial itself, because it will not require any new or different witnesses. Mr. Kennedy is TBW's designated representative on the issues of damages and is also a key witness with respect to many other aspects of TBW's case. He will testify extensively at trial under any circumstances in a case that will likely require weeks to try any way. Permitting TBW to present its evidence on the loss of use claims, under either theory, will not cause any disruption in the timing or the conduct of the trial of this matter.

There is little doubt that the evidence of loss of use and the resultant damages is important. TBW's damages under the revenue model are in the range of $41 million to $68 million. Under the cost model, the damages are significantly less, about $27 million, but certainly still substantial. Moreover, any damages suffered by TBW as the result of the defendants' conduct are ultimately borne or carried by the retail level rate payers within TBW's three-county jurisdiction. TBW's claim should not be foreclosed, nor should it be limited to presenting evidence of the higher revenue model damages (because Barnard believes it can show that this analysis is incorrect) when it has in good faith *reduced* its

damages claim by adopting the cost model advanced by Dr. Wade and is willing to limit its loss of use damages to evidence based on its cost model calculations. If Barnard contends that the cost model analysis is the correct one, then TBW should be permitted to put on its evidence under that damages framework.[13]

Upon consideration of the foregoing factors, the Court should determine that any delay in TBW's damages disclosures as to the loss of use elements of its case was harmless within the meaning of Rule 37. See *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)(change in theory of damages in response to court rulings held harmless even though damages disclosure not supplemented). Thus, exclusion of the evidence is not authorized or warranted.

Moreover, the Court "vastly prefers to decide cases on their merits." *Collins v. United States*, 2010 WL 4643279 (M.D. Fla. Nov. 9, 2010)(refusing to exclude expert witness opinions for nondisclosure). In *Collins*, the court found that the nondisclosure of expert opinions was not harmless, but refused nonetheless to exclude those opinions. Instead, it opted to allow the claimed surprise to be cured by further depositions and imposed only the lesser sanction of requiring the nondisclosing party to bear the cost of those depositions. *See also Lory v. General Electric Co.*, 179 F.R.D. 86 (N.D.N.Y. 1998)(refusing to exclude expert testimony on economic damages as sanction for nondisclosure of expert, but allowing additional depositions at nondisclosing party's expense).

As *Collins* illustrates and notwithstanding the seemingly mandatory exclusion of

---

[13] The last element of the analysis, the explanation for the failure to disclose or supplement the disclosures, is covered in detail in the preceding sections of this response. In short, TBW made its initial disclosure based on the information then reasonably available to it and then amended and supplemented its damages calculations and disclosures throughout the discovery phase of the case.

evidence under the language of Rule 37(c)(1), exclusion of evidence is not required even were the Court to find that TBW failed to disclose or to supplement its disclosures as required and that such failure was not harmless. *Prieto v. Malgor*, 361 F.3d 1313, 1318 (11th Cir. 2004)(district court may impose other appropriate sanctions in addition to or in lieu of the evidentiary exclusion); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006)(exclusion not mandatory even if nondisclosure deemed not harmless); *Collins v. United States*, 2010 WL 4643279 (M.D. Fla. Nov. 9, 2009)(evidentiary exclusion not "automatic" even in absence of substantial justification or harmlessness); *Hache v. Damon Corp.*, 2007 WL 4365658 (M.D. Fla. 2007)(court may impose other sanctions in lieu of exclusion).

If the Court finds that TBW failed to disclose or to supplement its disclosures in accordance with Rule 26(a) and (e), and finds further that such failure was not harmless, the Court should fashion a remedy to allow Barnard to secure the additional examination it may require to address the loss of use issues and, if necessary, allow its expert to issue a supplemental report and consider only such further lesser measures as it deems appropriate under the circumstances in this case. It should not order the exclusion of TBW's evidence as to its loss of use damages, but can certainly and reasonably limit that evidence to the cost model theory of loss of use in light of TBW's willingness to adopt that approach in lieu of the revenue model to its own financial detriment.

For all the foregoing reasons, the Motion to exclude TBW's loss of use damages evidence should be denied.

<u>s/ Richard A. Harrison</u>
**Richard A. Harrison, Esquire**

Florida Bar Number 0602493
rharrison@allendell.com
Lead Trial Counsel
**David Forziano, Esquire**
Florida Bar Number 0025755
dforziano@allendell.com
**Misty C. Leafers, Esquire**
Florida Bar Number:  416894
mleafers@allendell.com
ALLEN DELL, P.A.
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682

Attorneys for Plaintiff, Tampa Bay Water,
A Regional Water Supply Authority

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th of December, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

**s/ Richard A. Harrison**
Richard A. Harrison, Esquire
Florida Bar Number 0602493
ALLEN DELL, P.A.
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682
rharrison@allendell.com