# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

TAMPA BAY WATER,
A Regional Water Supply Authority

      Plaintiff,                       CASE NO.:    8:08-cv-2446-T27-TBM

v.

HDR ENGINEERING, INC., a
Nebraska corporation,
CONSTRUCTION DYNAMICS
GROUP, INC., a Maryland corporation,
BARNARD CONSTRUCTION
COMPANY, INC., a
Montana corporation,
ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
a Minnesota corporation,

      Defendants.

_____/

## TAMPA BAY WATER'S PARTIALLY UNOPPOSED MOTION FOR
## LEAVE TO AMEND COMPLAINT AND MEMORANDUM OF LAW

COMES NOW the Plaintiff, Tampa Bay Water, A Regional Water Supply Authority

("TBW"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 15(a)(2)

and Rule 3.01 of the Local Rules of the United States District Court for the Middle District of

Florida (the "Local Rules") and moves the Court for entry of an order granting it leave to

amend the complaint in this matter, and as grounds for the motion states as follows:

      1.     The original Complaint was filed on December 10, 2008. (Doc. 1) The

Defendants named in the Complaint were HDR Engineering, Inc. ("HDR"), Construction

Dynamics Group, Inc. ("CDG") and Barnard Construction Company, Inc. ("Barnard"). These

parties were, respectively, the design engineer, construction manager and general contractor on TBW's C.W. "Bill" Young Regional Reservoir, a 15.5 billion gallon public water supply reservoir located in Hillsborough County, Florida.

2.       This case has been designated a Track Three case. (Doc. 72)

3.       TBW's Amended Complaint was filed on November 20, 2009. (Doc. 125) The purpose of the amendment was to join St. Paul Fire and Marine Insurance Company ("St. Paul"), the surety for the Defendant, Barnard.  TBW has not otherwise amended or sought leave to amend.

4.       TBW's Amended Complaint sets forth the following claims against the Defendants: (a) Count I – Professional Negligence/Breach of Contract against HDR based on defective design; (b) Count II – Breach of Contract against Barnard based on its defective construction; (c) Count III – Professional Negligence/Breach of Contract against HDR based on its inadequate field observations, testing and quality control; (d) Count IV – Professional Negligence/Breach of Contract against CDG based on its inadequate quality assurance[1]; (e) Count V – Breach of Warranties and Guarantees against Barnard; and (f) Count VI – Breach of Performance Bond against St. Paul.

5.       Pursuant to the Amended Case Management and Scheduling Order (Doc. 118) the discovery cutoff was December 15, 2010.

6.       Pursuant to the Amended Case Management and Scheduling Order, the deadline for motions to amend pleadings is ten (10) days after the discovery cutoff date.

---

[1] Tampa Bay Water and CDG have reached a settlement that has now been approved by the Court (Doc. 244) Pursuant to the settlement, Tampa Bay Water has filed its notice and motion for dismissal with prejudice of CDG. (Doc. 252)

Thus, the deadline for motions to amend pleadings is December 27, 2010.[2]

7.      This motion is being timely filed on or before the deadline to file motions to amend the pleadings.

8.      Pursuant to the Amended Case Management and Scheduling Order, dispositive motions are not due until January 31, 2011.  TBW, Barnard, McDonald and St. Paul have recently filed a joint motion seeking to extend the deadline for dispositive motions until February 28, 2011, for reasons unrelated to this motion for leave to amend. (Doc. 254)

9.      There are no dispositive motions pending as of the filing of this motion for leave to amend.

10.     The final pretrial conference is not scheduled until May 6, 2011, and the trial is not until the trial term commencing on July 5, 2011. (Doc. 118)

11.     During the discovery period, the depositions of 34 witnesses have been conducted over a total of 77 days. The depositions have to date generated a total of 17,244 pages of testimony and 767 exhibits. There were 36 days of depositions conducted within the 68 business days immediately preceding the discovery cutoff.

12.     In addition, the parties have engaged in other discovery including the production of documents, interrogatories, site inspections of the Regional Reservoir by the Defendants and their litigation experts and representatives, and numerous non-party subpoenas.

13.     The defendants' expert witness disclosures, including their lengthy reports, began on March 26, 2010, and many of the experts have issued supplemental reports as the

_____

[2] TBW notes that the deadline for motions to amend pleadings falls on the first business day after Christmas.

discovery process unfolded.

14.     Based on information acquired during the discovery process, and which was not known to TBW when it filed the Amended Complaint, TBW seeks leave to amend to clarify and expand its existing claims against HDR and to assert additional claims against HDR, as follows:

a.     To expand and clarify its existing claim (Count I) for professional negligence/breach of contract by HDR for its defective design;

b.     To assert a new claim (Count VI) against HDR for professional negligence/breach of contract in the conduct of the investigation of the failure of the soil cement facing of the Regional Reservoir that was conducted by HDR, under contract with TBW, from approximately January 2007 through October 2008;

c.     To assert a new claim (Count VII) against HDR for its breach of the implied covenant of good faith and fair dealing in connection with its investigation of the failure of the soil cement facing.

