UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMPA BAY WATER, a regional water supply authority,

    Plaintiffs,

v.

HDR ENGINEERING, INC., a Nebraska corporation; CONSTRUCTION DYNAMICS GROUP, INC., a Maryland corporation; BARNARD CONSTRUCTION COMPANY, a Montana corporation,

    Defendants.
_____/

BARNARD CONSTRUCTION COMPANY, INC. a Montana corporation,

    Third Party Plaintiff,

v.

McDONALD CONSTRUCTION CORPORATION, a Florida corporation,

    Third Party Defendant.
_____/

Case No.: 8:08-cv-02446-JDW-TBM

**RESPONSE OF DEFENDANT, HDR ENGINEERING, INC., TO THE MOTION TO COMPEL OF PLAINTIFF, TAMPA BAY WATER**

Defendant, HDR ENGINEERING, INC. (hereinafter HDR), by and through its undersigned counsel, hereby responds to the Motion of Plaintiff, TAMPA BAY WATER (hereinafter TBW), To Compel Production of Documents, Information, or Objects from BCI Engineering and Scientists, Inc.  (Dkt. 248).

As this Court is well aware, this case involves claims by TBW against HDR for breach of contract for alleged failures in design of the C.W. Bill Young Regional Reservoir ("the Reservoir") and alleged failures to prepare and implement an appropriate quality control plan. Following construction of the Reservoir, TBW alleges large, unanticipated cracks developed in certain areas of the soil cement facing of the Reservoir. The soil cement facing is a non-structural element of the Reservoir and its primary purpose is to prevent erosion of the underlying soil embankment and to break up wave run-up. It is undisputed that the cracking of the soil cement does not pose a risk to the integrity of the earthen embankment.

TBW contends that the large and unanticipated cracks to the soil cement facing occurred because of the build-up of excessive pore pressure in the embankment soils located between the soil cement facing and the impervious geomembrane placed in the interior slope of the embankment. The soils located between the soil cement facing and impervious geomembrane are described by TBW as the "soil wedge."

HDR disputes TBW's claim, including that it violated the standard of care at the time the Reservoir was designed in 2001. The prevailing literature at the time of design stated that the soil cement facing would develop shrinkage cracks which would allow water to drain from the embankment soils thereby preventing the build-up of any excess pore pressure. In fact, the literature at the time stated that there were no known incidents of excessive pore pressure causing problems.

HDR retained Les Bromwell, P.E., of BCI Engineering and Scientists, Inc., as a testifying expert. Dr. Bromwell has extensive experience in designing earthen embankments. Dr. Bromwell considered numerous potential causes of the cracking of

the soil cement facing. Eventually, upon full study and analysis, Dr. Bromwell has opined that pore pressure within the soil wedge is not the cause of damage to the soil cement facing. Rather Dr. Bromwell is of the opinion that a thick, dry and partially uncompacted layer of soil was improperly placed immediately over the geomembrane. Generally, upon filling up and drawing down water in the Reservoir, this layer of soil became saturated and collapsed. Upon collapse, the soil cement facing cracked.

TBW, as well as the other Defendants, have deposed Dr. Bromwell from November 1 through 4, 2010 and again on December 15, 2010. During his deposition, TBW inquired about Dr. Bromwell's embankment experience and he identified five other reservoirs in which he has been involved in the design of the embankment. Following his four day deposition in November, 2010, TBW issued a second subpoena[1] to BCI seeking production of:

1. Any and all seepage modeling, seepage modeling reports, basis of design embankment design reports, and any reports that identify the material properties used in the seepage models, relating to the following project:

    a. C-51 Reservoir

    b. Loxahatchee Reservoir

    c. Section 24 Reservoir

    d. Lake Point Reservoir

    e. Siburua Reservoir

---

[1] A copy of the subpoena is attached hereto as Exhibit "A."

    2. With regard to the five reservoirs listed in paragraph 1, above, any and all documents regarding the permeability or hydraulic conductivity of the soil cement assumed by BCI in designing said reservoirs.

The definitions provided with the subpoena define "document" or 'documents" to include not only written records, but records saved on "a computer RAM, hard drive, disk or other computer storage media . . ."  Based on these definitions, TBW also seeks production of all Electronically Stored Information (ESI) to include presentation files, excel spread sheets, emails and email files as well as all "computer models or modeling files (including all input and output information) . . ."

