IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMPA BAY WATER,
a regional water supply authority,

       Plaintiff,

v.

HDR ENGINEERING, INC., a Nebraska
corporation; CONSTRUCTION
DYNAMICS GROUP, INC., a Maryland
corporation; BARNARD CONSTRUCTION
COMPANY, INC., a Montana corporation;
ST. PAUL FIRE AND MARINE
INSURANCE COMPANY, a Minnesota
corporation,

       Defendants.
_____/

Case No. 8:08-cv-02446-JDW-TBM

**HDR ENGINEERING, INC.'S RESPONSE IN OPPOSITION TO
TBW'S MOTION FOR LEAVE TO AMEND COMPLAINT [#257]**

HDR Engineering, Inc. responds in opposition to TBW's Motion For Leave To Amend Complaint [#257]:

I.
SUMMARY

HDR **opposes** TBW's Motion for Leave to Amend because it seeks to materially change TBW's claims in an untimely manner that would significantly prejudice HDR. The proposed amendments do more than simply clarify existing pleadings or conform the pleadings to the evidence. They significantly change the substance of TBW's suit by raising new claims concerning events and issues that have long been known to TBW, but which have not been the basis of its suit and therefore not the focus of discovery, expert reports or witness testimony.

**HDR'S RESPONSE IN OPPOSITION TO
TBW'S MOTION TO AMEND COMPLAINT**  – Page 1

Until now, TBW's Complaint against HDR—as originally filed in December 2008 and as amended in November 2009—has focused on two well-defined aspects of the Reservoir project: HDR's design of the embankment "wedge" and its quality control of the wedge's construction. Now, two years after filing suit, one year after filing its First Amended Complaint, and after discovery closed, TBW wants to add new claims focused on pre-design activities (Count I, the geotechnical site study performed by two of HDR's subconsultants) and post-construction activities (Counts VI and VII, HDR's investigation into the cause of the cracking). Additionally, TBW wants to state as separate causes of action two theories it describes as "alternative claims" regarding HDR's design and construction-related activities (Counts VIII and IX).

The proposed new Counts I, VI and VII concern claims known to TBW for years, before it filed suit, but do not arise from the same operative core of facts on which TBW based its prior claims. No legitimate reason exists for TBW to have waited so long to raise the proposed claims in Counts I, VI and VII. It could have done so in its original Complaint in December 2008, and certainly in its First Amended Complaint in November 2009, which would have predated the parties' expert witness designation dates by several months, as well as the dates of virtually all of the fact witness depositions. Including the claims at that time would have affected everyone's discovery efforts. By waiting until after discovery has closed, however, TBW has effectively created a new lawsuit, to HDR's great disadvantage.

The proposed alternative claims in Counts VIII and IX are just subsets of already pled causes of action and do not warrant statement as separate counts. They are unnecessary, and it would be improper to treat them as distinct causes of action for separate presentation to the jury. In sum, TBW's Motion exemplifies the policy reasons behind the provisions in both the Local

**HDR'S RESPONSE IN OPPOSITION TO
TBW'S MOTION TO AMEND COMPLAINT** – Page 2

Rules and the Case Management Order that "severely" disfavor late-filed amendments.[1] Those policy reasons dictate denial of the Motion.

II.
STANDARD OF REVIEW

TBW spends a fair amount of time discussing the differences between amendments offered under Rule 15(a) ("freely given") and those offered under Rule 16(b) ("good cause").[2] It does not matter which standard the Court uses in evaluating TBW's Motion, because the Motion fails under either one. Under Rule 15(a), courts may deny motions for leave to amend for any one of several reasons: (1) bad faith, undue delay, dilatory motives, or repeat failures to cure deficiencies by amendments on the part of the moving party; (2) futility of the amendment; or (3) prejudice to the opposing party. *Ulrey v. Twiss Transp., Inc.*, 17 Fla. L. Weekly Fed. D. 719, *2-3 (M.D. Fla. 2004) (Whittemore, J.); *Perez v. Pavex Corp.*, 2002 U.S. Dist. LEXIS 21871, *4 (M.D. Fla. 2002) (Whittemore, J.)(*citing Foman v. Davis*, 371 U.S. 178 (1962)). These are separate and independent grounds for denial of the Motion. Any one of them suffices, but in this case multiple grounds apply.

When amendments add new legal issues and risk adding more discovery in comparison to that already conducted (as these would), a justifying reason exists to deny leave to amend. *See Ultratech Int'l, Inc. v. Swimways Corp.*, 2009 U.S. Dist. LEXIS 80997, *10 (M.D. Fla. 2009); *Pilkington v. United Airlines, Inc.*, 158 F.R.D. 508, 510 (M.D. Fla. 1994). The changes that would be wrought by TBW's proposed amendments are so significant that they run afoul of both these principles. Since TBW's Motion does not pass muster under the standards of Rule 15(b), it necessarily fails under Rule 16's stricter "good cause" standard, too.

