UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMPA BAY WATER,
A Regional Water Supply Authority

       Plaintiff,                      CASE NO.:    8:08-cv-2446-T27-TBM

v.

HDR ENGINEERING, INC., a
Nebraska corporation, et al.

       Defendants.
_____/

**TAMPA BAY WATER'S REPLY TO HDR ENGINEERING, INC'S
RESPONSE IN OPPOSITION TO TAMPA BAY WATER'S MOTION
<u>FOR LEAVE TO AMEND COMPLAINT</u>**

      Tampa Bay Water ("TBW"), pursuant to the order (Doc. 272) granting TBW's Unopposed Motion for Leave to File Reply to HDR's Response in Opposition to TBW's Motion for Leave to Amend Complaint (Doc. 270), hereby submits this Reply.

I.     TBW's timely motion for leave to amend must be reviewed under the liberal standard of Fed. R. Civ. P. 15(a), which requires that leave to amend be freely granted.

      HDR casually conflates the significantly different standards for leave to amend that apply to timely motions under Fed. R. Civ. P. 15(a)(leave shall be freely given) and to untimely motions under Fed. R. Civ. P. 16(b)(leave granted only upon a demonstration of "good cause" sufficient to modify scheduling order) and then just suggests that the Court disregard the distinction. Because TBW's motion for leave to amend was timely filed, the liberal standard of Rule 15(a) and not the substantially higher good cause standard of Rule 16(b) applies. Because a motion for leave to amend being considered under the liberal

1

standard of Rule 15(a) can only be denied for some "substantial, justifying reason," *Grayson v. Kmart Corp.*, 79 F.3d 1096, 1110 (11th Cir. 1996), such motions are routinely granted. This point is fully briefed in the memorandum of law accompanying TBW's motion for leave to amend (Doc. 257, pp. 12-16) and that argument will not be repeated in this Reply.[1]

II. The proposed amendments to Count I are not "new claims," are not untimely, and do not result in legal prejudice to HDR

TBW's motion seeks leave to amend Count I "to expand and clarify" its existing breach of contract claim against HDR for its defective design. (Doc. 257, ¶14(a) at p.4) HDR readily concedes that Count I has always been about "HDR's design of the embankment wedge" (Doc. 269, p. 4), but claims that TBW's new allegations regarding the geotechnical investigation do not relate to HDR's "design" work. Since this count is for breach of contract, the HDR Contract determines the scope of HDR's design responsibilities. Exhibit A to the HDR Contract sets forth HDR's scope of services and expressly sets forth twelve distinct tasks.[2] Task 2, which is entitled "Reservoir Design," expressly requires HDR to

---

[1] The two cases cited by HDR in the portion of its Response discussing the standard of review (Doc. 269, p.3) are curious selections, to say the least. In *Ultratech Int'l, Inc. v. Swimways Corp.*, 2009 U.S. Dist. LEXIS 80997 (M.D. Fla. 2009), the court *granted* the plaintiff's motion for leave to amend to add a new claim, expressly finding that the proposed amendment was not a matter of undue delay, would not result in undue prejudice to the defendant and would not be futile. The other case cited by HDR, *Pilkington v. United Airlines, Inc.*, 158 F.R.D. 508 (M.D. Fla. 1994), presents circumstances so remarkably unlike anything applicable here that it stretches the bounds of credulity to even suggest that it is somehow pertinent to the discussion. In *Pilkington*, the plaintiff sought leave to amend to add eight new, non-resident plaintiffs to the case and to allege on their behalf some 130 new incidents of alleged harassment. More importantly, the court pointedly noted that plaintiff's counsel had refused to disclose the non-resident status of the potential new plaintiffs when it was opposing an early motion to transfer the case and had argued against the transfer on the basis that the majority of the plaintiffs were Florida residents who would be inconvenienced by a transfer to another state. *Pilkington*, 158 F.R.D. at 509-510. Not surprisingly, the court was disinclined to allow the plaintiffs to benefit from their own prior non-disclosure to the court when granting the sought amendment would result in the majority of plaintiffs then being non-residents.

