## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TAMPA BAY WATER,                          CASE NO.:    8:08-cv-2446-T27-TBM
A Regional Water Supply Authority

      Plaintiff,

v.

HDR ENGINEERING, INC., a
Nebraska corporation,
CONSTRUCTION DYNAMICS
GROUP, INC., a Maryland corporation,
BARNARD CONSTRUCTION
COMPANY, INC., a
Montana corporation,

      Defendants.
_____/
BARNARD CONSTRUCTION COMPANY, INC., a
Montana corporation

      Third Party Plaintiff,

v.

MCDONALD CONSTRUCTION CORPORATION,
a Florida corporation

      Third Party Defendant.
_____/


## DEFENDANT, BARNARD CONSTRUCTION COMPANY, INC.'S , MOTION TO STRIKE, EXCLUDE, AND LIMIT TESTIMONY BY LESLIE BROMWELL AND MEMORANDUM OF LAW IN SUPPORT THEREOF

      Defendant, Barnard Construction Company, Inc. ("Barnard"), moves for an order

striking, excluding, and limiting the testimony of HDR, Inc.'s ("HDR") expert witness

Leslie Bromwell ("Bromwell") pursuant to Federal Rules of Procedure 26 and 37 and in support therefore states the following:

## I.     STATEMENT OF RELIEF REQUESTED

Barnard seeks an Order striking, excluding, and limiting all testimony related to or concerning the opinions contained in Sections 2 and 3 of Bromwell's *Supplemental BCI Expert Report on Analysis and Evaluation of Soil Cement Cracking at Tampa Bay Reservoir* (the "Supplemental Report") dated <u>January 17, 2011</u>; specifically, Sections *2. Construction photographs illustrating construction of the wedge fill* and *3. Barnard's Contractual Responsibilities* of the Supplemental Report.[1]

## II.     INTRODUCTION

**A.**     Factual Background

This case arises out of the design and construction of the C.W. Bill Young Regional Reservoir ("Reservoir") located in Hillsborough County.   The Reservoir is owned and operated by TBW.

Tampa Bay Water ("TBW") contracted with Barnard to construct the Reservoir pursuant to plans and specifications prepared by HDR. TBW contracted with HDR to (a) design the Reservoir; (b) to perform construction quality control in order to verify the Reservoir was built in compliance with HDR's plans and specifications; and (c) to certify to the Florida Department of Environmental Protection ("FDEP") that the Reservoir was built in accordance with HDR's plans and specifications.

---

[1] Section 1 of the Supplemental Report is not subject to this Motion.  A copy of the Supplemental Report is attached hereto as Exhibit A.

The design which Barnard bid on and contacted for, included the following: a) a geomembrane liner that covers the above ground earthen embankment; b) a "wedge" of soil that overlays the geomembrane; c) a geotextile that overlays the wedge; and d) a "flat-plate" and "stair-step" soil-cement layer.  The flat-plate soil-cement extends upward from the bottom of the embankment. This case involves the flat plate and not the stair step soil cement.  Bromwell's causation opinions are focused on a protective layer of soil placed over the geomembrane.

In December 2006, TBW discovered unusual cracks in the soil cement. In December 2008 TBW filed suit.

On September 9, 2009, this Court entered an Amended Case Management and Scheduling Order ("CMO").  Doc. #118.  The CMO stated the "Defendant's expert disclosure as required by Fed.R.Civ.P. 26(a)(2)(A) regarding all matters except remediation design and cost shall be made on or before March 26, 2010."

