**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

TAMPA BAY WATER,
A Regional Water Supply Authority,

    Plaintiff,                 CASE NO.: 8:08-CV-2446-T27TBM

v.

HDR ENGINEERING, INC., a
Nebraska corporation,
CONSTRUCTION DYNAMICS
GROUP, INC., a Maryland corporation,
BARNARD CONSTRUCTION
COMPANY, INC., a
Montana corporation,

    Defendants.

_____/

**TAMPA BAY WATER'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO HDR'S *DAUBERT* MOTION TO EXCLUDE OPINION TESTIMONY ON "LOSS OF USE" DAMAGES BY ADAMS AND KENNEDY**

COMES NOW, Plaintiff, Tampa Bay Water, A Regional Water Supply Authority ("TBW"), by and through its undersigned counsel, and responds to HDR's *Daubert* Motion to Exclude Opinion Testimony on "Loss of Use" Damages by Adams and Kennedy ("*Daubert* Motion") [Doc. 300] and in response thereto, TBW states as follows:

## I. THE JOINT AFFIDAVIT OF DENNIS AND DR. JACOBS IN SUPPORT OF HDR'S MOTION

The Joint Affidavit of Kevin D. Dennis, CPA/CFF, CMA, and E. Allen Jacobs, Ph.D. in Support of HDR's Motion to Exclude Testimony of Alison Adams and Jon Kennedy on Damages Due to "Lost Water" Use ("Joint Affidavit of Dennis and Dr. Jacobs") should not be considered in support of HDR's *Daubert* Motion. As explained at length in TBW's Motion to Strike Joint Affidavit of Kevin D. Dennis, CPA/CFF, CMA, and E. Allen Jacobs, Ph.D. in Support of HDR's Motion to Exclude Testimony of Alison Adams and Jon Kennedy on Damages Due to "Lost Water" Use and for Sanctions (Doc. 308), the Joint Affidavit should be stricken and not considered by the Court due to HDR's failure to comply with the expert witness disclosure requirements of Fed.R.Civ.P. 26(a).

Even if the Court decides not to strike the Joint Affidavit, the Joint Affidavit does not provide grounds for excluding any opinion testimony of Dr. Adams and Mr. Kennedy due to the number of errors contained in the Joint Affidavit. For example, the Joint Affidavit takes Mr. Kennedy's deposition testimony regarding the location and extent of the cracking out of context[1] and ignores the testimony of, and reports prepared by, both TBW's and HDR's experts.[2] Additionally, the Joint Affidavit mischaracterizes the evidence regarding whether the cracking of

---

[1] Affidavit of Jonathon M. Kennedy, P.E., ¶¶ 13-17 ("Kennedy Aff."), attached as Exhibit B. (There is no Exhibit A. Mr. Kennedy's Affidavit will also be used in support of TBW's response to HDR's Motion for Summary Judgment, in which it is referred to as Exhibit B. For the sake of consistency, TBW will refer to his Affidavit as Exhibit B in this response.)

[2] Exhibit B: Kennedy Aff., ¶¶ 18-19

the soil-cement is a safety issue[3] and whether the short-term repair program put in place by TBW after it discovered the cracking is sufficient to address the underlying cause of the cracking.[4] Moreover, the Joint Affidavit is itself unreliable to the extent it demonstrates Dennis' and Dr. Jacobs' lack of knowledge regarding TBW's operations and facilities.[5]

## II. TO THE EXTENT DR. ADAMS AND MR. KENNEDY WILL PRESENT FACTUAL TESTIMONY, THEY ARE NOT SUBJECT TO A *DAUBERT* MOTION

In an abundance of caution, TBW disclosed Dr. Adams and Mr. Kennedy as persons whose testimony may include opinion testimony under Fed. R. Evid. 702 and 703. TBW still anticipates that at least some of their testimony will be in the form of opinion testimony, based on their education, training and experience.

