**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TAMPA BAY WATER,
A Regional Water Supply Authority

      Plaintiff,                  CASE NO.:    8:08-cv-2446-T27-TBM

v.

HDR ENGINEERING, INC., a
Nebraska corporation, et al.

      Defendants.
_____/

**TAMPA BAY WATER'S MOTION TO STRIKE UNTIMELY**
**EXPERT DISCLOSURES AND TO LIMIT TESTIMONY**
**OF LESLIE G. BROMWELL, ScD, P.E.**

      Plaintiff, Tampa Bay Water, A Regional Water Supply Authority ("TBW"), by and

through its undersigned attorney and pursuant to Fed.R.Civ.P. 26 and 37, moves this Court

for an Order striking the January 19, 2011 report (the "January 2011 Report") of Leslie G.

Bromwell, ScD, P.E. ("Bromwell")[1], precluding Dr. Bromwell from testifying as to any of

the matters addressed in the January 2011 Report, precluding Dr. Bromwell from relying on

or testifying about the photographs attached to January 2011 Report, and precluding Dr.

Bromwell from relying on or testifying about the four publications produced by HDR on or

about April 6, 2011.

**I.**      **Summary of the Argument**

      Despite the clear expert disclosure requirements of Rule 26(a)(2)(B), HDR and

---

[1] The report prepared by Dr. Bromwell is dated January 17, 2011. However, HDR did not serve the report on
TBW until January 19, 2011.

Bromwell waited until well after the expert disclosure deadline and the discovery cutoff date to issue Bromwell's newly formed opinions and to produce materials that support Bromwell's opinions. These late disclosures came in the form of an untimely "supplemental" report that was served on the parties on January 19, 2011, and an April 26, 2011 disclosure of four previously undisclosed publications supporting Bromwell's expert opinion.

Section 1 of the January 2011 Report is an untimely response to Golder Associates, Inc.'s (*i.e.*, TBW's expert) April 2010 Rebuttal Report and November 2010 Supplemental Report. Rule 26(a)(2)(B) requires rebuttal reports to be furnished within 30 days after the adverse party's expert report. The January 2011 Report was furnished 9 months after Golder's April 2010 Rebuttal Report and 2 months after Golder's November 2010 Supplemental Report.

Section 2 of the January 2011 Report disclosed for the first time photographs purporting to support the opinions expressed in Bromwell's March 2010 Report, but which were not produced or otherwise disclosed with his March 2010 Report or in response to the May 7, 2010 subpoena served on Bromwell by TBW. These are not new or newly discovered photographs. Bromwell admits that these photographs have been in his possession since June or July of 2009.

In Section 3 of the January 2011 Report, Bromwell, for the first time in a written report, expressed his opinion that Barnard is responsible for the alleged defective construction that is identified in his March 2010 Report. Previously, in both his March 2010 Report and during his November 2010 deposition, Bromwell did not express any opinion as to who was at fault for the alleged defective construction. In fact, he gave sworn testimony

that he had no such opinions because he was not tasked with determining fault.

Finally, on April 26, 2011, HDR disclosed four publications that are purported to support the opinions expressed in Bromwell's March 2010 Report. This disclosure took place over one year after Bromwell issued his March 2010 Report. Like the newly disclosed photographs, these publications are not new. All of them were published between 1991 and 2005, and were available to Bromwell when he issued his March 2010 Report.

HDR's failure to timely disclose Bromwell's new opinions and materials supporting his opinions is not substantially justified and will prejudice TBW. There is simply no excuse for HDR's and Bromwell's failure to comply with the clear requirements of Rule 26(a)(2)(B) or TBW's May 7, 2010 subpoena to Bromwell. Additionally, there is no doubt TBW has been prejudiced by the late disclosures. TBW's experts prepared rebuttal reports and TBW deposed Bromwell and multiple fact witnesses based on the opinions expressed by Bromwell and the materials disclosed by HDR and Bromwell in support of those opinions. The disclosure of additional opinions and materials after the discovery cutoff date prevents TBW's experts from providing rebuttal analysis and opinions and prevents TBW from conducting depositions or any other form of discovery regarding the newly disclosed opinions and materials.

## II.   <u>Factual Background</u>

1.     This action arises out of large cracks and other damage that have developed at various locations on the interior slope of the C.W. Bill Young Regional Reservoir ("Reservoir"), which is an above-ground, fifteen-billion-gallon (15,000,000,000), off-stream reservoir located in Hillsborough County, Florida, owned and operated by TBW.

2.      TBW contracted with HDR to: (a) design the Reservoir's embankments; (b) perform field observations, testing and quality control to verify that the Reservoir was built in compliance with HDR's plans and specifications; and (c) certify to Florida Department of Environmental Protection ("FDEP") that the Reservoir was constructed in accordance with HDR's plans and specifications. [Doc. 125-1]

3.      TBW contracted with Barnard Construction Company ("Barnard") to construct the Reservoir pursuant to the plans and specifications prepared by HDR.

4.      HDR's Reservoir design consisted of the following components: (a) a synthetic geomembrane that covers the entire upstream slope of the embankment; (b) a wedge-shaped layer of soil that overlays the geomembrane ("Soil Wedge"); (c) a geotextile that overlays the Soil Wedge; and (d) overlaying the geotextile, a combination "flat-plate" and "stair-step" soil cement layer. Bromwell's causation opinions are focused on the first layer of soil that is part of the Soil Wedge. That first layer of soil was placed directly on top of the geomembrane and is commonly referred to as the "Protective Layer."

