UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMPA BAY WATER,
a Regional Water Supply Authority,

                  Plaintiff,

vs.                                           Case No. 8:08-CV-2446-T-27TBM

HDR ENGINEERING, INC., et al.,

                  Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendant Barnard Construction Company, Inc.'s *Daubert* Motion to Exclude the Testimony of William Brumund (Dkt. 292), to which Plaintiff has responded (Dkt. 320). The motion is DENIED.

Prior to the admission of expert testimony under Rule 702 of the Federal Rules of Evidence, a determination must be made that "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* [*v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The proponent of expert testimony bears the burden of establishing each prong by a preponderance of the evidence. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005).

Barnard does not challenge Brumund's qualifications. Nor does Barnard, as the Court

1

understands its motion, challenge the reliability of his methodology or whether his testimony would assist the jury in understanding the evidence or determine a fact in issue. Rather, Barnard essentially challenges whether Brumund's opinions are relevant to causation, arguing that (1) Brumund's "testimony about Barnard's alleged non-compliant work does not meet legal causation standards" in that his "baseline opinions do not attribute causation of cracking to Barnard," (2) he fails "to quantify either the effect that Barnard's allegedly non-compliant work had on the cracking or the magnitude or extent of Barnard's contribution o the cracking," and (3) "Brumund cannot factually demonstrate causation." (Dkt. 292, pp. 5, 10, 11). Finally, Barnard argues that his opinions are unreliable because "his opinion flatly contradicts both eyewitnesses and the detailed written records maintained throughout the project." (Dkt. 292, p. 15).

In his January 2010 report, Brumund opined that unusual cracking in the flat-plate soil-cement erosion-control layer lining the interior of the C.W. Bill Young Reservoir was caused by excess pore pressures generated in the earthen wedge beneath the soil-cement, which in turn resulted from the inability of the wedge to drain at the same rate as the water level in the reservoir. Although attributing the excess pore water pressures chiefly to the reservoir's defective design, Brumund opined that Barnard's failure to construct the wedge in accordance with Section 02200, Paragraph 3.3.B.5 ("Specification 3.3.B.5") of the construction contract specifications contributed to the creation of the excess pore pressures–and hence to the cracking.

Specification 3.3.B.5 provides in pertinent part that gradation and distribution of materials throughout the compacted earth fill section of the embankment "shall be such that the embankment will be free from lenses, pockets, streaks, and layers of material differing substantially in texture or gradation from surrounding material." (Dkt. 320-1 at 2). In his initial report, Brumund determined that "Barnard failed to place the embankment fill without having layers, lenses, or materials differing

in texture or gradation in the fill. Because of this non-compliance, the vertical permeability of the embankment fill in the wedge area was lower than if the fill were placed and compacted in a homogeneous manner." *Id.* In sum, Brumund opined that as a result of Barnard's non-compliance with the specification, lenses, pockets, streaks and layers in the wedge created low permeability barriers that retarded the drainage of water from the wedge.

In a supplemental report (Dkt. 320-1), issued after Barnard filed the instant motion, Brumund apparently modifies his opinion. His supplemental opinion indicates that he is no longer of the opinion that the lenses, pockets, streaks, and layers in the wedge were the result of Barnard's failure to comply with the specifications in the construction contract.

Barnard argues that Brumund's opinion that Barnard's failure to follow Specification 3.3.B.5 was a concurring or successive cause of the cracking is legally irrelevant. According to Barnard, since Brumund admits that the lenses, pockets, streaks and layers in the wedge were not a necessary or sufficient cause of cracking, they cannot, as a matter of law, have been a concurring legal cause of the cracking or a legal cause of Plaintiff's damages.[1]

Barnard's contentions demonstrate a misunderstanding of the Court's role as gatekeeper under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Barnard's arguments are directed to whether Plaintiff will be able to prove through Brumund that Barnard's allegedly defective work was a concurring cause of the cracking. These arguments confuse the admissibility of Brumund's testimony with Plaintiff's burden of proof. *See Guinn v. AstraZeneca*

---

[1] Barnard relies on *Stahl v. Metro. Dade County*, 438 So. 2d 14, 19 (Fla. 3d DCA 1983) (noting that Florida courts employ the "substantial factor" test instead of the "but for" causation test in concurring cause cases but stating that the "substantial factor" test was applicable "only in those concurring cause cases where each of the said concurring causes could have alone produced the plaintiff's injury."). *But cf. Guinn v. AstraZeneca Pharms. LP*, 598 F. Supp. 2d 1239, 1246 (M.D. Fla. 2009) (noting that, notwithstanding *Stahl*, Fla. Std. Jury Instr. (Civ.) 5.1(b) and a line of Florida preexisting condition cases can be read to suggest that "causation is satisfied where the plaintiff establishes that the defendant's negligence substantially contributed to the plaintiff's injury, even though such negligence was one of perhaps many concurring causes that acted in combination to cause the injury.").

*Pharmaceuticals LP*, 602 F.3d 1245, 1256 n.9 (11th Cir. 2010) ("[C]ourt's should avoid 'the confusion and conflation of admissibility issues with issues regarding the sufficiency of the plaintiff's evidence to survive summary judgment.") (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 564-65 (11th Cir. 1998), *cert. denied*, 528 U.S. 812 (1999)). That Plaintiff does not oppose portions of the motion is of no moment.[2]

As to the existence of lenses, pockets, streaks and layers in the wedge, Barnard does not challenge or even address the data or methodology supporting Brumund's conclusion or otherwise show it to be unreliable. Barnard suggests that lenses, pockets, streaks and layers in the wedge could not have existed because HDR's inspectors and other eyewitness did not discover them during construction of the reservoir or upon its completion. However, Brumund based his opinion concerning the existence of lenses, pockets, streaks and layers in the wedge on actual field investigations performed after the damage to the reservoir was discovered and on modeling he performed. Barnard does not address these methods, let alone challenge the reliability of Brumund's methodology. Apart from disputing its relevance to whether Barnard caused Plaintiff's damages, Barnard provides no reason to doubt the reliability of Brumund's opinion that lenses, pockets, streaks and layers contributed to the development of excess pore pressures in the wedge or of the methods he used to arrive at that conclusion.

Accordingly, Barnard's *Daubert* Motion to Exclude the Testimony of William Brumund

---

[2] Although Plaintiff does not oppose certain aspects of Barnard's motion, Plaintiff opposes the motion to the extent that it seeks preclusion of (a) Brumund's opinion as to the existence of lenses, pockets, streaks and layers in the wedge; (b) Brumund's opinion that lenses, pockets, streaks and layers contributed to the development of excess pore pressures in the wedge; (c) Brumund's opinion that Defendant HDR, Engineering, Inc.'s erroneous design assumptions and deficient specification are the sole cause of the existence of lenses, pockets, streaks and layers in the wedge; and (d) any opinions set forth in Brumund's supplemental report, in which, according to Plaintiff's characterization, he opines that lenses, pockets, streaks and layers in the wedge are the direct result of HDR's erroneous design assumptions and deficient specifications, not Barnard's defective or non-compliant work.

(Dkt. 292) is **DENIED**.

**DONE AND ORDERED** in chambers this 9th day of June, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record