**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TAMPA BAY WATER,
A Regional Water Supply Authority,

       Plaintiff,                           CASE NO.: 8:08-CV-2446-JDW-TBM

v.

HDR ENGINEERING, INC., *et al*.

       Defendants.
_____/

**TAMPA BAY WATER'S EMERGENCY MOTION FOR AN ORDER PROHIBITING**
**HDR ENGINEERING, INC.'S EXTRAJUDICIAL STATEMENTS AND RELEASE**
**OF EXTRAJUDICIAL MATERIALS ON A NEWLY CREATED WEBSITE**

Plaintiff, Tampa Bay Water, A Regional Water Supply Authority ("TBW"), by and through its undersigned counsel, and pursuant to Local Rules 3.01 and 4.10(g), hereby moves the Court for entry of an Order prohibiting HDR Engineering, Inc.'s ("HDR") extrajudicial statements and release of extrajudicial materials on a newly created website. As grounds for the motion, TBW states:

**INTRODUCTION**

On May 20, 2011, this Court conducted a hearing in this matter during which it expressed that, despite "a lot of publicity about this case" it did not "anticipate any problems in picking a jury." (Dkt. 367 at 48:20-49:3). HDR apparently interpreted this Court's observation as a challenge because, less than six weeks before the scheduled July 5, 2011 jury trial and only five days after the Court's comment, HDR created a website entitled: "Tampa Bay Water Litigation: The facts and science about the C.W. Bill Young Regional

1

Reservoir" ("HDR's Advertising Litigation Website").  HDR's conduct is the "virtual" equivalent of erecting billboards on every street corner within the jurisdiction.

HDR's Advertising Litigation Website directly targets prospective jurors, advances case theories which may be inadmissible, comments on evidence, vouches for HDR experts and contains bare accusations against other parties.   The widespread disclosure of such information shortly before trial creates a substantial likelihood of materially prejudicing and endangering a fair trial, both in empanelling a jury and preventing juror misconduct.  The quantity and nature of the extrajudicial materials on HDR's Advertising Litigation Website, and the intended continuing nature of it, convinces TBW that this Court must act upon its affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity.

## EMERGENCY NATURE OF MOTION

TBW is fully cognizant of the provisions of Local Rule 3.01(e) concerning emergency motions and well aware of the imposition upon the Court's limited resources that results from any filing.  *See In re McDonald*, 489 U.S. 180, 184 (1989) (observing that every paper filed with the court requires some portion of the court's limited resources). It is only after careful consideration that TBW has elected to file this motion as an emergency motion. TBW acknowledges that this situation is not one that presents a risk of imminent harm to persons or property. But the timing of HDR's apparent attempt to saturate the jurisdiction – and hence the pool of prospective jurors – with its prejudicial extrajudicial statements mere weeks before the scheduled commencement of a jury trial that is estimated to last two months, coupled with its apparent intent to continue its advertising campaign even during the trial itself, warrants emergency treatment by the Court. Every day that HDR's paid media

2

campaign continues uninhibited threatens the ability of this Court to seat an impartial jury, and every day that HDR's marketing blitz marches on during the trial enhances the risk that the jury will be exposed to such extrajudicial information.

## FACTUAL BACKGROUND

1.      On information and belief that on or about May 25, 2011, HDR Engineering, Inc. ("HDR") created a website entitled: "Tampa Bay Water Litigation: The facts and science about the C.W. Bill Young Regional Reservoir."[1]  TBW staff discovered HDR's Advertising Litigation Website by happenstance on or about June 14, 2011.

2.      HDR's Advertising Litigation Website is separate and independent from HDR's corporate website (www.hdrinc.com) and there appear to be no common references or links between the two websites.

3.      The stated goal of HDR's Advertising Litigation Website explains:

> This website was created by HDR Engineering in response to the unfounded allegations and litigation brought by Tampa Bay Water against the company for its role as the project design engineer for the C.W. Bill Young Reservoir located in rural Hillsborough County.  We intend it to be a timely and factual resource about the design, engineering and construction of the reservoir and the current litigation.

