UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TAMPA BAY WATER,**
**a Regional Water Supply Authority,**

      **Plaintiff,**

**vs.**                            **Case No. 8:08-cv-2446-T-27TBM**

**HDR ENGINEERING, Inc., et al,**

      **Defendants.**

_____/

## ORDER

**BEFORE THE COURT** is HDR Engineering, Inc.'s motion to void settlement agreement

(Dkt. 323), responses in opposition filed by Barnard Construction Company ("Barnard"), McDonald

Construction Corporation ("McDonald"), and Tampa Bay Water ("TBW") (Dkts. 328, 329, 330),

and HDR Engineering's reply (Dkt. 352). Also before the Court are the parties' responses (Dkts. 369,

376, 377) to the Court's order to show cause (Dkt. 365) why summary judgment should not be

entered in favor of Barnard. Upon consideration, HDR Engineering's motion (Dkt. 323) is

GRANTED *in part*, and summary judgment is entered in favor of Barnard.

### Background

TBW commenced this action, alleging that unusual cracks in the soil cement facing at the

C.W. Bill Young Regional Reservoir were caused by, among other things, HDR Engineering's

defective design and Barnard's defective construction. Barnard filed a third party complaint against

the subcontractor that constructed the reservoir's earthen embankment, McDonald.

Two months before the pretrial conference, TBW entered into a Settlement Agreement with

Barnard and McDonald (Dkt. 307) which contained several features of a "high-low" agreement. The

parties agreed to proceed to trial. Barnard was obligated to pay a minimum of $750,000, but its exposure was capped at $5,000,000.

The agreement went on, however, to prohibit Barnard and McDonald from presenting any evidence on several claims and positions of TBW, to require Barnard to call certain witnesses at trial, to preclude Barnard and McDonald from calling other witnesses, and to restrict the filing of trial and post-trial motions. Citing these and other provisions, HDR Engineering moved for an order declaring the Settlement Agreement void as an improper collusive "Mary Carter" agreement. *See Dosdourian v. Carsten*, 624 So. 2d 241 (Fla. 1993).

The validity of the Settlement Agreement need not be reached. In addition to dictating what roles Barnard and McDonald would play at trial, the agreement contained 133 paragraphs of "Agreed Facts" that the parties stipulated would survive any order declaring the Settlement Agreement void or unenforceable. Reduced to their core, the Agreed Facts essentially stipulate that Barnard neither caused nor contributed to TBW's damages. Based on this stipulation, HDR Engineering's motion suggested that alternative relief could be issued in the form of summary judgment entered *sua sponte* in favor of Barnard. *See* Fed. R. Civ. P. 56(f)(3).

Six weeks after HDR Engineering filed its motion, the parties submitted a joint pretrial statement. In its statement of its case, TBW declared that "[t]he large, excessive cracking of the soil cement and other damage to the upstream slope of the Reservoir was caused by design errors committed by HDR" and that "[t]he damage to the Reservoir is the result of HDR's design errors . . . ." (Dkt. 346, Joint Pretrial Statement at 3, 4). Conspicuously absent from the statement of TBW's case is any mention of Barnard or damages allegedly caused by construction defects. Further, TBW, Barnard, and McDonald expressly represented that they had stipulated to the Agreed Facts. (*Id.* at 36-37).

Upon review of HDR Engineering's motion, TBW's response, the joint pretrial statement, and the Settlement Agreement, including the Agreed Facts, an order was issued pursuant to Fed. R. Civ. P. 56(f)(3), directing TBW to show cause why summary judgment should not be entered in favor of Barnard. The order instructed TBW to:

> specifically identify the evidence disclosed in the parties' Joint Pretrial Statement that would support a finding for Plaintiff on Counts II and V[1] and that establish genuine issues of material fact as to whether Barnard's failure to construct the Wedge in accordance with Defendant HDR's drawings and specifications caused or contributed to the unusual cracking in the flat-plate soil-cement erosion-control layer lining the interior of the C.W. Bill Young Reservoir.

(Dkt. 365). TBW responded to the order, as did HDR Engineering and Barnard. TBW opposes summary judgment in favor of Barnard. HDR Engineering and Barnard do not oppose summary judgment in favor of Barnard. (Dkts. 376, 377).[2] Having reviewed the parties' submissions, the Court is of the opinion that oral argument would not assist the Court and that this matter is appropriately resolved on the papers.

## Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. Northern Crossarm Co.*,

---

[1] Although the order to show cause identified Counts II and V of the Amended Complaint, TBW subsequently filed a Second Amended Complaint which renumbered these claims as Counts II and IV. Other than renumbering, the counts against Barnard were not changed.

[2] Barnard presumably did not seek summary judgment because § 10(b) of the Settlement Agreement provided that "Barnard, McDonald and Tampa Bay Water shall not file or join in any Daubert or dispositive motion(s) directed against any of the others of them, except as specifically provided herein."

