1                   UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
2                         TAMPA DIVISION

3

    TAMPA BAY WATER,
4   a Regional Water Supply Authority,

5          Plaintiff,

6     versus                   CASE NO. 8:08-CV-2446-T27-TBM
                               27 SEPTEMBER 2011
7   HDR ENGINEERING, INC.,     TAMPA, FLORIDA
    a Nebraska Corporation,    PAGES 1 - 24
8

           Defendant.
9
    _____/
10
                    TRANSCRIPT OF STATUS CONFERENCE
11          BEFORE THE HONORABLE JAMES D. WHITTEMORE
                    UNITED STATES DISTRICT JUDGE
12
    APPEARANCES:
13
    For the Plaintiff:   **Richard Anthony Harrison**
14                       Allen Dell, PA
                         Suite 100
15                       202 S Rome Ave
                         Tampa, FL 33606
16
                         **David Forziano**
17                       Allen Dell, PA
                         Suite 100
18                       202 S Rome Ave
                         Tampa, FL 33606
19

20

21

22

23

24    Proceedings recorded and transcribed by
    computer-aided stenography.
25

```
 1     For Defendant HDR:     Wayne B. Mason
                              Sedgwick LLP
 2                            Suite 5400
                              1717 Main St
 3                            Dallas, TX 75201

 4                            Kurt W. Meaders
                              Sedgwick LLP
 5                            Suite 5400
                              1717 Main St
 6                            Dallas, TX 75201

 7                            Timothy D. Woodward
                              Forizs & Dogali, PA
 8                            Suite 300
                              4301 Anchor Plaza Pkwy
 9                            Tampa, FL 33634

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    **P R O C E E D I N G S**

2          THE COURT:  Let's get your appearances on the

3     record.  For Tampa Bay Water?

4          MR. HARRISON:  Richard Harrison and David

5     Forziano for Tampa Bay Water, Your Honor.

6          THE COURT:  Good afternoon, gentlemen.  For

7     HDR?

8          MR. MASON:  Yes, Your Honor.  Wayne Mason,

9     Kurt Meaders and Tim Woodward.

10         THE COURT:  Don't you love these hourly rates.

11    I call you in for a status and get you to travel

12    here and spend time watching me do sentencings.

13         Well, I was going to have a very informal

14    status, but now we have a motion I've got to worry

15    about, Docket 456, Tampa Bay Water's conditional

16    motion to reopen and abate.

17         The reason I scheduled this status, candidly,

18    was twofold.  All I did was read or listen to what

19    everybody else in the world listened to that

20    evening.  I understand there's another meeting of

21    the board on October 17th to reconsider the vote?

22         I'm not going to speculate about that.  But I

23    wanted to find out from the lawyers whether there

24    had been any change in the positions of the parties,

25    which you've both responded there really hasn't

1       been, as I understand it.

2            I think there's a lot of misinformation

3       floating around out there about this case that I'm

4       concerned about as a presiding judge, candidly.  You

5       know, I have scheduled this case for trial, and

6       we've allotted the six to eight weeks that we think

7       it will take, a lot of sacrifice on your part and

8       certainly a lot of effort and accommodation on our

9       part to try to get the case on a trial calendar and

10      specially set, if you will.  A lot of rulings on

11      difficult, comprehensive and interesting issues

12      about experts, some of which we are holding now.

13           I want it to be very clear that I am not in

14      any way, shape or form involving myself in the

15      settlement of this case, other than as a presiding

16      judge.  I need to know where we are or where we're

17      not.  And if there's misinformation being thrown

18      about, I want to make sure I have the correct

19      information.

20           I wasn't aware of the amount of the proposed

21      settlement, other than there would have been a

22      settlement.  Of course, I pre-tried this case, and I

23      know exactly what the damages sought are, and they

24      are markedly different from what I read in the

25      paper.

1       So your motion, Mr. Harrison.  I'm not

2    necessarily inclined to grant it.  I do understand

3    why you filed it.  There's no prejudice to anybody

4    as the case sits in its present posture, but go

5    right ahead.  This is Docket 456.

6       MR. HARRISON:  Thank you, Your Honor.  Richard

7    Harrison for Tampa Bay Water.  The Court obviously

8    has read the same media accounts that the rest of us

9    have.  The facts are --

10       THE COURT:  It's not like I looked for them.

11    I just happened to be privy to them.

12       MR. HARRISON:  Just unavoidable sometimes,

13    especially on the front page.  The facts are set out

14    in the motion, Judge, and I don't think there's any

15    dispute about what happened.  There was a meeting --

16    let me back up.  There was a day of mediation.

17    There was no agreement.  There was a mediator's

18    proposal to both parties.

19       Tampa Bay Water held a special meeting on the

20    19th of September to consider that proposal.  There

21    were seven of the nine board members in attendance.

22    There was a private session that's permitted under

23    the Sunshine Law where the mediator's proposal was

24    considered and discussed.

25       Under Florida law the board cannot take any

1  action.  They can't vote in that private session.

2  They went back out to the public meeting, reconvened

3  in public and voted four to three to accept the

4  mediator's proposal.  The seven board members who

5  voted --

6       THE COURT:  At that point the terms of the

