**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TAMPA BAY WATER,
A Regional Water Supply Authority

       Plaintiff,                    CASE NO.:  8:08-cv-2446-JDW-TBM

v.

HDR ENGINEERING, INC., a
Nebraska corporation,

       Defendant.
_____/

**TAMPA BAY WATER'S RESPONSE IN OPPOSITION TO**
**HDR'S CROSS-MOTION TO ENFORCE SETTLEMENT AGREEMENT**

COMES NOW the Plaintiff, Tampa Bay Water, A Regional Water Supply Authority ("TBW"), by and through its undersigned counsel, and responds in opposition to HDR Engineering Inc.'s ("HDR") Cross-Motion to Enforce Settlement Agreement (the "Motion") (Dkt. 470). Much of HDR's legal argument in support of the Motion is actually found in its Response in Opposition to TBW's Motion to Reopen Case (the "Response")(Dkt. 469), incorporated by reference into the Motion. Accordingly, TBW incorporates herein by reference its Motion to Reopen Case (the "Motion to Reopen")(Dkt. 466).[1]

TBW will address briefly the legal issues relating to the invalidity of the September vote on the Mediator's Proposal, as HDR seems to assert some vague, estoppel-based

_____

[1] Because the Court has already entered an order reopening the case (Dkt. 474), TBW will not re-visit the issue of whether good cause exists to reopen the case within the meaning of Local Rule 3.08. Instead, this response will address only HDR's Motion and any related argument contained in its Response on the question of whether the failed Mediator's Proposal should be enforced.

argument in that regard.[2] But as HDR's own papers make clear, the real argument being advanced by HDR is that the void "settlement" should somehow be enforced against TBW under some equitable estoppel theory premised on TBW's alleged breach of mediation confidentiality. As stated by HDR, "[T]he facts giving rise to equitable estoppel concern TBW's agreement to – and subsequent violation of – the mediation process, not the technicalities of the Sept. 19 Vote."[3] This position is explicitly reiterated in the Motion, in which HDR alleges that "TBW has irreversibly breached the confidentiality of the parties' settlement negotiations in violation of Local Rule 9.07(b), the federal ADR Act, Florida's Mediation Confidentiality and Privilege Act ("MCPA"), and the parties' agreements. By its conduct, TBW is estopped from disavowing the settlement it publicly approved."[4]

TBW will demonstrate that there has been no breach of mediation confidentiality as to the recent Mediator's Proposal or as to the prior direct settlement discussions between the parties, that any technical breach of mediation confidentiality as to the initial round of Court-ordered mediation does not warrant relief, and that HDR has otherwise failed to demonstrate the essential elements of equitable estoppel under Florida law.

## EQUITABLE ESTOPPEL UNDER FLORIDA LAW

Under Florida law, equitable estoppel must be applied with great caution.[5] *Watson*

---

[2] HDR Response, Dkt. 469 at pp. 10-13.
[3] HDR Response, Dkt. 469 at p. 13.
[4] HDR Motion, Dkt. 470 at p. 3 (internal footnotes omitted).
[5] Under Florida law, equitable estoppel is an affirmative defense and not a basis for a claim for relief. *American Color Graphics, Inc. v. Brooks Pharmacy, Inc.*, 2006 WL 539543 (M.D. Fla. Mar. 6, 2006)(Whittemore, J.); *see also, Flagship Resort Development Corp. v. Interval International, Inc.*, 28 So.3d 915, 923 (Fla. 3 DCA 2010)(equitable estoppel is not a cause of action, but an affirmative defense); *State Agency for Health Care Administration v. MIED, Inc.*, 869 So.2d 13, 20 (Fla. 1 DCA 2004)(equitable estoppel is a defensive doctrine rather than a cause of action). Because the Court has already granted TBW's Motion to Reopen, the only matter pending is HDR's Motion in which it seeks affirmative relief – enforcement of the failed "settlement"

*Clinic, LLP v. Verzosa*, 816 So.2d 832, 834 (Fla. 2 DCA 2002). The party asserting estoppel must prove each of its elements by clear and convincing evidence. *Watson Clinic, supra; Ennis v. Warm Mineral Springs, Inc.*, 203 So.2d 514, 519 (Fla. 2 DCA 1967). The essential elements of equitable estoppel under Florida law are: (1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon. *Freeman v. Summit View, LLC*, 2011 WL 3268367 (M.D. Fla. Aug. 1, 2011). As to the third element, it is clear that *the party* claiming estoppel must have changed *its* position to its detriment in reliance on the alleged representation. Florida cases state this element more clearly. "The party seeking estoppel must have changed his position to his detriment based on the representation and his reliance on it." *Watson Clinic,* 816 So.2d at 834. Even if HDR were able to demonstrate the first two elements of equitable estoppel – and TBW suggests that it cannot – it would then have to show by clear and convincing evidence that *it* changed *its* position to its detriment – not merely that the circumstances in which it finds itself have somehow changed, which seems to be the real basis of the Motion.

