UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TAMPA BAY WATER,**
a Regional Water Supply Authority,

    Plaintiff,

vs.                                                          Case No. 8:08-cv-2446-T-27TBM

**HDR ENGINEERING, Inc., et al,**

    Defendants.
_____/

## ORDER

BEFORE THE COURT is Tampa Bay Water's Motion to Exclude Testimony of Leslie G. Bromwell (Dkt. 299). HDR has responded in opposition (Dkt. 317). Oral argument was held on September 15, 2011 (Dkt. 447). Upon consideration, the motion (Dkt. 299) is DENIED.

### Discussion

Prior to the admission of expert testimony under Rule 702 of the Federal Rules of Evidence, a determination must be made that "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The proponent of expert testimony bears the burden of establishing each prong by a preponderance of the evidence. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005).

Focusing on the second prong, TBW argues that Bromwell employed unreliable methodology in arriving at his conclusion that a phenomenon known as "collapse upon wetting" caused the

reservoir to crack. Whether an expert's methodology is sufficiently reliable under *Daubert* is determined by considering several, non-exclusive factors, including "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

TBW raises several arguments to support its contention that Bromwell's methodology was unreliable. None affords a basis for excluding his testimony.

First, TBW contends that Bromwell relied on an inappropriate test in determining whether the soil in the reservoir embankment had the potential to collapse. Bromwell evaluated data from a test known as "ASTM D 4767" which, according to TBW, is intended to assess the sheer strength of the soil. TBW submits that the proper test for measuring collapse potential is "ASTM D 5333." At the hearing, HDR came forward with several peer reviewed articles which noted that tests such as ASTM D 4767 are appropriately used for determining the collapse potential of a soil sample.

Second, TBW argues that Bromwell improperly used the data generated by ASTM D 4767. It appears undisputed that ASTM D 4767 provides a single set of data quantifying the density change in a soil sample which has been subjected to both saturation and loading. This is significant, TBW contends, because in a true "collapse upon wetting" scenario, the sole cause of the collapse is saturation. TBW suggests that Bromwell cannot opine on whether "collapse upon wetting" occurred absent an accurate measurement of the effect of saturation alone.

Bromwell, however, testified that he could, in fact, determine the effect of saturation using ASTM D 4767 test results. As Bromwell testified and counsel further explained at the hearing, this information can be extrapolated by comparing the results of multiple ASTM D 4767 tests (which use varying load factors) and applying a mathematical formula. While HDR agreed that this

information cannot be extracted from a single ASTM D 4767 test, there were 17 tests performed in this case. Contrary to TBW's contention, Bromwell has permissibly extrapolated from the ASTM D 4767 test data and has not engaged in *ipse dixit*.

Third, TBW argues that Bromwell did not rely on sufficient evidence in concluding that the soil was applied too dry, too thick, and too loose. In forming his opinion, Bromwell relied on rainfall data from the periods when soil was applied in various areas of the reservoir, photographs showing the application of the soil, and daily construction reports. There is no contention that rainfall data is an unreliable means of comparing the levels of moisture in the areas of soil that allegedly collapsed with those that did not. The photographs, while an imprecise means of measuring soil levels, nonetheless include persons and equipment that provide a scale from which estimates can be made. And the construction reports do show the levels of soil applied in certain areas of the reservoir which did not collapse. There also appears to be evidence that the soil in at least some areas was not compacted with a bulldozer.

In sum, Bromwell formed his opinions using methodology which is sufficiently reliable to withstand TBW's *Daubert* challenge. While the matters raised by TBW are certainly fodder for cross-examination, they do not afford a basis for altogether excluding Bromwell's testimony.

Accordingly, TBW's motion to exclude the testimony of Leslie G. Bromwell (Dkt. 299) is DENIED.

**DONE AND ORDERED** this 7th day of December, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record