UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TAMPA BAY WATER,**
a Regional Water Supply Authority,

    **Plaintiff,**

vs.                                                  Case No. 8:08-CV-2446-T-27TBM

**HDR ENGINEERING, INC., et al.,**

    **Defendants.**
_____/

## **ORDER**

BEFORE THE COURT is HDR Engineering's motion to enforce settlement agreement (Dkt. 470), to which Tampa Bay Water has responded in opposition (Dkt. 479). Also before the Court is TBW's motion to seal (Dkt. 480). Upon consideration, the motions (Dkts. 470, 480) are DENIED.

### Background

After completing Court-ordered mediation in late 2010, TBW and HDR agreed to participate in an additional round of voluntary mediation, which took place in September 2011. At the conclusion of the session, the mediator submitted a settlement proposal to both parties. Because Florida's Sunshine Law required TBW's acceptance to be made by a public vote, the proposal included several features intended to preserve the confidentiality of mediation. HDR was to review the proposal and present its decision to the mediator first. Then, without knowing HDR's decision, TBW's counsel would participate in a private meeting with TBW's Board of Directors. Following that meeting, counsel would inform the mediator whether "he has received a sense" that the Board would accept the settlement proposal. If HDR had agreed to the proposal, and if it appeared that TBW's Board would vote to accept the proposal, the mediator would inform TBW's counsel. TBW

would then conduct a public meeting to vote on the settlement. But if HDR did not accept the settlement proposal, or if it appeared that TBW's Board would reject the proposal, TBW would never learn of HDR's response.

At first, everything went according to plan. HDR accepted the proposal. Shortly thereafter, TBW's counsel informed the mediator of the Board's likely acceptance. At a public session on September 19, 2011, the terms of the mediator's proposal were placed on the public record, and TBW's Board voted 4-3 to accept the settlement proposal. The Chairperson of TBW's Board executed the settlement proposal and a mutual release, as did HDR.

A mere eight hours later, TBW's counsel informed HDR's counsel that the settlement proposal was not properly approved, because at least five affirmative votes were required. The statute governing TBW's voting procedures provides:

> Except as otherwise provided in this section or in the *voluntary interlocal agreement* between the member governments, a majority vote shall bind the authority and its member governments in all matters relating to the funding of wholesale water supply, production, delivery, and related activities.

Fla. Stat. § 373.1963(1)(g) (1997) (emphasis added).[1] As permitted by the statute, TBW's Interlocal Agreement alters the requirement of a simple majority vote, providing:

> Except as otherwise provided in Section 2.05(C) hereof, Board action shall require an affirmative vote of not less than five Directors.

Interlocal Agreement § 2.05(B).[2]

Because two Board members did not attend the September 19 vote, TBW scheduled a public meeting for October 17, 2011. In the interim, several media outlets published the terms of the

---

[1] Now Fla. Stat. § 373.715(1)(g).

[2] Section 2.05(C) requires a vote of six Directors for certain actions of the Board.

settlement proposal and the fact of HDR's acceptance. It also appears that one of TBW's Board members revealed the contents of HDR's prior settlement negotiations in a public interview.[3] When the second meeting convened, the Board voted 9-0 to reject the mediator's proposal, and various Board members apparently made comments to the media concerning the purported settlement.

HDR argues that the failed settlement proposal should nonetheless be enforced on equitable grounds, due to the public disclosure of the proposal's terms and HDR's acceptance, as well as the content of prior settlement negotiations. TBW responds that HDR has not demonstrated the requirements for equitable estoppel.

### Discussion

"Agreements entered into by public bodies which fail to comply with statutory requirements are void." *Palm Beach County Health Care Dist. v. Everglades Mem'l Hosp., Inc.*, 658 So. 2d 577, 581 (Fla. 4th DCA 1995); *see, e.g., Ramsey v. City of Kissimmee*, 190 So. 474, 477 (Fla. 1939); *Town of Indian River Shores v. Coll*, 378 So. 2d 53, 55 (Fla. 4th DCA 1979). This principle is based on the policy that "taxpayers should not be held accountable on a contract unless the contract has been entered into according to the strict letter of the law. Otherwise, corrupt (or merely inept) public officials could subject the public to untold financial liability." *City of Panama City, Fla. v. T & A Utils. Contractors*, 606 So. 2d 744, 747 (Fla 1st DCA 1992).

HDR fails to appreciate the significance of the five-vote requirement contained in TBW's Interlocal Agreement, apparently relying on the majority-vote provision set forth in Fla. Stat. § 373.1963(1)(g) (1997). TBW is a governmental agency whose creation was authorized by the Florida legislature. Fla. Stat. § 373.1963(1) (1997). While § 373.1963(1)(g) (1997) did indeed provide for

---

[3] The parties apparently disagree whether what Board member Brickfield disclosed to the media on October 7, 2011 was a matter subject to mediation confidentiality or merely settlement offers exchanged between the attorneys outside the mediation meeting.

a majority vote, it authorized TBW to modify this provision "in the voluntary interlocal agreement." As contemplated by the statute, TBW's Interlocal Agreement expressly provides that Board action requires a vote of at least five Directors. Interlocal Agreement § 2.05(B). Notwithstanding its arguments, HDR is charged with knowledge of the voting requirements in the Interlocal Agreement.[4] *See Ramsey*, 190 So. at 477; *Town of Indian River Shores*, 378 So. 2d at 55.

