IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMPA BAY WATER,
a regional water supply authority,
        Plaintiff,

v.                                          Case No. 8:08-cv-02446-JDW-TBM

HDR ENGINEERING, INC., a Nebraska
corporation,
        Defendant.
_____/

**HDR'S RESPONSE TO TBW'S MOTION IN LIMINE #4
AS TO EXPERIENCE AND QUALIFICATION OF TBW STAFF
AND TBW'S COMPARATIVE NEGLIGENCE
(Dkt. 450)**

Defendant HDR Engineering, Inc. opposes TBW's Motion In Limine #4 To Exclude Any Evidence Or Argument Regarding Allegedly Inadequately Experienced Or Unqualified Tampa Bay Water Staff and Comparative Negligence Based Thereon (Dkt. 450), and in support thereof states as follows:

I.
**SUMMARY OF ARGUMENT**

TBW seeks to preclude HDR from offering *any* evidence or argument at trial concerning the lack of experience or qualifications of TBW's staff assigned to the reservoir project or *any* argument of a causal connection between such evidence and any condition at the Reservoir. (Motion at page 5). The sole basis for the Motion is this court's order (Dkt. 438) granting TBW's *Daubert* motion to exclude the expert report and testimony of HDR's expert Robert W. Johnson. TBW misinterprets the Court's Order as amounting to a summary judgment ruling on the merits of HDR's Fourth Affirmative Defense as to TBW's

comparative fault.[1] (Motion ¶s 5, 6, 7, & 8). The Court's Order did not extend this far. It merely held that Mr. Johnson could not testify as an expert. It made no ruling on the merits of HDR's affirmative defense or the admissibility of any other evidence that might be offered in support of it.

In any event, the Court should deny TBW's Motion because evidence of the qualifications of TBW's staff is relevant to the issues in the case. In order to justify a pre-trial ruling excluding the evidence for any purpose (which is the relief TBW seeks), TBW has the burden of demonstrating the evidence has no relevance to any issue in the case. This it has not done. Even in relation to the limited topic of TBW's comparative fault, TBW has not met its burden of demonstrating that the evidence will be wholly inadmissible on that subject. TBW asserts as articles of faith that the jury can only find comparative fault against TBW with the aid of expert testimony and that the only source of such expert testimony would have been Johnson. TBW cites no authority in support of the legal proposition and it overlooks the fact that its own expert will provide whatever opinion testimony might be needed.

## II.
## STANDARDS GOVERNING MOTIONS IN LIMINE

Motions in limine are disfavored methods for determining the admissibility of evidence prior to trial. If evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy and prejudice to be resolved in

---

[1] The Fourth Affirmative Defense alleges, in relevant part to this Motion, that: "TBW was negligent as an Owner and bears comparative responsibility for failing to have adequately experienced and qualified staff in the positions of design review and approval and construction supervision which contributed to its alleged damages, if any."

**HDR'S RESPONSE TO TBW'S MOTION IN LIMINE #4
REGARDING EXPERIENCE AND QUALIFICATIONS OF TBW STAFF**–Page 2

context. *Stewart v. Hooters of Am., Inc.*, 2007 U.S. Dist. LEXIS 44056, *2-3 (M.D. Fla. June 18, 2007) ("a court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds"); *In re Seroquel Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 124798, *275 (M.D. Fla. Jan. 30, 2009) ("evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context"); *Howard v. Otis Elevator Co.,* 2010 U.S. Dist. LEXIS 59181, *5 (M.D. Fla. July 26, 2010) ("If a court cannot determine whether challenged evidence should be admitted without the context of the trial, the evidentiary ruling should be deferred until trial").

### III.
### ARGUMENT

#### A. THE EVIDENCE IS RELEVANT TO MATTERS OTHER THAN HDR'S FOURTH AFFIRMATIVE DEFENSE.

It is important to recognize that TBW's Motion seeks to completely exclude evidence of the qualifications of its employees for any purpose whatsoever, not just for the limited purpose of demonstrating TBW's comparative fault. But TBW does not justify such a broad exclusionary request.