15.     TBW also seeks leave to amend to assert new alternative claims against HDR as follows:

a.     An alternative claim (Count VIII) for professional negligence/breach of contract by HDR for its defective design with respect to the specifications for the protective layer over the geomembrane within the earthen embankment and the lack of specifications for the repair of erosion gullies; and

b.     An alternative claim (Count IX) for professional negligence/breach of contract by HDR for its negligent or inadequate quality control with respect to the protective layer

and any unrepaired or improperly repaired erosion gullies.

16.     These alternative claims against HDR are based on and arise out of the opinion, report and testimony of HDR's expert, Dr. Leslie Bromwell ("Bromwell"), as to the cause of the cracking of the soil cement facing at the Regional Reservoir.   In general, Bromwell has opined and testified that the cracking of the soil cement is due to improper placement or construction of the protective layer in the northeast quadrant of the Regional Reservoir and by the failure to repair or to properly repair "erosion gullies" in the southwest quadrant.  No other expert who has rendered on opinion as to the cause of the cracking in this case agrees with Bromwell, nor does TBW.  However, if Bromwell is correct in his theory of causation, then TBW has claims against HDR for its failure to include in the design any specifications for the protective layer or its construction, for its failure to include in the design any specifications for the repair of erosion gullies, and for its inadequate field testing, observation and quality control that permitted such allegedly improper construction to occur.

17.     A copy of TBW's proposal Second Amended Complaint and Demand for Jury Trial ("Second Amended Complaint") (without exhibits) is attached hereto as Ex. A.[3]

18.     The matters TBW seeks to add by way of amendment are based primarily on information learned from the testimony of a number of key witnesses, including HDR employees and experts, whose depositions were taken within the approximately 90 days immediately prior to the discovery cutoff on December 15, 2010. Specifically, these are the depositions of: HDR design engineer Barry Meyer taken September 7-9, 2010; HDR design engineer Jim Brittain taken September 20-22, 2010; HDR design engineer Rick Donovan

---

[3] The proposed Second Amended Complaint also deletes all claims against CDG.

taken September 23-24 and December 9, 2010; Ardaman engineer Jeff Beriswell taken October 4-6, 2010; HDR's testifying expert on causation and consultant during the design of the Regional Reservoir, Les Bromwell, taken November 1-4 and December 15, 2010; HDR's testifying expert on the standard of care, Lee Wooten, taken November 15-17, 2010; lead inspector for the embankment fill during construction, Dwayne Williams, taken December 7, 2010; and lead inspector for the soil cement during construction, Frank Luman, taken December 8, 2010.

19.    In general, TBW's proposed new claim against HDR for breach of contract and professional negligence relating to its investigation of the cracking at the Regional Reservoir is premised on Bromwell's recent testimony.  During his deposition in November 2010, Bromwell testified that the first step in performing a forensic investigation of damage in a construction project like the Regional Reservoir is to perform a review of the construction records, including the photographs taken during construction phase of the project.  Bromwell also testified that when he began his investigation into this matter for HDR, he reviewed all of the construction records in HDR's possession.  He testified that those records were inadequate to determine the cause of the unusual cracking.  He testified that based on his review of HDR's construction records, he "knew there was a massive amount of information out there that we had not seen."  He repeatedly emphasized the need to examine the construction records.  Bromwell then testified that HDR did not obtain the construction records that he believes were necessary to determine the cause of the cracking until early to mid-2009, when the construction contractor produced its construction files as part of its initial discovery disclosures in this case.  That is, HDR did not even make a request

for Barnard's construction records.   Rather, it waited until Barnard voluntarily produced them as part of its initial disclosures.  According to HDR's own expert, HDR's investigation was not in accordance with the standard for such an investigation.

20.     In general, TBW's proposed new claim against HDR for breach of the implied covenant of good faith in connection with the investigation of the cracking of the soil cement is premised on a memo written by HDR employee John Rañon to HDR corporate counsel Bruce Gerhardt on March 3, 2008 (the "Rañon Memo").  The memo was produced to TBW in late July of 2010 by one of HDR's litigation experts in response to a non-party subpoena for records related to the expert's work on this case.  A copy of the Rañon Memo is attached hereto as Ex. B.  By March 3, 2008, HDR had been investigating the cracking for more than a year, but had been unable (or unwilling) to come to any conclusion as to the underlying cause of the cracking.  However, virtually all of the analysis conducted to that point was leading to the conclusion that excess pore water pressure within the embankment was the problem.