HDR on behalf of BCI objected to this subpoena[2] on numerous grounds, including:

    1. the definitions of "document," "documents," "electronically stored information," "ESI" and "produce" are overly broad;

    2. the five reservoirs for which documents, including modeling, are sought are not substantially similar to the subject Reservoir;

    3. responding to the subpoena is over burdensome in terms of time and cost to BCI; and

    4. some of the documents sought are confidential in nature.

TBW's Motion to Compel does not adequately address each of these objections. Also, the grounds offered by TBW in support of compelling production are without merit.  As a result, the Motion to Compel of TBW should be denied.

---

[2] A copy of the objection to the subpoena is attached hereto as Exhibit "B."

WHEREFORE, Defendant, HDR ENGINEERING, INC., respectfully requests that this Court deny the Motion to Compel of Plaintiff, TAMPA BAY WATER, and for any other relief that this Court finds just and proper.

**MEMORANDUM OF LAW**

### I. THE DISCOVERY SUBJECT TO THE SUBPOENA IS NOT RELEVANT NOR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSABLE EVIDENCE

The scope of discovery under Rule 45 is the same as that permitted under Rule 26. *Barrington v. Mortgage It, Inc.,* 2007 WL 4370647 (S.D. Fla. Florida December 10, 2007). The scope of discovery includes "any non-privileged matter that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b)(1). To be relevant, the evidence must tend to make a fact more probable or less probable. Fed. R. Evid. 401. For discovery purposes, information is relevant even if not admissible at trial provided it is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Therefore, the first inquiry is whether the documents sought by TBW in the subpoena issued to BCI are relevant.

When relevancy is not apparent from the face of the discovery, the burden is on the party seeking the discovery, in this case TBW, to show the relevancy of the discovery request. *Barrington* at *3, citations omitted. On the other hand, if the discovery appears relevant on its face, the party resisting discovery, HDR in this instance, would have the burden to establish facts justifying its objections by demonstrating the requested discovery does not fall within the scope of relevance as set forth in Rule 26(b)(1) or that the marginal relevance of the evidence is outweighed by the potential harm occasioned by the discovery. *Id*. As will be set out below, the documents sought by TBW in the subpoena are neither relevant to prove or disprove a claim or defense regardless of

5

whether TBW or HDR bears the burden of proof nor will production lead to the discovery of admissible evidence.

> **A. The Information Sought in the Subpoena Will Not Tend to Prove or Disprove Whether HDR Performed Transient Seepage Analysis of the Subject Reservoir**

TBW first contends that the documents are relevant because one of the issues in this case is whether HDR properly modeled the transient drawdown behavior of the wedge fill and embankment fill using a computer modeling program known as SEEP/W. TBW contends that HDR performed steady state analysis as opposed to transient seepage analysis, and, therefore, failed to discover excess pore pressure within the soil wedge. Dkt. 248, Motion to Compel of TBW at pp. 4-5.  TBW argues that because Dr. Bromwell utilized SEEP/W in designing the embankments in at least four of the five projects subject to the subpoena, any and all of BCI's documents related to seepage modeling, permeability or hydraulic conductivity of the soil cement, basis of design, embankment design, or other reports identifying the material properties used in the modeling are relevant and discoverable.

In making this argument, however, TBW ignores the critical fact that seepage or embankment modeling depends upon input variables different and distinct from one project to another.   The modeling information TBW seeks to obtain from BCI is not modeling performed by BCI in an attempt to replicate the modeling performed by HDR regarding the Reservoir.  Rather, the modeling information sought by TBW concerns modeling performed by BCI regarding five unrelated and materially different reservoirs. As such, the modeling performed by BCI for the five unrelated reservoirs would in no way assist TBW in determining whether HDR conducted transient seepage modeling for the Reservoir.  Nor would the modeling for these five other reservoirs assist TBW in

6

proving the permeability or hydraulic conductivity of the soil cement at the Reservoir as the values assigned for the permeability and/or hydraulic conductivity of soil cement also differs from one project to another. Consequently, TBW cannot show how BCI's modeling would be relevant or reasonably calculated to lead to the discovery of admissible evidence. Due to TBW failure to demonstrate the relevancy of the information sought in the subpoena, its Motion to Compel should be denied.