---

[1] Local Rule 3.05(c)(3)(D) (applicable to Track Three Cases such as this one).

[2] TBW's Motion for Leave to Amend, pp. 12-16.

**HDR'S RESPONSE IN OPPOSITION TO**
**TBW'S MOTION TO AMEND COMPLAINT** – Page 3

III.
PROPOSED AMENDMENTS TO COUNT I:
GEOTECHNICAL SITE CHARACTERIZATION STUDY

A.   New Claims

TBW asserts that its proposed amendments to Count I merely "expand and clarify" its existing claim for professional negligence/breach of contract in HDR's allegedly defective design.[3] To the contrary, the proposed amendments, which add five pages of new allegations,[4] materially change the scope of TBW's suit by putting into contest a part of the project that has not previously been in issue, *i.e.,* the pre-design geotechnical site characterization work performed by two of HDR's subconsultants, Law Engineering & Environmental Services ("LAW") and Ardaman & Associates.[5] In its Original Complaint [Docket #1, December 2008] and the Amended Complaint [Docket #125, November 2009], TBW focused on HDR's design of the embankment wedge, not the pre-design site characterization analysis.

B.   Untimely Amendments

By TBW's own admission, the genesis of the geotechnical site characterization studies was a 1996 contract between TBW and HDR's predecessor, LAW.[6] After HDR became engineer of record, it subcontracted with LAW and Ardaman to perform the studies, which TBW states were completed in 1999 and 2000.[7] TBW has had knowledge of the site characterization work for more than a decade. No reason or justification exists for TBW to have waited more than two years after filing suit and after the close of an eighteen-month-long discovery period before amending to raise these new claims. No "newly-discovered" evidence previously unknown to

---

[3] Motion for Leave to Amend, ¶14(a), p.4.

[4] Proposed 2nd Amended Complaint, ¶¶76–87, pp. 15-19 [Docket # 257-1].

[5] Proposed 2nd Amended Complaint, ¶¶76–80, pp. 15-17.

[6] Proposed 2nd Amended Complaint, ¶22, p. 7.

[7] Proposed 2nd Amended Complaint, ¶¶29-30, p. 8.

**HDR'S RESPONSE IN OPPOSITION TO
TBW'S MOTION TO AMEND COMPLAINT** – Page 4

TBW has suddenly come to light concerning these studies. They were source documents available to and in the possession of TBW throughout the course of the Reservoir's design, construction and operation. TBW offers no reason why they just now became important enough to warrant inclusion in the Complaint, and there is none.

### C.     Futility of Claim

Adding this new Count after the eleventh hour would be futile, because it would constitute a new claim barred by the statute of limitations and statute of repose. The Florida statute of limitations for a contract-based professional negligence claim sets a basic two-year period, subject to a discovery rule for latent defects. FLA. STAT. § 95.11(3)(c). The statute also contains a repose provision, the applicable part of which sets an absolute outside time limit of ten years from completion of the work.[8] According to TBW's proposed pleadings, the initial geotechnical site characterization work was performed and "completed" by HDR's subconsultant LAW in December 1999, with the supplemental work being "completed" by subconsultants LAW and Ardaman in August 2000.[9] This created an outer limit of August 2010 for TBW to assert any claims about the geotechnical site characterization work.

TBW filed suit in December 2008, on the eve of the two-year anniversary of its discovery of the unusual soil cement cracking. It did not assert claims about the geotechnical site characterization work at that time. Nor did it do so a year later in its First Amended Complaint. Instead, it has waited until the end of December 2010–more than four months after the ten-year

---

[8]  "In any event, the action must be commenced within 10 years . . . ." FLA. STAT. § 95.11(3)(c). The statute measures the 10-year period from the later of several possible dates, most of which are not applicable here: (1) the date of actual possession by the owner (not applicable, since TBW owned the site from the beginning); (2) the date of the issuance of a certificate of occupancy (not applicable); (3) the date of abandonment of construction if not completed (not applicable), or (4) the date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer (applicable provision).

[9]  Proposed 2nd Amended Complaint, ¶¶29-30, p. 8.

**HDR'S RESPONSE IN OPPOSITION TO**
**TBW'S MOTION TO AMEND COMPLAINT** – Page 5

period of repose had expired–to seek leave to add its new claims about the geotechnical site characterization work. It is too late to do so, because those claims are time-barred, under both the two-year statute of limitations and the ten-year statute of repose. Therefore, allowing the amendment would be futile, because the claims would not survive dismissal.