[2] These tasks include, but are not limited to, the following: Task 2 – Reservoir Design (embankment); Task 3 – Facilities Design (9 mile water transmission pipeline); Task 4 – Aquifer Storage and Recovery (evaluating the feasibility of storing water in a below ground aquifer); Task 6 – Federal Funding (assist with obtaining federal

perform the "geotechnical studies" that HDR is now trying to mischaracterize as a "pre-design activity" and not part of its "design" work. (See Exhibit 1) In describing HDR's design obligations to perform a geotechnical investigation of the reservoir site, Task 2 states:

> One of the key elements of the reservoir design is a thorough understanding of the geologic, historic, and geotechnical engineering characteristics of the site. …Based on the results of the reservoir site characterization, embankment cross-sections will be developed considering the properties of the available borrow materials.

Task 2 expressly requires HDR to "complete all necessary soil tests for this project during the design phase," including permeability tests. Fleshing out in more specific detail the acts and omissions that constitute HDR's design negligence is not the assertion of a "new claim" in the context of considering the motion for leave to amend.

HDR also contends that the proposed amendment is "untimely." (Doc. 269, p. 4) That is clearly not the case, given that the motion for leave to amend was filed by the deadline set out in the case management and scheduling order. If by "untimely" HDR intends to argue that TBW has been dilatory in seeking leave to amend, the short answer is no. TBW did not receive certain key HDR files regarding its geotechnical investigation, which were buried in millions of pages of document production, until the document production phase of the litigation and it was not until the December 9, 2010 deposition of Rick Donovan, one of HDR's lead designers, that TBW was able to confirm that HDR had misrepresented some of its soil permeability test results that formed the basis of HDR's design.[3] Thus, there has been no undue delay or dilatory motive by TBW.

---

funding for the Reservoir project); and Task 7 – Land Acquisition (assist with acquiring the land necessary for the Reservoir and the nine mile pipeline.

[3] For its design, HDR used soil permeability test results from its geotechnical investigation to calculate the permeability of the embankment soils to be 0.5 feet per day. It is undisputed that HDR determined the 0.5

Finally, HDR asserts that it would be prejudiced by the proposed amendments because the "expert reports and expert and fact witness depositions" did not address the issues of the site characterization and permeability data. (Doc. 269, p.9) This is also not true. TBW's January 8, 2010 expert report (the "Report") states that the permeability value selected by HDR for the embankment soils was too high.[4] The Report specifically discusses samples AU-66 and AU-67 in the context of how HDR calculated the 0.5 foot per day permeability value for the embankment soils. It states that no permeability testing data was found for these two samples in HDR's geotechnical site investigation reports, and then states that the test results presented by HDR for these samples during the permitting phase of the project are "suspect because they have exactly the same permeability but have very different gradations."

III.  The proposed amendments to Count I and the proposed new Counts VI and VII are not futile and Counts VI and VII are not untimely and do not prejudice HDR.

HDR asserts that these proposed amendments are futile because they are barred by the statute of limitations. It asserts that the professional negligence claims against HDR are governed by the two-year statute of limitations set forth in Fla. Stat. §95.11(4)(a) (mis-cited by HDR as Fla. Stat. §95.11(3)(c)). This is simply incorrect. This very issue was considered and decided in *Lillibridge Health Care Services, Inc. v. Hunton Brady Architects, P.A.*, 2010 WL 3788859 (M.D. Fla. Sept. 24, 2010), in which the court held that the four-year limitations period of Fla. Stat. §95.11(3)(c), rather than the two-year limitations period of

---

ft/day value by averaging the results of only 17 soil permeability tests, two of which were samples AU-66 and AU-67, which HDR represented had a permeability of 0.34 ft/day each. During his deposition on December 9, 2010, Donovan testified that those two samples had a permeability of 0.00136 ft/day and 0.00068 ft/day, which are hundreds of time less permeable than what HDR represented to TBW. See Exhibit 2.
[4] See Exhibit 3 (p. 118, paragraph 6.1.2., of Golder's January 8, 2010 Expert Report).