In March of 2010, Defendant HDR produced a report prepared by Bromwell entitled *Analysis and Evaluation of Soil Cement Cracking at Tampa Bay Reservoir* (the "Original Report")(relevant portions attached as Exhibit B).  The stated purpose of Bromwell's Original Report was to "1) evaluate the nature of the unexpected cracking which has developed at the reservoir; 2) analyze the geotechnical mechanism that led to that unexpected cracking, and 3) provide an opinion as to the causes of the unexpected cracking and the underlying geotechnical mechanism."  See Original Report p. 1.  In the Original Report, Bromwell opined that the cause of the cracking was the protective layer of soil placed over the geomembrane.  Bromwell did ***not*** opine whether HDR or Barnard

3

was at fault. However, in the Supplemental Report dated January 17, 2011, issued more than a month after discovery closed, Bromwell, for the first time, places fault for the cracking on Barnard. Bromwell justified his drastic change in position by claiming he had just recently reviewed the 2002 contract between Barnard and TBW (the "Contract") for the first time and because he looked more closely at some photographs that had been in his possession since at least 2009. TBW attached a copy of the TBW/Barnard Contract to the Complaint that was served in 2008. Doc. #1.

**B.**     Bromwell's Last Minute Change of Opinion

Bromwell was deposed from November 1st to November 4th, 2010. During the deposition, Bromwell was questioned extensively about his Original Report. This deposition ended before all parties had an opportunity to fully examine Bromwell. Bromwell's deposition was continued until December 15th, 2010, the last day of discovery. (Collectively these depositions are referenced as the "Bromwell Deposition").[2]

At the beginning of the December 15th deposition, Bromwell testified:

Q.  Okay. Have you done any further work regarding the Tampa Bay Water regional reservoir project since your deposition on November 4th?

A.  Yes, I have.

Q.  What additional work have you done?

A.  Well, when I received my deposition transcript, I read through the transcript. . . . ***And in reading through my -- my deposition, I -- I realized that there were a lot of questions that I really didn't have a solid answer for***, I guess, based on the degree of questioning that I

---

[2] Relevant portions of the Bromwell Deposition have been attached as Composite Exhibit C.

4

> got, ***as a result of not having read and got more information on
> some subjects.* . .**
>
> ***And then I also realized that I should be more familiar with the
> general contact -- contract conditions between Tampa Bay Water
> and Barnard***, because a lot of the questions went to that issue and I
> had not familiarized myself with that contract.  So I asked for a copy
> of the contract and I read through that.

Bromwell Deposition, dated December 15, 2010, p. 1137 line 19 - p. 1138 line 24.
(Emphasis added.)

* * * *

> Q.  Okay.  Anything else?
> A.  Oh, I also looked at some more photographs, went back and reviewed
>     photographs based on some of the questions that I-- that I got.  And I
>     did in fact find additional photographs that I had not remembered,
>     frankly, ***because I guess I -- had gotten those sometime back June or
>     July of '09.***  So I went back and reviewed those photographs.

Bromwell Deposition, dated December 15, 2010, p. 1139 lines 12-19. (Emphasis
added.)

Bromwell issued his Supplemental Report, on January 17, 2011, one month after
the close of discovery and ten months after the deadline to disclose all opinions.  The
Supplemental Report contains three sections: *1) Response to Golder's supplemental
report of November 15, 2010, 2) Construction photographs illustrating construction of
the wedge fill* and *3) Barnard's Contractual Responsibilities*.   This Motion address
Sections 2 and 3 only.

The January 17, 2011 Supplemental Report is the first report where Bromwell
opines that Barnard is at fault and that Barnard caused the cracking.  Bromwell's attempts
to justify his drastic change in position by relying on the 2002 TBW/Barnard
Construction Contract which he claims he had never read until just recently and by
relying on a closer inspection of some photos that had been in Bromwell's possession
since 2009.

### III.    SUMMARY OF THE ARGUMENT

Section 2 and 3 of the Supplemental Report recite Bromwell's newly formed opinions and are way too late.  The 2002 TBW/Barnard Contract and the photos have been in Bromwell's possession or available to Bromwell for months before Bromwell's Original Report was even due.  Bromwell was obligated by Court Order and Court Rule to submit a complete initial report on March 26, 2010.  Bromwell should not be permitted to change the inadequate and incomplete opinions and conclusions in his Original Report through a Supplemental Report.  The Supplemental Report severely prejudices Barnard.  Barnard respectfully requests this Court to exclude Sections 2 and 3 of Bromwell's Supplemental Report.