However, much of their testimony will be purely factual: historical data as to quantities of water produced from TBW's various supplies, date regarding historical hydrological and environmental conditions, data regarding TBW's actual costs to produce water from various supply sources, etc. To the extent Dr. Adams and Mr. Kennedy will present purely factual testimony, such testimony is not subject to the legal standards for expert testimony and cannot be excluded as a *Daubert* motion.

---

[3] Exhibit B: Kennedy Aff., ¶¶ 27-32
[4] Exhibit B: Kennedy Aff., ¶¶ 33-36
[5] Exhibit B: Kennedy Aff., ¶¶ 53-59

### III. GENERAL ADMISSIBILITY STANDARD UNDER FED.R.EVID. 702 AND *DAUBERT*

District courts play a critical "gatekeeping" function in ensuring that scientific and technical expert opinions meet the standards for admissibility under Rule 702.[6] *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S.137, 147, 118 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999); *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 n.7, 597, 113 S.Ct. 2786, 2795 n.7, 2798, 125 L.Ed.2d 469 (1993). In determining admissibility of expert testimony under Rule 702, trial courts engage in a three-part inquiry in which they consider whether:

> (1) the expert is qualified [by skill, experience, training, or education] to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

### IV. DR. ADAMS AND MR. KENNEDY ARE QUALIFIED TO TESTIFY COMPETENTLY REGARDING TBW'S LOSS OF USE DAMAGES

One of the ways in which an expert may be qualified is by experience alone. *Frazier*, 387 F.3d at 1260; *Calta v. North American Arms, Inc.*, 2007 WL 4800641, *3 (M.D. Fla. November 27, 2007). Indeed, the Committee Note to the

---

[6] HDR mentions in its motion that neither Dr. Adams nor Kennedy prepared a report outlining their calculation of damages. [Doc. 300, pp. 2, 5, 6] Because TBW's expert disclosures were made before the December 1, 2010 amendment of Rule 26(a)(2)(C) ad because Dr. Adams and Kennedy are TBW employees whose duties do not regularly involve giving expert testimony, TBW was not required to state the subject matter on which Dr. Adams or Kennedy was expected to present evidence under Fed. R. Evid. 702, 703, or 705 or to state a summary of the facts and opinion to which they were expected to testify.

2000 Amendments of Rule 702 explains that "[n]othing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony." *See also Frazier*, 387 F.3d at 1261.

"The qualification standard for expert testimony is not stringent and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Pegasus Imaging Corp. v. Northrop Grumman Corp.*, 2011 WL 109013, *1 (M.D. Fla. January 12, 2011) (J. Whittemore); *see also Hewitt v. Liberty Mutual Group, Inc.,* 268 F.R.D. 681, 686 (M.D. Fla. 2010); *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009).

Dr. Adams and Mr. Kennedy are qualified by virtue of their education, training, and experience. Mr. Kennedy holds both a B.S. and an M.S. in Civil Engineering[7] and is a licensed Professional Engineer in the State of Florida.[8] He has been employed by TBW since 1987 in a variety of positions.[9] He has served as a member of industry related committees and given numerous professional papers and presentations.[10] By virtue of his experience in the public water supply field and his nearly 24 years of employment with TBW, he has extensive knowledge of virtually all aspects of the planning, design, permitting, construction, operation and maintenance of TBW's public was supply facilities, including its consolidated wellfields, its seawater desalination facility and its

---

[7] Exhibit B: Kennedy Aff., ¶2
[8] Exhibit B: Kennedy Aff., ¶3
[9] Exhibit B: Kennedy Aff., ¶¶5-6
[10] Exhibit B: Kennedy Aff., ¶¶7-8

integrated surface water supply system, which includes the C.W. "Bill" Young Regional Reservoir that is the subject of this litigation.[11] He is also familiar with and has extensive knowledge concerning the costs incurred by TBW in the operation and maintenance of its facilities, both currently and historically.[12]

Dr. Adams holds a B.S. in Environmental Engineering, an M.S. in Engineering Management and a Ph.D. in Civil Engineering.[13] She is a licensed Professional Engineer in both Florida and Colorado.[14] She has been employed by TBW in a variety of positions for approximately 15 out of the last 21 years and was also previously employed by the Southwest Florida Water Management District.[15] Dr. Adams specializes in water supply planning, forecasting and management, water resources management, decision processes, hydrology and hydrologic modeling, among other things.[16]