5.      Construction of the Reservoir was completed in April 2005, and operation of the Reservoir commenced in June 2005. In December 2006, TBW discovered large cracks in the flat-plate soil-cement that lines the interior slope of the Reservoir's embankment. In December 2008, TBW filed this action.

6.      On September 9, 2009, this Court entered an Amended Case Management and Scheduling Order ("CMO"). [Doc. 118] The CMO required HDR's "expert disclosure as required by Fed.R.Civ.P. 26(a)(2)(A) regarding all matters except remediation design and cost [to] be made on or before March 26, 2010."

7.      In March 2010, HDR produced Bromwell's twenty-eight page report (excluding attachments and exhibits) entitled "Analysis and Evaluation of Soil Cement Cracking at Tampa Bay Reservoir" ("March 2010 Report"), a copy (without attachments) of which is attached as Exhibit 1.

8.      In his March 2010 Report, Bromwell contends that the Protective Layer was placed too thick, too loose and too dry, which caused the Protective Layer to collapse (*i.e.*, shrink) when the Reservoir was filled with water. Hence, Bromwell's theory has come to be known as the "collapse upon wetting" theory. Bromwell alleges that the shrinking of the Protective Layer create voids in the Soil Wedge, into which the soil-cement facing cracked and collapsed.[2]

9.      It is important to note that Bromwell's opinion that the Protective Layer was placed too thick, too loose and too dry is based primarily on his interpretation of a select few photographs taken during construction that do not depict the final condition of the Protective Layer.[3] Rather, these photographs merely show an uncompleted work-in-progress. Bromwell's March 2010 Report referenced 17 photographs, all of which were attached as exhibits to the March 2010 Report. Bromwell's opinions are necessarily based on his review of photographs because he did not observe or otherwise witness the construction of the embankment.[4]

10.     Of the 17 photographs that are part of Bromwell's March 2010 Report, only nine of them purport to show the construction of the Protective Layer. Bromwell claims that the nine

---

[2] See Exhibit 1 (BCI_RPT000015-17); see also Bromwell, 207:15 to 208:11, 208-15-24,  210:7-13, 325:16-20, attached as Exhibit 2.
[3] See Exhibit 1, p.1 (BCI_RPT000003).
[4] See Bromwell, 222:6-9, attached as Exhibit 3.

photographs, labeled Figures V-2 through V-10 to his March 2010 Report, are of the northeast portion of the embankment.

11.      In light of Bromwell's heavy reliance on those nine photographs, TBW deposed Bromwell extensively regarding those photographs during his November 2010 deposition.  A copy of each of the nine photographs, along with excerpts from Bromwell's deposition where he testifies that he is unable to determine the thickness, density, moisture content, or location of the Protective Layer shown in the photographs or whether the photograph shows the final condition of the Protective Layer before it is covered by the horizontal lifts of Wedge Soil is attached hereto as separate composite exhibits 4-12.

12.      Also in consideration of Bromwell's heavy reliance on these nine photographs, TBW deposed numerous fact witnesses regarding the photographs included in Bromwell's March 2010 Report, including Jim Brittain, HDR's Project Quality Control Engineer; Mike Milhorn, HDR's Lead Quality Control Inspector; Dwayne Williams, HDR's Lead Embankment Inspector; Lamar Colvin, McDonald's Project Manager for the Reservoir project; and Les King, McDonald's Superintendent for the Reservoir project.[5]

13.      None of these fact witnesses testified that the photographs attached to Bromwell's March 2010 Report represented the final condition or thickness of the Protective Layer. Milhorn, for example, testified that Figure V-6 attached to Bromwell's March 2010 Report represented only a "snapshot" in time and did not represent the final thickness of the

---

[5] Due to space limitations, TBW will not present a full recitation of all of the witnesses who were examined regarding the photographs attached to Bromwell's March 2010 Report or the  testimony provided by these witnesses regarding the photographs.

protective layer.[6] Williams testified that Figure V-6 (Deposition Exhibit 213) did not represent a completed product and that he could not tell from that photograph whether the finished protective layer was too thick, too loose, or too dry.[7] Colvin testified that Figure V-6 (Deposition Exhibit 213) did not depict a "finished product."[8] King likewise testified that Figure V-6 (Deposition Exhibit 213) represented only a "snapshot" as opposed to a "final product."[9]

14.     Bromwell's interpretations of the photographs are refuted by information provided to him by eye witnesses who were actually on-site during the construction of the Protective Layer. For example, Mike Milhorn, HDR's lead Construction Quality Control Inspector for the project, told Bromwell that the photographs that Bromwell was relying on were just "snapshots in time" during the construction of the Protective Layer that did not reflect the final thickness or condition of the Protective Layer, which Bromwell understood to mean that the final thickness of the protective layer was between two and three feet thick.[10] In fact, Bromwell interviewed numerous HDR employees, including Barry Meyer, who was not only HDR's lead designer but who was also in charge of HDR's Construction Quality Control Program. Not one person ever told Bromwell that the Protective Layer was left thicker than three feet.[11]