4.      The product of HDR's Advertising Litigation Website, however, is plainly the dissemination of extrajudicial and prejudicial information.  HDR's Advertising Litigation Website discloses select information and pleadings from the case, including materials that may not be admitted into evidence.[2]

---

[1] See http://www.tbwlitigation.com and screen capture of the registry data of HDR's Advertising Litigation Website indicating a creation date of May 25, 2011 attached as **Exhibit A**.

[2] HDR's Advertising Litigation Website contains extensive discussion of HDR's "collapse upon wetting" theory as advanced by an expert (Bromwell) subject to a pending *Daubert* motion (Dkt. 290).  As a result, the HDR's Advertising Litigation Website promotes material that may be completely inadmissible at trial.

5.      For example, HDR's Advertising Litigation Website has a page entitled "Spin Checker."  This page attempts to frame underlying issues in this matter as "TBW Spin" versus "REALITY," in some purported attempt to reveal the "truth."  Instead, this page takes the liberty of characterizing select portions of the parties' positions and framing them to suit HDR's perspective, labeling TBW's positions with the pejorative term, "Spin," and HDR's positions with the presumably favorable term, "REALITY."  In fact, the key engineering issues in this case are vigorously contested.

6.      HDR's Advertising Litigation Website features many biased and prejudicial assertions, including: claims that TBW is misleading voters and wasting taxpayer money; descriptions that HDR's positions consist of "hard science [that] is clear" and are backed by "[w]orld-renowned experts" while TBW's positions are merely arguments; and suggestions that TBW has hidden motives for this matter, labeling the litigation as "public" and "showy."

7.      This type of presentation is propaganda and illustrates precisely why parties tender disputes to a court of law – to submit to "the protective effect of the rules of forensic decorum and the exclusionary rules of evidence." See Comment to Fla. Bar Rule 4–3.6 ("Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved. If there were no such limits, the result would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence.").

8.      The content is not the only alarming aspect of HDR's Advertising Litigation Website.  The promotional push behind HDR's Advertising Litigation Website is equally disturbing.

9.      First, the advertisements for the HDR's Advertising Litigation Website are running on local media, which seemingly targets the potential jury pool.  For illustrative purposes, **Exhibits B, C, and D,** respectively, display paid advertisements for HDR's Advertising Litigation Website appearing next to online articles in the St. Petersburg Times, The Tampa Tribune and popping up next to a search for the term "reservoir" in the St. Petersburg Times archives.  Also, the front page of HDR's Advertising Litigation Website features a social media tool that aids quick and widespread dissemination of a website through user recommendations.

10.      Second, the advertisements continue the dissociation from HDR's corporate website.  A Google search for "tampa bay water" or "tampa bay water reservoir" produces a paid advertisement for HDR's Advertising Litigation Website that appears ***before*** the first search result.  See **Exhibits E and F**.  In contrast, a Google search for "hdr" or "hdr engineering" does not produce any advertisement for HDR's Advertising Litigation Website. See **Exhibits G and H**.  If HDR's target audience were its current or prospective clients, certainly this effort would be part of its corporate website.

11.      Third, the advertisements continue the false posture of HDR's Advertising Litigation Website as a dispassionate source of information, specifically touting:  "Learn the Science. Get the Facts."

12.      The totality of facts outlined coupled with the timing of HDR's effort indicates a deliberate marketing strategy pointing paid advertisements for HDR's Advertising Litigation Website directly at the potential jury pool.

13.     The sum and substance of HDR's Advertising Litigation Website and circumstances of the advertisements are not only unbecoming and unhelpful in bringing this matter to a resolution, but also reflect HDR's apparent effort to influence prospective jurors with prejudicial information.     Moreover, a fair trial by an impartial jury is endangered by the possibility for continued extrajudicial statements and materials being posted and updated on HDR's Advertising Litigation Website through the pendency of this matter.

14.     To prevent contamination of the jury pool, TBW respectfully requests this Court enter an Order prohibiting HDR from extrajudicial statements or release of extrajudicial materials on HDR's Advertising Litigation Website.

15.     The duration of the requested relief is to extend only for the pendency of this matter, and ending upon the resolution of the matter as a pending case before this Court.