357 F.3d 1256, 1259 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. The Court will not weigh the evidence. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). "Instead, the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Id.*

## Discussion

In its response to the order to show cause, TBW relies on a single alleged construction defect: the presence of lenses, pockets, streaks, and layers within the soil wedge. At this stage of the proceedings, TBW is deemed to have abandoned any claim that Barnard is liable for any other alleged defects that were the subject of this action. *See Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009); *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1264 (11th Cir. 2001). As for the one remaining alleged defect, TBW raises a threshold argument that nothing in the Agreed Facts prevents TBW from demonstrating Barnard's liability for damages that were caused by or contributed to by the presence of lenses, pockets, streaks, and layers. This argument fails for two reasons.

First, TBW expressly stipulated that this alleged defect was not the cause of its damages. The Agreed Facts state:

> 16. HDR's defective design is the only reason the Reservoir has to be repaired and taken out of service.
> . . .
>
> 19. If HDR had properly designed the Reservoir, the relatively minor failures by Barnard to comply with the plans and specifications, as alleged by Tampa Bay Water, and denied by Barnard would not have caused the unusual cracking.
>
> 20. Barnard corrected every item of work known or identified by HDR that did not meet the specifications. Neither during construction nor at the end of construction was Barnard's work rejected by CDG, HDR or TBW.

4

. . .

> 23. There was never an instance where Barnard failed to take any appropriate corrective action after deficient work was brought to Barnard's attention.

. . .

> 43. Excess pore water pressure, not thin soil-cement, caused the unusual cracking.

. . .

> 75. The presence of lenses, pockets, streaks and layers alone would not have caused the unusual cracking at the Reservoir.

(Dkt. 307, Ex. A).

TBW suggests that it is able to show that this alleged defect contributed to its damages, because paragraph 75 used the word "alone." But this position is foreclosed by the next paragraph:

> 76. There would have been unusual cracking in the soil-cement even in the absence of lenses, pockets, streaks and layers and they are not the reason the Reservoir has to be repaired. The same repairs being proposed by TBW would have to be undertaken even in the absence of lenses, pockets, streaks or layers.

(*Id.*).

In light of the Agreed Facts, TBW cannot seriously contend that the presence of lenses, pockets, streaks, and layers was a concurring cause which contributed to its damages. To prevail on such a claim, TBW must show, at a minimum, that Barnard's conduct was a "substantial contributing factor" in causing its damages. *See Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1256-57 (11th Cir. 2010); *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984). Given the stipulations in paragraphs 16, 19, 43 and 76, TBW is in no position to argue that lenses, pockets, streaks and layers 'contributed substantially' to producing its damages. Simply put, TBW stipulated to a set of facts under which this alleged defect did not cause or contribute to its damages.

Second, in the Agreed Facts, TBW went to great lengths to stipulate that it was HDR

Engineering, and not Barnard, that was responsible for the existence of lenses, pockets, streaks, and layers. (Dkt. 307, Ex. A, ¶¶ 48-76). TBW's response to the order to show cause is consistent with its stipulation, as TBW concedes that its expert witness, Dr. Brumund, will testify at trial "that he is now of the view that HDR is solely responsible for the presence of the lenses, pockets, streaks and layers within the embankment . . . ." (Dkt. 369 at 8).

In short, TBW stipulated that Barnard was not responsible for the presence of lenses, pockets, streaks, and layers and, further, that these conditions did not cause or contribute to its damages. TBW must be held to its stipulation. *See Christian Legal Soc. Chapter of the Univ. of Cal., Hastings College of the Law v. Martinez*, --- U.S. ----, 130 S. Ct. 2971, 2983 (2010). TBW's sole theory of Barnard's liability has been foreclosed by its own admissions.

Moreover, the evidence identified by TBW is patently insufficient to survive summary judgment. TBW contends that a jury could find Barnard liable based on the opinions contained in Dr. Brumund's initial report. In that report, Brumund opined that the existence of lenses, pockets, streaks and layers contributed to excess pore pressure in the soil wedge and that Barnard was responsible for these conditions. Brumund, however, submitted a supplemental report which disavowed the portion of that opinion attributing liability to Barnard. As TBW concedes, Brumund "is now of the view that HDR is solely responsible for the presence of the lenses, pockets, streaks and layers within the embankment . . . ." (Dkt. 369 at 8).

TBW has made clear that at trial, it will be relying on the opinions in Brumund's supplemental report, not his initial report:

> In general, Tampa Bay Water anticipates that Dr. Brumund will testify that: (1) HDR's design of the Reservoir was defective; (2) HDR violated its standard of care in designing the Reservoir; (3) HDR's errors and omissions in designing the Reservoir caused the damage to the upstream slope of the Reservoir; (4) reasonable

methods for repairing the damage to the upstream slope of the Reservoir; and (5) HDR's quality control.

(Dkt. 346, Joint Pretrial Statement at 14). Indeed, there is nothing in TBW's response to the order to show cause or the joint pretrial statement which suggests that TBW will offer Brumund's testimony to support its claim against Barnard. Rather, the testimony TBW intends to offer regarding Brumund's initial opinion will be focused on "explain[ing] why he initially believed that the responsibility for the lenses, pockets, streaks and layers lay with Barnard, and the basis upon which he later revised his opinion." (Dkt. 369 at 3).