7  proposal were on the record publicly?

8       MR. HARRISON:  At that point, yes, sir.  And

9  at that point the seven board members who voted,

10  both the ones for and the ones who voted against

11  certainly believed that the matter had been

12  resolved.  The general counsel believed that.  The

13  general manager believed that.  I certainly believed

14  it.  And we all thought that was the end of the

15  matter.

16       We left Clearwater, drove back to Tampa and

17  promptly did the things the local rules and courtesy

18  require us to do, which is pick up the phone and

19  call chambers, advised there had been a settlement,

20  and not too long after that filed a notice under

21  3.08 believing at that time that the case had, in

22  fact, been settled.

23       It was close to 5 o'clock that evening when I

24  began to be informed that there was an issue with

25  the vote.  We looked at it very quickly that

1    evening, enough to confirm in my mind that, yes,

2    there is a substantial question about the vote.

3         I immediately contacted Mr. Woodward, local

4    counsel for HDR, I think within an hour, and advised

5    him that there was an issue and potentially an

6    irregularity in the vote, explained to him what we

7    thought it was, spent the next day then trying to

8    sort everything out and figure out where that left

9    us.

10        And I think it was the next day that we got

11   both a status conference notice followed by an order

12   of dismissal.  And, of course, the dismissal order

13   prompted us to file the pending motion which

14   certainly the Court may at this point consider to be

15   premature.

16        The issue may resolve itself on October 17th.

17   I will not presume to speculate as to what the board

18   will do.  We do have a reasonable level of

19   certainty that all nine members will be present for

20   that meeting.  So, certainly, there will be some

21   action with at least five votes on one side or the

22   other.

23        If they approve the mediator's proposal, then

24   the case will be settled.  HDR certainly has not

25   sought to void the settlement at this point.  If

1    they do anything other than that, then I think we

2    would be back here either on another motion to

3    reopen or some potential 60(b) motion for relief

4    from the dismissal, because the issue, as the Court

5    may have surmised, is really one -- a legal issue as

6    to the capacity, if you will, the validity of the

7    board's action.

8         THE COURT:  Was the -- and don't divulge

9    anything that's confidential.  But focusing on

10   simply the public hearing, was the settlement

11   conditioned upon approval by the board?  And that

12   sounds like a nonsensical question but --

13        MR. HARRISON:  Yes.  But remember that what we

14   had was a mediator's proposal to both sides.  So

15   both sides responded to the mediator independently.

16   HDR responded to the mediator privately because

17   they're allowed to do that.  Tampa Bay Water can't

18   do that privately.  So in order to get Tampa Bay

19   Water's answer, they had to vote in public.

20        They voted in public.  The motion was to

21   accept and approve the mediator's proposal.  They

22   voted publicly four to three to do that, and then

23   that was relayed to the mediator.

24        THE COURT:  Well, to be more articulate, I

25   should say, is the condition of the vote specific to

1    the rules of the board or was it just a generic,

2    it's conditioned upon approval by the board?

3         MR. HARRISON:  Nothing in the mediator's

4    proposal says anything about how Tampa Bay Water had

5    to approve it, I think is the question you're

6    getting at.  And the governing document provides

7    that any action of Tampa Bay Water, except certain

8    specified actions, it says, any action to be valid

9    requires five affirmative votes except for things in

10   another section, and those things in the other

11   section require six votes.

12        So as a legal matter, there is simply nothing

13   Tampa Bay Water can legally, validly do without five

14   affirmative votes.  The only thing they can do with

15   fewer than five votes is move to continue the

16   meeting to some other time.  And that's the issue

17   that we have.

18        THE COURT:  I assume that when the 17th of

19   October meeting comes around, counsel will have the

20   opportunity to summarize the settlement terms and

21   the positives and negatives, the risk factor, the

22   damages realistically sought and the defenses.  I

23   don't know how these things work.  But I presume you

24   would have that opportunity to brief the members of

25   the board?

1          MR. HARRISON:  We will, Your Honor.  The plan

2     is to convene another closed attorney/client

3     briefing session with the full board, as permitted

4     under the Sunshine Law, which is what we did on the

5     19th.  We will brief the board privately on all

6     those things that the Court just mentioned and

7     probably some other things, as well.

8          The board can discuss the matter in private.

9     They can debate the matter in private.  They can

10    discuss and debate it up until the point where there

11    is some consensus as to what they would like to do.

12    They can do everything short of voting in that

13    closed session.

14          THE COURT:  Are you able to attend that?

15          MR. HARRISON:  Yes.

16          THE COURT:  All right.

17          MR. HARRISON:  The only people allowed to

18    attend it would be us, the general counsel, the

19    general manager and the court reporter.

20          THE COURT:  So the board will have accurate

21    information concerning the defenses, the damage

22    sought -- damages sought and your valuation of the

23    strengths and weaknesses of your case?

24          MR. HARRISON:  Absolutely.

25          THE COURT:  The reason I ask that, of course,