## THE SEPTEMBER TBW BOARD ACTION IS VOID AND THERE IS NO BASIS FOR ENFORCEMENT BY ESTOPPEL

TBW will not rehash the legal arguments that are fully briefed in the Motion to Reopen. However, several points require comment with respect to the failed vote by TBW's Board of Directors in September. First, and notwithstanding HDR's efforts to minimize the

---

agreement. TBW suggests that Florida law precludes HDR from seeking such affirmative relief based on equitable estoppel.

legal significance of the 5-vote requirement contained in the Interlocal Agreement,[6] that requirement is expressly authorized by the statute under which TBW was created.[7] More importantly, the 5-vote requirement is essential to the fundamental purpose for which TBW was created: to supply potable water on a *regional* basis.[8] Each member county has two directors on TBW's nine-member Board; each member municipality has one. The 5-vote requirement ensures that no county, even in combination with the member municipality within that county, can compel or approve any action by TBW. Approval of any action by TBW under the 5-vote requirement necessarily entails approval by member governments in no fewer than two counties.

Second, the 4-3 vote by TBW in September is void. HDR's attempt to casually brush aside the cases cited by TBW in the Motion to Reopen by declaring them "off-point" and relegating them to a table[9] is not persuasive. The cases cited by TBW are apt and demonstrate that TBW's action in September was legally ineffective. The case of *Walburn v. City of Naples, Florida*, 2005 WL 2322002 (M.D. Fla. Sept. 22, 2002) provides the best discussion of the relevant legal principles.[10]

Finally, HDR has not demonstrated any basis upon which to enforce the failed settlement by estoppel based on TBW's actions in September. Any "representation" by TBW that the Mediator's Proposal had been "approved" was simply a mistake by TBW. HDR

---

[6] See discussion of the 5-vote requirement in TBW's Motion to Reopen, Dkt. 466 at pp. 8-14. HDR refers to the 5-vote requirement as an "internal operating procedure" (Dkt. 470 at p. 2) and as an "internal procedural rule," a "procedural requirement," and an "internal procedural matter." (Dkt. 469 at pp. 9, 11, 13).

[7] *Fla. Stat.* §373.1963(1)(g), now *Fla. Stat.* §373.715(1)(g).

[8] The so-called "water wars" that pitted TBW's member governments against each other both legally and politically before the change in governance that transformed the former West Coast Regional Water Supply Authority into TBW are documented in Rand, *Water Wars: A Story of People, Politics & Power* (2003).

[9] HDR Response, Dkt. 469 at p. 10 and Exhibit D.

[10] See the discussion contained at TBW Motion to Reopen, Dkt. 466 at pp. 9-14.

could not have reasonably relied on any such statement, because HDR is legally charged with knowledge of TBW's voting requirements.[11] Moreover, the voting irregularity was brought to HDR's attention later that same evening. HDR has not alleged, much less shown by clear and convincing evidence, that it took any action to change its position to its detriment in supposed reliance on any such "representation" between the failed vote at approximately 10:00 a.m. and being advised of the voting irregularity by about 6:00 p.m. the same day.[12] Accordingly, there is no basis for an estoppel based on the failed September vote.

### HDR'S CHARACTERIZATION OF THE MEDIATION PROCEEDINGS IN THIS CASE IS INACCURATE AND MISLEADING

HDR's characterization of the mediation proceedings and other settlement discussions that have taken place in this case is inaccurate and misleading. Given that alleged breaches of mediation confidentiality form, by HDR's own admission, the fundamental basis of HDR's argument in favor of enforcement of the failed "settlement" either on equitable grounds or as some form of sanction, it seems critical for the Court to have an accurate factual account of what did and did not happen in this case.