It is beyond dispute that the settlement proposal never received the number of affirmative votes required by TBW's Interlocal Agreement. Unquestionably, the initial acceptance was not a valid exercise of the Board's powers. Therefore, contrary to HDR's argument, the actions of TBW's Chairperson and General Manger in signing the settlement agreement and release were ineffective to bind TBW. *See Ramsey*, 190 So. at 477; *Town of Indian River Shores*, 378 So. 2d at 55.

HDR contends that the Board's September 19 vote rendered the settlement voidable rather than void *ab initio*. Regardless of whether the purported settlement was a void *ultra vires* act or a voidable *intra vires* act, it was never approved or ratified by the requisite number of Board members. *See Ramsey*, 190 So. at 477 (ratification must be accomplished in the manner required by the original act). Simply put, the purported acceptance of the settlement on September 19, 2011 was not binding on TBW.

Notwithstanding, HDR contends that principles of equitable estoppel compel enforcement of the settlement. "Equitable estoppel must be applied with great caution." *Watson Clinic, LLP v. Verzosa*, 816 So. 2d 832, 834 (Fla. 2d DCA 2002). While equitable estoppel can be invoked against a governmental entity, "the doctrine is not applied against the State or its subdivision as freely as against an individual . . . ." *Trustees of Internal Improvement Fund v. Claughton*, 86 So. 2d 775, 789

---

[4] The Interlocal Agreement is recorded in the Official Records of Pinellas County, Hillsborough County, and Pasco County.

(Fla. 1956); *Sun Cruz Casinos, L.L.C. v. City of Hollywood, Fla.*, 844 So. 2d 681, 684 (Fla. 4th DCA 2003). Equitable estoppel will only arise where a party demonstrates by clear and convincing evidence "(1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance upon that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance." *Sun Cruz Casinos*, 844 So. 2d at 684.

HDR's argument that relied to its detriment on the representation that the settlement proposal had been accepted by TBW's Board is unpersuasive. The record is bereft of any evidence that HDR took any actions in the short period between the September 19 vote and the discovery of its invalidity.[5] By all appearances, HDR did nothing to change its position in reliance on TBW's initial attempt to accept the proposal.

The thrust of HDR's argument is that it relied on the prospect of confidentiality intended by the procedure for accepting the mediator's proposal. HDR essentially asserts that, without this procedure, it would not have participated in the proposal. But the only harm HDR arguably suffered from its participation was that the terms of the settlement and the fact of HDR's acceptance were made public.[6] This was simply adverse publicity, not a detriment.

HDR seemingly suggests that the detriment it suffered was that this litigation did not settle on the terms of the proposal. But any such detriment was not caused by HDR's reliance on the intended confidentiality. Rather, this case did not settle on the terms of the proposal because the proposal never received the required number of affirmative votes. And as discussed, there is no

---

[5] As TBW observes, HDR at most may have released witnesses from trial subpoenas and directed paid experts to stop working on the case. (Dkt. 479, p. 5, n. 12). Neither constitutes a change in position to the detriment of HDR, as new subpoenas can be issued and experts can be directed to resume work.

[6] Of course, the proposal did contemplate that the settlement terms would be made public, but only after TBW's counsel communicated his "sense" that the Board would vote to accept the proposal. The proposal did not address what would happen if counsel's belief proved incorrect, in that Board members did not vote consistent with their representations in the September 19 private meeting, as apparently happened in the October 17 vote.

evidence that HDR changed its position in reliance on the September 19 vote. The requested remedy of enforcing the purported settlement agreement has nothing to do with the harm caused by the loss of confidentiality. In short, equity will not compel enforcement of the invalid settlement agreement simply because HDR's acceptance became public.

In the end, HDR's motion is more about sanctions than equitable estoppel. This Court has wide discretion in determining when to award sanctions, whether sanctions are appropriate, and what constitutes a proper sanction. It has already been determined that sanctions will not be addressed until the conclusion of this case (Dkt. 474). It bears mention, however, that HDR has not pointed to any authority requiring the enforcement of the mediator's settlement proposal as a sanction for the public disclosure of the proposal's terms or HDR's acceptance. Nothing in 28 U.S.C. § 652, Local Rule 9.07(b), or Fla. Stat. §§ 44.401-44.406 remotely suggests that enforcement is a mandatory sanction. The sole case HDR relies on, *Paranzino v. Barnett Bank of South Florida, N.A.*, 690 So. 2d 725 (Fla. 4th DCA 1997), is unhelpful because there is no allegation that TBW violated an express order of the Court. And, in any event, it is within the trial court's discretion to determine the propriety of a particular sanction. On this record, if a sanctions award is made (which is unlikely), it will not include the dismissal of this action or enforcement of the mediator's settlement proposal.

HDR's implicit requests for discovery and an evidentiary hearing are denied.[7] The essential facts surrounding the Board's September 19, 2011 vote are undisputed. To the extent the parties dispute what was disclosed by TBW and whether that disclosure violated any mediation privilege, that matter will be addressed at the conclusion of this case. Simply put, the undisputed facts show that the September 19 vote was invalid, and HDR did not change its position in reliance on that vote.

---

[7] HDR's motion to seal (Dkt. 471) was previously denied (Dkt. 476).

There is nothing more to be resolved on the matter.

## Conclusion

Accordingly, HDR Engineering's motion to enforce settlement agreement (Dkt. 470) is DENIED. TBW's motion to seal (Dkt. 480) is DENIED as moot.

**DONE AND ORDERED** this 13th day of December, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record