It is a standard tenet of evidence law that "all relevant evidence is admissible" unless specifically provided otherwise by law. FED. R. EVID. 402. "Relevant Evidence" is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 402. The standard for relevance under the Federal Rules of Evidence is "a very low bar." *Horowitch v. Diamond Aircraft Indus., Inc.*, 2009 WL 3790415

*4 (M.D. Fla. Nov. 9, 2009).  Relevant evidence "need not definitively resolve a key issue in the case"; it only needs to "move the inquiry forward to some degree." *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010). "The length of the chain of inferences required to show the probative value of any evidence is not determinative of whether the evidence is relevant." *United States v. Quattrone*, 441 F.3d 153, 188 (2d. Cir. 2006).

At least one "fact of consequence" in this case is whether or not Barnard and McDonald built the protective layer over the geomembrane too thick, too dry or too loose, which is part of the construction error identified by HDR's expert witness Dr. Bromwell as the cause of the cracking. Part of TBW's response to this argument is testimony from eyewitnesses who say they did not observe this condition.[2] Evidence of the qualifications, training and competence of these percipient witnesses is directly relevant to the jury's evaluation of their abilities to perceive, recall and relate what they saw. If the witness testifies that he or she did not observe this construction error, then the jury is entitled to consider whether the witness was qualified to recognize the condition he or she was observing.

TBW's Motion states that its employees Rick Menzies and Amanda Rice will testify as fact witnesses about the design, permitting and construction of the project.[3] HDR should be allowed to cross-examine them on their qualifications and experience at the time of their actions on this project as representatives of TBW. Whether their testimony is entitled to more

---

[2]  *See* TBW's Motion to Exclude Testimony of Leslie Bromwell, Sc.D., P.E., pp. 22-23 (Dkt. 290).

[3]  TBW's Motion in Limine, pp.4 (¶12), 6.

or less weight than other witnesses who were part of the design, permitting and construction process is a matter peculiarly within the province of the jury.

In evaluating the testimony of Menzies and Rice, the jury is entitled to know that neither had any prior experience on dam or embankment construction or had ever worked on a project of this type, size and complexity. Amanda Rice, who was TBW's project manager during design and permitting, was an unlicensed engineer who had failed the civil engineering licensing exam on multiple occasions.[4] Rick Menzies, who served as TBW's project manager during construction, had not worked as a civil engineer for the two years prior to being hired by TBW in 1998 and had recently been working as an insurance adjuster.[5]

Once the project was contracted for construction, Menzies became TBW's main point person on the job.[6] He was familiar with and had an understanding of the plans and specifications and would go to the construction manager CDG for assurances about whether construction was within the plans and specifications.[7] He had a meeting with HDR about the protective layer and personally observed it being constructed on "numerous occasions."[8] Menzies also gave Black & Veatch a detailed description of the construction of the wedge

---

[4] Rice depo., 469:9 - 471:7, Ex. A.

[5] Menzies depo., 23:24-24:16, Ex. B.

[6] *Id.,* 71:18-23.

[7] *Id.,* 65:2-18, 68:1-69:7.

[8] *Id.,* 64:24-65:18, 180:2-22.

**HDR'S RESPONSE TO TBW'S MOTION IN LIMINE #4
REGARDING EXPERIENCE AND QUALIFICATIONS OF TBW STAFF**–Page 5

and protective layer during its investigation of the cracking.[9] He saw that it was being pushed up vertically.

Menzies repeatedly testified that he had observed the protective layer being installed vertically rather than horizontally as required by the specifications,[10] yet he took no action. For example, he testified:

> Q. Did you ever ask anyone from CDG or HDR "why is the wedge being built with this vertical lift when the specifications say it's supposed to be constructed horizontally"?
>
> A. I don't recall asking anybody why it was done that way, but I do remember it being explained to me that it was needed in order to protect the geomembrane during the placement of the horizontal lifts.
>
> Q. But even though that may have been why it was needed, it was not a procedure that was contemplated by the specifications, which required horizontal lifts, correct?
>
> A. Yes, the specification says horizontal lifts.[11]

Menzies did not know how thick the protective layer was and did not question the construction manager CDG as to whether the method by which the protective layer was being constructed warranted a change order.[12] He never asked about the thickness of the protective layer or whether it complied or deviated from the specifications.[13] Meanwhile, Rice recognized that the protective layer was not "a thin veneer" and was "quite thick."[14]

---

[9] Menzies depo. Ex. 294, Ex. C.

[10] Menzies depo., 620:13-20, 621:19-23, 622:18-20, Ex. B.

[11] *Id.,* 622:1-16.

[12] *Id.,* 622: 23- 623:25.

[13] *Id.,* 178:4-21.

[14] Brumund depo. Ex. 509, Ex. D.