21.     The Rañon Memo makes clear that by March 3, 2008, HDR was concerned about the financial, business and legal ramifications to it of the conclusion that excess pore pressure – a design defect – was the cause of the cracking at the Regional Reservoir:

> In my opinion, the implications associated with the testing and possible installation of relief drains are far reaching for the firm and need to be thoroughly discussed before we proceed.
>
> ***
>
> To date, no smoking gun has been discovered, but one of the root cause theories is gaining more traction: the observed fracturing and cracking is the result of unequal hydrostatic pressure that builds up behind the armoring during the withdrawal portion of the annual water cycle and which exceeds the tensile strength of the soil cement.

***

Although it is true that our design effort was complemented by outside experts and that the basis of design and the construction documents received considerable scrutiny by our client and others, it is unlikely that any of this will matter in the court of public opinion. HDR is the Engineer of Record and as such, we will not be able to escape the slings and arrows that likely will come our way if we proceed with a fix based solely on the introduction of relief drains. This may have unfavorable consequences not only from a financial standpoint, but also with respect to our standing with this and other clients.   This may affect our ability to win future assignments and will probably affect work already completed for the C-44 project.

22.    A jury could certainly infer from the Rañon Memo that HDR's conduct at this time and thereafter was motivated by its own interests and not that of its client, TBW, for whom it was supposedly conducting the investigation.  If HDR's selfish interests colored the conduct of the investigation to the point that HDR contravened the reasonable expectations of TBW, then HDR breached the implied covenant of good faith and fair dealing that is a part of every contract under Florida law.   TBW has alleged as much in the proposed Second Amended Complaint.

23.    In general, TBW's proposed new alternative claim against HDR for breach of contract and professional negligence in connection with the specifications, or lack thereof, for the protective layer is based on the recent depositions of HDR's design team and litigation expert.  In his September 2010 deposition, the engineer of record for the design of the Regional Reservoir's embankment, Barry Meyer, testified that the Earthwork Specifications do not specifically address the Protective Layer; however, HDR understood that they still applied to the Protective Layer.  Meyer also testified that the first time anyone outside of HDR's design team was informed that a protective layer was required was after

the construction contract had been awarded and construction was underway.  Meyer stated that HDR did not impose any restrictions on how thick the protective layer could be constructed by the contractor.  Rather, he testified that the maximum thickness was a means and methods issue for the contractor to determine, provided that the protective layer achieved the density requirements for embankment fill set forth in the Earthwork Specifications.

24.     However, in his November 2010 deposition, HDR's expert, Bromwell, testified that HDR intended to limit the maximum thickness to no greater than three feet.  Bromwell indicated that the maximum thickness limitation was important because it would not need to be placed much thicker than three feet to cause excessive and unusual cracking of the soil-cement.  Bromwell then contradicted Meyer, by testifying that: (a) he did not believe that the earthwork specifications were applicable to the protective layer; and (b) even if the protective layer was no more than three feet thick, he does not think that it could achieve the density requirements set forth in the Earthwork Specifications.  Bromwell also testified that it was good engineering practice to include the requirements for a protective layer in written specifications, which HDR failed to do.

25.     Bromwell further testified that as part of his investigation, he discovered that HDR assumed that the protective layer would achieve only approximately 90% compaction if it were constructed no more than three feet thick.  This contradicts the October 2001 deposition testimony of Jeff Beriswill, another member of the HDR design team.  In his deposition, Beriswill testified that based on his experience with similar soils, he believed that the protective layer was capable of achieving the 95% compaction required by the earthwork specifications.  Beriswill also testified that the Earthwork Specifications do not address the

protective layer and that HDR should have addressed the protective layer in its specifications.

26.     By contrast, the third member of HDR's design team, Rick Donovan, testified during his deposition in September 2010 that, notwithstanding the fact that the Earthwork Specifications do not address the Protective Layer, the contractor was required to meet the requirements of both the Earthwork Specifications and any requirements imposed by the geomembrane manufacturer's warranty regarding the placement of a protective layer over the geomembrane.

27.     Given that the three key members of HDR's design team and its litigation expert are unable to agree on even the most basic aspects of the Earthwork Specifications and their relationship to the protective layer, an issue that underlies HDR's expert's theory of causation, TBW is entitled to plead in the alternative that HDR's design was defective with respect to the specifications, or lack thereof, for the protective layer.

28.     Further, given that HDR's expert opines that the cracking in the soil cement in the southwest quadrant is caused by unrepaired or improperly repaired erosion gullies in the soil wedge, TBW is entitled to plead in the alternative that HDR's design was defective to the extent it failed to include any specifications for the repair of erosion gullies.