> B. **The Modeling Performed by BCI Regarding the Five Reservoirs that are the Subject of the Subpoena are also Irrelevant Because these Reservoir Projects Differ Substantially and Materially from the Subject Reservoir**

The second reason TBW advocates in support of its position that the documents sought in the subpoenas are relevant is that such documents will assist it in determining "how Bromwell and BCI approached the design and modeling in the five reservoirs identified as having the same purpose as the Reservoir, having many of the same design elements and using the same modeling analyses in order to evaluate the reliability of his expert opinion regarding the cause of the cracking experienced at the Reservoir." Dkt. 248, Motion to Compel of TBW at pp. 12-13. In making this argument, TBW appears to be contending that the five reservoirs which are the subject of its subpoena are substantially similar to the Reservoir thereby rendering information related to BCI's modeling and other documents related to the design of the five reservoirs relevant. TBW fails, however, to set forth a basis as to why this argument would make BCI's modeling information relevant. Regardless, TBW's reasoning is flawed because the Reservoir and the five reservoirs included within the subpoena are not substantially similar. The claim by TBW that the five reservoirs are similar to the subject Reservoir is factually untrue as evidenced by reading the deposition excerpts of Dr. Bromwell attached to TBW's Motion

to Compel.[3]  Because of this, the modeling of the five reservoirs has no bearing Dr. Bromwell's opinion as to the cause of cracking of the Reservoir.

TBW's pore pressure theory is based upon water becoming trapped in the wedge of soil located between the soil cement facing and the impermeable geomembrane. Essentially, TBW alleges that water cannot drain vertically through the soil wedge because of the existence of the impermeable geomembrane forcing the water to drain horizontally toward the soil cement facing. As a result, the existence of both the soil cement facing and geomembrane are key components to TBW's pore pressure theory. Yet, none of the five reservoirs identified in the subpoena were constructed with a geomembrane. Exhibit "C" at p. 55. Moreover, the Section 24, Lake Point and Sibarau Reservoirs do not have a soil cement facing. Exhibit "C" at pp. 80, 84 and 87. As a result, the embankment construction of these five reservoirs differs substantially from the construction of the embankment of the Reservoir in that all five of the reservoirs subject to the subpoena lack the existence of a soil wedge which is so instrumental to TBW's pore pressure theory.

The lack of a soil wedge in the five other reservoirs makes the discovery sought by TBW irrelevant, but there are other differences which further show why the discovery is neither relevant nor reasonably calculated to lead to admissible evidence. For the Reservoir, the embankment height ranges from 30 to 65 feet with approximately 45,000 acre-feet of storage volume (which equates to 15 billion gallons). In contrast, the embankment height for C-51 is considerably lower as its average height is just 24 feet. Exhibit "C" at p. 55.  The Loxahatchee reservoir has an embankment height of only 12

---

[3] For ease of reference the Deposition excerpts of Dr. Bromwell are attached hereto as composite Exhibit "C."

feet.  Exhibit "C" at p. 64.  The embankment for the Section 24 Reservoir is only ten feet high.  Exhibit "C" at p. 77.  Similarly, the Lake Point Reservoir will have an average embankment height of only ten feet.  Exhibit "C" at p. 83.  Finally, the Siburua Reservoir has an average embankment height of 25 feet.[4]  Exhibit "C" at p. 86.  Only the C-51 and Loxahatchee Reservoirs are similar in size to the subject Reservoir.  Each of these three reservoirs are about 45,000 acre-feet.  Exhibit "C" at p. 81.  The other reservoirs are much smaller.  The Section 24 Reservoir is only 600 acre-feet, the Lake Point Reservoir is 25,000 acre-feet and the Siburau Reservoir is 2,500 acre-feet.  Exhibit "C" at pp. 81, 84 and 86.

Another input for modeling involves the drawdown rate for the pool within the reservoir.  For the Reservoir, HDR at the request of FDEP, modeled three drawdown conditions:  operational draw down, emergency operational draw down and rapid drawdown.  For the C-51 Reservoir, BCI is still setting up the modeling for analyzing drawdown and has not completed its analyses.  Exhibit C at pp. 57-58.  For the Loxahatchee Reservoir, drawdown rates were not included as a permit condition.  While the Loxahatchee Reservoir can accommodate various drawdown rates, the range of draw down rates is still not fixed. Significantly, though, Dr. Bromwell testified that modeling drawdown for the Loxahatchee Reservoir was different than it would have been for the Reservoir because its operation depends on a number of variables that may change over time as it is not intended strictly for municipal water supply.  Exhibit "C" at pp. 72-73.  BCI modeled the Section 24 Reservoir for just a single draw down rate.  Exhibit "C" at pp. 80-81.  Since the modeling for drawdown rates is not similar, BCI's modeling

---

[4] The Siburua Reservoir is located in Venezuela and is a project that Dr. Bromwell worked on in 1964 when a graduate student at MIT.

information is neither relevant to nor likely to lead to the discovery of admissible evidence of TBW's pore pressure theory.