In making these new claims, TBW cannot rely on the "relation back" provisions of Rule 15(c)(1) to avoid limitations. Rule 15(c)(1)(A) provides that relation back is allowed in a federal case when it is "permitted by the law that provides the statute of limitations applicable to the action." Florida Rule of Civil Procedure 1.190(c), which follows Federal Rule 15(c)(1)(B) almost verbatim, provides that an "amendment shall relate back to the date of the original pleading" where "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." FLA. R. CIV. P. 1.190(c). *Cf.* Fed. R. Civ. P. 15(c)(1)(B), whose wording is almost identical.

The Supreme Court has cautioned that the terms "conduct, transaction, or occurrence" are narrowly construed. *Mayle v. Felix*, 545 U.S. 644, 660-664 (2005). As that court makes clear, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659. In other words, in order for the claims in an amended complaint to relate back, they must be of the same "time and type" as those in the original complaint such that they arise from the same "core of operative facts." *Id.* at 650, 657. An amendment that states an entirely new claim for relief based on different facts will not relate back. *See Dean v. United States*, 278 F.3d 1218, 1222 (11th Cir. 2002) (*citing Forzley v. AVCO*, 826 F.2d 974, 981 (11th Cir. 1987)).

Rule 15(c)(1)(B) is "to be used for a relatively narrow purpose" and is not intended "to be so broad to allow an amended pleading to add an entirely new claim based on a different set of

**HDR'S RESPONSE IN OPPOSITION TO**
**TBW'S MOTION TO AMEND COMPLAINT** – Page 6

facts." *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003). "[T]he critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." *Davenport v. United States*, 217 F.3d 1341, 1345 n.8 (11th Cir. 2000) (citation omitted).

As it pertains to this large and complex construction project, the Court may find guidance from the application of Rule 15(c) in prisoner habeas corpus proceedings, where generic claims of ineffective assistance of counsel that are raised in a timely fashion are often followed much later (in an untimely fashion) by more refined claims targeting particular actions of defense counsel. In those cases, the terms "conduct, transaction or occurrence" do not encompass the entire trial, conviction and sentencing process. General claims that counsel did an inadequate job of preparing for trial or representing the defendant do not create a "core of operative facts" from which specific claims focused on particular acts may later be drawn. Consequently, courts routinely deny motions to amend on grounds of futility, because the proposed amendments would be time-barred. *See, e.g., Roberts v. Sec'y, DOC*, 2010 U.S. Dist. LEXIS 100615, *30-31 (M.D. Fla. 2010 (Whittemore, J.) (claims that counsel was ineffective in failing to present experts with sufficient information regarding Petitioner's mental health and prescription medication history and in failing to interview or elicit testimony from psychiatrist who prescribed the medicine did not relate back); *Payne v. United States*, 2007 U.S. Dist. LEXIS 9835, *22-23 (M.D. Fla. 2007) (Whittemore J.) (claims that counsel failed to show Petitioner a videotape of a drug transaction, which allegedly adversely affected his plea negotiations, did not relate back to original claims of counsel's inadequate preparation for trial).

Bankruptcy proceedings provide similar results. Timely-filed objections to discharge based on certain alleged fraudulent transactions do not authorize amendments listing new or

**HDR'S RESPONSE IN OPPOSITION TO
<u>TBW'S MOTION TO AMEND COMPLAINT</u>** – Page 7

additional transactions, which otherwise would be time-barred. *See, e.g., In re Leonard*, 21 Fla. L. Weekly Fed. B 613, *7 (Bankr. S.D. Fla. 2009) (time-barred claims about debtor's post-petition fraudulent transfer do not relate back to timely-filed claims about debtor's misrepresentations and omissions in petition and schedules, Rule 341 meeting of creditors and Rule 4004 examination under oath). *See also Coachmen Indus. v. Royal Surplus Lines Ins. Co.*, 2007 U.S. Dist. LEXIS 46134, *43-44 (M.D. Fla. 2007) (relation back not allowed when based on references to pleadings from different suit); *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1260 (11th Cir. 2008) (relation back not allowed in *qui tam* actions).

TBW's proposed amendments to Count I exemplify these type of new claims. In the broadest sense, TBW's new claims relate to the Reservoir project. But that is not enough to satisfy the requirements of Rule 15(c). The Reservoir project was a major undertaking that encompassed a tremendous amount of work, took the better part of a decade to complete, cost well in excess of $100 million,[10] and did not evidence signs of damage until more than a year after construction was complete and the Reservoir was in its second draw down cycle. TBW did not sue HDR for any and all aspects of HDR's work. Instead, it sued for specific aspects of HDR's design of the embankment wedge and construction activities related to the wedge. The pre-design geotechnical site characterization work performed by two of HDR's subconsultants before design cannot fairly be said to grow out of this "core of operative facts." Instead, it constitutes an untimely claim barred by limitations and repose, and therefore is a futile amendment.