§95.11(4)(a), governed an owner's claims against an architect-engineer. 2010 WL 3788859 at *16-*18.

Pursuant to Fla. Stat. 95.11(3)(c), an action founded on the design, planning or construction of an improvement to real property must be commenced within four years of

> …the date of actual possession by the owner, the date of the issuance of a certificate of occupancy, the date of abandonment of construction if not completed, or the date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer, whichever is latest; except that, when the action involves a latent defect, the time runs from the time the defect is discovered or should have been discovered with the exercise of diligence.

This case undisputedly involves a latent defect that was not discovered until December 2006, when the first cracks in the soil cement were discovered.

HDR does not argue that the proposed amendment of Count I would be untimely under the proper four-year limitations period. Indeed, it concedes that the original complaint, filed in December 2008, was timely under the two-year statute that it claims is applicable. (Doc. 269, p. 5) That being the case, HDR can have no objection a proposed amendment filed in December 2010 under a four-year limitations statute.[5]

---

[5] Because the amendments are timely and not barred by the applicable statute of limitations, there is no need to consider whether they would relate back to the commencement of the case under Fed. R. Civ. P. 15. In addition, HDR's claim that the proposed amendment to Count I is barred by the ten-year statute of repose set forth in Fla. Stat. 95.11(3)(c) is equally lacking in both legal support and merit. HDR contends that the ten-year period of repose should run from the completion of its subcontractors' work on the site characterization assessment, which was allegedly completed in August 2000. But Fla. Stat. 95.11(3)(c) provides that the ten-year period of repose runs from

> …the date of actual possession by the owner, the date of the issuance of a certificate of occupancy, the date of abandonment of construction if not completed, or the date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer, whichever is latest. (emphasis added)

The only possible starting dates for the ten-year statute of repose are the date the project was completed in 2005 or the dated HDR's contract was terminated in 2008. Even if the proposed amendment were a new claim

As set forth above, the four-year statute of limitations of Fla. Stat. 95.11(3)(c) is applicable to new Counts VI and VII. Contrary to HDR's assertions, TBW was unable to allege those claims in 2008 or 2009 because TBW did not have a basis to allege that HDR's investigation was conducted negligently or in bad faith until recently. As stated above, the scope of HDR's Contract included many tasks, including design phase services, construction phase services, and operation (post-construction) phase services. Upon discovering the large cracks, TBW immediately notified HDR and HDR began investigating the cause of the cracking – which was performed under HDR's existing contract with TBW.[6] HDR's investigation included a "forensic review" of the project's construction records to determine whether construction defects were the cause of the cracking. In January 2008, HDR presented the results of its "forensic review" to TBW. HDR did not inform TBW that its "forensic review" was incomplete. Whichever limitations period applies, it was not until TBW deposed HDR's expert witness, Dr. Bromwell, in November 2010 that TBW discovered that HDR has not gathered all of the documents necessary to perform its forensic investigation into the root cause of the cracking. See Exhibit 5. This fact, which was previously unknown to TBW, in conjunction with Dr. Bromwell's opinion that the "first thing" one should do in performing a forensic investigation is to gather and review all of the construction records and construction photographs, forms the basis of TBW's new Count VI. See Exhibit 6. Since the opinion of HDR's own expert establishes the standard of care for the investigation (*i.e.*, that the first thing HDR should have done in performing its

---

subject to the statute of limitations and statute of repose analysis, the statue of repose would run from the termination of HDR's Contract and the amendment is clearly timely.