### IV.    ARGUMENT

**A.    The Federal Rules of Civil Procedure dictate the Exclusion of the Supplemental Report**

Federal Rule of Civil Procedure 26(a)(2)(B)(i) require that Bromwell's Original Report be a "***complete statement of all opinions*** the witness [would] express and the basis and reasons for them . . . ."  (Emphasis added).  "An expert report is adequate when it is 'sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced.'"  *Goodbys Creek, LLC v. Arch Ins. Co.*, 2009 WL 1139575 (M.D.Fla. 2009) at *1 (quoting *Heed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996).  Sketchy and vague reports simply do not comply with Rule 26. *Villarreal v. City of Laredo*, 2008 WL 2770010 (S.D.Tex. 2008);

*Acosta v. Electrolux North America.* 2008 WL 5246160 at *5 (S.D.Fla. 2008)("[A]n expert report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial[.]"  If Bromwell had thoroughly reviewed all of the evidence available to him before producing his Original Report, then the Supplemental Report would not have been necessary.

Bromwell's failure to comply with the requirement of Rule 26 necessitates the exclusion of the Supplemental Report.  Federal Rule of Civil Procedure 37(c)(1) states that when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), [then] the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial . . . ."  *See Also Leathers v. Pfizer, Inc.*, 233 F.R.D. 687 (N.D.Ga. 2006)("[C]onsequences for failure to comply with FRCP 26(a) are contained in FRCP 37(c)(1) . . . .")  Thus, as Bromwell's Supplemental Report is a violation of Rule 26, the Federal Rules of Civil Procedure dictate the exclusion of Bromwell's Supplemental Report and the opinions contained therein.  *Mitchell v. Ford Motor Company*, 318 Fed.Appx. 821 (11th Cir. 2009)("Rule 37 allows the district court to exclude a witness as a sanction for a Rule 26 violation.");  *Carreno v. Home Transport, Inc.*, 2010 WL 2293391 at *2 n. 3 (M.D.Fla. 2010)("[E]xpert may not offer opinions at trial which have not been previously disclosed in a Rule 26 report unless the failure to reveal was either substantially justified or harmless.");  *Asher v. Unarco Material Handling, Inc.*, 2008 WL 2596612 at *2 (E.D.Ky. 2008)("The Sixth Circuit has established that Rule 37(c)(1) mandates that a trial court sanction a party for discovery violations in connection with Rule 26(a) unless the violations were harmless or were

substantially justified.")

**B.    Bromwell's Supplemental Report Contains New and Different Opinions**

Bromwell's January 17, 2011, Supplemental Report is a tardy attempt to offer a new opinion on liability and causation that for the first time blames Barnard as the cause of the cracking.   Bromwell's Supplemental Report is not meant to correct or support the opinions contained in his Original Report.   Bromwell acknowledges that his Original Report did not identify the party responsible for the cracking.   Bromwell testified on November 3, 2010, as follows:

> Q.  So you do not have an opinion that Barnard in any way failed to fulfill their duties under their construction contract with TBW with respect to the installation of the protective layer, correct?
>
> A.  *It's correct that I do not have an opinion as to who may have been at fault for the damage that occurred.*
>
> Q.  And so when you say you do not have an opinion as to who may be at fault for the damage that may have occurred, you included in that both Barnard and HDR, correct?
>
> A.  I -- I haven't included anyone and I haven't excluded anyone.
>
> Q.  All right.  So it -- as an expert witness in this case, *you do not have an opinion that Barnard performed any defective construction*, as I understand it; is that correct, sir?
>
> A.  *I do not have that opinion*.   My opinions relate to the causation mechanism.

Bromwell Deposition, dated November 3, 2010, p. 576 line 19 - p. 577 line 12 (Emphasis added.)

* * * *

> Q.  With respect to any of the items that are listed on your list of construction errors or omissions, do you have an opinion as to whether or not Barnard performed any con- -- defective construction work?
>
> A.  Well, I think from -- from what I've said and what I found, that there was defective construction work performed.   *Whether that was a*

> ***fault of Barnard's, I have not determined.  I've not attempted to
> determine that.***

Bromwell Deposition, dated November 3, 2010, p. 578 lines 11-20 (Emphasis added.)