In her current position with TBW, Dr. Adams is responsible for all activities in the areas of design, application and interpretation of data analysis programs, hydrologic and water quality analysis and models, optimization analysis and models, decision support systems, water demand forecasting models and water supply forecasting and management as required to support production rotation schedules and water resource management requirements while maintaining

---

[11] Exhibit B: Kennedy Aff., ¶ 9
[12] Exhibit B: Kennedy Aff., ¶10
[13] Affidavit of Alison Adams, Ph.D., P.E. ¶ 2 ("Dr. Adams Aff."), attached as Exhibit C. (Dr. Adams' Affidavit will also be used in support of TBW's response to HDR's Motion for Summary Judgment, in which it is referred to as Exhibit C. For the sake of consistency, TBW will refer to her Affidavit as Exhibit C in this response.)
[14] Exhibit C: Dr. Adams Aff., ¶ 3
[15] Exhibit C: Dr. Adams Aff., ¶¶ 5-10
[16] Exhibit C: Dr. Adams Aff., ¶ 4

regulatory compliance, environmental protection and meeting the demands of TBW's member governments.[17] Based on her employment with TBW and approximately 25 years of experience in water use permitting, water resource management and water supply planning, forecasting and management, she has extensive knowledge of such matters as they relate to TBW's public water supply facilities.[18]

It is absurd to suggest that Dr. Adams and Mr. Kennedy are not qualified to provide opinions on matters within their respective areas of expertise. HDR contends that their testimony should be excluded because Dr. Adams and Mr. Kennedy are not "water economists" and are therefore not qualified to perform "forensic damage modeling." (Doc. 300: *Daubert* Motion at pp.3-4) But there is no legal requirement that TBW prove its damages through a "forensic damage model" or via testimony of a "water economist." The legal standard for TBW's loss of use damages claim is discussed in Section V, below.

**V.  THE OPINIONS PRESENTED BY DR. ADAMS AND MR. KENNEDY ARE SUFFICIENTLY RELIABLE.**

   **A.  General Reliability Standard**

The trial judge has "considerable leeway in deciding in a particular case whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S.at 152, 118 S.Ct. at 1176. The inquiry into whether an expert's opinion is reliable "is meant to

---

[17] Exhibit C: Dr. Adams Aff., ¶ 5
[18] Exhibit C: Dr. Adams Aff., ¶ 14

be flexible and fact specific, allowing courts to evaluate the expert's reliability without bright line rules." *Calta*, 2007 WL 4800641, *3.

Indeed, the usual *Daubert* reliability factors[19] may be unhelpful where the expert's opinions are derived largely from his or her own experience in the relevant industry because such opinions do not "easily lend themselves to scholarly review or to traditional scientific evaluation." *First Tennessee Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001); *Flanagan v. Altria Group, Inc.,* 423 F. Supp. 2d 697 (E.D. Mich. 2005) ("in cases where reliability derives solely from the personal knowledge or experience of the witness, the [*Daubert*] factors may not be helpful at all"). In cases where the expert relies solely on experience, a more appropriate test requires the witness to "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed.R.Evid. 702, advisory committee's note (2000 amends.); see also *Frazier*, 387 F.3d at 1261.

Courts have often found that reliability challenges, such as an expert's failure to run every conceivable test or the expert's use of the wrong data or calculations, go to the weight of the evidence, not its admissibility. *Quiet Tech.*

---

[19] The usual *Daubert* reliability factors include:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262.

*DC-8,* 326 F.3d at 1345-46; *Pegasus Imaging Corp.,* 2011 WL 109013 at *2; *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 2009 WL 5103606, *2 (S.D. Fla. December 28, 2009); *Calta,* 2007 WL 4800641, *7-*8. In such cases, the party challenging the reliability of the expert's opinion can explore the basis of its objections during cross-examination of the expert witness.[20] *Quiet Tech. DC-8,* 326 F.3d at 1345-46; *Calta*, 2007 WL 4800641, *7-*8. As explained in *Pegasus Imaging Corp.*:

> So long as the expert's testimony rests upon good grounds, it should be tested by the adversary process-competing expert testimony and active cross-examination-rather than excluded from the jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.