15.     Despite Bromwell's own admissions that he cannot determine the final condition of

---

[6] See Milhorn, 90:4-92:16 and Deposition Exhibit 213, attached as Composite Exhibit 13. Figure V-6 and Deposition Exhibit 213 are identical photographs, except that that the BCI Engineers and Scientists logo and Bromwell's description of the picture does not appear on Deposition Exhibit 213.
[7] See Williams 110:17-111:16, attached as Exhibit 14.
[8] See Colvin 99:16-100:24, attached as Exhibit 15.
[9] See King, 80:6-82:24, attached as Exhibit 16.
[10] See Bromwell, 216:16-218:22, attached as Exhibit 17.
[11] See Bromwell, 224:6-22, attached hereto as Exhibit 18.

the Protective Layer from the nine photographs attached to the March 2010 Report and Bromwell's interviews of key fact witnesses in which they stated that the photographs did not depicted the final condition of the Protective Layer, Bromwell still contends that the photographs depict a Protective Layer that is too thick, too loose, and too dry.

16.     While Bromwell opined in the March 2010 Report that defective construction was the cause of the cracking experienced at the Reservoir, he did not attribute responsibility or fault to anyone. Bromwell described his work as focused on "causation mechanisms and not standard of care." In fact, HDR's attorneys did not ask Bromwell to render an opinion as to the party responsible for the allegedly defective construction. [12]

17.     In April 2010, TBW produced the reply of its experts, who are employed by Golder Associates, Inc. ("Golder"), to Bromwell's March 2010 Report. A copy of the reply (without attachments and exhibits), entitled "Reply to Rebuttal Reports Submitted on the Tampa Bay Water Reservoir Project," ("Golder's April 2010 Reply"), is attached as Exhibit 20.

18.     On May 7, 2010, TBW served a subpoena on Bromwell requesting, among other things, "all documents relied upon by [Bromwell] in forming the opinions expressed in" Bromwell's March 2010 Report.[13] Bromwell did not produce the newly disclosed photographs or publications in response to the subpoena.

19.     On November 23, 2010, TBW served a supplement to Golder's April 2010 Reply on HDR (and the other parties to this litigation) ("Golder November 23, 2010 Supplement"), a copy of which is attached as Exhibit 22. The Golder November 23, 2010 Supplement discussed additional laboratory testing conducted by Golder and Golder's review of various

---

[12]  See Bromwell, 1206:1-25, 1408:13-25, 1409:6-10, attached as Exhibit 19.
[13] See Subpoena to Produce Documents, Information or Objects served on Bromwell, attached as Exhibit 21.

technical papers discussing soil collapse on inundation with water that have been included in peer-reviewed geotechnical journals.[14]

20.    TBW and the other parties deposed Bromwell for four days on November 1-4, 2010. During that deposition, TBW discovered that Bromwell had written a causation report in March 2009 (the "March 2009 Causation Report"). Bromwell's deposition was not completed at that time due to HDR's failure to produce the March 2009 Causation Report.[15] Bromwell drafted this report after being retained by HDR in 2007 to determine the cause of the cracking experienced at the Reservoir. In this report, Bromwell offered opinions regarding the cause of the cracking but he did not identify "collapse upon wetting," which he now opines to be the sole cause of the cracking.[16] Given the divergent opinions expressed by Bromwell in his March 2009 Causation Report and later in his March 2010 Report, there is little doubt as to why HDR tried to keep this report a secret.

21.    Due to HDR's and Bromwell's failure to produce Bromwell's March 2009 Causation Report, TBW filed a motion to compel production of the March 2009 Causation Report and for Bromwell to appear for further deposition. [Dkt. 236] Ultimately, HDR produced the March 2009 Causation Report and agreed to produce Bromwell for further deposition on December 15, 2010, which was the discovery cutoff date.

---

[14] Following the issuance of Golder's November 23, 2010 Supplement, HDR and the other defendants had the opportunity to depose Dr. William Brumund of Golder Associates for two days on December 2 and 3, 2010.

[15] This report was not produced by HDR until almost two years after this litigation was initiated. HDR did not produce the report in its initial disclosures or in response to TBW's requests for production. Additionally, Bromwell did not produce this report as part of his required expert witness disclosures or in response to TBW's subpoena. This report was produced by HDR only after Bromwell was forced to admit its existence during his November 2010 deposition and TBW filed a motion to compel its production and to compel Bromwell to appear for the completion of his deposition.

[16] See Report on Meeting No. 2 Soil-Cement Cracking C.W. Bill Young Regional Reservoir, attached as Exhibit 23.

22.     On December 15, 2010, TBW completed its deposition of Bromwell. During this deposition, Bromwell provided the following new, previously undisclosed testimony:

a.     Following his November deposition, he realized that he should be more familiar with the contract conditions between TBW and Barnard. He then asked for a copy of the contract just two days before the December 15, 2010 deposition and read through it.[17]

b.     Also following his November deposition, he went back and reviewed photographs that had been in his possession since June or July of 2009. These photos were primarily of the construction of the interior wedge but he also found photographs of erosion gullies in the <u>upstream</u> slope of the embankment, that were not disclosed in his March 2010 Report.[18] Bromwell testified that there were "not a lot of photographs, maybe 30 or so[.]"[19]

c.     As of December 15, 2010, Bromwell had not formulated any opinions regarding the specific test data discussed in the Golder November 23, 2010 Supplement or the portion of the Golder November 23, 2010 Supplement pertaining to collapse upon wetting. Indeed, Bromwell candidly admitted that he had "been more focused on this deposition than [on] reviewing that report."[20]

23.     Bromwell did not produce any of these photographs in response to the subpoena served on him by TBW. Additionally, Bromwell did not bring with him to the December 15,

---

[17] See Bromwell, 1137:19-1138:24, 1225:12-25, 1407:3-23, attached as Exhibit 24.
[18] Bromwell's March 2010 Report does not contain any photographs of erosion gullies in the <u>upstream</u> slope, only photographs of alleged erosion gullies in the <u>downstream</u> slope, which is not at issue in this case.
[19] See Bromwell, 1139:12-1140:5, 1140:9-25, 1141:14-16, 1146:5-7, attached as Exhibit 25.
[20] See Bromwell, 1168:21-24, 1170:17-25, attached as Exhibit 26.