16.     TBW is not seeking to prevent any member of the media from reporting on the matter.

17.     <u>Certificate of Good Faith Conference</u>: Pursuant to Local Rule 3.01(g), the undersigned counsel for Tampa Bay Water certifies that he has conferred with counsel for the parties with respect to the relief sought herein. HDR opposes the motion.   Barnard and McDonald do not oppose the motion.

## MEMORANDUM OF LAW

As this Court once observed, "[p]ublicity immediately before trial has a greater potential for prejudice than publicity months in advance of trial." *U.S. v. Lehder-Rivas*, 669 F. Supp. 1563, 1568 (M.D. Fla. 1987) (collecting cases). *See also U.S. v. Scrushy*, 2004 WL 848221, at *1 (N.D. Ala. 2004) (concluding that as the trial date drew nearer that, despite

prior private admonishment, extrajudicial comments would only increase and the tenor of the comments by both sides, left unabated, would present a substantial likelihood of prejudicing a fair trial).  HDR's Advertising Litigation Website was established on May 25, 2011, less than six weeks before a potential July jury trial and *only five days after this Court commented that despite "a lot of publicity about this case" it did not "anticipate any problems in picking a jury."*  (Dkt. 367 at 48:20-49:3) (emphasis supplied).  Similar to *Scrushy*, the quantity and nature of the extrajudicial materials on HDR's Advertising Litigation Website convinces TBW that this Court must act upon its "affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Scrushy*, 2004 WL 848221, at *1 (citing *Gannett Co. v. DePasquale,* 443 U.S. 368 (1979)).  *See also News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1512 (11th Cir. 1991).

1.      **The Court has the inherent power to ensure a fair trial.**

An Order prohibiting extrajudicial statements and release of extrajudicial materials by trial participants necessarily implicates rights under the First Amendment and constitutes a restraint on speech.  Yet, freedom of speech does not grant the unfettered right to influence juries. *Pennekamp v. State of Florida,* 328 U.S. 331, (1946) (Frankfurter, J., concurring). The United States Supreme Court has struggled with tension between the freedom of speech and the right to a fair trial.  Most recently, in *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991), the Supreme Court commented:  "Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by impartial jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." *Gentile* at 1075. This tension is not exclusive to criminal cases because the right to trial by jury is preserved in

civil cases by the Seventh Amendment.  *Bailey v. Sys. Innovation, Inc.*, 852 F.2d 93, 98 (3d Cir. 1988) ("fairness in a jury trial, whether criminal or civil in nature, is a vital constitutional right.").

The former Fifth Circuit, relying on *Sheppard v. Maxwell*, 384 U.S. 333 (1966),  has long recognized the trial judge's primary responsibility to govern judicial proceedings so as to ensure that the parties receive a fair, orderly trial comporting with fundamental due process.  *U.S. v. Gurney*, 558 F.2d 1202, 1209 (5th Cir. 1977).  To ensure that objective is accomplished, the trial judge is granted broad discretion in ordering the daily activities of his court.  *Id*.  Within this discretion, "the district judge can place restrictions on parties, jurors, lawyers, and others involved with the proceedings despite the fact that such restrictions might affect First Amendment considerations."   *Id*. at 1210 (citations omitted).   The Eleventh Circuit has affirmed this proposition, relying on *Gannett Co. v. DePasquale,* 443 U.S. 368 (1979):

> To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary.

*U.S. v. Noriega*, 917 F.2d 1543, 1549 (11th 1990).[3]

---

[3] A trial court's power to act is also recognized by the Florida Supreme Court and in a variety of other contexts. *See e.g.*, *State ex rel. Miami Herald Publishing Co. v. McIntosh,* 340 So.2d 904, 909 (Fla.1977); *Florida Freedom Newspapers, Inc. v. McCrary*, 520 So.2d 32 (Fla. 1988); Rule 4-3.6, *Trial Publicity,* of the Rules Regulating the Florida Bar (prohibiting lawyers from making or assisting others in making prejudicial extrajudicial statements); and Local Rule 4.10(g) (In a widely publicized or sensational case, the Court on motion of either party or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of any party to a fair trial by an impartial jury).

2.      **The Court should utilize the "substantial likelihood of prejudice" standard.**

The Eleventh Circuit noted the division in circuit authority and differing approaches to the appropriate standard for evaluating restrictive orders imposed on trial participants. *News-Journal Corp. v. Foxman,* 939 F.2d 1499, 1515 n. 18 (11th Cir.1991).  That division in circuit authority has not abated.