TBW contends that one would "reasonably expect" HDR Engineering to bring out Brumund's initial opinion on cross-examination (Dkt. 369 at 4). But this is nothing more than speculation. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995)); *Topp-Cola Co. v. Coca-Cola Co.*, 185 F. Supp. 700, 708 (S.D.N.Y 1960) (the "hope[] that something will 'turn up' on the trial" is "wholly insufficient to justify denial" of summary judgment). TBW has effectively withdrawn Brumund's initial opinion that Barnard was responsible for the presence of lenses, pockets, streaks and layers in the soil wedge. TBW's claims cannot be based on what HDR Engineering may or may not choose to do at trial.

TBW also points to a summary of the testimony of James Molyneux, along with several photographs and reports prepared by Black & Veatch. The photographs, reports, and Molyneux's testimony suggest, at most, that lenses, pockets, streaks and layers are present in the soil wedge. This evidence fails to demonstrate that those conditions caused the soil cement to crack or that Barnard was responsible.

TBW next contends that its claims against Barnard could be supported by evidence that HDR offers as part of its 'collapse upon wetting' theory.[3] But in the Agreed Facts, TBW stipulated that its damages were caused by excess pore pressure,[4] not collapse upon wetting:

> 17. The excessive cracking was caused by excess pore pressures that developed in the Soil Wedge.
>
> . . .
>
> 43. Excess pore water pressure, not thin soil-cement, caused the unusual cracking.

(Dkt. 307, Ex. A). TBW went on to stipulate to several points that rejected the same 'collapse upon wetting' evidence on which it now purports to rely. (*Id.* ¶¶ 121-131). And in the joint pretrial statement, TBW declared that "[c]ontrary to HDR's assertions, the damage to the Reservoir was not caused by 'collapse upon wetting' . . . ." (Dkt. 346 at 4-5). TBW will not be permitted to advance an argument that Barnard is liable based on a theory that contradicts its stipulation and the joint pretrial statement. *See Christian Legal Soc.*, 130 S. Ct. at 2983; *see also* M.D. Fla. L. R. 3.06(e) ("All pleadings filed by any party prior to filing of the pretrial statement shall be deemed to be merged therein . . . . The pretrial statement and the pretrial order, if any, will control the course of the trial . . . .").

In sum, TBW's arguments that lenses, pockets, streaks, and layers in the soil wedge caused or contributed to its damages and that Barnard is liable for those damages have been foreclosed by the Agreed Facts. And, in any event, TBW has not pointed to sufficient evidence to support such a

---

[3] The 'collapse upon wetting' theory is that the protective soil layer in the northeast corner of the reservoir was placed too thick, too dry, and too loose. (Dkt. 346, Joint Pretrial Statement at 9). Erosion gullies formed in the southwest corner of the reservoir and were repaired with dirt that was not properly compacted. (*Id.*). These alleged defects caused areas of soil in the wedge to collapse, leaving holes or voids below the soil cement. (*Id.* at 9-10). When the reservoir was filled with water, the soil cement cracked in the areas above the voids. (*Id.* at 10).

[4] The 'excess pore pressure' theory is that the soil wedge fails to drain at the same rate as the water level in the reservoir. (Dkt. 346, Joint Pretrial Statement at 4). This causes pressure to build in the wedge when the reservoir is drained, which lifts the soil cement and causes it to crack. (*Id.*).

claim. There are no genuine issues of material fact left for trial. Barnard is entitled to judgment as a matter of law.

It may be true, as TBW observes, that the parties "stipulate[d] and agree[d] that there _may_ be facts upon which a reasonable jury _may_ conclude there is a sufficient evidentiary basis to issue a Verdict, in whole or in part, against Barnard." (Dkt. 307 § 10(a)) (emphasis added). But a mere agreement that the facts could potentially support a jury verdict does not create a genuine issue of material fact. In light of the order to show cause, TBW was required to come forward with evidence sufficient to withstand summary judgment. _See_ Fed. R. Civ. P. 56. It did not.

There is one final point to be addressed. In its response, Barnard states:

> Upon the entry of [summary judgment in favor of Barnard], Barnard's claim in this case against McDonald Construction Corp. ("McDonald") for indemnity would be moot and, as such, Barnard would have no objection to the Court also entering, _sua sponte_, an order dismissing Barnard's claim against McDonald with prejudice and Barnard would waive the notice requirement of FRCP 56(f).

(Dkt. 377, n.1). There has been no objection to Barnard's proposal, and the Court sees no reason that McDonald should remain in this action.

## Conclusion

Accordingly, HDR Engineering's motion (Dkt. 323) is GRANTED _in part_.

(1)     Pursuant to Fed. R. Civ. P. 56(f)(3), summary judgment is entered in favor of Barnard on Counts II and IV of the Second Amended Complaint.

(2)     As Barnard's claim against McDonald is moot, Barnard's Third Party Complaint is dismissed with prejudice.

(3)     The clerk is directed to TERMINATE Defendant Barnard Construction Company and Third-Party Defendant McDonald Construction Corporation.

(4)     HDR Engineering's motion is denied in all other respects.

**DONE AND ORDERED** this *19th* day of August, 2011.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to: Counsel of record

10