```
 1      from a selfish perspective, having scheduled this

 2      case for trial, but if it is settled and it's

 3      settled based on accurate information, of course,

 4      everyone is happy.  If it's inaccurate information

 5      that's out there floating around, I would hope that

 6      the lawyers in this room would be concerned, I would

 7      be concerned because, you know, we had a motion that

 8      we litigated and discussed at some length about

 9      HDR's claim that your claim for damages constituted

10      economic waste, and it turns out, as I recall, your

11      claim for damages was based on repairs, not

12      necessarily what Tampa Bay Water would ultimately do

13      if and when the reservoir was addressed and

14      constructed.

15           As I understood it, you were going to build a

16      bigger and better, according, I think, to one of the

17      lawyers' comments.  In other words, 130 million is

18      not the damages you're seeking.

19           MR. HARRISON:  That's correct.

20           THE COURT:  That needs to be corrected.

21           MR. HARRISON:  There are really actually I

22      don't think any numbers that have appeared in any

23      newspaper article that accurately reflect the

24      damages in this case.

25           THE COURT:  Well, that was my impression
```

1    although, again, I had nothing to do with this

2    settlement other than to encourage you to meet in

3    good faith and at least explore that.

4         But I was concerned that there were comments

5    attributed to members of the public and more

6    importantly board members that may indicate they

7    were misinformed about what the damage claim was as

8    opposed to the ultimate intentions.

9         MR. HARRISON:  Part of that, I think, Your

10   Honor, is just the fact that they recently approved

11   the contract for this new work and the repairs along

12   with the accompanying expansion, which takes their

13   contract number up to $162 million.

14        THE COURT:  Well, that's understandable.

15        MR. HARRISON:  So they will be completely

16   briefed and they will understand all of the risks

17   associated with going forward, if that's what they

18   choose to do.

19        THE COURT:  So your concern as we sit here

20   today is until that meeting on the 17th, keep the

21   parties in a status quo situation and let that

22   happen or not happen on the 17th, and then see where

23   we are?

24        MR. HARRISON:  That's where we are, Judge.

25   And certainly we will commit to the Court that by

1       the end of the day on the 17th, we'll file a status

2       report, advise everyone, including the Court, of

3       what the outcome was.  It will probably be on

4       TBO.com before then, but we'll file something

5       official.

6              If it is resolved, then we're done.  If it is

7       anything other than that, then I suspect we'll be

8       back here on a variety of motions from both sides

9       trying to figure out what to do next.

10             My concern and the reason we filed the motion,

11      of course, is that in light of the dismissal, in

12      light of the media attention, certainly, we were not

13      going to wait a month to bring this to the Court's

14      attention.

15             THE COURT:  All right.  Well, thank you.  On

16      behalf of HDR, who wants to address the Court?

17             MR. MASON:  Thank you, Your Honor.  Wayne

18      Mason.  And we do take this seriously.  I know the

19      Court was just making an observation about the three

20      lawyers here.  But this is a very serious matter to

21      our client.

22             My client is here in the courtroom today

23      because of the serious nature of that, and not

24      knowing what the Court would want to discuss today

25      and various lawyers having different

1    responsibilities, that's why we're here to try and

2    address those.

3         Let me address the issue at hand as the Court

4    has outlined it, though.  We do believe that the

5    only thing pending is their motion for conditional

6    reinstatement, which, pursuant to the Court's own

7    order, would require good cause to demonstrate that.

8    I don't think that there is a record of good cause

9    of why this should be pursued and why this is