HDR alleges that "Beginning in the summer of 2010 and continuing on and off through the fall of 2011 the parties engaged in confidential settlement negotiations. These have been formal proceedings, facilitated by an independent mediator, who has filed status reports with the Court concerning the negotiations."[13] This statement conflates three distinct

---

[11] See discussion and cases cited in TBW's Motion to Reopen, Dkt. 466 at p. 13.
[12] HDR no doubt did the same things that TBW did during the approximately 8 hours that the parties mistakenly believed the case had been settled: to wit, release witnesses from trial subpoenas and advise paid experts to stop working on the case. None of these things amounts to a change in HDR's position, much less a change to its legal detriment. Witnesses can be subpoenaed anew and experts can be put back to work, all without any affect on HDR's legal position in this case.
[13] HDR Response, Dkt 469 p.2 ¶1.

rounds of settlement negotiations that took place between TBW and HDR: (1) the court-ordered mediation that took place starting in June 2010 and which ended by the mediator's declaration of an impasse on November 10, 2010; (2) the voluntary settlement discussions that took place directly between counsel for the parties, without a mediator, starting in March 2011 and ending with an offer of settlement made by HDR on May 13, 2011 that was considered and rejected by TBW on May 16, 2011; and (3) the voluntary mediation that was initiated by the parties in August 2011 and took place on September 8, 2011, with a different mediator, culminating in the Mediator's Proposal that was first voted on by TBW's Board of Directors in September and then voted on and rejected in October. HDR compounds this error by referring generically to "settlement negotiations" and "mediation" throughout its Response and Motion in a manner that treats these three distinct events as though they were a single, continuous, Court-ordered mediation. They were not.

<u>**Court-Ordered Mediation**</u>

This case was commenced on December 10, 2008.[14] The Amended Case Management and Scheduling Order (Dkt. 118) required the parties to mediate on or before October 15, 2010.[15] It required the parties to file a stipulation selecting a mediator within 120 days from the date of the order.[16] On January 7, 2010, the parties filed the required stipulation selecting Patrick C. Coughlan of Conflict Solutions to serve as mediator in the case.[17] Mediation was held on June 22 and 23, 2010, and August 17, 18 and 19, 2010. These proceedings resulted in a settlement of all claims between TBW and one of the other original

---

[14] Complaint, Dkt. 1.
[15] Dkt. 118, ¶6.
[16] Dkt. 118, ¶6.
[17] Partial Stipulation Selecting Mediator, Dkt. 135.

defendants. Settlement discussions among the remaining parties continued.[18] Another day of mediation was held on October 12, 2010, following which the mediator requested an extension of the mediation deadline to October 29, 2010, to facilitate ongoing discussions among the parties.[19] The continuing discussions failed to produce any further resolution and the mediator declared an impasse on November 12, 2010.[20] No further court-ordered mediation proceedings ever took place in this case.

### <u>Voluntary Settlement Negotiations Directly Between TBW and HDR</u>

Counsel for TBW and HDR have had direct communications throughout this complex and protracted litigation. In March 2011, counsel discussed the possibility of meeting directly to pursue further settlement discussions. In emails exchanged between counsel for TBW and counsel for HDR on March 25, 2011, and March 29, 2011, a meeting was scheduled for Friday, April 1, 2011.[21] That meeting took place as scheduled. The only attendees were litigation counsel for TBW (Harrison and Forziano) and litigation counsel for HDR (Mason and Meaders). There was no mediation agreement with respect to this meeting. There was no court order or referral to mediation. There was no mediator present at the meeting or otherwise involved in the discussions between litigation counsel.

These direct settlement discussions continued throughout April and into early May of 2011. Negotiations were conducted by telephone and email directly between litigation counsel. Offers and counteroffers were made and exchanged. No mediator was involved. These direct negotiations eventually produced a settlement offer from HDR that was

---

[18] Mediator's Report, Dkt. 203.
[19] Supplemental Mediator's Report and Recommendation, Dkt. 227.
[20] Supplemental Mediator's Report, Dkt. 240.
[21] **Composite Exhibit 1**.

conveyed in written correspondence from HDR's trial counsel (Mason) to TBW's trial counsel (Harrison) on May 13, 2011.[22] The offer by its express terms would expire at 5:00 p.m. on May 16, 2011. That offer was presented to TBW's Board of Directors in a closed attorney-client briefing held during its regular meeting on May 16, 2011.[23] After discussing and considering the offer in the private attorney-client meeting, TBW's Board of Directors reconvened in public session. It took no action to accept the offer, which then expired according to its terms. The non-acceptance of the offer was communicated by Harrison to Mason on May 16, 2011.[24]

### Voluntary Mediation between TBW and HDR

As of May 16, 2011, the case was scheduled for trial on the July 5 trial docket.[25] The case was not reached and was re-set for the trial term beginning on October 3, 2011.[26] The Court on a number of occasions, including the pretrial conference held on May 20, 2011, made it clear that the time required to try this complex civil case (estimated variously from 4 weeks to 8 weeks and scheduled for 6 weeks on the trial calendar)[27] would present challenges in terms of scheduling the jury trial. This case was eventually scheduled for jury trial to commence on or about September 26, 2011.[28]

On or about August 16, 2011, TBW's counsel and HDR's local counsel, Timothy Woodward, discussed the possibility of the parties making one last attempt at mediation

---

[22] **Exhibit 2**, with the amount of the offer redacted. TBW has contemporaneously filed a motion to file unredacted copies of the offer and TBW's response under seal in order to demonstrate that, to the extent any TBW board member disclosed the amount of *this* offer, it could not have been a breach of mediation confidentiality because this offer was not the product of any mediation. *See* discussion at pp. 17-18, *infra*.