In light of this testimony, evidence concerning Rice's and Menzies's qualifications and experience is relevant to the jury's evaluation of their overall credibility. The evidence has some tendency to show a lack of understanding by TBW's staff for the work being done at the Reservoir, which would undermine any claim that their failure to observe a construction error meant that none occurred. This meets the "very low bar" of "mov[ing] the inquiry forward to some degree" concerning a "fact in consequence," to wit: construction of the protective layer. TBW asserts that this evidence poses a "danger" of unfair prejudice and confusion of the issues,[15] but this assertion has no basis in fact or logic. There is nothing about this type of evidence that rises to the level required by Federal Rule of Evidence 403 that the prejudicial effect "substantially outweigh" the probative value of the evidence. *Solis v. Seibert*, 2011 WL 398023, *7 (M.D. Fla. Feb. 4, 2011) (quoting *United States v. Sawyer*, 799 F.2d 1494, 1506 (11th Cir. 1986)) (application of Rule 403 must be "cautious and sparing"; "only unfair prejudice substantially outweighing probative value . . . permits exclusion"). Under these circumstances, TBW has not met its burden of justifying the total exclusion of this evidence for any purpose whatsoever, which is the relief TBW requests.

### B.     THE EVIDENCE IS RELEVANT TO HDR'S FOURTH AFFIRMATIVE DEFENSE.

Even as it relates to the topic of TBW's comparative fault (the subject of HDR's Fourth Affirmative Defense), the evidence is relevant and admissible. In this regard, TBW justifies exclusion of the evidence solely on the basis of the Court's *Daubert* Order striking the testimony of HDR's expert Robert Johnson. TBW misstates both the holding and effect

---

[15] TBW's Motion to Strike, p. 6.

of the Court's Order, claiming that it "expressly found there is no causal connection between their experience and qualifications, or the lack thereof, and any damage to the reservoir."[16] The Court's Order does not make any such finding. It went no further than to say Johnson's testimony did not meet the *Daubert* standards for admissibility. It did not address any other evidence or the merits of HDR's affirmative defense. Thus, the Court's ruling did not render inadmissible evidence that TBW employed inexperienced staff.  The question of whether the failure by TBW to employ qualified staff constitutes negligence was not presented by TBW's *Daubert* motion or the Court's ruling on that motion.

In this connection, TBW asserts that the jury cannot assign any comparative fault to TBW in the absence of expert testimony. TBW offers no authority to support this proposition. It does not explain what aspect or element of comparative fault would require expert testimony. The manner in which the inexperience and lack of qualifications of TBW's staff contributed to the erroneous construction of the protective layer is not an issue requiring expert testimony.  The jury can evaluate whether TBW staff observed the protective layer being improperly placed, whether they appreciated what they saw, and whether they reported it. As the Florida Supreme Court has said, "expert testimony is not an absolute requirement to establish causation." See *Atkins v. Humes,* 110 So. 2d 663, 666 (Fla. 1959). This is because "jurors of ordinary intelligence, sense and judgment are, in many cases, capable of reaching a conclusion, without the aid of expert testimony . . . ." *Id.*; *see also State Farm Mut. Auto. Ins. Co. v. Penland,* 668 So. 2d 200, 202-03 (Fla. 4 DCA 1995).

---

[16] *Id.*

**HDR'S RESPONSE TO TBW'S MOTION IN LIMINE #4
REGARDING EXPERIENCE AND QUALIFICATIONS OF TBW STAFF**–Page 8
DL/2792631v1

There will be ample evidence from which the jury can determine that TBW shares responsibility for the matters on which it has brought suit. The contract documents between TBW and HDR establish that TBW, as project owner, was to have an active role in the design and construction process. The contract recited that the Reservoir was "a unique project" with "unique challenges and opportunities" and provided that HDR's tasks would be defined and "executed in coordination with Tampa Bay Water staff."[17] The Construction Quality Control Plan states that "[t]he Owner [TBW] is responsible for the design, construction, and operation" of the Reservoir, and the official organizational chart showed TBW at the top, in control of HDR, CDG, Barnard and all other contractors.[18]

If any expert testimony on this point is required (which HDR denies), TBW's own experts will provide it. Brumund, in his report and in his deposition, declared that any "competent engineer," doing a "reasonable" technical review, would have noted the alleged deficiencies in HDR's design and would have corrected them.[19] However, Rice, who was part of TBW's design review team, did not catch the alleged errors. TBW's expert O'Connell testified that part of Rice's duties and responsibilities was to ensure TBW's compliance with the Florida Dept. of Environmental Protection permit and to report to FDEP any deviations from the plans and specifications.[20] Rice never reported any such deviations.[21]

---

[17] *See* Agreement for Professional Services, Contract 99-19, Nov. 16, 1998, Schedule A (Dkt. 311-8).