29.     In general, TBW's proposed alternative claim against HDR for breach of contract and professional negligence in connection its quality control for the protective layer is based on the opinion and testimony of HDR's own expert and recent depositions of HDR's design team.  In his deposition in October 2010, Beriswill testified that the protective layer was supposed to be between two and three feet thick; however he did not recall giving HDR's field inspectors any instructions as to how thick the protective layer was supposed to

be or any training as to how they should test or inspect the protective layer.  However, Beriswill stated that HDR's inspectors understood that they were supposed to test the protective layer.  He explained that the protective layer was not supposed to be tested as it was placed because at that point it would not have yet achieved the proper compaction. Rather, it was supposed to be tested later as the horizontal lifts were being placed that would create the Soil Wedge.  Beriswill elaborated that this testing would occur randomly, from time-to-time, at the intersection of the protective layer and a horizontal lift.

30.     In their depositions of April 2010, September 2010, and December 2010, the project's lead inspector, Mike Milhorn, the project's engineer of record and construction quality control engineer, Barry Meyer, and the lead earthwork inspector, Dwayne Williams, all essentially described the same testing procedure for the protective layer.

31.     However, during his deposition in November 2010, HDR's expert, Bromwell, testified that such testing was insufficient to adequately determine whether the protective layer was adequately compacted.  He elaborated that the testing location was inadequate because the intersection of the protective layer and the horizontal lift received a greater degree of compaction than the rest of the protective layer.  Therefore, a test taken at that location would not be representative of the compaction of the protective layer at other locations.  Furthermore, Bromwell understood HDR to have imposed a maximum thickness of three feet for the placement of the protective layer.  However, both Williams and Milhorn testified that they could not recall there being an absolute maximum thickness restriction on the protective layer and any unrepaired or improperly repaired erosion gullies.

32.     If Bromwell's theory of causation is correct, then TBW is entitled to assert an

alternative claim against HDR for its inadequate quality control and field inspection activities with respect to the protective layer.

33.     No new parties will be added to the case by virtue of the proposed Second Amended Complaint.

34.     No new discovery will be required by virtue of the proposed Second Amended Complaint and TBW is not seeking leave to conduct any such discovery.  If any discovery at all is deemed necessary or desirable, it will be minimal and not extensive.  The new matters alleged by TBW are derived primarily from the testimony of HDR employees or consultants or from the reports and testimony of HDR's litigation experts.  HDR would not need to conduct any discovery directed towards its own employees or experts, as it has ready and unlimited access to them.

35.     This motion is being made in good faith for the reasons set forth herein, and is not being made for purposes of delay or for any other improper purpose.

36.     <u>Certificate of Good Faith Conference</u>: Pursuant to Local Rule 3.01(g), the undersigned counsel for Tampa Bay Water certifies that he has conferred with counsel for the Defendants with respect to the relief sought herein. Barnard, McDonald and St. Paul do not object to the requested relief. HDR opposes the motion.

<strong>MEMORANDUM OF LAW</strong>

**A.  This timely motion for leave to amend is governed by Rule 15(a)**

The amendment of pleadings before trial is governed by Fed. R. Civ. P. 15(a). Rule 15(a)(1) dictates those circumstances, not applicable here, in which a party may amend its pleading as a matter of right. Rule 15(a)(2) provides that "In all other cases, a party may

amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

The Amended Case Management and Scheduling Order (Doc. 118) provides, in pertinent part, that:

> 4. Motions to amend any pleading or a motion for continuance of any pretrial conference, hearing, or trial filed after issuance of this Case Management and Scheduling Order are disfavored. See Local Rule 3.05(c)(2)(E) and Local Rule 3.05(c)(3)(D). The deadline for motions to amend pleadings is 10 days after discovery cut-off date.

Local Rule 3.05(c)(3)(D), which applies in this Track Three Case, states that "A motion to amend any pleading . . . is severely disfavored because, in light of the need for special judicial attention, counsel should prosecute or defend a Track Three Case only if able to accommodate the scheduling demands."  The corresponding provision of the Local Rule that applies in Track Two cases provides that "A motion to amend any pleading . . . is distinctly disfavored after entry of the Case Management and Scheduling Order." Local Rule 3.05(c)(2)(E).

The Eleventh Circuit has held that a motion for leave to amend filed *after* the deadline for such motions in a case management and scheduling order is governed by the "good cause" standard of Fed. R. Civ. P. 16(b). *Sosa v. Airprint Systems, Inc.*, 133 F.2d 1417 (11th Cir. 1998); *see also Angiolillo v. Collier County*, 2010 WL 3330004 at *1-2 (11th Cir. Aug. 25, 2010); *Smith v. Psychiatric Solutions, Inc.*, 358 Fed. Appx. 76, 78 (11th Cir. 2009); *Mann v. Taser International, Inc.*, 588 F. 3d 1291, 1312 (11th Cir. 2009); *Southern Grouts & Mortars, Inc. v. 3M Company*, 575 F.3d 1235, 1241 (11th Cir. 2009); *Valpak Direct Marketing Systems, Inc. v. Maschino*, 349 Fed. Appx. 368, 370 (11th Cir. 2009). As

explained in *Sosa*:

> Sosa's brief on appeal does not address good cause under Rule 16(b), but focuses instead upon the liberal amendment standard set out in Federal Rule of Civil Procedure 15(a). If Sosa's motion for leave to amend had been filed within the time prescribed by the scheduling order, Rule 15(a) would be our primary focus, as well. However, because Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a). *Johnson,* 975 F.2d at 607-08; *Anda,* 959 F.2d at 1155. If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.