Because the Reservoir differs substantially from the five reservoirs for which TBW requests information, the modeling performed by BCI for these five reservoirs is not useful in evaluating the reliability of Dr. Bromwell's opinion regarding the cause of the cracking of the soil cement facing. Comparing the Reservoir to the five other reservoirs is like comparing apples to oranges. While both are fruits, the comparisons stop there. As a result, the information sought in the subpoena is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Consequently, this Court should deny TBW's Motion to Compel.

## II. RESPONDING TO THE SUBPOENA IS OVER BURDENSOME

TBW completely ignores BCI's objection that responding to the subpoena would be burdensome in terms of scope and time. In issuing the subpoena, TBW must take reasonable steps to avoid imposing an undue burden or expense on BCI. Fed. R. Civ. P. 45(c)(1). In considering whether a request is over-broad, the Court must balance the relevance of the request, the need of the party to obtain the documents, the breadth of the document request, the time period covered by the request and the particularity with which the documents are described against the burden imposed in producing the documents. *U&I Corp. v. Advanced Medical Design, Inc.*, 2007 WL 4181900 (M.D. Fla. November 26, 2007); *Schaaf v. Smithkline Beecham Corp.*, 2006 WL 2246146 (M.D. Fla. August 4, 2006). Even if the documents are considered relevant, the breadth of the requests in the subpoena are over-broad; the document request is fairly non-specific when considering

the definitions provided with the subpoena; TBW can obtain documents related to these projects from other sources; and the expense of responding to the subpoena is prohibitive.

### A. The Breadth of the Subpoena is Over-Broad

DiAnn Lisica, an administrative assistant with BCI, has averred that responding to the subpoena would require her to gather the following: 15 banker boxes and storage drawers of paper records; 41 administrative files; 21 three-ring binders; 3 flat files, each of which includes at least 50 pages of drawings; and 2 engineer files.[5]  Exhibit "D" at ¶ 3. Some of these documents are located with the offices of BCI and other records would need to be retrieved by Ms. Lisica from an offsite storage facility. Exhibit "D" at ¶ 5. In addition, Ms. Lisica is required to assemble all electronic records related to these projects. Ms. Lisica estimates that the electronic records for the four projects for which records exists totals 1,100 gigabytes, which includes over 90,000 electronic files contained in over 24,000 electronic folders. Exhibit "D" at ¶ 4. In fact, some of the documents sought related to a project more than forty years old which Dr. Bromwell worked on while a graduate student.

A subpoena requiring a non-party to sort through more than 54,000 emails in addition to other written correspondence was deemed overbroad. *Fadalla v. Life Automotive Products, Inc.*, 258 F.R.D. 501, 507 (M.D. Fla. 2007). Similarly, this Court found a subpoena directed to a non-party to be over-broad where the non-party would have had to produce over 100,000 pages of documents. *Southern Pan Services Co., v. S.B. Ballard Construction Co.*, 2009 WL 1405100 (M.D. Fla. May 19, 2009). A non-party subpoena requiring production of every "company generated document of his

---

[5] The affidavit of DiAnn Lisica is attached hereto as Exhibit "D."

employer" for a ten year period was over-broad on its face. *Schaaf* at *2. The Southern District of Florida found a subpoena directed to a non-party seeking "any and all documents, files and records" relating to the employment of each Plaintiff to be over-broad on its face. *Barrington* at *4. A subpoena directed at two law firms which required them to "sift" through voluminous documents and information was deemed overbroad especially when the party issuing the subpoena failed to demonstrate the relevance of the information subject to the subpoena and that the records were not available by some other means. *Davidson v. Government Employees Insurance Co.*, 2010 WL 4342084 (M.D. Fla. October, 26, 2010). These cases all support the claim that the subpoena directed to BCI is overbroad given the voluminous number of paper and electronic files that must be retrieved and reviewed by BCI in order to determine those documents which might be responsive to the subpoena.

### B. The Cost to be Incurred by BCI in Responding to the Subpoena Would be Over Burdensome

Additionally, BCI will incur substantial cost in responding to the subpoena. A court is required to protect a non-party from significant expense resulting from compliance with a subpoena. *Bozeman v. Chartis Casualty Co.,* 2010 WL 4386826 (M.D. Fla. October 29, 2010), citing, Fed. R. Civ. P. 45. In *Bozeman*, the court recognized that to comply with the subpoena, the non-party would be required to review its files to determine responsive documents as well as privileged documents. As a result, the Court shifted some of the cost associated with this review to the party issuing the subpoena. *Id*. at *4.