---

[10] The total costs rise to $150-$200 million if one includes the costs of land acquisition and construction of the pumping stations, in addition to the engineering and construction costs of the Reservoir itself.

**HDR'S RESPONSE IN OPPOSITION TO**
**TBW'S MOTION TO AMEND COMPLAINT** – Page 8

### D. Prejudice to HDR

Had TBW put the site characterization phase of the work at issue in a timely fashion, HDR would have made specific, concerted efforts to analyze and defend against the allegations. This would have involved different considerations for HDR's experts, selection of which fact witnesses HDR would choose to depose during discovery, and HDR's strategies in deposing other parties' experts. TBW had the operative information about these studies at the time of its Original Complaint in December 2008 and certainly by the time of its First Amended Complaint in November 2009. That amendment was filed more than four years after construction was completed and the Reservoir became operational,[11] three years after the unusual cracking appeared, and one year after suit was filed. More importantly, the First Amended Complaint was filed several months before the parties' deadline for designating experts, and before the parties began intensive depositions. Since TBW did not raise these claims in its First Amended Complaint, expert reports and expert and fact witness depositions did not focus on them. By waiting thirteen months after filing its First Amended Complaint (and after discovery had closed) to raise these claims, TBW has delayed too long. The prejudice to HDR is severe. The Motion must be denied.

IV.
PROPOSED NEW COUNTS VI AND VII:
HDR'S POST-CRACK INVESTIGATION

### A. New Claims

TBW's tardiness in proposing the addition of Counts VI and VII is even more egregious. These new claims unquestionably relate to a "time and type" of work that has <u>never</u> previously been at issue and which would interject a plethora of new issues into the litigation. For the past

---

[11] TBW alleges construction was completed in April 2005, and the Reservoir became operational in June 2005. Proposed 2nd Amended Complaint, ¶¶64 - 65, p.14.

**HDR'S RESPONSE IN OPPOSITION TO
TBW'S MOTION TO AMEND COMPLAINT** – Page 9

two years, the parties have been litigating the design and construction of the embankment wedge, which was all completed by June 2005. Now, TBW suddenly wants to sue HDR for work it did not even begin to perform until eighteen months later in December 2006 (years after the design was done and construction ended). TBW contractually engaged HDR in December 2006 to investigate the cause of the cracking and to recommend solutions for it.[12] TBW terminated HDR's contract for these (and all other) services in October 2008, when TBW's Board voted to initiate this litigation against HDR.[13] One of the very reasons TBW took these actions was because it was dissatisfied with HDR's post-crack investigative efforts. But it has waited until now to make this a claim for liability and damages.

### B. <u>Untimely Amendments</u>

TBW fired HDR from the post-crack investigation work in October 2008. As per TBW's own allegations, it knew full well at that time that HDR had not yet identified the root cause of the unusual cracking at the Regional Reservoir. If TBW desired to sue HDR for what it now contends to have been negligent inspection work, it should have asserted those claims when it filed its initial Complaint in December 2008 or its First Amended Complaint in November 2009. In fact, in August 2009—<u>three months before filing</u> the First Amended Complaint—TBW's trial counsel advised the Board of "serious questions about HDR's conduct" during the post-crack investigation, specifically including the role of HDR's consultant, Dr. Edward Link, which TBW's counsel said "appears to be inconsistent with everything [HDR] said during the investigation."[14]

---

[12] Proposed 2nd Amended Complaint, ¶143, p.30.

[13] Proposed 2nd Amended Complaint, ¶148, p.30.

[14] Minutes of the TBW Board Meeting, Aug. 2009, p.103 (Exhibit A hereto).

**HDR'S RESPONSE IN OPPOSITION TO
TBW'S MOTION TO AMEND COMPLAINT** – Page 10

TBW tries to justify its delay by suggesting it did not know enough to assert these claims until recently.[15] That simply is not true. TBW was aware of the alleged facts and available claims long before it ever filed suit. Indeed, TBW's corporate representative Jon Kennedy (who was head of TBW's internal review and investigation team)[16] testified in deposition that TBW's "frustration" with HDR's "failed investigation" lead it to file suit to begin with.[17] TBW had retained its system engineer, Black & Veatch, to begin looking over HDR's shoulder and double-checking its work in late summer or early fall of 2007.[18] By the summer of 2008, TBW had hired Black & Veatch to do an independent root cause analysis of the cracking and to find a solution.[19] By August 2008, according to Kennedy, TBW felt HDR's failure to find an answer was an "intolerable situation."[20] Kennedy testified he no longer had a good working relationship with HDR and would not even have taken a phone call from HDR's lead engineer, Barry Meyer.[21]

The "turning point," Kennedy said, was in late August 2008, after HDR failed its "one last chance" to provide an answer for the cracking, whereupon TBW decided to sue.[22] In February 2009 – two months after suit was filed – Black & Veatch reported its conclusion that excess pore pressure was the cause of the cracking.[23] As already noted, TBW's own trial counsel was advising TBW about the very facts and concerns that now form the basis of Counts VI and VII in August 2009, months before filing the First Amended Complaint.