[6] HDR's investigation began and continued for eleven month under the terms of its existing contract with TBW, until the 8th Amendment was approved by TBW's Board of Directors, which among other things, allocated additional funding for the investigation.

investigation was gather and review all construction records and photographs) HDR's argument that Count VI is not supported by an expert opinion is without merit. HDR cannot claim prejudice now when it concealed the inadequacies of its work and those inadequacies were only recently brought to light and confirmed by HDR's own expert.

IV. Count VII is not Duplicative and Superfluous

HDR's claim that proposed Count VII, alleging bad faith in the conduct of the post-cracking investigation, is duplicative and superfluous of proposed Count VI, alleging that HDR performed that investigation negligently, borders on being frivolous. HDR notes that certain allegations are repeated in the two counts, then asserts that the remaining allegations in Count VII "amount to little more than elaborations and restatements . . . of the same basic facts, which could be switched interchangeably between the two counts without changing their meaning." HDR Response (Doc. 269 at p.14 n.27) Any fair reading of the proposed Second Amended Complaint will demonstrate the absurdity of this contention. Specifically, Paragraphs 184-199, 200 and 202-206, all of which are unique to the proposed bad faith claim, allege HDR's intentional concealment of information and other deliberate conduct taken to further its own business and financial interests at the expense of its client, TBW. HDR cannot seriously contend that these allegations are "interchangeable" with allegations of simple negligence in the conduct of the investigation.

HDR's contention that the bad faith claim is barred by the presence of the standard of care provision in the HDR Contract is also incorrect. Failure to meet the contractual and professional standard of care constitutes negligence and a breach of the contract, as alleged in proposed Count VI. Concealing and withholding information about the investigation and the

role of its "experts," eliciting information from TBW under false pretenses and manipulating the data and information reported to TBW as the investigation proceeded is not simple negligence, it is deliberate conduct constituting bad faith. The express contractual duty furnished by the standard of care provision only requires that HDR not act negligently. It does not expressly prohibit or even mention any form of intentional, deceitful conduct such as that alleged in the bad faith claim here. That gap is filled by the implied covenant of good faith and fair dealing, the breach of which is the basis of the proposed bad faith claim alleged in Count VII.

V.     The proposed new alternative Counts VII and IX are appropriate amendments that should be granted.

HDR objects to the proposed alternative Counts VIII and IX and suggests that they are merely duplicative of the existing Counts I and III. This is wrong. Counts I and III are based on TBW's theory of the case and the opinions of its experts. Proposed Counts VIII and IX are expressly offered in the alternative because they are based not on TBW's theory of the case, but on the "collapse upon wetting" theory of causation being advanced solely by HDR and its expert, Dr. Bromwell. The alternative counts are necessary to allege that if HDR and Dr. Bromwell are correc, then HDR was still negligent in both the design of the facility and in its construction-phase inspection obligations. These alternative claims are based entirely on the theory of causation developed and advanced by HDR and its expert in the course of this litigation, so it is difficult to see how HDR can claim any prejudice in their assertion. Moreover, the assertion of alternative claims is permitted in an amendment. *Beheer v. ASAP Installations, LLC*, 2010 WL 2431922 (M.D. Fla. June 16, 2010).

Dated this 11th day of February 2011.

        **s/ Richard A. Harrison**
**Richard A. Harrison, Esquire**
Florida Bar Number 0602493
rharrison@allendell.com
Lead Trial Counsel
**David Forziano, Esquire**
Florida Bar Number 0025755
dforziano@allendell.com
**Misty C. Leafers, Esquire**
Florida Bar Number:  416894
mleafers@allendell.com
**Barbara M. Cowherd, Esquire**
Florida Bar Number 0469203
bcowherd@allendell.com
ALLEN DELL, P.A.
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682

Attorneys for Plaintiff, Tampa Bay Water,
A Regional Water Supply Authority

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th of February, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

        **s/ Richard A. Harrison**
Richard A. Harrison, Esquire
Florida Bar Number 0602493
ALLEN DELL, P.A.
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682
rharrison@allendell.com