* * * *

> Q.  Do you have an opinion whether or not Barnard failed to comply with
> the plans and specifications on this project?
>
> A.  ***I've not attempted to determine where the fault lies with regard to the
> damage that occurred. . . . So I don't have an opinion that it was
> Barnard's fault.***  I don't have an opinion that it wasn't Barnard's fault.

Bromwell Deposition, dated November 3, 2010, p. 579 line 16 - p. 580 line 2.  (Emphasis
added.)

The essence of Bromwell's Original Report was that the protective layer of fill

material placed on top of the geomembrane collapsed when it first got wet.  This

phenomenon is what Bromwell claims caused the soil cement to crack.  However,

Bromwell, in his Original Report issued on March 26th, 2010 and first deposition, did not

consider Barnard to be responsible or at fault.  In his first deposition, conducted on

November 1st-4[th], 2010, Bromwell testified:

> Q.  Was there an error or omission by Barnard Construction with respect
> to the placement of loose fill against the geomembrane using
> bulldozers?
>
> A.  I don't have an opinion on that.

Bromwell Deposition, dated November 3, 2010, p. 578 lines 3 - 7.

In his continued deposition on December 15, 2010, Bromwell reiterated that his

Original Report did not contain any opinions as to fault:

> Q.  Okay. And if I'm correct, in your [Original Report], which was
> rendered by you in this matter, you did not opine as to the party who
> was responsible for the defective construction which resulted in the
> protective later -- layer being placed too thick, correct?
>
> A. That's correct.  I just identified it as a construction issue.
>
> Q. And why didn't you include an opinion as to who was responsible?

9

A.  Because I was not given the assignment of -- of determining responsibility or standard of care issues.

Q.  And you weren't given the responsibility this week either, correct, you just went out and did that on your own?

A.  I did as a result of the deposition questions, yes.

Q.  Okay.  So the lawyers [for HDR] who hired you never asked you to render an opinion as to the party who was responsible for the defective construction, as you allege in your expert report?

A.  No.

Bromwell Deposition, dated December 15, 2010, p. 1408 line 13 - p. 1409 line 10.

But later in that very same deposition held on December 15, 2010, the last day of discovery, Bromwell for the first time holds Barnard responsible for the cracking:

Q.  And earlier this morning, you -- you recall the testimony where you testified as to the provisions in the construction contract, which you today contend allow you to attribute fault for those construction deficiencies set forth in your [Original Report]?

A.  Well, it allows me to say -- to say something about the responsibility of the parties to that construction damage.

Bromwell Deposition, dated December 15, 2010, p. 1409 lines 11 - 18.

* * * *

Q.  . . . Have you now attributed responsibility to a party?

A.  Yes, I can say -- I can say more about responsibility and who I feel is responsible than I could before.

Q.  Okay.  And you -- who do you feel is responsible?

A.  Well, I -- I -- I believe that [Barnard] obviously had responsibility for the defective construction of the protective layer.

Bromwell Deposition, dated December 15, 2010, p. 1410 lines 3 - 12.

Then on January 17, 2011, more than a month later, Bromwell issued his Supplemental Report.  Bromwell put in writing, for the first time, after over two years of involvement in this case, that Barnard was responsible for the cracking of the soil cement.

Bromwell's change in position is the very definition of a "new" opinion and this "new" opinion is ten months too late to be admissible or permitted, i.e. March 26, 2010.

*Solaia Technology LLC v. Arvinmeritor, Inc.*, 361 F.Supp.2d 797, 807 (N.D.Ill. 2005)("If the late-filed opinions are new, they must be stricken . . . unless [proponent] offers a substantial justification for failing to disclose them earlier."); *See Mitchell v. Ford Motor Co.*, 318 Fed.Appx. 821 (11th Cir. 2009)(Expert not allowed to refer to new information in a *Daubert* hearing that was not previously disclosed.)