2011 WL 109013 at *2.

Indeed, in many of the cases cited by HDR for the proposition that an expert's testimony must be excluded if the expert's methodology and assumptions are inaccurate, the courts actually ***declined*** to exclude the experts' opinions on these bases.[21] *1st Source Bank v. First Resource Fed. Credit Union*,

---

[20] In footnote 21 on page 8 of its motion, HDR rejects the idea that the more appropriate course would be to challenge the opinions on cross-examination. HDR provides absolutely no explanation as to why its concerns about the reliability of Dr. Adams' and Kennedy's opinions could not be addressed adequately through cross-examination.

[21] In one case cited by HDR in which the court excluded an expert witness' testimony based on the use of an invalid methodology, the calculation used by the expert was clearly contrary to Georgia law on lost profits. *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 780 (11th Cir. 2004). "To recover lost profit damages in Georgia, one must show the probable gain with great specificity as well as expenses incurred in realizing such profits. In short, the gross amount minus expenses equals the amount of recovery." *Id.* The expert witness failed to follow this rule by not considering the expenses the defendant/counter-claimant would normally incur in generating income and sales. *Id.* Because the expert failed to consider one of the clearly required elements

167 F.R.D. 61 (N.D. Ind. 1996) (expert opinion on prejudgment interest excluded where expert did not express an opinion or provide the basis for an opinion in his report; otherwise, expert's opinions were admitted over objections related to the methodology used by the expert); *Environmental Biotech, Inc. v. Sibbitt Enters., Inc.,* 2008 WL 5070251 (M.D. Fla. November 24, 2008) (valuation opinion deemed by the court to be a product of unreliable methodology was not excluded but was accorded little weight in a non-jury trial); *Slicex, Inc. v. Aeroflex Colorado Springs, Inc.*, 2006 WL 1932344 (D. Utah July 11, 2006) (expert witness opinion regarding whether plaintiff proved its damages excluded because determining whether damages had been proven was the sole province of the trier of fact; otherwise expert testimony was admissible); *CDA of America Inc. v. Midland Life Ins. Co.*, 2006 WL 5349266 (S.D. Ohio March 27, 2006) (expert opinion excluded as being a conclusion of law; otherwise expert testimony was admissible).

*CDA of America* presented a situation very similar to TBW's. In that case, the defendant sought to exclude evidence of plaintiff's development costs as set forth in the testimony of the plaintiff's owner and president. 2006 WL 5349266, *11. The defendant argued that the owner and president's estimation of the development costs should have been excluded because it was "based upon flawed assumption, questionable data, and dubious methodology and therefore

---

of lost profits damages, the trial court acted appropriately in excluding his opinion. *Id.* As discussed below, the law regarding loss of use damages is not as clear or inflexible as the law regarding lost profits damages and courts have employed a variety of different measures to determine loss of use damages. Accordingly, the reasoning employed by the court in excluding the witness in *Club Car, Inc.* should not be applied to exclude the testimony of Dr. Adams and Kennedy in this case.

inadmissible under *Daubert*." *Id.* The court decided that the defendant's objections went to the weight of the testimony, not its admissibility. *Id.* Accordingly, the court denied the defendant's motion to exclude.

In this case, the testimony of Dr. Adams and Mr. Kennedy regarding TBW's loss of use damages is reliable. Their testimony will concern TBW's water source allocation during the time TBW was unable to fill the Reservoir to permitted levels during the inspection and short-term repair period (past loss of use) and the anticipated water source allocation during the time the Reservoir will have to be drained to implement the long-term repairs necessary to address the cause of the cracking (future loss of use) and the increased costs associated with the water source allocations that have been or will be made during the loss of use periods. As discussed in Section IV, Dr. Adams and Mr. Kennedy have extensive experience in these areas.