2010 deposition any of the photographs he reviewed following his November deposition.[21]

24.     At his December 15, 2010 deposition, Bromwell acknowledged that he intended to write a report in response to the information contained in the Golder November 23, 2010 Supplement but that he had not done more than start to make an outline of the report. He did not have any particular target date for completion of the new report and could not answer any questions regarding his anticipated response.[22]

25.     On January 19, 2011, more than a month after the close of discovery and almost two months after TBW produced Golder's November 23, 2010 Supplement, HDR served on TBW a seven page letter (excluding appendices) from Bromwell purporting to be his "Supplemental BCI Expert Report on Analysis and Evaluation of Soil Cement Cracking at Tampa Bay Reservoir" ("Bromwell's January 2011 Report"), a copy of which is attached as Exhibit 29.

26.     Bromwell's January 2011 Report is comprised of 3 sections. The first section purports to be a response to Golder's supplemental report of November 15, 2010.[23] However, this portion of the January 2011 Report actually responds to points raised in Golder's April 2010 Reply[24] and to Golder's November 23, 2010 Supplement.

27.     The second section concerns additional photographs that "relate to" Bromwell's conclusions and opinions. In his January 20, 2011 Report, Bromwell admits that the

---

[21] See Bromwell, 1140:6-8, attached as Exhibit 27.

[22] See Bromwell, 1171:2-12, 1225:6-11, 1231:16-1232:5, attached as Exhibit 28.

[23] See Exhibit 29, pp. 2-5 [BCI_SUPRPT000002-5].

[24] The first Golder opinion addressed in this section ("observations and survey data indicate that the lower part of the (soil cement) slope appears (to) have bulged outward which cannot be explained by BCI causation theory") appears on page 4 of Golder's April 2010 Reply (GA_RBL000009). (Exhibit 20) The remainder of the Golder opinions addressed in Bromwell's January 2011 Report appear in Golder's November 23, 2010 Supplement. (Exhibit 22)

photographs attached to his March 2010 Report "were representative of those obtained during discovery, and were not inclusive of all photographs in his possession that relate to the opinions expressed in the report."[25] Despite having the newly produced photographs in his possession since June or July of 2009, Bromwell failed to produce any of these photographs as part of his March 2010 Report or in response to the May 7, 2010 subpoena served on him by TBW.

28.    In the third section of his January 2011 Report, Bromwell discusses his newly formed opinions regarding Barnard's contractual responsibilities.[26] Bromwell opines for the first time in a written report that "the Agreement states that any defective construction work, which would include areas where the bulldozer-placed fill in the wedge was placed too thick, too dry, and too loose, was the responsibility of the contractor." In contrast, during the November 2010 deposition, when Bromwell was specifically asked whether Barnard or anyone else was at fault for the protective layer being placed too thick, too dry, and too loose, Bromwell responded that he had "not evaluated whose fault it might have been."[27] Moreover, Bromwell testified that he had not attempted to determine whether Barnard was responsible for the alleged defective construction work and that he had no plans to do so in the future.[28]

29.    Finally, on or about April 6, 2011, HDR produced four publications that HDR represents "serve as an additional basis for Bromwell's expert opinion." A copy of HDR's April 6, 2011 cover letter and the publications referenced therein are attached as Exhibit 32. The produced publications were published between 1991 and 2005, which means that these

---

[25] See Exhibit 29, p. 5 [BCI_SUPRPT000005].
[26] See Exhibit 29, pp. 5-7 [BCI_SUPRPT000005-7].
[27] See Bromwell, 576:13-577:12, attached as Exhibit 30.
[28] See Bromwell, 578:3-20, 579:4-580:2, 781:4-14, 938:1-14, attached as Exhibit 31.

publications were available to Bromwell years before HDR produced Bromwell's March 2010 Report. However, Bromwell and HDR waited until over a year after producing his original report and almost four months after the close of discovery and Bromwell's final deposition to produce these materials.

30.     <u>Certificate of Compliance with Local Rule 3.01(g)</u>: Pursuant to Local Rule 3.01(g), the undersigned counsel for TBW certifies that he has conferred with counsel for the parties with respect to the relief sought herein.  Defendant HDR opposes this motion.  Defendants Barnard and McDonald do not object to this motion.

**II.     <u>Memorandum of Legal Authority</u>**

   **A.     The Federal Rules of Civil Procedure Allow for the Exclusion of Evidence Based on Untimely or Incomplete Expert Witness Disclosures.**

Federal Rule of Civil Procedure 26(a)(2) requires full, complete, and timely disclosure of an expert witness' opinions, the information which the expert considered in forming the opinions, and the exhibits that will be used to support the opinions. "The reasons for requiring expert reports are elimination of unfair surprise to the opposing party and the conservation of resources." *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 430 (N.D. Okla. 2008).