While the Eleventh Circuit in *News-Journal Corp. v. Foxman* expressly declined to adopt a standard, *id.*, its commentary provides a course: "The [United States Supreme] Court now has given direction to the *dicta* of *Sheppard* in *Gentile*. With reference to the above-quoted passage from *Sheppard,* the Court stated that '[w]e expressly contemplated that *the speech of those participating before the courts could be limited.'*" 939 F.2d at 1515 (emphasis in original).  In *Gentile*, the Supreme Court upheld a less demanding standard than that established for regulation of the press, confirming that extrajudicial statements can be curtailed when the statements would have a substantial likelihood of materially prejudicing an adjudicative proceeding.  *Gentile,* 501 U.S. at 1068-76.

3.      **HDR's Advertising Litigation Website presents a substantial likelihood of materially prejudicing a fair trial.**

This Court must take protective measures in part because of the need to shield the jury from prejudicial external information. *U.S. v. Hill*, 893 F.Supp. 1039, 1041 (N.D.Fla. 1994).  "The capacity of the jury eventually empaneled to decide the case fairly is influenced by the tone and extent of the publicity...." *Id*.  (citing *Nebraska Press Assoc. v. Stuart,* 427 U.S. 539, 554 (1976)).   HDR's Advertising Litigation Website creates a substantial likelihood of materially prejudicing and endangering a fair trial, both in empanelling a jury and preventing juror misconduct.

**A.  HDR's Advertising Litigation Website is directed at potential jurors.**

In *U.S. v. Lehder-Rivas,* 669 F.Supp. 1563 (M.D. Fla. 1987) this Court held that the threat to fair administration of justice resulting from a defendant's unsupervised contacts with potential jurors outweighed harm to the defendant's First Amendment rights.  As a result an injunction against defendant's pretrial survey was warranted.  *Id*.  The court found multiple reasons that identified a "threat to judicial integrity." The reasons included factors present here, including the looming trial schedule, number of potential jurors required to be summoned, the potential to adversely affect the Court's ability to select a jury, previous publicity in the case, the amount of the dissemination of irrelevant and highly prejudicial information and the likely impact of the same. *Id*. at 1567-1568.

HDR's Advertising Litigation Website serves no apparent purpose other than to communicate to potential jurors.  It is separate from HDR's corporate website, so its target audience does not seem to be its current or prospective clients.  If HDR had legitimate reputational concerns in defending its positions, presumably those defenses would be associated with its corporate website that is kept in the regular course of business.  Instead, there is no evident link or reference to or between the websites.  Because of the disassociation between the two websites no current client or prospective client would be alerted to HDR's Advertising Litigation Website.  The manner in which the paid advertising is deployed calls into question the motives and intent of HDR's Advertising Litigation Website.  Further, the advertising strategy appears to focus attention on HDR's Advertising Litigation Website only when an individual searches for TBW.   As explained above, a Google search for "tampa bay water" or "tampa bay water reservoir" produces a paid

10

advertisement for HDR's Advertising Litigation Website that appears **before** the first search result.  See **Exhibits E and F**.  In contrast, a Google search for "hdr" or "hdr engineering" does not produce any advertisement for HDR's Advertising Litigation Website.  See **Exhibits G and H**.

The advertisements for the HDR's Advertising Litigation Website are running on local media, targeting the potential jury pool.  As illustrated above, **Exhibits B, C, and D,** respectively display advertisements for HDR's Advertising Litigation Website appearing next to online articles in the St. Petersburg Times, The Tampa Tribune and popping up next to a search for the term "reservoir" in the St. Petersburg Times archives.  These local newspapers and their online counterparts direct traffic to HDR's Advertising Litigation Website, which is itself akin to political attack advertisement.  But, "[l]egal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." *Bridges v. California*, 314 U.S. 252, 271 (1941).  Instead, the outcome of a trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before them in a court proceeding.  *Gentile*, 501 U.S. at 1070.   In *U.S. v. Fieger,* 2008 WL 659767, at *1 (E.D. Mich. 2008), the Court found that a Defendant's commercials and other extrajudicial statements had the substantial likelihood of materially prejudicing the potential jury pool as such speech was specifically directed locally and created the danger of potential juror prejudice against.  HDR has likewise taken its case to the street with unabashed and targeted advertising.  Black's Law Dictionary (9th ed. 2009) defines "advertising" as the "action of drawing the public's attention to something to

11

promote its sale."   Indeed, that is what HDR appears to be paying to do – drawing the public's attention to the highly prejudicial endeavor.