10   appropriate now.

11        So we think that the -- in terms of what the

12   Court just asked Mr. Harrison, the status quo can be

13   achieved with the board's vote and consideration

14   October the 17th by denying this at this time

15   without prejudice to them ultimately if there is

16   some change occurring.

17        But no one is saying -- and I want to be

18   clear, I'm not here to criticize Tampa Bay Water for

19   what has happened.  Things happen.  And I'm not here

20   to cast aspersions.

21        What I am here, though, to make very clear,

22   though, is that there are ramifications to what has

23   occurred that are harmful to my client and do

24   serious, long-term issue to the client with respect

25   to what has happened here.

1          This isn't just an oops, we'll put it back on

2     the docket and we'll all go on down the road.  And

3     we tried to set forth in our response some of that.

4     No one is trying to repudiate the settlement.  And I

5     think that's a significant factor for the Court, as

6     well.

7          We are in agreement, I believe, that they will

8     recommend the settlement again and that we all

9     believe that it is one of those things that no one's

10    happy, that an independent mediator who

11    independently looked at this, viewed this when there

12    was yet again another loggerhead, put a number out

13    there that after considering everything said, I

14    think that this is appropriate.  I'm sure

15    Mr. Harrison, general counsel, will communicate that

16    to the -- as they did before to the board.

17         My concern, Your Honor, is what I read in the

18    paper like you do with respect to the politics of

19    this, if you will.  And I understand that the Court

20    is not -- has been very clear today twice saying I'm

21    not getting involved in this.

22         While I would love for the Court to ask the

23    board to come and sit in those seats and have a

24    discussion about this similar to what we did with --

25    what I heard you do with the gentleman that was in

1    here before us, in the hearing before us, but I

2    understand the Court saying that you're not going to

3    get involved.

4         What I would ask, though, Your Honor, is in

5    addition to the denying of this motion, that there

6    be an acknowledgment of the fact that there is a

7    potential -- and I'm not asking for an advisory

8    opinion, which is, by the way, what I think they're

9    asking for, which is inappropriate, but rather just

10   a recognition that there are ramifications to this,

11   and that as they make an informed decision with

12   respect to the merits of the case as they did before

13   and as they have competent counsel to advise them on

14   the risks associated with that, but also, though,

15   that there are ramifications to what has occurred,

16   that the board chair signed it, that the president

17   signed it, that we have taken many steps now that

18   have financially created a burden on our client if,

19   in fact, this were to be reinstated, that not only

20   are the amount of the settlement out throughout this

21   community, but one of the board members disclosing

22   confidential settlement discussions in the media,

23   and the real issues of -- and I'm not asking for an

24   advisory opinion, just that they recognize that we

25   will be bringing motions to change venue and that

1      there are financial ramifications that go with this

2      in terms of the fact of the burdens that have been

3      placed now on my client who extended themselves,

4      quite frankly, to pay an amount that they didn't

5      think they were responsible for to put this behind

6      them.

7            And now, not only today, and the Court

8      mentioned it, having to fly back in here and deal

9      with this issue today, but getting who knows when

10     geared up again for trial and getting experts geared

11     up and doing all sorts of things that there are,

12     indeed, many financial ramifications to this.  And

13     we do think it's appropriate to the extent that we

14     have to to bring those to the Court's attention and

15     for those things to be addressed.

16           I'm not asking for a ruling.  But I say that

17     just so that the board makes an informed decision