[23] **Exhibit 3**, Agenda of 5/16/11 TBW Board meeting.

[24] **Exhibit 4**, with the amount of the offer redacted. *See* n. 21, *supra*.

[25] Dkt. 374.

[26] Dkt. 444.

[27] Dkt. 444.

[28] Dkt. 444.

before trial. Simultaneously, TBW's General Manager, Gerald Seeber, received a letter from HDR's Executive Vice President, Timothy J. Connolly, indicating HDR's willingness to revisit settlement discussions and expressing HDR's desire that any such discussions be conducted with the assistance of a mediator.[29] The parties agreed to mediate one more time and selected Tampa attorney Neal Sivyer to serve as mediator. There was no court order or referral to mediation. The parties did execute the Mediation Confidentiality Agreement,[30] which expressly acknowledges the voluntary nature of this mediation. Mediation was conducted on September 8, 2011. The result of that mediation was the Mediator's Proposal in the amount of $30 million that was voted on by TBW's Board of Directors on September 19, 2011, and then rejected by TBW's Board of Directors on October 17, 2011.

### THERE HAS BEEN NO BREACH OF MEDIATION CONFIDENTIALITY SUFFICIENT TO COMPEL ENFORCEMENT OF THE FAILED SETTLEMENT AGREEMENT, EITHER AS AN EQUITABLE REMEDY OR AS A SANCTION

HDR alleges that TBW has breached the confidentiality of mediation proceedings and that, as a result, the Court should enforce the failed settlement agreement either under some form of equitable estoppel or as a sanction against TBW.[31] Specifically, HDR alleges that TBW has violated Local Rule 9.07(b), the confidentiality provisions of 28 U.S.C. §652(d), the MCPA[32] and the Mediation Confidentiality Agreement.[33] HDR's allegations – like its generalized description of the mediation proceedings and other settlement discussions – are

---

[29] **Exhibit 5**.
[30] Dkt. 469-1.
[31] HDR Response, Dkt. 469 at pp. 15-20. The Court has denied HDR's request for monetary sanctions for the alleged breach of mediation confidentiality without prejudice to HDR filing a motion for such relief at the conclusion of the case. Order, Dkt. 474. Accordingly, TBW will not address the issue of monetary sanctions for any alleged breach of mediation confidentiality in this response and will limit its discussion to the question of whether the failed "settlement" should be enforced against TBW.
[32] Fla. Stat. §§44.401 - .406.
[33] HDR Motion, Dkt. 470 at pp. 3-4.

painted with the broadest of brushes, concealing and obfuscating all of the finer lines and details that underlie these charges. When the facts are viewed with accuracy and precision, HDR's claims are revealed for just what they are: a bad paint job.

### The Alleged Breaches of Mediation Confidentiality

At the outset, the Court should focus on the specific actions of or statements by TBW that HDR claims breached any applicable mediation confidentiality provisions. These appear to fall into three broad categories.

First, HDR complains about the disclosure of the Mediator's Proposal and its terms that necessarily resulted from the failed attempt to approve the settlement in September. HDR alleges that consideration of the Mediator's Proposal "was to be confidential and only to become public if TBW accepted it. If it appeared the motion would not carry, it was not to be brought to public vote. HDR fully adhered to the restrictions of the proposal. TBW did not."[34] The Mediator's Proposal does not quite say that. But even if it did, it is abundantly clear that any disclosure of the Mediator's Proposal in September was *only* as the necessary result of TBW believing that it was approving the settlement and *not* the result of any willful or intentional conduct in violation of any applicable mediation confidentiality or the terms of the Mediator's Proposal.