[18] *See* Construction Quality Control Plan, Embankment Construction, June 11, 2002, p. 3 (Dkt. 311-9).

[19] See the extensive record references to Dr. Brumund's testimony on this issue at HDR's Response to TBW's Motion in Limine #2 to Exclude Black & Veatch as *Fabre* Defendant, pp. 8-12 (Dkt. 494).

[20] O'Connell Depo., 553:7-554:3, Ex. E.

[21] *Id.,* 554:22-555:3.

O'Connell testified that he was familiar with the roles Menzies and Rice played on major public works projects such as the Reservoir.[22] O'Connell testified that Menzies's duties included general oversight of the project on behalf of TBW,[23] and that it was reasonable and proper for Menzies to observe construction[24] and form his own opinions and conclusions to whether or not the work was being done in accordance with the plans and specifications.[25] O'Connell opined that both Menzies and Rice, in their capacities as engineers for TBW, should have noted certain earthwork fill deficiencies that were performed in violation of the specifications.[26] However, neither of them noticed, mentioned or questioned that deficiency, just as neither of them questioned the construction of the protective layer.

In evaluating the conduct of Rice and Menzies *vis-à-vis* TBW's contractual obligations concerning the project and Rice's and Menzies's performance of their job duties, the jury will be entitled to consider whether TBW had put the right people in those positions. In doing this, the jury will be entitled to consider the experience and qualifications of TBW's employees. The jury can do all of this without the benefit of any testimony from HDR's expert Johnson. The absence of his testimony will be no impediment to admissibility of this evidence.

---

[22] *Id.,* 556:14-21.

[23] *Id.,* 554:4-12.

[24] *Id.*, 560:12-23.

[25] *Id.*, 562, 7-14.

[26] *Id.,* 558:3-18.

TBW essentially is arguing that it will be entitled to a directed verdict on HDR's affirmative defense of TBW's comparative fault. Whether the evidence will support the affirmative defense cannot be determined until the evidence is submitted. Moreover, even a directed verdict is improper if "any evidence" will support a verdict for the non-moving party. The trial court should direct a verdict only where the facts are unequivocal, meaning "there can be but one reasonable conclusion as to the verdict.'" *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1247 (11th Cir. 1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The time to raise this argument will be at the close of evidence through a Rule 50 motion or Rule 51 objection to the jury charge. It is inappropriate as a pre-trial motion in limine.

**WHEREFORE,** HDR requests that the Court deny TBW's Motion in Limine #4 in all respects and grant unto HDR such other relief to which it may be entitled.

        Respectfully submitted,

        *s/ Kurt W. Meaders*
        KURT W. MEADERS

| | |
|---|---|
| **SEDGWICK LLP** | **FORIZS & DOGALI, P.A.** |
| All Admitted *Pro Hac Vice* | TIMOTHY D. WOODWARD, ESQ. |
| WAYNE B. MASON, ESQ. | Florida Bar No.: 0486868 |
| wayne.mason@sedgwicklaw.com | twoodward@forizs-dogali.com |
| KURT W. MEADERS, ESQ. | JAMES K. HICKMAN, ESQ. |
| kurt.meaders@sedgwicklaw.com | Florida Bar No.: 0893020 |
| DAVID C. KENT, ESQ | jhickman@forizs-dogali.com |
| david.kent@sedgwicklaw.com | |
| | |
| 1717 Main Street, Suite 5400 | 4301 Anchor Plaza Pkwy., Suite 300 |
| Dallas, TX 75201-7367 | Tampa, FL 33634 |
| Telephone 469-227-8200 | Telephone 813-289-0700 |
| Facsimile 469-227-8004 | Facsimile 813-289-9435 |

        **ATTORNEYS FOR HDR ENGINEERING, INC.**

## CERTIFICATE OF SERVICE

      The foregoing instrument was electronically filed with the Clerk of Court through CM/ECF on December 15, 2011, which sent a notice of filing to all counsel of record the same day.

      *s/ Kurt W. Meaders*
      KURT W. MEADERS