*Sosa v. Airprint Systems, Inc.*, 133 F.2d 1417, 1419 (11th Cir. 1998)

Application of the Rule 16(b) "good cause" standard to a motion for leave to amend filed after the deadline in case management and scheduling order makes sense. In cases in which the deadline has already passed, the party seeking leave to amend out of time is, in essence, seeking to modify the case management and scheduling order deadlines. *See Clarendon America Ins. Co. v. Jedak Corp.*, 2010 WL 610900 at *2 (M.D. Fla. Feb. 11, 2010); *Horowitch v. Diamond Aircraft Industries, Inc.*, 2009 WL 3790415 at *2 (M.D. Fla. Nov. 9, 2009); *Auto-Owners Ins. Co. v. Ace Electrical Service, Inc.*, 648 F. Supp. 1371, 1375 (M.D. Fla. 2009); *Estate of Miller v. Thrifty Rent-A-Car System, Inc.*, 609 F. Supp. 2d 1235, 1251-1252 (M.D. Fla. 2009).

In contrast, timely filed motions for leave to amend are decided under the liberal standard of Rule 15(a). *Smith v. Trans-Siberian Orchestra*, ___ F. Supp. 2d ___, 2010 WL 294920 (M.D. Fla. July 26, 2010)(timely filed motions for leave to amend are governed by the liberal standard of Rule 15(a)). *Idearc Media Corp. v. Kimsey & Associates, P.A.*, 2009 WL 413531 at *3 (M.D. Fla. Feb. 18, 2009). The Rule 15(a) standard applies to such motions

notwithstanding language in a scheduling order expressing "disfavor" for such motions. *See Walters v. Altec Industries, Inc.*, 2003 WL 22012046 at *1 (M.D. Fla. Mar. 3, 2003)(Rule 15(a) standard applies even though scheduling order indicated disfavor for motions to amend pleadings after issuance of scheduling order); *Perez v. Pavex Corp.*, 2002 WL 31500404 at *1 (M.D. Fla. Oct. 18, 2002)(Whittemore, J.)(to same effect).[4]

Pursuant to Rule 15(a), leave to amend "shall be freely given when justice so requires." The Supreme Court has emphasized that "this mandate is to be heeded." *Foman v. Davis,* 371 U.S. 178, 182 (1962). The decision whether to grant leave to amend is within the discretion of the trial court. *Id.* However, "'[d]iscretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires.'" *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984). "This policy of Rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the trial court's discretion; thus, 'unless there is a *substantial reason* to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'" *Id.* (emphasis added). Further, even if the reasons to deny leave to amend are substantial, the court should consider the prejudice to the moving party in the absence of the requested amendment. *Wright v. Standard Ins. Co*., 2008 WL 4372849 *6

---

[4] *But see, e.g.*, *Florida Family Ass'n, Inc. v. School Bd. of Hillsborough County*, 494 F. Supp. 2d 1311, 1325-1326 (M.D. Fla. 2007); *Belnavis v. Nicholson*, 2006 WL 3359684 (M.D. Fla. Nov. 20, 2006). In both cases, the court applied the Rule 16 "good cause" standard where the scheduling order expressed "disfavor" for motions to amend filed after entry of the scheduling order, but where no deadline for such motions was set forth in the scheduling order. Applying the Rule 16 good cause standard in cases where the scheduling order contains no deadline for motions to amend seems questionable in light of *Sosa's* multiple express references to a deadline, but such cases are not relevant to this motion. Because the Amended Case Management and Scheduling Order sets forth a deadline for motions to amend, the liberal Rule 15(a) standard applies under the express language of *Sosa*. *Sosa*, 133 F.3d at 1419 ("If Sosa's motion for leave to amend had been filed within the time prescribed by the scheduling order, Rule 15(a) would be our primary focus, as well.")

(M.D. Fla. September 24, 2008).

The Supreme Court, in its opinion in *Foman* enunciated the following general standard, which is to be employed under Rule 15(a) by the district courts:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." 371 U.S. at 182.

Absent some substantial, justifying reason to deny the motion, the Court is constrained to grant the plaintiff leave to amend. *Grayson v. Kmart Corp*., 79 F. 3d 1096 (11th Cir. 1996).  The refusal to grant a plaintiff leave to amend without any justifying reason is an abuse of discretion and is inconsistent with the spirit of the Federal Rules.  *Gropp v. United Airlines, Inc.*, 847 F. Supp. 941 (M.D. Fla. 1994).