It should also be noted that Fed. R. Civ. P. 26 specifically provides that the Court must require that the party seeking expert discovery pay the expert a reasonable fee for

the time spent responding to discovery related to the expert's opinions. Fed. R. Civ. P. 26(e). The same rationale is even more compelling here. Because the party seeking discovery from an expert is required to pay a reasonable fee to the expert for the time spent providing the mandated disclosures, TBW, who is seeking discovery from BCI that goes well beyond discovery related to Dr. Bromwell's opinions in disclosure, must be required to pay the costs of such discovery to Dr. Bromwell here.

      Ms. Lisica estimates that it will take her a total of 40 hours to gather all of the paper and electronic records related to the four reservoir projects. Exhibit "D" at ¶ 5. Dr. Bromwell and other engineers employed by BCI will be required to review all of the paper and electronic records to determine the specific documents responsive to the subpoena. Dr. Bromwell estimates that it will take him and another engineer a total of 100 hours to review the paper and electronic records.[6] Exhibit "E" at ¶ 11. Ms. Lisica, Dr. Bromwell and the other engineer who will review documents must put aside other work and work overtime to perform this review. Exhibit "D" at ¶¶ 7-8 and Exhibit "E" at ¶ 12. The estimated cost associated with the labor necessary to assemble the records is estimated to cost $2,320.00. Exhibit "D" at ¶¶ 9-10. The cost associated with reviewing the records to determine which documents are responsive to the subpoena totals $17,850.00. Exhibit "E" at ¶¶ 13-14. Given the significant expense associated with responding to the subpoena, the Court should simply find it to be over burdensome. However, if this Court, which has broad discretion in allocating costs associated with discovery, concludes that BCI is required to respond to the subpoena, it should shift the

---

[6] The Affidavit of Dr. Les Bromwell is attached hereto as Exhibit "E."

13

cost associated with gathering the records and reviewing the records to TBW. *Bozeman* at *4.

### C. Other Less Intrusive Means Exist to Obtain Documents Responsive to the Subpoena

Another factor to consider is whether less intrusive means exist to obtain the requested information. *Maxwell v. Health Center of Lake City, Inc*., 2006 WL 1627020, *3 (M.D. Fla. June 6 2006) (Courts have the discretion to limit discovery where it is obtainable from some other source that is more convenient, less burdensome or less expensive). TBW recognizes in its Motion to Compel that many of the documents which it seeks are clearly available from public agencies. Dkt. 248, Motion to Compel of TBW at pp. 13-14. Dr. Bromwell confirms that certain documents have been filed with public permitting agencies. Exhibit "E" at ¶ 7. Before burdening BCI with responding to the subpoena, TBW should first obtain the documents filed with the various public agencies. In deposition, TBW asked Dr. Bromwell the identification of the public permitting agencies. Exhibit "C" at pp. 53, 58-59, 62, 66-67, 74 and 83. Obtaining records through public agencies is a much less intrusive means to obtain the requested records and would eliminate the burdensomeness on BCI in gathering and reviewing records in order to respond to the subpoena.

Additionally, TBW has already engaged in discovery related specifically to the modeling performed by HDR and the permeability or hydraulic conductivity value assigned to the soil cement facing of the embankment. This discovery has included interrogatories and inquiring of various witnesses during deposition about the modeling and how it was performed. In fact, based on the discovery conducted, TBW's own experts have rendered opinions critical of HDR's modeling.

One of the witnesses deposed by TBW is Barry Meyer, P.E. Mr. Meyer acted as the Engineer of Record for HDR for the Reservoir. TBW deposed Mr. Meyer over 3 days in September, 2010. During this deposition, TBW explored with Mr. Meyer the modeling he performed, including whether he performed transient seepage modeling.[7] In fact, Mr. Meyer explained in detail the modeling he performed, including transient seepage analysis, and the permeability value assigned to the soil cement facing.

Further, HDR responded to interrogatories of TBW seeking modeling information.[8] In responding to these interrogatories, HDR specified various modeling inputs. Additionally, HDR specified the permeability value for the soil cement facing.