---

[15] Motion for Leave to Amend, ¶¶18 - 19, pp.5-6.

[16] Deposition of Jon Kennedy, I:114:12-14 (October 21, 2010), Exhibit C hereto.

[17] Kennedy depo., II:155:4 – 156:1; II:207:17 – 208:5 (Oct. 21, 2010), Exhibit D hereto.

[18] Kennedy depo., II:182:19 -183:10 (June 11, 2010)(Ex. B); I:27:23 – 28:7, 116:16 -117:7 (October 21, 2010), Exhibit C hereto.

[19] Kennedy depo., III:304:6 – 305:19 (October 22, 2010), Exhibit E hereto.

[20] Kennedy depo., II:208:3 - 5 (Oct. 21, 2010) (Ex. D).

[21] Kennedy depo., II:151:18 – 25 (June 11, 2010) (Ex. B); III:365:8 – 14 (Oct. 22, 2010) (Ex. E).

[22] Kennedy depo., II:164:1 – 165:5 (June 11, 2010) (Ex. B); II:235:9 -236:5 (Oct. 21, 2010)(Ex. D).

[23] Kennedy depo, I:28:18 – 29:10 (Oct. 21, 2010) (Ex. C); III:305:20 – 306:5 (Oct. 22, 2010) (Ex. D).

**HDR'S RESPONSE IN OPPOSITION TO
TBW'S MOTION TO AMEND COMPLAINT** – Page 11

Thus, contrary to what TBW now tells the Court, Counts VI and VII did not spring afresh from information recently acquired.[24] TBW knew of these facts and potential claims long ago: before filing suit, before filing its First Amended Complaint, before designating experts, before document production, and before depositions. But it waited until after the close of discovery to even mention it as a possible claim. The only reasonable inference one could draw from this delay is that it was a purposeful decision calculated to unduly prejudice HDR. It is sufficiently dilatory to warrant denial of the Motion for Leave.

Though discussing a motion for leave in the context of Rule 16, the words of the Eleventh Circuit are particularly applicable here. In *Valpak Direct Mktg. Sys. v. Maschino*, 349 Fed. Appx. 368, 369 (11th Cir. 2009), the court affirmed the denial of a motion to add a claim for breach of the implied covenant, because all of the facts necessary to the proposed counterclaim "could have been ascertained with the exercise of due diligence." In this case, it was not a failure of TBW to use due diligence to ascertain the facts. TBW already knew them, but failed to act. It is too late to do so now.

C. **Futility**

Count VI ("negligent post-crack investigation") – Time-Barred. It would be futile to grant leave for TBW to assert this count because it is barred by the statute of limitations and, therefore, cannot state a viable cause of action. As already noted, Florida law imposes a two-year statute of limitations on claims of this nature involving alleged professional malpractice arising from a contract. FLA. STAT. § 95.11(3)(c). HDR performed its post-crack investigative work

---

[24] TBW's arguments about whether HDR was concerned about the potential business implications of its investigative work or whether it had looked at Barnard's construction documents are not lynchpins to these claims. Setting aside whether these are even credible assertions (since TBW, HDR, Black & Veatch and FDEP all worked closely and openly together during the entire investigative period), TBW certainly had enough other concerns, frustrations and distrust of HDR's work by August 2008 at least to put it on notice of a potential claim. *See* Kennedy depo., II:2325:9 – 236:5 (Ex. D).

**HDR'S RESPONSE IN OPPOSITION TO
TBW'S MOTION TO AMEND COMPLAINT** – Page 12

from late December 2006 through October 2008. The deadline for TBW to sue HDR for its post-crack investigative work was October 2010. By waiting until now, TBW is too late.

For the same reasons stated above, TBW cannot use the "relation back" provision of Rule 15(c) to save these newly-asserted claims. These claims do not relate back to the original filing of suit, but rather represent a newly-filed suit. They neither arise from the same "core of operative facts," nor are they of the "time and type" of claims previously made. TBW itself admits that it specially contracted with HDR to begin conducting the post-crack investigative work under the "as-needed" services provision of the HDR contract, which it later formalized through the 8th Amendment to the contract.[25] The fact that TBW sets it apart as a separate count involving distinctly different allegations of conduct and contractual obligations shows it cannot "relate back" to TBW's original claims.

HDR performed its original design and construction-related activities pursuant to different provisions and amendments to the contract. The December 2006 task order and 8th Amendment created a distinctly different basis upon which TBW attempts to bring these claims. The design work made the subject of Count I and the construction work made the subject of Count III were authorized by and arose from different contractual documents than the post-crack investigation work made the subject of Counts VI and VII. Without those separate contractual documents, TBW would have no basis for a claim. By definition, therefore, Counts VI and VII relate to different "transactions, occurrences or conduct" than the ones giving rise to Counts I and III.