### C.   Bromwell Cannot Belatedly Offer New Opinions

This Court's CMO clearly required Bromwell's full and complete opinions no later than March 26, 2010.  Bromwell acknowledged in his November 3, 2010 deposition that the Original Report was "prepared pursuant to court rule. . . ."  Deposition of Les G. Bromwell, ScD, P.E., dated November 3, 2010, Vol. V, page 581, lines 6-9.   A supplemental report is not meant to grant a party a "right to produce information in a belated fashion." *3M Innovative Props. Co. v. DuPont Dow Elastomers, LLC*, 2005 WL 6007042 D.Minn. 2005)   Supplemental reports do not "provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996); Nor can a supplemental report be an end-around the disclosure deadlines. *See KW Plastics v. U.S. Can Co.*, 131 F.Supp.2d 1289, 1296 (M.D.Ala. 2001)(Allowing disclosure of eleventh hour opinions to stand would "reward the misdeeds and countenance an end-run around the Federals Rules of Civil Procedure and the orders of the court.")

Bromwell failed to properly prepare the Original Report.  He is now attempting to use this Supplemental Report to skirt the Court's disclosure deadline.  This improper use

of a supplemental report should not be permitted and the portions of Bromwell's Supplement Report addressing Barnard and Barnard's work should be excluded.

### D.   The Supplemental Report Relies on Documents that Bromwell Always Had

The purpose of a supplemental expert report is to fix a previously disclosed report that is incorrect or incomplete in some way so as to render it misleading.  *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002).  "The purpose of rebuttal and supplementary disclosures is just that - to rebut and to supplement."  *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996).  In fact, Rule 26(e)(1)(A) requires supplementation when a "party learns that in some material respect the [original] disclosure or response is incomplete or incorrect[.]"  Fed.R.Civ.P. 26.  However, a supplemental report is not meant to cure "failures of omission because the expert did an inadequate or incomplete preparation."  *Goodbys Creek, LLC v. Arch Ins. Co.*, 2009 WL 1139575 (M.D.Fla. 2009)(quoting *3M Innovative* at *4);  *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996)("The district court's finding that [the defendant's] initial expert disclosures did not meet [the Rule 26] standard does not constitute an abuse of discretion. . . . Although [defendant] later reinforced these statements with rebuttal and supplementary disclosures, the discovery order and Rule 26(A) clearly require that the *initial* disclosures be complete and detailed.")  Bromwell's Supplemental Report is nothing more than a brand new opinion blaming Barnard for the cracking.  This brand new opinion is based upon documents which Bromwell already had.  *Goodbys Creek, LLC v. Arch Ins. Co.*, 2009

WL 1139575 (M.D.Fla. 2009)("[R]eport that suffers from 'a major omission' cannot be cured by the use of supplementation.")

        **1.**      **Bromwell Always Possessed Photographs Relied On In the Supplemental Report**

Section 2 of Bromwell Supplemental Report is based on Bromwell's recent review of photographs.  This re-review apparently happened after November 4th, 2010.  These are photographs that Bromwell *always* possessed. As Bromwell himself has stated, a review of the project photographs is "really the first thing you do when you start doing a -- essentially a forensic investigation of damage in a construction project."  Bromwell deposition, dated November 2, 2010, p. 349 line 21 to p. 350 line 2.  The Supplemental Report states that these "photographs were representative of those obtained during discovery, and were not inclusive of all photographs *in my possession* that relate to the opinions expressed in the [Original Report]."  Supplemental Report p. 5.  (Emphasis added).  During Bromwell's December 15, 2010 deposition, Bromwell testified:

> Q.  Okay.  [Did you do a]nything else [in preparation for today's deposition]?
> A.  Oh, I also looked at some more photographs, went back and review photographs based on some of the questions that I -- that I got.  ***And I did in fact find additional photographs that I had not remembered, frankly, because I guess I -- I had gotten those sometime back June or July '09.***  So I went back and reviewed those photographs.