Dr. Adams' testimony will address TBW's water source allocation during the past and future loss of use periods. That is, Dr. Adams will testify as to what water sources TBW used during the past loss of use period and what water sources TBW will likely use during the future loss of use period. This testimony will be based on Dr. Adams' experience in forecasting water demand and water supply in an effort to manage TBW's water resources and production rotation schedules.[22] Contrary to HDR's assertions that Dr. Adams uses an incorrect, incomplete and unreliable methodology, Dr. Adams' forecasts are based on

---

[22] Exhibit C: Dr. Adams Aff., ¶ 5

formal processes, protocols, and modeling used by her as part of her normal duties at TBW.[23] The demand forecasting used by Dr. Adams follows industry standards as described in the American Water Works Association's Water Resource Planning Manual of Water Supply Practices M50.[24] Additionally, in an independent management performance audit, it was determined that TBW does not regularly overestimate or underestimate water demands.[25] Accordingly, Dr. Adams' testimony, which will be based on her experience and the accepted protocols and processes she employs in planning water supply allocation and forecasting water demand, is sufficiently reliable. Any disagreements HDR has with the processes or data used by Dr. Adams are more appropriately addressed through cross-examination or the presentation of rebuttal expert witnesses rather than by exclusion of Dr. Adams' testimony.

Mr. Kennedy's testimony regarding the increased cost of the water source allocation during the loss of use periods is based on his knowledge of TBW's design capabilities, production capacities, historical production levels of TBW's water supply facilities, the actual historical costs associated with TBW's water supply facilities, and TBW's budgetary procedures.[26] His calculations of TBW's damages claim for past and future loss of use of the Reservoir are based on TBW's actual cost data for its various water supplies, TBW's FY 2011 budget,

---

[23] Exhibit C: Dr. Adams Aff., ¶¶ 18-45
[24] Exhibit C: Dr. Adams Aff., ¶ 33
[25] Exhibit C: Dr. Adams Aff., ¶¶ 40-41
[26] Exhibit B: Kennedy Aff., ¶¶ 9, 47-49

and other historical data and information maintained by TBW.[27] The value of his experience is highlighted by his explanation of Navigant's unfounded allegations of errors in calculating the incremental cost of TBW's desalinated water.[28] As explained by Mr. Kennedy, there were no errors in his calculations, which were based on actual costs to TBW to treat its desalinated water and the increase in costs for such treatment based on substantial alterations to the desalination facility and an increase in chemical costs.[29] Because Mr. Kennedy's testimony is based on TBW's actual cost data, it is sufficiently reliable.

### B. Dr. Adams' and Mr. Kennedy's Opinions Regarding Loss of Use Damages Are Reasonably Certain.

"Relevant testimony from a qualified expert is admissible if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to speculation or conjecture." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 2009 WL 5103606, *2 (S.D. Fla. December 28, 2009). Absolute certainty is not required. Id. Likewise, "[f]uture damages need only be reasonably certain, not absolutely certain." *Nebula Glass Int'l, Inc. v. Reichhold, Inc.,* 454 F.3d 1203, 1213 (11th Cir. 2006).

Florida law allows the recovery of damages if a party can prove (1) the defendant's action caused the damage and (2) there is some standard by which the amount of the damages can be adequately determined. *Id.* at 1213-14; *W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1350-

---

[27] Exhibit B: Kennedy Aff., ¶ 49.
[28] Exhibit B: Kennedy Aff., ¶¶ 54-59
[29] Exhibit B: Kennedy Aff., ¶¶ 54-59

51 (Fla. 1989). The "uncertainty which defeats recovery in such cases is the cause of the damage rather than the amount." *W.W. Gay*, 545 So. 2d at 1350. "Uncertainty as to the amount of damages or difficulty in proving the exact amount of damages will not prevent recovery where it is clear that substantial damages were suffered and there is a reasonable basis in the evidence for the amount awarded." *Centex-Rooney Constr. Co., Inc. v. Martin County*, 706 So.2d 20, 28 (Fla. 4 DCA 1997) (citing *Adams v. Dreyfus Interstate Dev. Corp.*, 706 So. 2d 20 (Fla. 4 DCA 1977)). The degree of certainty required is only as much as would satisfy the "the mind of a prudent impartial person." *Id.*