Rule 37(c)(1) precludes the use of information that was not disclosed as required under Rule 26(a) or (e) unless the offending party can establish that the failure to comply with the Rule was substantially justified or is harmless. Rule 37(c)(1) is a self-executing sanction, which means that exclusion of the untimely disclosed information is automatic unless the offending party can establish that failure to comply with Rule 26 was substantially justified or is harmless. *Cohlmia,* 254 F.R.D. at 429-30. HDR "bears the burden of

establishing that the failure to disclose was substantially justified or harmless." *Goodbys Creek, LLC v. Arch Ins. Co.,* 2009 WL 1139575, *3 (M.D. Fla. April 27, 2009).

The failure to disclose is substantially justified only if HDR can satisfy a reasonable person that parties could differ as to whether HDR and its expert witnesses were required to comply with the deadlines for expert disclosures and the discovery cutoff date set forth in the Amended Case Management and Scheduling Order. *Goodbys Creek, LLC,* 2009 WL 1139575, *3. "Failure to disclose is harmless where there is no substantial prejudice to the party entitled to receive the disclosure." *Goodbys Creek,* 2009 WL 1139575, *3.

Given the clear disclosure requirements of Rule 26(a)(2), reasonable parties cannot differ as to whether HDR and Bromwell were required to (1) timely provide Bromwell's rebuttal to Golder's April 2010 Report and November 23, 2010 Supplement, (2) timely disclose the photographs and publications supporting Bromwell's opinions that were available to Bromwell at the time he prepared his March 2010 Report, and (3) to timely disclose Bromwell's opinions regarding responsibility for the alleged construction defects. Accordingly, HDR's and Bromwell's late disclosure of these matters is not substantially justified. Additionally, TBW will be prejudiced by HDR's and Bromwell's late disclosures, which were made well after the expert disclosure deadlines and the discovery cutoff date. TBW has been denied the opportunity to depose Bromwell regarding his new opinions and the newly produced information supporting his original opinions expressed in his March 2010 Report. Additionally, TBW has been denied the ability to depose certain fact witnesses regarding the events depicted in the newly produced photographs.

**B.      Bromwell's Untimely Reply to Golder's Original and Supplemental Reports Is Not Substantially Justified.**

If a party makes a disclosure that "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) [testifying written expert disclosures]," such a disclosure must be made within 30 days after the other party's disclosure. Fed.R.Civ.P. 26(a)(2)(D)(ii).[29] If a rebuttal does not occur within 30 days of the original expert disclosure, "it fails as admissible proof because the late disclosure of rebuttal opinions is disallowed under the Rules." *Keener v. U.S.*, 181 F.R.D. 639, 641 (D. Mont. 1998); *see also Iacangelo v. Georgetown University*, ____ F.R.D. ____, 2011 WL 13573 (D.D.C. January 4, 2011) (excluding supplemental expert report rebutting testimony of other expert witnesses served more than 30 days after receipt of other expert reports).

The opinions expressed by Bromwell in the first section of the January 19, 2011 Report are intended solely to contradict or rebut matters discussed in Golder's April 2010 Reply and Golder's November 23, 2010 Supplement. There can be no debate that the disclosure of his rebuttal opinions is late by at least eight months and one month, respectively.

**C.      HDR's and Bromwell's Untimely Production of Additional Photographs and Publications to Support Bromwell's Opinions Is Not Substantially Justified.**

HDR and Bromwell were required to produce the information supporting Bromwell's expert opinions in a timely manner. Fed.R.Civ.P. 26(a)(2)(B) plainly requires that the reports of testifying experts must contain the following information:

---

[29] Prior to the December 2010 amendment to Rule 26, this section was numbered Rule 26(a)(2)(C)(ii).

(i)    the data or other information considered by the witness in forming [the opinions the witness will express]; and

(ii)    any exhibits that will be used to summarize or support [the opinions the witness will express].

The time for HDR and Bromwell to disclose this information and the exhibits used to summarize or support his opinions, such as the newly disclosed photographs and publications, was March 26, 2010 (*see* Amended Case Management and Scheduling Order. [Dkt. 118]) or, at the latest, in response to TBW's May 7, 2010 subpoena. However, HDR and Bromwell did not disclose this information until January 19, 2011 (in the case of the photographs) and April 6, 2011 (in the case of the publications).

While Rule 26(e) allows parties to supplement their expert reports if the report is incomplete due to the unavailability of certain information or incorrect in a manner that makes the report misleading, "supplemental" reports which strengthen or deepen the expert's original opinions "exceed[ ] the bounds of permissible supplementation and [are] subject to exclusion under Rule 37(c)(1)." *Cohlmia* 254 F.R.D. at 433; *see also Goodbys Creek, LLC,* 2009 WL 1139575, *2 (the purpose of a supplemental expert report is to fix a previously disclosed report that is incorrect or incomplete in some way that renders it misleading); *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) ("Permissible supplementation under the Rules . . . means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure").

Additionally, a supplemental report is not meant to grant a party a "right to produce information in a belated fashion." *Goodbys Creek, LLC,* 2009 WL 1139575, *2.