In *U.S. v. Lehder-Rivas* the Court was not only concerned about the number of persons that could be exposed to the highly prejudicial information contained in the Defendant's proposed jury survey, but concluded "that that the possibility, no matter how remote, that even one person who has been summoned on the venire might be contacted by defendant or learn that defendant is contacting registered voters in this community is intolerable."  *Id*. at 1569.  The extent and efficacy of the marketing campaign for HDR's Advertising Litigation Website is unknown.  See e.g., **Exhibit I** (screen capture of a Yahoo entertainment website with an advertisement).    But, by definition, HDR is actively attempting to generate pre-trial publicity, prejudice the public, and influence potential jurors.  HDR's actions are inapposite to the description of a fair trial described by the Supreme Court.  As in *U.S. v. Lehder-Rivas*, "the Court can and must…exercise its supervisory powers to limit action by trial participants that could adversely affect the atmosphere surrounding highly publicized cases."  *Id*.

**B.  HDR's Advertising Litigation Website discloses prejudicial information.**

As previously set forth, the outcome of a trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before them in a court proceeding.  *Gentile*, 501 U.S. at 1070.  This basic tenet is threatened when a party or their counsel gives their version of the facts through extrajudicial comments or discusses evidence which might never be admitted at trial.  *Id*.  *See also Patterson v. Colorado*, 205 U.S. 45, 462 (1907) (Holmes, J.) ("The theory of our system is that the

conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."). Regrettably, HDR's Advertising Litigation Website is not in accord with the principles of a fair trial.   HDR's Advertising Litigation Website discusses and analyzes its positions including those that are subject to a pending *Daubert* challenge.  (Dkt. 290).

Moreover, by causing misleading and extrajudicial information to be posted to HDR's Advertising Litigation Website, HDR has maximized its potential prejudicial impact. "Search engines have indeed created significant new dangers for the judicial system" because "it is all too easy for a juror to find out more than he or she should by typing a few carefully chosen words into a search engine." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 739 F.Supp.2d 576, 609-610 (S.D.N.Y. 2010) (S. Scheindlin).   HDR, through well placed advertisements, is trying to exploit this ongoing problem.  *See, e.g.,* The Honorable Dennis Sweeney, *Social Media And Jurors,* 43 Md. B.J. 44 (Nov./Dec. 2010); The Honorable Ronald D. Spears, *Looking for "Facts" in all the Wrong Places,* 98 Ill. B.J. 102 (Feb. 2010).  Now, jurors have the ability to "educate themselves through Wikipedia about the technology underlying a patent claim or medical condition, examine an intersection using Google Maps, or even blog and update their friends about the case through Facebook and Twitter."   Amanda McGee, *Juror Misconduct in the 21st Century: The Prevalence of the Internet and its Effect on American Courtrooms,* 30 Loy. L.A. Ent. L. Rev. 301, 308 (2010). The problem is so pervasive that the *New York Times* has "coined the phrase 'Google Mistrial' to refer to mistrials that result when jurors use their iPhones and Blackberrys to receive and transmit information about the cases they sit on." *Id.* (citing John Schwartz, *"As*

*Jurors Turn to Google and Twitter, Mistrials Are Popping Up"* N.Y. Times, Mar. 18, 2009 at Al); *Products Liability Litigation*, 739 F.Supp.2d at 610 n. 215 (S.D.N.Y. 2010).