18     that there are not only a question as to whether

19     good cause exists to reinstate the case at all, not

20     only are they at substantial risk that they could

21     lose the case, but that there are additional issues,

22     some of which we've outlined in our response to the

23     motion today.  And that is the issue.

24           I trust the judgment that these folks will

25     present it in terms of as they have done before in

1    good faith, that they believe it is in the best

2    interest of the taxpayers, that it's in the best

3    interest of the board to do this.

4         But as I said, Your Honor, the concern is the

5    flip flopping in the media with respect to some of

6    the concern about the way the wind might be blowing

7    on this subject, that there are ramifications to

8    this thing in an attempt to just put it back on the

9    docket and there's much prejudice to our client as a

10   result of that.  Thank you for the opportunity.

11        THE COURT:  Well, thank you.  And I certainly

12   didn't mean to suggest that the inconvenience of

13   this hearing is taken lightly.  This hearing was set

14   for very specific reasons and, one, to discuss with

15   counsel where we are or are not, as I said, but just

16   as importantly, to make sure that any misinformation

17   that was out there, you had an opportunity to

18   address and correct.

19        Certainly, this is a difficult situation for

20   the parties and counsel.  I don't know other than

21   the practical ramifications.  All I'm going to worry

22   about is my docket.  And you know and I know how

23   difficult it was to give you guys the six to eight

24   weeks that you needed.  And that's not going to

25   change if this case has to be rescheduled.

1          More importantly, I'm confident that with this

2     hearing, in addition to the efforts of counsel and I

3     know they're ongoing, and the parties, when this

4     matter is revisited by the board on the 17th of

5     October, that the board will make an informed

6     decision, with the full appreciation of the risks

7     attendant to a trial.

8          This case has been very ably litigated on both

9     sides.  A good settlement is a good way to resolve

10    any case, meaning there's concessions on both sides.

11    I don't think that the motion -- the conditional

12    motion to reopen is necessary.

13         The 60-day order that I entered, actually I

14    thought that was entered before we set the status,

15    but it doesn't matter because I would have set it,

16    anyway, accomplishes the same thing.  It takes the

17    case off the active docket so that we can focus our

18    attention on other matters, other motions.  It puts

19    the parties at ease in this case anticipating there

20    would be documents and things that had to be

21    exchanged and releases executed, things of that

22    nature.

23         And I'm not inclined to reopen it today.  I

24    think that might send a message that's not intended.

25    I'm simply going to leave it as it is.  We're going

1    to deny the motion to reopen, Docket 456, meaning

2    nothing more than the case has been effectively

3    stayed pending the resolution of the settlement

4    issues.

5         There's no reason to put judicial pressure on

6    the parties.  You have enough pressure.  But I

7    certainly don't want to send a signal to anyone,

8    including the public, that this good faith

9    resolution of this case has been jettisoned, so to

10   speak.  I'll leave it to you.

11        And I'm entirely confident with the quality of

12   counsel on both sides of the room that when this

13   thing does come up for discussion and vote, those

14   board members will have everything in front of them

15   that they need to make an informed, well-reasoned

16   decision on behalf of their citizenry.

17        I really don't want to talk about the

18   ramifications other than to acknowledge that the

19   ramifications, as far as I'm concerned, we have to

20   set it back on the trial docket and start ruling on

21   some motions that are in limbo right now.  But

22   certainly Mr. Mason has outlined his concerns and

23   none of them come to any surprise to Mr. Harrison, I

24   don't think.

25        But I hope that it's not construed as -- and I