Second, HDR complains that "Board Members have repeatedly and continuously revealed confidential private session settlement discussions and dollar amounts exchanged between HDR and the Board."[35] It alleges that "Immediately after the Sept. 19 vote, TBW Board members disclosed to various media outlets the history and amounts of various offers

---

[34] HDR Motion, Dkt. 470 at p.2.
[35] HDR Response, Dkt. 469 at p.5, ¶12.

made by HDR during the mediation process and have opined about HDR's motivation and purpose for making the various offers."[36] And it reiterates this claim in the Motion, alleging that TBW's board members "have repeatedly disclosed in the media the history of prior private settlement offers and negotiations . . . ."[37] In an effort to support this claim, HDR provides a collection of approximately 30 media articles and reports.[38]

All of the articles supplied by HDR reflect discussion of the $30 million Mediator's Proposal, first in the local reporting of the apparent settlement in September and thereafter in the continuing media coverage of the matter through the vote to reject that amount in October. In only three of these articles, however, is there *any* statement by a TBW board member that includes the amount of any *other* purported settlement offer. Those three articles all recount essentially the same statement attributed to one board member, Commissioner Neil Brickfield of Pinellas County.[39] Commissioner Brickfield's comments, as reported in the media, include reference to three other specific dollar amounts ($10 million, $12 million and $20 million) that could fairly be understood as reflecting earlier settlement offers made by HDR at different times over the course of this case. These articles do *not* contain any apparent disclosure of a mediation communication by any other TBW board member, employee or representative, nor do HDR's filings reveal any such disclosure. Although HDR claims that there have been "repeated and continuous" disclosures of mediation communications by "board members," its own filings reveal only *one* statement made by *one*

---

[36] HDR Response, Dkt. 469 at pp.16-17.
[37] HDR Motion, Dkt. 470 at p.2.
[38] HDR Response, Ex. C, Dkt. 469-3.
[39] HDR Response, Ex. C, Dkt. 469-3 Article Nos. 13, 14 and 15.

board member that happens to have been repeated in a handful of media accounts.[40]

To the extent HDR complains about TBW board members expressing their own opinions about a settlement offer, that complaint is without merit. Whatever protection is afforded mediation communications under state or federal law, it protects only communications made during a mediation conference. Neither Local Rule 9.07(b) nor the MCPA prohibits the expression of a later-formed opinion *about* a settlement offer, provided the mediation communication itself is not disclosed.[41] Statements characterizing an offer as "too low," "flimsy and inadequate" or otherwise[42] are not in and of themselves a breach of any applicable mediation confidentiality provision, especially when made only after the amount of the offer in question has become public in a manner that does not itself breach mediation confidentiality. HDR has also resorted to discussing the failed settlement on its own litigation website,[43] where it characterizes the current situation as an attempt by TBW "to back out of the independent mediator's settlement that [it] approved and signed" and calls the Mediator's Proposal "a fair approach to resolution."[44] HDR should not be heard to complain about TBW board members expressing opinions about the settlement amount when it apparently feels free to do likewise.

---

[40] HDR claims, on information and belief, that Commissioner Brickfield made some allegedly similar statement at a recent gathering of construction industry representatives but it has provided no details or supporting documentation. HDR Response, Dkt. 469 at p. 17. For purposes of this response, TBW will assume that Commissioner Brickfield made such a statement and that it was consistent with the prior statement attributed to him in the three media articles.

[41] Fla. Stat. §44.405 protects "mediation communications" and Fla. Stat. §44.403(1) defines a "mediation communication" as "an oral or written statement, or nonverbal conduct intended to make an assertion, by or to a mediation participant made during the course of a mediation, or prior to mediation if made in furtherance of a mediation."

[42] HDR Response, Dkt. 469 at p.17.

[43] HDR's litigation website was the subject of a prior motion and order in this case (Dkt. 372, 394).

[44] See http://www.tbwlitigation.com/2011/10/17/statement-about-the-tbw-board-vote/ and screen capture of the webpage accessed 11/30/11, attached as **Exhibit 6**.

Finally, HDR seems to take issue with the extensive media coverage of this litigation. The vast majority of the media articles supplied by HDR contain nothing even approaching any disclosure of a mediation communication. Rather, they reflect news reporting of a significant case involving a local governmental agency and an important public water supply project. Whatever confidentiality attaches to mediation communications, it certainly does not prevent or preclude the news media from reporting on a matter of public interest.

**No Breach of Mediation Confidentiality as to the $30 Million Mediator's Proposal**

Any disclosure of the amount of the Mediator's Proposal in conjunction with the failed vote in September or thereafter cannot be a violation of Local Rule 9.07(b), because the Mediator's Proposal was not the result of any Court annexed mediation under Chapter Nine of the Local Rules.[45] As the Mediation Confidentiality Agreement[46] expressly indicates, this mediation was "a voluntary mediation (not a court ordered mediation)."