**B.  There are no substantial justifying reasons to deny TBW's motion for leave to amend**

For the reasons set forth below, this Court should grant TBW's motion for leave to amend because there are no substantial justifying reasons to deny TBW's proposed amendment.

**1.  <u>There is no undue prejudice to HDR by virtue of allowance of the amendment</u>**

To determine undue prejudice, the Court should consider "the extent of discovery already conducted and the risk of extensive additional discovery if the amendments are allowed. *Beheer v. ASAP Installations, LLC*, 2010 WL 2431922 *2 (M.D. Fla. June 16, 2010). The Court must also determine whether the motion adds a new legal issue. *Id.*

16

Prejudice is likely if "the amended complaint contain[s] 'new complex and serious charges' which would undoubtedly require additional discovery for the defendants to rebut." *Sure Fill & Seal, Inc. v. GFF, Inc*., 2009 WL 1751726 *2 (M.D. Fla. June 17, 2009)(finding defendant would be unduly prejudiced where plaintiff's amendment was a broad expansion of the case). Even after the discovery deadlines have passed, there will be no prejudice if extensive discovery is not needed for the proposed additional claims because they involve the same acts and evidence as the prior complaint. *Beheer, supra.* TBW's proposed amendment does not amount to a broad expansion of the case, at it focuses on the conduct of HDR that has already been the subject of extensive discovery.

The duration of the litigation alone is also insufficient grounds to show the opposing party is unduly prejudiced. *Bryant v. Dupree*, 252 F.3d 1161, 1165 (11th Cir. 2001)("The lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the opportunity to amend their complaint.")  In this case, the matter has proceeded in accordance with the Amended Case Management and Scheduling Order and is on schedule to be tried well within the Court's stated goal of three years from the filing of the Complaint.  See Local Rule 3.05(c)(3)(D)(Track Three Cases to be tried within three years after filing of complaint).  The case is presently scheduled for trial of July of 2011, so even a slight delay in the trial schedule (which TBW does not seek or suggest would be warranted by virtue of the amendment) would not cause the matter to depart from the guidelines in Local Rule 3.05.

TBW is mindful that the Federal Rules should be administered in order to secure the just, speedy and inexpensive determination of every action and proceeding.  Fed. R. Civ. P.

1.  But that laudatory goal should not sacrifice the just resolution of disputes for the sake of efficiency.  *See Gropp v. United Airlines, Inc.*, 847 F. Supp. 941, 946 (M.D. Fla. 1994).  In *Gropp*, the court granted leave to amend notwithstanding the defendant's claims that the proposed amendment would vastly expand the nature of the suit and require extensive additional discovery.  The court found no undue delay, bad faith or dilatory motive on the part of the plaintiff.

TBW's motion for leave to amend is being filed within the deadline established in the scheduling order, mere days after the close of discovery, and before any dispositive motions have been filed by any party.  The proposed amendment results in no prejudice to HDR.  In contrast, leave to amend can be and is often denied for undue prejudice where the motion is filed after lengthy delays in the proceedings, or long after the close of discovery, or after dispositive motions have been filed.  *See Reeves v. DSI Security Svcs., Inc.,* 2010 WL 3402080 (11th Cir. Aug. 31, 2010)(affirming denial of leave to amend for fifth time after issuance of magistrate's recommendation to grant defendant's motion for summary judgment); *Campbell v. Emory Clinic*, 166 F.3d 1157 (11th Cir. 1999)(affirming denial of leave to amend where motion filed one year after close of discovery, after dispositive motions filed and more than five years after suit commenced); *Jameson v. Arrow Co.*, 75 F.3d 1528 (11th Cir. 1996)(affirming denial of leave to amend where motion filed after close of discovery, complaint had been amended twice and defendant had filed two motions for summary judgment).

The possibility that HDR might incur additional expense or that there might be some slight delay in the proceedings does not amount to undue prejudice sufficient to deny a

timely motion for leave to amend.  As observed in *Loggerhead Turtle v. County Council of Volusia County, Florida*, 148 F.3d 1231, 1257 (11th Cir. 1998), "Any amendment to an original pleading necessarily involves <u>some</u> additional expense to the opposing party."  Here, as in *Loggerhead Turtle*, any such additional expense would be nominal.

TBW's additional claims involve generally the same facts and evidence as the claims in the Amended Complaint. To the extent new facts are asserted or new issues raised, they are based substantially on the testimony of HDR's own employees, consultants or litigation experts, or on the testimony of other persons who have already been deposed on these topics. Thus, HDR does not have to conduct additional discovery to defend TBW's proposed claims and HDR will not be prejudiced by TBW's proposed amendments.  *See Beheer v. ASAP Installations, LLC*, 2010 WL 2431922 (M.D. Fla. June 16, 2010)(granting leave to amend where no extensive discovery required).  Even if limited supplemental depositions may be required, that does not compel a finding of undue prejudice.  *See Perez v. Pavex Corp.*, 2002 WL 31500404 (M.D. Fla. Oct. 18, 2002)(Whittemore, J.)(granting leave to amend and leave to take limited supplemental depositions).