In five total days of deposition of Dr. Bromwell, TBW explored with him whether HDR performed transient seepage modeling of the Reservoir. Dr. Bromwell also answered questions regarding the permeability values he assigned to the soil cement facing of the Loxahatchee and C-51 Reservoirs. See Exhibit "C" at pp. 57-65. TBW was free to explore every aspect of modeling for these five other reservoirs. Moreover, TBW filed its Motion to Compel on December 15, 2010, the final day of Dr. Bromwell's deposition. Certainly, TBW could have utilized this final day of questioning of Dr. Bromwell to obtain any information it deemed relevant. This would have been a much less burdensome and intrusive means of obtaining the information then forcing BCI to conduct an extremely time consuming and expensive review of its paper and electronic records.

This deposition testimony and interrogatory responses are sufficient for the grounds TBW asserts it needs the information as the requested burdensome discovery is

---

[7] Excerpts of the Deposition of B. Meyer are attached hereto as Exhibit "F."
[8] The interrogatory responses of HDR are attached hereto as Exhibit "G."

neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The actual modeling conducted by BCI for these five other reservoir projects would not assist TBW in ascertaining or confirming whether HDR performed transient seepage modeling for the Reservoir. Quite simply, whether BCI performed transient seepage modeling for the five other reservoir projects in which it was involved would not prove or disprove whether HDR performed such modeling for the Reservoir. Furthermore, the modeling performed by BCI would not prove or disprove the permeability or hydraulic conductivity HDR assigned to the soil cement facing. Consequently, the documents sought in the subpoena served on BCI are neither relevant to the issues in this case nor likely to lead to the discovery of admissible evidence.

### III.  DOCUMENTS NOT FILED WITH PUBLIC AGENCIES ARE CONFIDENTIAL

Although BCI had to submit various documents to public agencies for permitting purposes, many of the other documents subject to the subpoena were never filed with a public agency. These are documents prepared for private entities, and, according to Dr. Bromwell, are to be kept confidential pursuant to BCI contracts with these private entities. Exhibit "D" at ¶ 7. By producing records not filed with a public agency, BCI would be in breach of its contracts with its clients. *See Fadalla* at 506 (Party objecting to discovery established that information requested was a confidential trade secret and that disclosure of such information would be harmful because disclosure would require the party to breach its non-disclosure and secrecy agreements). BCI should not be placed in the position of breaching contractual provisions with its clients, who have no interest or involvement in this litigation on non-similar projects, so as to comply with the subpoena unless TBW can demonstrate a substantial need for the documents. *Id*. In this case,

16

TBW, as discussed herein, cannot demonstrate a substantial need for the documents given that such documents are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and certain of the documents can be obtained directly from public agencies.

In this situation, TBW's offer of maintaining confidentiality by protective order does not suffice. First, without offering any case law support, TBW would have BCI, a non-party expert, be subjected to full disclosure of documents and information which are subject to confidentiality agreements and which are wholly unrelated to its work in this case. Second, TBW's position that a confidentiality agreement would resolve all problems does not take into account the rights of the other parties to assert a claim of confidentiality or even provide notice to such parties so that they could determine whether to assert a claim of confidentiality. Third, TBW is itself a public agency meaning that these documents may be subject to disclosure post-litigation via a public records request. For these reasons, a confidentiality agreement does not resolve the issues.

## IV.     CONCLUSION

For the reasons set forth herein, the Motion to Compel of TBW should be denied and BCI should not be required to respond to the subpoena served on it by TBW.

Dated: January 3, 2011.          **FORIZS & DOGALI, P.A.**

/s/ *James K. Hickman*
TIMOTHY D. WOODWARD, ESQUIRE
Florida Bar No.: 0486868
twoodward@forizs-dogali.com
JAMES K. HICKMAN, ESQUIRE
Florida Bar No.: 0893020
jhickman@forizs-dogali.com

        4301 Anchor Plaza Parkway, Suite 300
        Tampa, FL  33634
        Telephone 813-289-0700; Facsimile 813-289-9435

        **SEDGWICK, DETERT, MORAN & ARNOLD LLP**

        WAYNE B. MASON, ESQUIRE
        wayne.mason@sdma.com
        Admitted *Pro Hac Vice*
        KURT W. MEADERS, ESQUIRE
        kurt.meaders@sdma.com
        Admitted *Pro Hac Vice*
        DAVID C. KENT, ESQUIRE
        David.kent@sdma.com
        Admitted *Pro Hac Vice*
        1717 Main Street, Suite 5400
        Dallas, TX  75201-7367
        Telephone 469-227-8200; Facsimile 469-227-8004
        *Attorneys for HDR Engineering, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of January 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

        */s/ James K. Hickman*
        JAMES K. HICKMAN, ESQUIRE
        Florida Bar No.: 0893020
        jhickman@forizs-dogali.com