---

[25] Proposed 2nd Amended Complaint, ¶¶ 142-143, p. 30; ¶163, p.34 (Count VI). ¶¶ 171-172, p. 35; ¶ 207, p.44 (Count VII). *See* 8th Amendment [Docket #1-3, pp. 57-71], Scope of Services Task 14.0 [Docket #1-3, pp. 62-63]. The August 2009 TBW Board Meeting Minutes also state that the 8th Amendment "expressly approved" HDR's investigation. Exhibit A hereto at p. 102.

**HDR'S RESPONSE IN OPPOSITION TO**
**TBW'S MOTION TO AMEND COMPLAINT** – Page 13

DL/2616550v1

The distinctly new and different nature of these claims is further demonstrated by the damages TBW alleges flow from them. Up until the time of this proposed amendment, TBW has sought damages for the cost of repairing the Reservoir and expenses attendant to those repair efforts. For these new proposed Counts, however, TBW does not seek the cost of repairs. Rather, it wants to recover the money it spent on HDR's investigation, plus the cost of cover for hiring separate engineering firms, plus some claim for loss of full use of the Reservoir during investigation.[26]

Consider what would have happened if TBW originally had sued HDR only for the post-crack investigative work it performed between December 2006 and October 2008. No one would hesitate to say that adding claims for negligent design and construction-related activities that had occurred years before were of a different "time and type." Having elected to sue HDR for its design and construction-related activities only, TBW cannot now materially alter the case by adding claims for post-construction activities that occurred years after HDR's other activities were completed under separate contractual obligations.

Count VII ("bad faith post-crack investigation") – Duplicative and Superfluous Claim. After stating in some detail its claim in Count VI for HDR's negligent post-crack investigation, TBW repeats substantially all of the paragraphs from Count VI in Count VII (most word-for-word),[27] while elaborating further on some of the details. The damages identified and the relief sought in each Count are identical. Comparing the two Counts side by side, one sees little reason for the differences in wording in Count VII; the underlying facts appear interchangeable. The

---

[26] Proposed 2nd Amended Complaint, ¶163, p.34 (Count VI). ¶207, p.44 (Count VII).

[27] Paragraphs 139-147, 151, 152, 155, and 162-166 of Count VI are repeated word for word in Paragraphs 167, 169-173, 178-180, 182-183, 199, 201 and 207-210 of Count VII. The balance of the paragraphs in the two counts amount to little more than elaborations and restatements in extended detail of the same basic facts, which could be switched interchangeably between the two Counts without changing their meaning.

**HDR'S RESPONSE IN OPPOSITION TO**
**TBW'S MOTION TO AMEND COMPLAINT** – Page 14

elaboration does little to differentiate the two claims and nothing to advance TBW's case for a breach of the implied covenant as a separate cause of action.

While Florida does recognize a cause of action for breach of the implied covenant of good faith and fair dealing, "the rights conferred by [this claim] are unequivocally limited." *Dennis v. Northwestern Mut. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 19578, *18 (M.D. Fla. 2006). One such limitation, which TBW appropriately acknowledges, is that the covenant is not an independent cause of action, but can only exist in relation to breach of an express contractual provision. In this case, TBW identifies Section 18.0 of HDR's contract (the contractual statement of HDR's standard of care) as the provision in breach,[28] thereby nominally satisfying this pleading requirement.

But this pleading actually proves to be TBW's undoing, for a second limitation on the cause of action is that it is only permissible as a "gap-filling rule," and does not apply when the propriety of the conduct is resolved by the terms of the contract. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). By identifying Section 18.0 of the contract as the provision in breach, TBW has plead itself out of a claim, because there no longer is any "gap" to be filled. When the contract itself sets the standard of conduct–as TBW admits Section 18.0 does–an implied covenant cannot exist. *Amica Mut. Ins. Co. v. Morowitz*, 613 F. Supp. 2d 1358, 1361 (S.D. Fla. 2009). To hold otherwise would vary the terms of the contract, which is an impermissible expansion of the claim. *City of Riviera Beach v. John's Towing*, 691 So.2d 519, 521 (Fla. 4th DCA 1997).

Perhaps in recognition of this problem, TBW suggests that a party's ability to use its discretion in following a contractual provision somehow overcomes this bar. Not so. As the

---

[28] Proposed 2nd Amended Complaint, ¶173.