Bromwell Deposition, dated December 15, 2010, p. 1139 lines 12-19.  (Emphasis added).

* * * *

> Q.   Okay.  ***So you found 30 photos that you had in your files*** of protective layer in areas other than the northeast;  is that correct?
> A.  Yes.  That's an approximate number.  I -- I'm just characterizing it.  It was not a huge number, but somewhere in that range.

Bromwell Deposition, dated December 15, 2010, p. 1140 lines 20-25.  (Emphasis added).

The photographs included in Section 2 of the Supplemental Report were photographs in the possession of Bromwell since 2009 well before the production of this Original Report in March 26, 2010.

        **2.**      **Bromwell Always Had Access to Barnard's Contract with TBW**

Section 3 of Bromwell's Supplemental Report sets forth his new opinion imposing liability on Barnard based on his post-November 4th deposition review of Barnard's 2002 Contract with TBW (the "Contract").  The Contract was attached to the 2008 Complaint, Doc. #1, and so the Contract was always in the possession of HDR and readily available to, if not in the possession of, Bromwell.  Bromwell testified:

> Q.  Was the construction contract not provided to you any time before [December 13th]?
> A.  I can't say that definitively because there is a mass of documents and I don't recall whether it was provided or not.  I know that I have not read through the document before.

Bromwell Deposition, dated December 15, 2010, p. 1407 lines 9-14.

It strains the outer limits of credibility to think an expert on causation arising from a construction project never even looked at the construction contract.

When Bromwell finally decided to review the Contract, Bromwell received a copy of the Contract from HDR's counsel on the same day he requested the Contract. Bromwell testified:

> Q.  Sir, if I understand your testimony earlier today, Monday of this week, which was December 13th, was the first time that you ever requested a copy of the construction contract entered into between Barnard and TBW;  is that correct?
> A.  That's correct.

Bromwell deposition dated December 15, 2010, p. 1407 lines 3-8.

Q.  Now, your deposition in this case, the last day of it was November 4th.
    When did you re- -- request the Barnard contract?

A.  This week, a couple of days ago.

Q.  And when did you receive it?

A.  Monday[, December 13, 2010].

Q.  Monday.   Okay.   And today is Wednesday, [December 15, 2010,]
    correct?

A.  Yes.

Q.  Monday of this week, two days ago?

A.  Yes

Q.  And when did you review the agreement and do the highlighting?

A.  Monday and Tuesday.

Bromwell Deposition, dated December 15, 2010, p. 1225 lines 12-25.

Regardless of when Bromwell actually received the contract, Bromwell already
knew the gist of what the Contract said.  *See* Supplemental Report p. 6 ("These contract
requirements are consistent with my experience on earthwork projects over many
years.").   Based on his "many years" of "experience on earthwork projects", he could
have, and should have, developed opinions about Barnard's liability for fault much
earlier.  If Bromwell truly did fail to look at the Contract until December, 2010, then that
falls far short of the threshold for excusable neglect.

### E.     Bromwell's Failure to Offer Opinions on Barnard's Causation Earlier Is Not Justified

There is no excuse for Bromwell not offering his opinions about Barnard being at
fault or for not reviewing the Contract or photos months earlier, and, Bromwell has
offered none.  Rule 37 only excuses a failure to comply with Rule 26's requirement for
full and complete disclosure when the failure "was substantially justified or harmless."
Fed.R.Civ.P. 37(c)(1).  HDR has the burden of demonstrating that Bromwell's failure to
comply with Rule 26 was substantially justified or harmless.  *Mitchell v. Ford Motor Co.*,

318 Fed.Appx. 821 (11th Cir. 2009); *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687 (N.D.Ga. 2006). Here there is no plausible justification or excuse for Bromwell's failings. The Contract and photographs which form the basis for Bromwell's Supplemental Report and his new opinion have always been in Bromwell's possession or readily available to him. There is simply no excuse for Bromwell's inadequate and incomplete preparation for the Original Report.