HDR cites a number of cases regarding lost profits to support its argument that Dr. Adams' and Mr. Kennedy's opinions regarding loss of use damages are unreliable. HDR, however, overlooks the fact that TBW, which is a governmental entity that is not in the business of earning a profit by supplying water to the residents of the Tampa Bay area, seeks loss of use damages, not lost profits. The law regarding recovery of loss of use damages is not as clear or inflexible as the law regarding the recovery of lost profits. *See Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1351 (11th Cir. 1987) (regarding strictness of rules for establishing lost profits). Accordingly, the lost profits cases cited by HDR are of little value in assessing the reliability of the opinions expressed by Dr. Adams and Mr. Kennedy with regard to TBW's loss of use damages.

14

Courts have used varying measures of loss of use damages, depending on the facts and circumstances of the case presented. *See MCI Worldcom Network Servs. Inc. v. Lind*, 2003 WL 24304128, *2 (S.D. Fla. February 27, 2003) (collecting cases discussing various methods of computing loss of use damages); *see also Maserati Automobiles Inc. v. Caplan*, 522 So. 2d 993, 995 (Fla. 3 DCA 1988) (disapproved on other grounds by *Perez-Borroto v. Brea*, 544 So. 2d 1022 (Fla. 1989)). In a particularly instructive Texas case involving the construction of three schools, the court upheld the use of evidence of the original cost of the buildings and the straight line value of the buildings over their expected life span and the interest incurred on the bonds issued to pay for the schools as the measure of loss of use damages. *See Goose Creek Consol. Indep. Sch. Dist. of Chambers and Harris Counties, Texas v. Jarrar's Plumbing, Inc.,* 74 S.W.3d 486 (Tex. Ct. App. 2002). The court noted that because the facilities were institutions of education, a reasonable rental value may be difficult to assess.[30] *Id.* at 498. The court explained that although the usual measure of damages for loss of use of injured property is the reasonable cost of renting a replacement, "[w]here the property is not rentable, the plaintiff may resort to proving the actual worth of use." *Id.* at 497.

In determining that the school district had presented sufficient evidence to support the award of loss of use damages, the court stated:

---

[30] Similarly, because the Reservoir is a unique part of TBW's water delivery system, it would be very difficult, if not impossible, to determine a reasonable rental value.

> The evidence provided attempted to quantify the loss of valuable use by providing estimates based on objective facts, figures, and data, from which some value can be ascertained, which is the minimum required to show the loss with reasonable certainty. The calculations presented by Goose Creek provided one basis on which the jury could award an amount for loss of use. Testimony provided information on which to evaluate the proposed calculation, and the jury could have altered the calculation it if it had disagreed that it was a reasonable estimate of the lost use. The evidence provided more than speculation, even if it did not provide the jury with specific details about the degree of presence in the affected areas.

*Id.* at 499 (internal citations omitted).

The court allowed an award of loss of use damages even though there was no physical deprivation of property as the schools were in continuous use, and there was no instructional time lost except to move the students from one location to another but the presence of raw sewage and sewer gas disrupted the learning process and made the schools unsuitable as a learning environment. *Id.* at 495, 497.

As discussed in Section V.A., Dr. Adams' and Mr. Kennedy's opinions are based on data, processes, and protocols TBW uses in conducting its regular business. Their opinions are not based on speculation or conjecture. Accordingly, their testimony provides a standard by which the amount of TBW's past and future loss of use damages can be established with reasonable certainty. TBW is not required to establish its loss of use damages within the strict confines of the law applicable to lost profits damages. Instead, it can establish its damages by the more relaxed standards applied to loss of use cases. Moreover, it can recover those damages related to the loss of use of the Reservoir, which is an

16

integral part of its water supply system, even though it was able to meet its unequivocal obligation to provide water to its member governments through other sources. *See Goose Creek Consol. Indep. Sch. Dist. of Chambers and Harris Counties, Texas,* 74 S.W.3d 486.