Supplemental reports also do not "provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.,* 73 F.3d 546, 571 (5th Cir. 1996). A supplemental report is not meant to cure "failures of omission because the expert did an inadequate or incomplete preparation." *Goodbys Creek, LLC*, 2009 WL 1139575, *2; *see also Cook,* 580 F. Supp. 2d at 1170 (supplementation that is based on information that was available at the time of the expert's initial disclosures is not permitted under the Federal Rules); *Keener,* 181 F.R.D. at 641 (an expert witness' disclosures cannot be supplemented to rectify an expert's failure to include in his report information that was available to him to review in connection with his original disclosure but that he simply failed to review or include in the original disclosure).

The production of the newly disclosed photographs and the newly disclosed publications is not an appropriate supplementation of Bromwell's March 2010 Report. The photographs and publications are offered for the purpose of strengthening Bromwell's opinions and for providing information that Bromwell seemingly overlooked, or intentionally omitted, in the preparation of his March 2010 Report. Neither HDR nor Bromwell have indicated that any of these documents are meant to correct or complete the March 2010 Report or that the photographs and publications were not available to Bromwell at the time he issued his March 2010 Report. To the contrary, Bromwell admits that he was in possession of the newly produced photographs before he issued the March 2010 Report. Additionally, because the newly produced publications were published between 1991 and 2005, they were available years before Bromwell issued his March 2010 Report. Bromwell's failure to include them in his original March 2010 Report is indicative of the type of

inadequate preparation that cannot be corrected by supplementation under Rule 26(e).

Reasonable minds cannot differ as to whether HDR and Bromwell should have produced the photographs and publications at issue at an earlier time, either in conjunction with his March 2010 Report or in response to TBW's May 7, 2010 subpoena. Accordingly, HDR's and Bromwell's failure to produce the photographs until 10 months after the disclosure of the March 2010 Report and their failure to produce the additional publications until over one year after the disclosure of the March 2010 Report is not substantially justified. *See In re Static Random Access Memory (SRAM) Antitrust Litigation*, 257 F.R.D. 580, 581-85 (N.D. Cal. 2009) (experts precluded from using or referencing information or submitting new opinions or analyses based on that information where experts failed to produce the information in conjunction with their original reports although the information was in their possession when original reports were issued); *Keener,* 181 F.R.D. at 640 (these are precisely the types of "information . . .  Rule 26 requires to be disclosed in the critical initial disclosure").

> **D.** **HDR's and Bromwell's Untimely Disclosure of Bromwell's Opinions Regarding Barnard's Responsibility for the Damage to the Reservoir is Not Substantially Justified.**

Fed.R.Civ.P. 26(a)(2)(B)(i) requires that the reports of testifying experts must contain a complete statement of all opinions the witness will express and the basis and reasons for them.  Bromwell candidly admits that his March 2010 Report did not contain any discussion about who was responsible for the construction defects he believes caused the damage to the Reservoir because he was focused on causation rather than determining the fault of any party. Instead, Bromwell waited until January 19, 2011, which was over one month after the close

of discovery, to issue a report expressing his opinion that the alleged construction defects were the responsibility of Barnard. Bromwell disclosed these opinions for the first time at his December 15, 2010 deposition, which was supposed to be about Bromwell's March 2009 Causation Report that HDR and Bromwell failed to produce until after Bromwell's November 2010 deposition. HDR did not provide TBW with any advance warning that Bromwell had formed new opinions which were contrary the opinions expressed in his March 2010 Report and his November 2010 deposition testimony. Instead, HDR and Bromwell opted to surprise TBW with this information at Bromwell's December 15, 2010 deposition. As a result, TBW did not prepare to examine Bromwell on his new opinions and could not depose Bromwell on his new photographs or publications because they would not be produced for until well after the discovery cut-off date.

Although Rule 26(e) allow for supplementation of an incomplete or incorrect report, they do not contemplate the production of a preliminary report that does not express all of an expert's opinions. *Smith v. State Farm Fire and Cas. Co.*, 164 F.R.D. 49, 53 (S.D. W.Va. 1995). Instead, Rule 26 calls for a complete statement of all opinions to be expressed. *Cohlmia,* 254 F.R.D. at 433 ("Rule 26(e) does not give license to sandbag one's opponent with claims and issues that should have been included in the expert witness's report"). Moreover, as discussed above, an expert witness' disclosures cannot be supplemented to rectify an expert's failure to include in his report information that was available to him to review in connection with his original disclosure but that he simply failed to review or include in the original disclosure. *Keener,* 181 F.R.D. at 641. Finally, it is proper to preclude an expert witness from testifying as to opinions that are expressed in an untimely produced

second expert report that presents new opinions that are substantially different from the opinions expressed in the original timely expert report. *Id.* at 641-42 (precluding expert witness from testifying as to opinions contained in purported supplemental expert report that was "so substantially different from the first that it [fell] far outside any reasonable notion of correcting an incomplete or inaccurate report").