The stated objective of HDR's Advertising Litigation Website, a "timely and factual resource about…the current litigation," signals that it will be updated as the case continues during trial. Once a jury is seated, misconduct does occur even in the best of circumstances. *See generally* Artigliere, Barton & Hahn, *Reigning In Juror Misconduct*, 84 Fla. B.J. 8 (Jan. 2010). The anticipated duration of this trial only increases the opportunity for a juror, or someone related to a juror, to view the HDR's Advertising Litigation Website. As this Court well understands, such conduct is irreversible and costly to all parties involved – not only monetarily, but in terms of the time and efforts of every participant including the Court. *See e.g., Pegasus Imaging Corporation v. Northrop Grumman Corporation and Northrop Grumman Systems Corporation*, Case No. 8:07-cv-01937-T-27EAJ, Dkt. 207 (M.D. Fla. January 11, 2011). The continued presence of HDR's Advertising Litigation Website, its unknown plans for future updates, paid advertising and targeted marketing, place a fair trial at considerable peril.

**C.  HDR's Advertising Litigation Website poses as neutral when it is biased.**

Many of the statements and explanations on HDR's Advertising Litigation Website are at the core of this dispute. As noted above, HDR's Advertising Litigation Website has, among others, a page entitled "Spin Checker." This page is presented in a manner similar to the St. Petersburg Times' Pulitzer prize winning Politifact.com project. However, HDR's version does just the opposite. This page attempts to frame underlying issues in this matter as "TBW Spin" versus "REALITY," in some purported attempt to reveal the "truth."

Instead, this page takes the liberty of characterizing select portions of the parties' positions and framing them to suit HDR's perspective, labeling TBW's positions with the pejorative term, "Spin," and HDR's positions with the presumably favorable term, "REALITY." In fact, the key engineering issues in this case are vigorously contest.

HDR's Advertising Litigation features biased and prejudicial assertions, including: claims that TBW is misleading voters and wasting taxpayer money; descriptions that HDR's position consists of "hard science [that] is clear" and are backed by "[w]orld-renowned experts" while TBW's positions are merely arguments; and suggestions that TBW has hidden motives for this matter, labeling the litigation as "public" and "showy."

Combining the impartial posture of the presentation with the fact that advertisements and marketing are attempting to widen the exposure of this information in the Tampa Bay area, add together to exacerbate TBW's potential prejudice. Should a prospective juror or actual juror read the contents and allegations of HDR's Advertising Litigation, it would undoubtedly influence their view of the case. The facts and the merits of the respective claims should only be argued and submitted to the jury under the guidance of this Court, the protective effect of the rules of forensic decorum and the exclusionary rules of evidence

**4.    The requested relief is narrowly tailored and no other remedial measures will suffice.**

Courts may regulate speech where the regulations "further an important or substantial governmental interest" and where the limitation is "no greater than…necessary." *Gentile*, 501 U.S. at 1054. TBW's prayer for relief is tailored to effect less speech rather than more.

The request would place no restrictions on the media to report what is in the public record. The duration of the relief would be limited. The applicability of the requested relief

is limited to HDR, and only restricts HDR from creating and advertising a website solely concentrated on the pending matter.  The requested relief would not prevent HDR from commenting on the litigation to the media, it would simply eliminate the singularly focused vehicle for disseminating prejudicial extrajudicial statements and materials in a widespread manner that appears both calculated and likely to reach the jury pool and the jury.

**WHEREFORE**, Plaintiff, Tampa Bay Water, respectfully requests entry of an Order prohibiting HDR from making extrajudicial statements or releasing extrajudicial materials on HDR's Advertising Litigation Website, removing any such statements or materials already posted, and granting such other relief the Court deems appropriate under the circumstances.

**s/ Richard A. Harrison**
**Richard A. Harrison, Esquire**
Florida Bar Number 0602493
rharrison@allendell.com
Lead Trial Counsel
**David Forziano, Esquire**
Florida Bar Number 0025755
dforziano@allendell.com
**Misty C. Leafers, Esquire**
Florida Bar Number:  416894
mleafers@allendell.com
**Barbara M. Cowherd, Esquire**
Florida Bar Number 0469203
bcowherd@allendell.com
ALLEN DELL, P.A.
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on the 22nd of June, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

         <u>**s/ Richard A. Harrison**</u>
         **Richard A. Harrison, Esquire**
         Florida Bar Number 0602493
         ALLEN DELL, P.A.
         202 South Rome Avenue, Ste. 100
         Tampa, Florida 33606
         Phone: (813) 223-5351
         Fax: (813) 229-6682
         rharrison@allendell.com