```
1      know it's not intended this way, but not construed

2      as any kind of threat or coercion, because that

3      would have a counter effect.

4              MR. MASON:  That's not intended, Your Honor.

5              THE COURT:  And I'm certain it's not.

6              MR. MASON:  I want to be very clear on the

7      record for that.

8              THE COURT:  And that's why I mentioned that.

9      I don't take it that way, simply the realities of

10     the parties to litigation of this magnitude agree to

11     resolve their differences, then the attention is

12     turned to other things.  And I know these lawyers,

13     to get back into a trial posture, would take a

14     significant amount of time and effort because you

15     have other cases and other matters.

16             So I'm going to leave it as it is, and commend

17     the parties for reaching in good faith a resolution

18     subject to the vote of the board.  My responsibility

19     as a presiding judge is to make sure that I

20     understand where the case stands for planning

21     purposes as well as any supervisory role I may have

22     in anything related to the resolution.

23             But I don't vote on the settlement, I don't

24     weigh in on the settlement.  And nothing I say here

25     today should be construed as anything other than
```

1     acknowledgment that these parties have, in good

2     faith through the assistance of a qualified

3     mediator, come to a resolution that these lawyers

4     and the parties believe was a good one.  It is a

5     compromise.  That's what a settlement is.  It's

6     never all or nothing.

7          And all I can say is there are some very

8     interesting and intricate and difficult issues that

9     a jury would be called upon to address if this case

10    does go forward.  And I don't think anybody can

11    predict what the jury is going to do with able

12    counsel and qualified experts.

13         I will at this point just wait to hear from

14    you presumably sometime on the 17th.  If the need

15    for a status conference or a case management

16    conference arises, please confer and just request

17    one.  I'll be happy to convene one if for no other

18    reason to give you an avenue of communication in a

19    public setting in a courtroom.

20         And I hope you enjoyed watching the sentencing

21    hearing that we do every day.  They're very

22    pleasant, tongue in cheek, of course.  They're very

23    serious cases.  I'm sorry.  It took a little longer

24    than I thought at your expense.  But it's difficult

25    to interrupt those things and then start them back

1    up, so I wanted to go ahead get that finished.

2         Anything else, Mr. Harrison?

3         MR. HARRISON:  Nothing else this afternoon,

4    Your Honor.

5         THE COURT:  Mr. Mason?

6         MR. MASON:  No, Your Honor.

7         THE COURT:  Thank you, gentlemen.  I

8    appreciate you being here.  Good luck.  We'll be in

9    recess.

10        (Proceedings concluded at 5:00 PM.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T E

3

4    STATE OF FLORIDA            )

5    COUNTY OF HILLSBOROUGH   )

6        I, Linda Starr, RPR, Official Court Reporter for

7    the United States District Court, Middle District,

8    Tampa Division,

9        DO HEREBY CERTIFY, that I was authorized to and

10   did, through use of Computer Aided Transcription,

11   report in machine shorthand the proceedings and

12   evidence in the above-styled cause, as stated in the

13   caption hereto, and that the foregoing pages,

14   numbered 1 through 24, inclusive, constitute a true

15   and correct transcription of my machine shorthand

16   report of said proceedings and evidence.

17       IN WITNESS WHEREOF, I have hereunto set my hand in

18   the City of Tampa, County of Hillsborough, State of

19   Florida, this 4th day of October 2011.

20

21

22        _____/s/ Linda Starr_____
          Linda Starr, RPR, Official Court Reporter
23

24

25