Local Rule 9.01(b) indicates clearly that proceedings under Chapter Nine involve "a Court annexed, mandatory mediation procedure." Such a proceeding requires an order of referral by the Court, even when the mediation results from a stipulation of the parties.[47] Within seven days following the mediation conference, the mediator is required to file a report reflecting the outcome of the mediation.[48] The mediation that took place in September of 2011 was not mandatory (it was voluntary) and was not the result of any order of referral (it was the result of the parties' agreement to mediate). Because this was not a Court annexed

---

[45] HDR also alleges a breach of 28 U.S.C. §652(d), but that statute does not itself impose or create any confidentiality. Rather, it requires district courts to adopt local rules providing for confidentiality of alternative dispute resolution proceedings. The Middle District has adopted such rules, with respect to Court annexed mediation, in Chapter Nine of the Local Rules.
[46] Dkt. 469-1.
[47] Local Rule 9.03(a) and (b); Local Rule 9.04(a).
[48] Local Rule 9.06(a). No such report was filed following the September 2011 mediation.

proceeding under Chapter Nine of the Local Rules, Local Rule 9.07(b) simply does not apply.

HDR also alleges that disclosure of the terms of the Mediator's Proposal is breach of the mediation confidentiality provisions of the MCPA. There is at least a threshold question of whether the Florida MCPA even applies to a voluntary mediation conducted in these federal proceedings,[49] but for purposes of this response TBW will assume that the MCPA applies. The disclosure of the Mediator's Proposal or the terms thereof in conjunction with the failed vote in September or thereafter does not violate the MCPA.

Pursuant to Fla. Stat. §44.405(1), "Except as provided in this section, all mediation communications shall be confidential. A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel." A "mediation communication" is defined as "an oral or written statement, or nonverbal conduct intended to make an assertion, by or to a mediation participant made during the course of a mediation, or prior to mediation if made in furtherance of a mediation."[50] However, "there is no confidentiality or privilege attached to a signed written agreement reached during a mediation."[51]

---

[49] *See, e.g., Fisk Electric Co. v. Solo Construction Corp.*, 417 Fed. Appx. 898, 902 n.7 (11th Cir. 2011)(noting that state substantive law may afford evidentiary protection beyond federal evidentiary rules and finding no error in trial court's application of MCPA where trial court admitted evidence of mediation settlement); *Altheim v. GEICO General Insurance Co.*, 2010 WL 5092721 (M.D. Fla. Dec. 8, 2010)(applying MCPA but finding no breach of confidentiality); *but see, Gilliam v. HBE Corporation*, 2000 WL 33996253 at *4 (M.D. Fla. Oct. 25, 2000)("Although federal law applies to this federal mediation, §44.102(3) of the Florida Judicial Code is premised on the same considerations.").

[50] Fla. Stat. §44.403(1).

[51] Fla. Stat. §44.405(4)(a). By its own terms, the Mediator's Proposal as signed by TBW and HDR was simply not confidential under the MCPA. That the "agreement" was subsequently discovered to be void as the result of a defect in TBW's vote to approve it does not change the fact that the "agreement" was signed by the parties. Notwithstanding its legal invalidity, the Mediator's Proposal as of September 19, 2011 was in fact a "signed, written agreement reached as the result of mediation" not subject to confidentiality under the MCPA.

Moreover, unless a mediation participant "knowingly and willfully discloses a mediation communication" in violation of Fla. Stat. §44.405, there is no equitable remedy available under the MCPA.[52] "Willfulness" under Florida law means a noncompliance that is "more than mere neglect or inadvertence." *Commonwealth Fed. Savings & Loan Ass'n v. Tubero*, 569 So.2d 1271, 1273 (Fla. 1990). Nothing in the Mediator's Proposal contemplated that it would remain confidential if approved by both parties, and HDR concedes as much. It is undisputed that when TBW's Board of Directors voted 4 to 3 in a public meeting to approve the Mediator's Proposal in September, everyone involved in the process believed that its action was legally valid and resulted in settlement of the case. The immediately ensuing disclosure and media reporting of the "settlement" at and following the public meeting could not under these circumstances be a knowing and willful violation of the MCPA's confidentiality provisions. "[T]here are no confidential communications to protect when the communications occur in a public meeting." *Neu v. Miami Herald Publishing Co.*, 462 So.2d 821, 825 (Fla. 1985).

There is also no remedy under the MCPA for a disclosure made in lawful compliance with the public records law.[53] Under Florida law, a public record includes any record or document "made or received . . . in connection with the transaction of official business by any agency."[54] Once TBW considered and acted upon the Mediator's Proposal in a public meeting and executed the Mediator's Proposal and the related release, those documents became public records. *See, Times Publishing Co. v. City of St. Petersburg*, 558 So.2d 487

---

[52] Fla. Stat. §44.406(1).
[53] Fla. Stat. §44.406(3)("A mediation participant shall not be subject to a civil action under this section for lawful compliance with the provisions of s. 119.07.").
[54] Fla. Stat. §119.011(12).