## 2.  <u>There is no undue delay</u>

There is no basis for a finding of undue delay because TBW filed its amended pleading in compliance with the scheduling order. *See Beheer v. ASAP Installations, LLC*, 2010 WL 2431922 *2 (M.D. Fla. June 16, 2010)(finding no undue delay where plaintiff filed second amended complaint prior to deadline set by the Court in the scheduling order). Even if the Court were to find TBW delayed in filing, HDR must show that it is prejudiced by the delay. *Floyd v. Eastern Airlines, Inc*., 872 F.2d 1462, 1490 (11th Cir. 1989)("The mere

passage of time, without anything more, is an insufficient reason to deny leave to amend."), *rev'd on other grounds*, 499 U.S. 530 (1990); *See also Loggerhead Turtle v. County Council of Volusia County*, 148 F.3d 1231, 1256 (11th Cir. 1998)(finding plaintiff's failure to request leave to file an amended complaint several months earlier supported a finding of "delay," not "undue delay" or "dilatory" action, where plaintiff filed within the time prescribed in the court's scheduling order and nothing in the record suggested that the gap in time was anything more than the "mere passage of time.")

The assertion of alternative claims is also permissible in an amendment.  *Beeher*, 2010 WL 2431922 at *2 (alternative theories).  Such an amendment is certainly appropriate where the alternative theories sought to be asserted are based on the opinion of HDR's own expert.

Additionally, TBW's amending to plead the proposed additional claims reconciles with its obligations under the federal rules and general notions of fair dealing.  Allegations in a complaint must have "evidentiary support" to the best of the party's "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." Fed.R.Civ.P. R. 11(b)(3)(filing a pleading warrants, among other things, that its "allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"); *Business Guides, Inc. v. Chromatic Communications Enterprises,* 498 U.S. 533, 541 (1991) ("A party who signs a pleading or other paper without first conducting a reasonable inquiry shall be sanctioned.")

### 3.   TBW has not acted in bad faith or with a dilatory motive

TBW has not acted in bad faith or with a dilatory motive in filing its motion for leave to amend. This is only TBW's second request to amend, and it is being made timely in accordance with the Amended Case Management and Scheduling Order.   *See Beheer v. ASAP Installations, LLC*, 2010 WL 2431922 (M.D. Fla. June 16, 2010)(no dilatory motive where amendment was "only Plaintiff's Second Amended Complaint"); *Gropp v. United Airlines, Inc.*, 847 F. Supp. 941 (M.D. Fla. 1994)(no dilatory motive behind plaintiff's first amended complaint). *See also Wright v. Standard Ins. Co*., 2008 WL 4372849 *6-7 (M.D. Fla. September 24, 2008)(granting plaintiff to amend for the fourth time, despite finding undue delay and great prejudice to defendants, where court found no bad faith).

HDR will no doubt argue that TBW has some dilatory motive or is seeking to delay the proceedings, as HDR seems to do in response to any motion TBW files.  See, HDR Engineering, Inc.'s Response in Opposition to Join Motion to Amend Amended Case Management and Scheduling Order.   (Doc. 256, p.2)(alleging "two previous attempts at delay by TBW")  In the two years that this case has been pending, TBW has filed one motion to amend the discovery schedule, which was denied by the Court, then completed discovery in accordance with the Amended Case Management and Scheduling Order.  It now seeks leave to amend by filing a *timely* motion pursuant to the scheduling order.  Notwithstanding HDR's anticipated self-serving characterization, there is no basis upon which the Court could find that TBW's conduct has been dilatory.

### 4.   TBW has not repeatedly failed to cure deficiencies by amendments previously allowed

Leave to amend may be denied if the proposed amendment fails to cure the

deficiencies in the original pleading.  *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991)(holding that where four months had elapsed following dismissal before the plaintiff filed a motion for leave to amend, the plaintiff had previously attempted to amend the complaint, and the proposed amendment failed to cure the deficiencies in the original pleading and added nothing of any substance, granting leave to file an amended complaint which was so deficient would have been an exercise in futility); *see also, Gardner v. City of Tampa*, 2009 WL 1653119 *2 (M.D. Fla. June 11, 2009)(finding plaintiff did not fail to cure deficiencies in response to defendants motion to dismiss, despite already having three opportunities to amend to plead her claims).