**HDR'S RESPONSE IN OPPOSITION TO**
**TBW'S MOTION TO AMEND COMPLAINT** – Page 15

*Amica* court held, the implied covenant "may fill gaps when one party has the authority to make discretionary decisions without defined standards (because the contract is silent as to any standards), but such should not be utilized to 'block the use of terms that actually appear in the contract.'" *Id., quoting Speedway SuperAmerica, LLC v. Tropic Enters., Inc.*, 966 So.2d 1, 3 n.2 (Fla. 2d DCA 2007). Indeed, one of the very cases cited by TBW relied on this rule in dismissing a claim for breach of the implied covenant. *Shibata v. Lim,* 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000).

Here, TBW is essentially saying that HDR abused its discretion in the way it complied with its contractually mandated standard of care. In the words of another Florida court that has dismissed such a claim:

> However discretionary [performance of the post-crack investigation] may have been on the part of [HDR], it is part and parcel of Plaintiff's breach of contract claim. . . . Because the good faith aspect of the parties' relationship was already encompassed by the express terms of the contract, the implied covenant of good faith and fair dealing is simply not applicable in this case.

*Fid. & Guar. Ins. Co. v. Ford Motor Co.*, 2009 U.S. Dist. LEXIS 46848 , *11-12 (N.D. Fla. 2009). The same reasoning applies here.

Finally, the very authority cited by TBW establishes a third key limitation on this claim, which proves equally fatal to TBW's proposed amendment. TBW fills the better part of two pages with quotations from the *Shibata* case,[29] but fails to mention that the *Shibata* court dismissed the plaintiff's claim under Rule 12(b)(6) because it did no more than duplicate the breach of contract claim. The court explained:

> [A] breach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract. . . . [A] party can maintain a claim for breach of the implied duty only if it is based on allegations different than those

---

[29] Motion for Leave to Amend, pp. 23-24.

**HDR'S RESPONSE IN OPPOSITION TO
TBW'S MOTION TO AMEND COMPLAINT** – Page 16

DL/2616550v1

> underlying the accompanying breach of contract claim. If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.

*Id.* This is a very common holding routinely made by federal courts throughout this state.[30]

    <u>Count VI and VII – Substantively Barred</u>: The addition of Counts VI and VII to the Complaint would also be futile because of a failure of proof in the form of expert testimony on the standard of care. In order to present these claims, TBW would have to provide expert opinion testimony about the applicable standard of care HDR should have followed in performing its post-crack investigation and how HDR failed to meet that standard. It is not a matter left merely to judgment of the jury in the absence of appropriate expert testimony. *See Lochrane Eng'g, Inc. v. Willingham Realgrowth Investment Fund, Ltd.*, 552 So.2d 228, 232-33 (Fla. 5th DCA 1989); *Sims v. Helms*, 345 So.2d 721, 723 (Fla. 1977) (proof of the scope and breach of professional standard of care requires expert testimony). Yet, discovery is over and TBW never designated an expert on this subject. Nor did any of TBW's expert provide a report directed at HDR's post-crack investigation. Nor did HDR examine any in their depositions on this point (understandably so, since it was not in issue). Without sufficient expert testimony regarding the standard of care for HDR's post-crack investigative work and its alleged breach thereof, TBW cannot prevail on either Count VI or Count VII. This means the proposed amendments would be futile and therefore need not be allowed.

---

[30] *See, e.g., Long v. Murray*, 2009 U.S. Dist. LEXIS 108917, *15-16 (M.D. Fla. 2009) (implied covenant claim dismissed because redundant of breach of contract claim); *Brueggemann v. NCOA Select, Inc.*, 2009 U.S. Dist. LEXIS 55296 *18 (S.D. Fla. 2009) (implied covenant claim "cannot be advanced when the allegations underlying that claim are duplicative of the allegations supporting the breach of contract claim"); *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 2009 U.S. Dist. LEXIS 75929 *14 (S.D. Fla. 2009)(same); *Enola Contr. Servs. v. URS Group, Inc.*, 2008 U.S. Dist. LEXIS 33441, *12 (N.D. Fla. 2008) (same); *Bradman v. Mental Health Network, Inc.*, 21 Fla. L. Weekly Fed. D 469, *7-8 (S.D. Fla. 2008)(same); *Eberly v. Optimum Nutrition, Inc.*, 2007 U.S. Dist. LEXIS 49706, *7-8 (S.D. Ohio 2007)(applying Florida law); *Dennis v. Northwestern Mut. Life Ins. Co., supra*, 2006 U.S. Dist. LEXIS 19578, *18 (M.D. Fla. 2006)(same).