Similarly, Bromwell's late disclosure of these new opinions is not "harmless." *KW Plastics v. U.S. Can Co.*, 131 F.Supp.2d 1289, 1296 (M.D.Ala. 2001)(Eleventh hour disclosure of new opinion were "neither justified nor harmless [and] cannot stand."). Bromwell has switched from offering no opinion as to fault for the cracking,[3] to blaming Barnard. This change is not "harmless" to Barnard. Barnard is now directly in Bromwell's crosshairs.

**F.  Bromwell's New Opinions Are Not Subject to Discovery**

Barnard has been deprived of an opportunity to effectively question Bromwell on his new opinions because they were introduced, for the first time, on the last day of discovery. It is totally unfair to expect a party to be fully and adequately prepared to question a witness when the witness proposes new opinions for the first time at a deposition held on the last day of discovery; particularly when HDR offered no advance warning that Bromwell would be changing his testimony and opinions. *Richardson v. Bombardier, Inc.*, 2005 WL 3087864 at *11 n. 43 (M.D.Fla. 2005)("The underlying theme of the Court's ruling, which was consistently applied, was that a party should not

---

[3] The Original Report determines the cause of the cracking as "construction defects," but Bromwell did not assign any responsibility for the cause of those "construction defects."

be sandbagged by expert testimony that had not been subject to reasonable scrutiny during the discovery process.").  As HDR stated in a similar situation, "[s]ince [HDR and Bromwell] did not raise these claims in its [Original Report], expert reports and expert and fact witness depositions did not focus on them.  By waiting [ten] months after filing its [Original Report] (and after discovery had closed) to raise these claims, [HDR and Bromwell have] delayed too long.  The prejudice to [Barnard] is severe.  The [Supplemental Report] must be denied."  *HDR Engineering, Inc.'s Response in Opposition to TBW's Motion For Leave to Amend Complaint [#257]*, Doc. 269, p. 9.

Barnard has no ability to question Bromwell about a report that Barnard did not receive until January 17, 2011.  The Supplement Report states:

> The following [excerpted sections from the construction contract] summarizes the Contractor's responsibilities, and makes it clear that the Contractor agreed to perform the Work in accordance with the Contract requirements, independent of any guidance or instructions, or lack thereof, from the Engineer, Owner, or Construction Manager.

Supplemental Report p. 6.  Barnard cannot ask Bromwell how this statement interrelates with sections in the Contract dealing with Contract changes or inquire about modifications to the Contract through verbal agreements or the conduct of the parties.

Bromwell's Supplemental Report includes twenty[4] pictures taken during construction in 2002-2004 which Barnard cannot question Bromwell about until trial. Barnard cannot question Bromwell as to why he selected these particular pictures, what the picture's relevance is, or what conclusions are reached based on the pictures.  For

_____

[4] The Supplemental Report contains a total of twenty pictures.  Three of the twenty pictures are repeated from the Original Report.

example, in the caption to Photograph 18, Bromwell states "that [the] bulldozer operator has no direct view of fill in front of blade" suggesting that the work was being done improperly with dirt being placed too thick.   Appendix A to Supplemental Report. Bromwell does not comment about the inspector shown in the photograph just a few feet in front of the blade watching the front of the dozer blade or comment on the bulldozer operator's ability to see the thickness of the dirt on the side of the bulldozer.   These are just few of the many questions Barnard should have had an opportunity to pose to Bromwell, but which, because of Bromwell's tardy disclosure of his Supplemental Report, Barnard cannot.

### G.   Additional Discovery Will Not Alleviate the Prejudice to Barnard, But Will Only Increase the Prejudice

Barnard, like HDR, is opposed to the extension of the discovery deadline or any other act which would jeopardize the trial calendar.   HDR has previously advised the Court that "[t]he Court is well aware of the tremendous burdens this litigation has already placed on all the parties.   Adding [additional time] to the schedule will only make matters worse, not better."   *HDR's Response to TBW's Motion to Modify Amended Case Management and Scheduling Order*, Doc. #192, p. 2.   Providing additional days to depose Bromwell on his new theories is not the answer.   This already protracted litigation has been extremely expensive on all parties and represents a huge burden to Barnard. Granting additional discovery of Bromwell will only serve to crack open the door to other discovery that will eventually derail the trial date.   Barnard "wishes to avoid this potential slippery slope as [Barnard] without question does not want the trial term or discovery cut-off to be delayed."   *HDR Engineering Inc.'s Memorandum in Opposition to Defendant,*