Even if the Court were to look to the lost profits cases cited by HDR for guidance with regard to Dr. Adams' forecast of supply and demand and Mr. Kennedy's opinions regarding costs, the cases cited by HDR are inapposite. In *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 921 So. 2d 43, 46 (Fla. 3 DCA 2006), the court excluded future revenue and cash flow projections that assumed the plaintiff would receive $3 million from investors, although no such funding was ever given. The court also noted that the plaintiff was a start-up company that had never turned a profit and that no comparable companies existed to assist in the valuation process. *Id.* In *North Dade Community Dev. Corp. v. Dinner's Place, Inc.*, 827 So. 2d 352 (Fla. 3 DCA 2002), the only evidence presented in support of the claimed lost profits damages was a business prospectus.

TBW is an established governmental entity with a long history of providing water to its member governments. It is not a start-up company with no data on which to base its calculations of past loss of use and future loss of damages. To the contrary, TBW gathers extensive data related to water supply, water demand, and the costs associated with TBW's water supply facilities. Additionally, TBW's forecasts of water supply, water demand, and water supply costs are not based

17

on an "unsupported wish list" but rather are based on the processing of its extensive data using formal processes and protocols.

Finally, it has been recognized that where an expert witness' testimony is based on things that witness actually observed as an employee of one of the parties, the expert's testimony benefits from enhanced credibility. *See In re Mentor Corp. ObTape Transobturator Sling Products Liability Litigation*, 711 F. Supp. 2d 1348, 1368-69 (M.D. Ga. 2010). Because Dr. Adams' and Mr. Kennedy's testimony is based on their actual duties and responsibilities at TBW, their testimony is much more reliable than that of supposed experts who have little or no public water experience.[31]

## VI. DR. ADAMS' AND MR. KENNEDY'S TESTIMONY REGARDING LOSS OF USE DAMAGES WILL ASSIST THE TRIER OF FACT.

Expert testimony is admissible "if it concerns matters that are beyond the understanding of the average layperson." *Frazier*, 387 F.3d at 1262. Expert testimony will be excluded "when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend themselves." *Calta*, 2007 WL 4800641, *3 (quoting *Hibiscus Assocs. Ltd. v. Board of Trustees of Policemen and Firemen Retirement Sys. of City of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995)).

Water supply and water demand forecasting and the analysis of water supply costs are matters that are beyond the understanding of the average layperson. The forecasting performed by Dr. Adams requires the gathering of

---
[31] Exhibit B: Kennedy Aff., ¶¶ 54-59

data, statistical analyses, and modeling. Such matters are beyond the understanding of the average layperson. Additionally, the average layperson does not have Mr. Kennedy's knowledge of water supply costs and the factors contributing to those costs. Accordingly, the testimony of Dr. Adams and Mr. Kennedy will assist the trier of fact in determining the amount of TBW's past and future loss of use damages.

**WHEREFORE**, based on the foregoing, Plaintiff, Tampa Bay Water, respectfully submits that the Court should deny HDR's *Daubert* Motion to Exclude Opinion Testimony on "Loss of Use" Damages by Adams and Kennedy.

**s/ Richard A. Harrison**
**Richard A. Harrison, Esquire**
Florida Bar Number 0602493
rharrison@allendell.com
Lead Trial Counsel

**David Forziano, Esquire**
Florida Bar Number 0025755
dforziano@allendell.com

**Misty C. Leafers, Esquire**
Florida Bar Number: 416894
mleafers@allendell.com

**Barbara M. Cowherd, Esquire**
Florida Bar Number: 0469203
bcowherd@allendell.com

ALLEN DELL, P.A.
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682

Attorneys for Plaintiff, Tampa Bay Water, A Regional Water Supply Authority

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th of March, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

**s/ Richard A. Harrison**
**Richard A. Harrison, Esquire**
Florida Bar Number 0602493
ALLEN DELL, P.A.
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682
rharrison@allendell.com