In the his March 2010 Report, Bromwell opined that defective construction was the cause of the cracking experienced at the Reservoir, but he did not attribute responsibility or fault to anyone. In fact, Bromwell described his work as focused on "causation mechanisms and not standard of care." Accordingly, in his March 2010 Report and November 2010 deposition, Bromwell did not provide any opinions as to whether the defective construction was the responsibility of Barnard for failure to construct the Reservoir in accordance with the plans and specifications, was the responsibility of HDR for failure to draft adequate specifications or perform adequate quality control, or was the responsibility of any other entity. However, over one month after discovery closed and TBW was no longer able to depose Bromwell, HDR issued Bromwell's January 2011 Report in which he opined that the alleged construction defects were Barnard's fault, as opposed to being the result of vague specifications prepared by HDR or bad quality control, inspection, and testing by HDR. Accordingly, this case is very similar to *Keener,* in that Bromwell's original disclosure was a non-opinion regarding the entity responsible for the cracking while the untimely disclosure is an opinion "that goes to the heart of the case." *Keener,* 181 F.R.D. at 641.

Bromwell's failure to provide any expert opinions regarding responsibility for the defective construction was not due to the unavailability of the information on which his

newly disclosed opinion is based. Bromwell's new opinion regarding Barnard's responsibility is based on his belated review of the TBW-Barnard Construction Contract, which has been available to HDR at least since this litigation began in December 2008. If HDR intended for Bromwell to present testimony regarding who was at fault for the defective construction, HDR should have provided the TBW-Barnard Construction Contract to Bromwell before he prepared his original expert report in March of 2010. This did not happen. Instead, HDR provided the contract to Bromwell a mere two days before his final deposition, which occurred on the discovery cutoff date.

HDR's late presentation of the Construction Contract to Bromwell and the late disclosure of his opinions regarding fault exemplify the type of sandbagging that is prohibited under Rules 26 and 37. *See Beller ex rel. Beller v. U.S.*, 221 F.R.D. 689 (D.N.M. 2003) (striking untimely "supplemental" expert report and precluding expert witness from testifying as to matters contained in the untimely report where "supplemental" report was based on items in the possession of the party who retained her but were not provided to the expert until after she prepared her original report). Accordingly, HDR's and Bromwell's late disclosure of Bromwell's new opinion regarding Barnard's responsibility for the damage to the Reservoir is not substantially justified.

E.    **HDR's and Bromwell's Late Disclosures Are Not Harmless**

A party who fails to disclose information required by Rule 26(a) cannot offer testimony based on such information unless substantial justification exists for the failure or it is harmless. Fed.R.Civ.P. 37(c)(1); *McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1128-29 (D. Ore. April 29, 2010). The lack of substantial justification element for each category of

untimely disclosures was discussed above. In addition to not being substantially justified, the late disclosures are also harmful and prejudicial to TBW.

The purpose of the expert disclosure rules is "to prevent the unfair tactical advantage that can be gained by failing to unveil an expert witness in a timely fashion, and thereby potentially depriv[ing] a plaintiff of the opportunity to depose the proposed expert, challeng[ing] his credentials, solicit[ing] expert opinions of his own, or conduct[ing] expert-related discovery." *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004); *see also Richardson v. Bombardier, Inc.,* 2005 WL 3087864, *11 n. 43 (M.D. Fla. November 16, 2005) ("The underlying theme of the Court's ruling, which was consistently applied, was that a party should not be sandbagged by expert testimony that had not been subject to reasonable scrutiny during the discovery process."); *Baker v. Indian Prairie Comm. Unit, Sch. Dist. No. 204*, 1999 WL 988799, *3 (N.D. Ill. 1999) (party was not allowed to ambush the opposing party with new expert opinions after the expert disclosure deadline). Indeed, "[w]hen the expert supplements her report by addressing a new matter after discovery has ended, the very purpose of [Fed. R. Civ. P. 26(a)(2)(B)] is nullified." *Coles v. Perry*, 217 F.R.D. 1, 4 (D.D.C. 2003).

As explained in *Jorgensen v. Montgomery*, 2007 WL 3119549, *3 (D. Colo. October 19, 2007) (citing *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 681 (D. Kan. 1995)):

> A party may not simply retain an expert and then make whatever disclosures the expert is willing or able to make notwithstanding the known requirements of Rule 26. The adverse party should not be placed at a disadvantage or deprived of the full benefits of Rule 26 by selection of an expert who cannot or will not make the required disclosures. The selection and retention of an expert witness is within the control of the party employing the expert. To the extent there is a disadvantage created by the expert's failure to disclose it must be borne by the party retaining

the expert witness.

In *Jorgensen*, the court recognized that the failure to provide the required expert witness disclosures was not harmless when the disclosures happened after the discovery cutoff date. 2007 WL 3119549, *4. The late disclosure prevented the opposing party from being able to depose the expert witness on the late disclosed opinions. *Id.*

In this case, Bromwell's untimely disclosures have prejudiced TBW. Because these disclosures were made after the discovery cutoff date, TBW will not have an opportunity to depose Bromwell regarding the matters disclosed in the January 2011 Report or the four publications disclosed on April 6, 2011.[30] Similarly the late production prejudices the ability of TBW to cross examine Bromwell at trial or to challenge his causation opinion.