(Fla. 2 DCA 1990)(Once city began actively inspecting, discussing and reviewing documents they were public records). Subsequent disclosure of those documents to the media or any other requesting party is not a violation of mediation confidentiality under the MCPA.

Finally, statements made by individual TBW board members under the circumstances of this mediation cannot result in a breach of confidentiality under the MCPA. The MCPA prohibits only the knowing and willful disclosure of a mediation communication by a "mediation participant."[55] A "mediation participant" is defined as "a mediation party or a person who attends a mediation in person or by telephone, videoconference, or other electronic means."[56] Neither Commissioner Brickfield nor any other individual TBW director attended the mediation that resulted in the Mediator's Proposal, so they cannot be a "mediation participant" under the statutory definition. Thus, unless an individual board member is a "mediation party," there can be no breach of confidentiality based on the statements of a board member. The MCPA defines a "mediation party" as a person "participating directly, or through a designated representative, in a mediation" and a person who is a named party or a real party in interest or would be in a legal action relating to the subject matter of the mediation.[57] Under this statutory definition, an individual board member who does not participate in mediation is not a "mediation party." Statements made by Commissioner Brickfield or any other individual board member do not violate the mediation confidentiality provisions of the MCPA.

---

[55] Fla. Stat. §44.405(1); Fla. Stat. §44.406(1).
[56] Fla. Stat. §44.403(2).
[57] Fla. Stat. §44.403(3).

**No Breach of Mediation Confidentiality as to Direct Settlement Discussions**

To the extent a board member may have disclosed the amount of a settlement offer made by HDR in the course of the direct settlement negotiations between litigation counsel,[58] any such disclosure could not have breached any mediation confidentiality rule or statute. The reason is simple: There was no mediation.

Local Rule 9.07(b) relates to "proceedings of the mediation conference." Pursuant to Local Rule 9.01(a), "mediation" is defined as "a supervised settlement conference presided over by a qualified, certified and neutral mediator . . . ." Similarly, "mediation" within the meaning of the MCPA is defined as "a process whereby a neutral third person called a mediator acts to encourage and facilitate the resolution of a dispute between two or more parties." *Fla. Stat.* §44.1011(2). By definition, under either state or federal law, there can be no "mediation" in the absence of a designated mediator. And in the absence of a mediation, there can be no breach of any mediation confidentiality rule or statute. *See Armstrong v. HRB Royalty, Inc.*, 2005 WL 331087 n.11 (S.D. Ala. Dec. 12, 2005)(communications made by parties without the involvement of a mediator do not meet statutory definition of mediation and would not be protected by mediation confidentiality statute).

Thus, any direct settlement discussions that may have taken place between the

---

[58] Contemporaneously herewith, TBW has filed a motion to file under seal the correspondence to demonstrate that one of the settlement offer amounts allegedly disclosed by Commissioner Brickfield was in fact the result of the direct settlement negotiations between counsel and not the product of any mediation proceedings. Counsel for TBW represents to the Court that this amount was never offered by HDR in either the Court annexed mediation that ended in an impasse in November 2010. HDR may contend that this offer was repeated in the subsequent voluntary mediation that resulted in the Mediator's Proposal. The undisputed facts demonstrate that it was communicated to TBW's Board of Directors on May 16, 2011, so Commissioner Brickfield or any other board member would have learned of it at that time. HDR may contend that an offer in the same amount was communicated again in the subsequent voluntary mediation and that the disclosure of that amount is therefore a breach of mediation confidentiality, but it provides no factual basis upon which the Court can determine to which offer Commissioner Brickfield was referring in his statement that mentions that offer amount.

declaration of an impasse as of November 12, 2010 and the selection of a new mediator in August of 2011 were not and could not have been mediation communications under the common understanding or any applicable definition of "mediation." Because these direct negotiations between counsel were not made during the course of any mediation proceeding, the rules and statutes that apply to mediation provide no grounds for relief to HDR.[59]

### No Substantial Breach of Mediation Confidentiality as to Court-Ordered Mediation

To the extent an individual TBW board member may have disclosed the amount of lower settlement offers made by HDR during the course of the initial Court-annexed mediation that ended by impasse in November of 2010, it is difficult to see how HDR is prejudiced by such disclosure in the context of recent events, if at all. Specifically, the unavoidable disclosure of the recent Mediator's Proposal prior to the realization that the September vote was invalid would seem to overshadow any conceivable impact that might otherwise result from disclosure of any prior, lesser offer made more than a year ago. HDR does not even attempt to link the disclosure of any prior offers to its requested relief of enforcement of the Mediator's Proposal.