TBW has not repeatedly failed to cure deficiencies by amendments previously allowed, as no deficiency in TBW's prior pleadings has ever been alleged. Each of the Defendants filed an answer in response to TBW's original Complaint (Docs. 19, 20, 24) and none filed a motion to dismiss.  When TBW filed its Amended Complaint, the Defendants again all filed answers (Docs. 127, 128, 129, 133) and not motions to dismiss.  TBW seeks to add additional claims based on facts revealed during discovery, not to cure deficiencies of claims previously stated.

### 5.  **TBW's proposed amendments are not futile**

Denial of leave to amend is justified by futility when the "complaint as amended is still subject to dismissal." *Burger King Corp. v. C.R. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999). Leave to amend should be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face. *Perez v. Pavex*, 2002 WL 31500404 *3 (M.D. Fla. Oct. 18, 2002).

TBW has already properly stated claims against HDR for professional negligence and breach of contract as to both design issues and aspects of HDR's quality control work on the project.  To the extent the matter TBW seeks to add by way of amendment expands upon or adds new specific claims under the same legal theories, they are clearly not futile.

To the extent TBW also seeks to add a new claim against HDR for breach of the implied covenant of good faith and fair dealing, the allegations of the proposed Second Amended Complaint are sufficient under Florida law.  Florida courts recognize an implied duty of good faith and fair dealing in every contract.  *Burger King Corp. v. C.R. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *County of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049 (Fla. 1997).  In *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000), the court noted that "The covenant ensures that neither party will do anything that will injure the right of the other party to receive the benefits of the contract."  *Id.*  The purpose of the rule is to protect the reasonable or justifiable expectations of the contracting parties in light of their express agreement.  *Id.*

The implied covenant "must relate to the performance of an express term of the contract, and it is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements."  *Id.*  Accordingly, "[a] cause of action for breach of the implied covenant cannot be maintained (a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express term of the underlying contract."  *Id.*

The implied covenant is an "interpreting, gap-filling tool of contract law."  *Id.*   As such, it comes into play only when the appropriateness of the conduct is not resolved by the

terms of the contract.  *Id.*  "The covenant imposes limits upon one contracting party's ability to negatively impact the contract's value to the other contracting party."  *Id.*  "It determines when a party may no longer pursue his own self-interest, but must instead engage in cooperative behavior by deferring to the other party's contractual interests."  *Id.*  Such a situation typically arises when (1) the contract is ambiguous about the permissibility of the conduct, or (2) when the conduct is undertaken pursuant to a grant of discretion and the scope of that discretion has not been designated.  *Id.*  To allege a cause of action for breach of the implied covenant of good faith and fair dealing, the pleading party must demonstrate "[1] a failure or refusal to discharge contractual responsibilities, [2] prompted not by an honest mistake, bad judgment or negligence; but rather by a conscious and deliberate act, [3] which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of that agreement."  *Id.*

Where a specific contractual term gives one party discretion in performance under that term, the implied covenant places on the performing party an "obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting."  *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1278 (S.D. Fla. 2009).  In other words, "where the terms of the contract afford a party substantial discretion to promote the party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable expectations of the other party."  *Id.*

The new allegations of the proposed Second Amended Complaint adequately allege a

claim for breach of the implied covenant of good faith and fair dealing by HDR.  As reflected in the Rañon Memo, HDR, beginning in about March of 2008,  began to have grave concerns over the financial and other ramifications of concluding – as they were about to conclude from their own investigation – that the underlying cause of the cracking of the soil cement was its own defective design, i.e., excess pore pressure.  HDR's conduct after that time, including its ultimate failure to ever reach any conclusion as to the cause of the cracking and its duplicity in dealing with TBW, is consistent with the protection of its own legal, financial and business interests at the expense of TBW's, from which a jury could certainly conclude or infer that HDR acted in bad faith in performing the investigation that it was contracted to perform on behalf of TBW.

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Or, as stated by this Court, plaintiffs have the right to amend in an "attempt to present their most meritable claims."  *Beheer v. ASAP Installations, LLC*, 2010 WL 2431922 at *3 (M.D. Fla. June 16, 2010); *Gropp v. United Airlines, Inc.*, 847 F. Supp. 941, 946 (M.D. Fla. 1994).  For all the foregoing reasons, TBW's motion for leave to amend should be granted.

**s/ Richard A. Harrison**
**Richard A. Harrison, Esquire**
Florida Bar Number 0602493
rharrison@allendell.com
Lead Trial Counsel
**David Forziano, Esquire**
Florida Bar Number 0025755
dforziano@allendell.com

**Misty C. Leafers, Esquire**
Florida Bar Number:  416894
mleafers@allendell.com
ALLEN DELL, P.A.
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682

Attorneys for Plaintiff, Tampa Bay Water,
A Regional Water Supply Authority

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th of December, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

**s/ Richard A. Harrison**
**Richard A. Harrison, Esquire**
Florida Bar Number 0602493
ALLEN DELL, P.A.
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682
rharrison@allendell.com