**HDR'S RESPONSE IN OPPOSITION TO**
<u>**TBW'S MOTION TO AMEND COMPLAINT**</u> – Page 17

DL/2616550v1

### D. Prejudice to HDR

As established above, no justification exists for TBW's delay in raising these claims. It knew the underlying facts and believed HDR's investigation was faulty before suit and could have included these claims in its original complaint in December 2008. It certainly knew enough to include them in the First Amended Complaint, filed months before experts were designated and fact witness depositions began in earnest. HDR would be severely prejudiced if TBW were allowed to suddenly assert these brand new claims relating to a phase of the work that was not previously challenged during the two years of litigation and eighteen months of discovery that cost the parties millions of dollars, with only a few months remaining before trial. These claims dramatically change the focus and complexion of the suit, by now seeking to find HDR liable for conduct that occurred years after the design and construction-related work it has heretofore been defending.

HDR has incurred substantial costs, invested thousands of hours of time and otherwise fully dedicated itself to preparing this case for trial in July 2011–all in accordance with the schedule the court established in 2009. Allowing a last-minute attack on a whole new phase of the project would force HDR, among other things, to analyze the new claims, prepare factual and legal defenses, and work with experts to further analyze and address the new allegations. Without the constraints of the now-passed discovery deadline and upcoming trial schedule, HDR would be allowed to schedule, prepare for and take relevant discovery and depositions on these new claims. Despite TBW's protestations to the contrary,[31] it would appear that TBW's unstated desire in asserting these new claims is to reopen discovery or move the trial date as a "remedy" for the prejudice to HDR. But this would be inadequate and, if anything, even more prejudicial.

---

[31] Motion for Leave at 21.

**HDR'S RESPONSE IN OPPOSITION TO
TBW'S MOTION TO AMEND COMPLAINT** – Page 18

TBW should not be allowed to manipulate the Court's scheduling order just because it purposefully waited until the last minute (after the statute of limitations has expired) to assert a claim it could have included in its original complaint and certainly could have asserted in its First Amended Complaint.

## V.
## PROPOSED NEW COUNTS VIII AND IX:
## HDR'S PLANS, SPECIFICATIONS AND QUALITY CONTROL OF
## THE WEDGE'S "PROTECTIVE LAYER"

TBW's proposed Counts VIII and IX are offered as "alternative" causes of action intended to address HDR's evidence showing that a construction defect caused the unusual soil cement cracking. These new Counts are unnecessary. They add nothing to the substance of TBW's claims expressed in Counts I and III, but rather just state shades or variants of those claims. That is, Counts I and VIII provide different statements of the way in which HDR allegedly breached the standard of care in its design work, and Counts III and IX do the same for HDR's construction-related activities. The only significance that might attach to these proposed Counts would be if TBW intended to use them as justification for submitting jury questions specifically addressing Counts VIII and IX, separate from jury questions addressing Counts I and III. It would be inappropriate to measure today the form of the jury questions that will be submitted six months from now, based on an amended complaint rather than the evidence. It certainly is an insufficient basis for stating these as separate Counts in the Complaint. To that extent, and because the addition of these two Counts is unnecessary, HDR opposes the proposed amendment.

**HDR'S RESPONSE IN OPPOSITION TO
TBW'S MOTION TO AMEND COMPLAINT** – Page 19

DL/2616550v1

VI.
## CONCLUSION

WHEREFORE, for any one of the reasons set forth above, HDR respectfully requests that the Court deny the Joint Motion and that it grant HDR such other relief to which it may be justly entitled.

Respectfully submitted,

_s/ David C. Kent_

| | |
|---|---|
| **FORIZS & DOGALI, P.A.** | **SEDGWICK, DETERT, MORAN & ARNOLD LLP** |
| TIMOTHY D. WOODWARD, ESQ. | WAYNE B. MASON, ESQ. |
| Florida Bar No.: 0486868 | Admitted *Pro Hac Vice* |
| twoodward@forizs-dogali.com | wayne.mason@sdma.com |
| JAMES K. HICKMAN, ESQ. | KURT W. MEADERS, ESQ. |
| Florida Bar No.: 0893020 | Admitted *Pro Hac Vice* |
| jhickman@forizs-dogali.com | kurt.meaders@sdma.com |
| | DAVID C. KENT, ESQ. |
| | Admitted *Pro Hac Vice* |
| | david.kent@sdma.com |
| 4301 Anchor Plaza Pkwy., Suite 300 | 1717 Main Street, Suite 5400 |
| Tampa, FL  33634 | Dallas, TX  75201-7367 |
| Telephone 813-289-0700 | Telephone 469-227-8200 |
| Facsimile 813-289-9435 | Facsimile 469-227-8004 |

**ATTORNEYS FOR HDR ENGINEERING, INC.**

## CERTIFICATE OF SERVICE

The foregoing instrument was electronically filed with the Clerk of Court through the CM/ECF system, which sent a notice of electronic filing to all counsel of record on January 13, 2011:

_s/ David C. Kent_
David C. Kent

**HDR'S RESPONSE IN OPPOSITION TO
TBW'S MOTION TO AMEND COMPLAINT** – Page 20

DL/2616550v1