*Barnard Construction, Inc.'s Motion for Leave to Amend to Allow Cross-Claim Against Defendant, HDR Engineering, Inc., and Incorporate Memorandum of Law*, Doc. #216, p. 13.  This Motion was necessitated by Bromwell's failure to properly prepare his Original Report.  Bromwell's failures should not serve as a reason to reopen discovery or to disrupt the long standing trial date.  The resolution to this issue is to exclude Bromwell's Supplement Report and any testimony arising therefrom.

## V.     CONCLUSION

Bromwell was obligated, by Court order and the Federal Rules of Civil Procedure, to fully and thoroughly consider all available, relevant evidence before offering his Original Report.  Bromwell's failure to do so should not be excused nor should Bromwell be allowed to offer a new, critical opinion of Barnard in the guise of a supplemental report more than one month after the close of discovery.  Bromwell's failures are not justifiable considering the fact that all of the documentation that Bromwell bases his new opinions on has always been in his possession and readily available to him.


DATED this 28th day of February, 2011.

/s/ Michael R. Candes
Ben W. Subin
Florida Bar No. 982776
ben.subin@hklaw.com
Michael R. Candes
Florida Bar No. 0589381
michael.candes@hklaw.com
Holland & Knight LLP
200 South Orange Ave. Suite 2500
Orlando, Florida  32801
Telephone:  (407) 425-8500
Facsimile:  (407) 244-5288

Richard Miles Stanislaw
mstanislaw@lawasresults.com
Admitted *Pro Hac Vice*
Christopher A. Wright
cwright@lawasresults.com
Admitted *Pro Hac Vice*
STANISLAW ASHBAUGH
701 Fifth Avenue, Suite 4400
Seattle, Washington 98104
Telephone:  (206) 386-5900
Facsimile:    (206) 344-7400
*Counsel for Defendants, Barnard
Construction Company, Inc., and
St. Paul Fire and Marine Insurance
Company*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)</u>

I hereby certify that prior to filing the instant motion, to exclude testimony based on the Bromwell's Supplemental Report, the undersigned counsel conferred in good faith with Kurt Meaders, counsel for HDR in a good faith effort to resolve the matters raised herein.  HDR opposes this Motion, thereby necessitating the filing of this Motion.

/s/ Michael R. Candes

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 28, 2011 I electronically filed the forgoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Richard A. Harrison, Esq.                                 David Bresler, Esq.
David Foiziano, Esq.                                        Adam C. Shelton, Esq.
Allen Dell, PA                                                  Banker Lopez Gassler, P.A.
202 South Rome Ave., Suite 100                   501 1st Avenue North, Suite 900
Tampa, FL 33606                                            Tampa, FL 33701

Timothy D. Woodward, Esq.                         Wayne B. Mason, Esq.
James K. Hickman, Esq.                                 Kurt Meaders, Esq..
Forizs & Dogali, P.L.                                      Sedgwick, Detert, Moran & Arnold
4301 Anchor Plaza Parkway, Suite 300         1717 Main Street, Suite 5400
Tampa, FL 33634                                            Dallas, TX 75201-7367

Stephen William Pickert, Esq.
Carlton D. Miller, Esq.
Anthony R. Kovalcik, Esq.
Moye, O'Brien, O'Rourke, Pickert & Martin, LLP
800 South Orlando Avenue
Maitland, FL 32751

I FURTHER CERTIFY that I mailed the forgoing document and the notice of electronic filing by first-class mail to the following

Doran Matzke, Esq.
Arcadis U.S., Inc.
630 Plaza Drive, Suite 100
Highlands Ranch, CO 80129

/s/ Michael R. Candes
Michael R. Candes