The prejudice to TBW is not cured or minimized because HDR and Bromwell disclosed the new opinions and information before trial. The opportunity to review the opposing party's expert witness's report does not satisfy a party's right to depose that expert. *Harris v. United States,* 132 F. App'x. 183, 185 (9th Cir. 2005). Indeed, the prejudice here is increased due to the fact that the untimely disclosed materials go to the heart of Bromwell's

---

[30] HDR may argue that TBW had an opportunity to depose Bromwell regarding these matters on December 15, 2010. Any such argument would be incorrect. HDR did not notify TBW or the other parties that Bromwell would discuss additional, unproduced photographs or publications or newly formed opinions regarding Barnard's responsibility for the alleged defective construction. The purpose of Bromwell's December 15, 2010 deposition was to examine Bromwell regarding the late-disclosed causation report authored by Bromwell in March 2009. It was not to question Bromwell regarding any newly developed opinions, such as his opinion regarding who was responsible for the damage to the Reservoir. Additionally, while Bromwell mentioned that he had reviewed additional photographs between his November 2010 deposition and the December 15, 2010 deposition, he did not bring any of the photographs with him to the deposition. Finally, Bromwell did not mention any additional publications that would support his opinions during the deposition. Neither Bromwell nor counsel for TBW was adequately prepared on December 15, 2010 to engage in a meaningful examination on the matters addressed in Bromwell's January 2011 Report or the additional publications produced by HDR on April 6, 2011.

opinions. *See McClellan,* 710 F. Supp. 2d at 1128-29 (excluding testimony of expert witness who did not produce records on which his expert opinion was based); *see also Beller,* 221 F.R.D. 689 (D.N.M. 2003); *Keener,* 181 F.R.D. at 641-42.

HDR may attempt to argue that any prejudice to TBW can be cured by deposing Bromwell. Given the current posture of this case, reopening discovery will not cure the problem. As recognized in *Beller,* 221 F.R.D. at 694, reopening discovery could not fairly be limited to just deposing Bromwell.[31] *See also Cook,* 580 F. Supp. 2d at 1171 (expert could not testify as to matters contained in the late supplemental report because deposing expert and allowing opposing party to obtain a rebuttal expert would delay the trial of the matter). At this late stage, multiple fact witnesses have already been examined at deposition regarding the photographs actually produced by Bromwell in his March 2010 Report. Additionally, TBW's expert witnesses have prepared reports based on the opinions expressed in Bromwell's March 2010 Report and the photographs and publications cited therein. HDR's and Bromwell's late disclosures have deprived TBW of an opportunity to examine the fact witnesses regarding the untimely disclosed photographs and of an opportunity to have its experts provide rebuttal opinions regarding Bromwell's untimely disclosed opinions and an

---

[31] Moreover, any argument by HDR that the prejudice to TBW could be cured by deposing Bromwell at this late date is inconsistent with HDR's adamant opposition to any extension of the discovery schedule. HDR previously advised the Court that "[t]he Court is well aware of the tremendous burdens this litigation has already placed on all the parties. Adding [additional time] to the schedule will only make matters worse, not better." [Doc. 192: HDR's Response to TBW's Motion to Modify Amended Case Management and Scheduling Order, p. 2.] Additionally, HDR also clearly stated that it did not want the trial term or discovery cutoff to be delayed. [Doc. 216: HDR's Memorandum in Opposition to Defendant Barnard Construction Company, Inc.'s Motion for Leave to Amend to Allow Cross-Claim Against Defendant HDR Engineering, Inc. and Incorporated Memorandum of Law, p. 13] HDR should not be heard to plead now that an extension of the discovery schedule, which might advance HDR's needs to the detriment of the schedule set forth in the Amended Case Management and Scheduling Order, is an appropriate cure for its inexcusably late disclosures.

analysis of the untimely disclosed photographs and publications.

Bromwell first began working with HDR to determine the cause of the cracking back in June 2007 and was formally retained by HDR in August 2007.[32] HDR chose Bromwell as its expert. It also chose not to provide Bromwell with a copy of the TBW-Barnard Construction Contract until two days before the discovery cutoff, which was more than three years after HDR hired Bromwell. The disadvantage created by Bromwell's failure to issue rebuttal testimony in a timely manner, Bromwell's failure to identify and disclose photographs and publications supporting the opinions expressed in his March 2010 Report in a timely manner, Bromwell's failure to review the TBW-Barnard Construction Contract until two days before the discovery cutoff, and Bromwell's issuance of a new opinion regarding responsibility for the alleged construction defects must be borne by HDR, and not by TBW.

## III.  <u>Conclusion</u>

TBW respectfully requests the Court to grant this Motion and strike the January 19, 2011 report of Leslie G. Bromwell, ScD, P.E., preclude Dr. Bromwell from testifying as to any of the matters addressed in his January 19, 2011 report, preclude Dr. Bromwell from relying on or testifying about the photographs attached to January 19, 2011 report, and preclude Dr. Bromwell from relying on or testifying about the four publications produced by HDR on or about April 6, 2011.

---

[32] See Bromwell, 130:12-21, 137:13-141:7, and Deposition Exhibit 674, attached hereto as Composite Exhibit 33.

**s/ Richard A. Harrison**
**Richard A. Harrison, Esquire**
Florida Bar Number 0602493
rharrison@allendell.com
Lead Trial Counsel
**David Forziano, Esquire**
Florida Bar Number 0025755
dforziano@allendell.com
**Misty C. Leafers, Esquire**
Florida Bar Number:  416894
mleafers@allendell.com
**Barbara M. Cowherd, Esquire**
Florida Bar Number 0469203
bcowherd@allendell.com
ALLEN DELL, P.A.
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682

Attorneys for Plaintiff, Tampa Bay Water,
A Regional Water Supply Authority

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th of May 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

**s/ Richard A. Harrison**
**Richard A. Harrison, Esquire**
Florida Bar Number 0602493
ALLEN DELL, P.A.
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682
rharrison@allendell.com