### NO BREACH OF ANY APPLICABLE MEDIATION CONFIDENTIALITY SUFFICIENT TO WARRANT ENFORCEMENT OF THE MEDIATOR'S PROPOSAL AS A SANCTION OR BY ESTOPPEL

The *only* case cited by HDR in support of its contention that some sanction should be imposed against TBW, *Paranzino v. Barnett Bank of South Florida, N.A.*, 690 So.2d 725

---

[59] Any offers to settle or compromise made by HDR during such negotiations are within the scope of Fed. R. Evid. 408, and therefore not admissible at trial for any of the prohibited purposes set forth in the rule. TBW has no intention of attempting to introduce evidence of any such offers at trial. But that issue has no bearing on the pending Motion, which is premised entirely on the alleged breach of mediation confidentiality and on the rules and statutes that apply to mediation communications, and which seeks affirmative relief by way of enforcement of the Mediator's Proposal.

(Fla. 4 DCA 1997), is inapposite. First, *Paranzino* involved litigation between two private parties over a purely private dispute, so there would have been no media report of the confidential mediation offer in that case absent a litigant deliberately reaching out and disclosing it to the media. Here, much of what HDR complains about is the customary and unavoidable media attention that surrounds any high-profile case involving a governmental agency and routine media coverage of TBW's public meetings. More importantly, *Paranzino* involved the *willful and deliberate violation of a court order*. As noted by the court, both the appellant and her attorney in that case "deliberately violated the court's order setting the matter for mediation." *Paranzino*, 690 So.2d at 728.   The Fourth District upheld the trial court's imposition of sanctions based on this "willful and deliberate" violation of the trial court's order, which is noted repeatedly throughout the opinion.

As to the Mediator's Proposal and the direct settlement discussions between the parties that immediately preceded that mediation, *there was no court order* that could have been violated by TBW. Any disclosure of the Mediator's Proposal by TBW was made in the good faith but mistaken belief that TBW was validly approving it at the September meeting, so there is no knowing and willful breach of mediation confidentiality that would support any sanctions under the MCPA, even assuming it applies and assuming further that could be violated by statements of an individual TBW board member. The direct settlement discussions between the parties were not a mediation at all, so there is no legal basis upon which to impose any sanction for breach of mediation confidentiality as to any of those communications.

HDR has also failed to make out the elements of equitable estoppel. If the

representation upon which HDR supposedly relied was some promise of confidentiality for mediation communications, then the only thing HDR did to change its position in reliance on such representations was to participate in mediation. But HDR's mere participation in mediation did not operate to its detriment – especially as to any unaccepted settlement offers. If, alternatively, the representation HDR claims to have relied upon is the "announcement" that the case had been settled under the Mediator's Proposal at the September TBW meeting, HDR clearly has not demonstrated that it changed its position at all, much less to its detriment, in reliance on that mistaken pronouncement in the brief time before the voting irregularity came to light.

What HDR is really complaining about is the recent disclosure of various settlement amounts offered by it during the litigation, including the Mediator's Proposal. While such disclosures certainly constitute a change in the circumstances surrounding the case and a matter that will have to be dealt with in *voir dire*, any such disclosures do not create an estoppel against TBW that would result in enforcement of an otherwise invalid agreement. The Court should simply leave the parties as they were prior to the TBW September meeting, and re-set the case for trial mindful that the Court and the parties will have to devote particular attention to the *voir dire* process at the appropriate time.

## CONCLUSION

For all of the foregoing reasons, the Motion should be denied.

**s/ Richard A. Harrison**
**Richard A. Harrison, Esquire**
Florida Bar Number 0602493
rharrison@allendell.com
Lead Trial Counsel

20

**Misty C. Leafers, Esquire**
Florida Bar Number:  416894
mleafers@allendell.com
**Barbara M. Cowherd, Esquire**
Florida Bar Number: 0469203
bcowherd@allendell.com
**ALLEN DELL, P.A.**
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682
Attorneys for Plaintiff, Tampa Bay Water

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 1st of December, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u>**s/ Richard A. Harrison**</u>
**Richard A. Harrison, Esquire**
Florida Bar Number 0602493
ALLEN DELL, P.A.
202 South Rome Avenue, Ste. 100
Tampa, Florida 33606
Phone: (813) 223-5351
Fax: (813) 229-6682
rharrison@allendell.com